**No. _____**

_____

**IN THE**
**SUPREME COURT OF THE UNITED STATES**

_____

IN RE PAMELA LYNN AND WILSON LYNN, JR,
PETITIONERS

_____

*ON PETITION FOR A WRIT OF MANDAMUS*
*TO THE SUPREME COURT OF THE UNITED STATES*

_____

**PETITION FOR WRIT OF MANDAMUS**

_____

Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064

# QUESTION PRESENTED

This Mandamus is of first impression because there is no direct Court precedent where a Petitioner has had to require this Court to compel, order, or injunct the Chief Justice John G. Roberts, Jr. ("Chief Justice" or "Roberts") to do the administrative or ministerial side of his job to ensure the filing and docketing of a case, through this his direct reporting staff or otherwise, as required by this Court's Rules.

The Chief Justice is the Presiding Officer over the Court (including the administration of the Court) per Article 1, Supreme Court Rules 1, 2, 5, 22, and 30, and the Judiciary Act of 1789. In the Act of 1789, Section I states: "That all writs and processes issuing from a supreme…court shall bear the test of the chief justice of the supreme court." As applied to the Chief Justice in this matter, he has tested the Rules, which includes all writs and processes.

Moreover, Pamela Lynn has underwent 55 surgical procedures in order to file this Mandamus at this Court and her husband, Wilson Lynn, Jr., US veteran who honorably served his country, by her side the whole time - and their rights to freely speak through the filing of these five (5) grievances to this Court for docketing through the Petitioners' Counsel of Record who is an Officer of the Court - but the Chief Justice, through the use of this Courts' Clerks and Case Analyst (altogether "Administrators" or "administrators"), has denied their substantiative, First Amendment right use of Free Speech through rejections. According to the US Constitutions' Article III, Section 2 plain language "…And with such exceptions…" and the bedrock case on Judicial Review being *Marbury v. Madison*, 5 US 137 (1803), and other case precedents (altogether "De Jure" or "by operation of law") introduce the use of a mandamus to order, compel, and injunct a government official who fails to perform his ministerial / administrative duty (job) or acts beyond their capacity – Ultra Vires – to be subject to this Court's ordering via a mandamus and/or

i

injunction as necessary for enforcing Justice for all Americans.

Therefore, the Chief Justice is solely responsible when his administrators act Ultra Vires or read the Court Rules in a way to reject the Petitioner's five (5) filings, which was an exercise of her rights under the First Amendment of the US Constitution. See *Appendices A (first filing), B (first rejection), C (second filing), D (second rejection), E (third filing), F (third rejection), I (fifth filing),* and *J (fifth rejection).*

While in the Bible, Job stated that the Good Lord hangs the earth on nothing, the Petitioners' hang their past, current, and future livelihood and well-being (some would say their whole world/earth) on this Case being filed, docketed, their Petition granted, heard, argued, and decided in Petitioners' favor De Jure and Ipso Facto. Petitioners Prayer for damages in Appendix A is $1.96 Billion, not including reasonable attorney fees and costs from the end of Arbitration until present day, and also, they want this Court to opine on exemplary damages to create a fund to distribute $7.84 Billion (1.96 Billion multiplied four times) to Americans who have been medically injured, without victory, by the Kaiser Healthcare system of Insurance, Hospitals, Physicians, and Private Arbitration with La Follete Johnson, JAMs ADR and OIA.

For example, to find such an American who could be a recipient of a portion of the exemplary damages all one would have to is depose Kaiser for all the Arbitration proceedings that ended with a summary judgment or an illegal lowered remedy amount due to demurrer in favor of Kaiser (best estimate of these types of occurrences to patients' actions is 70% in favor of Kaiser). Any one of those Americans who lost summary judgment or had their remedies reduced illegally to Kaiser Arbitration is an American who was medically injured yet did not get a remedy to help them survive. Petitioners and Counsel

- ii -

of Record have firsthand experience of Kaiser's counsel (La Follete Johnson, including Brian Meadows, Myra Firth, and Mitzi Thomas) in conspiracy with JAMs ADR (Kirk Nakamura and Mirra Jhang) to use a summary judgment and demurrer to reduce illegally Pamela's remedy, but Counsel of Record demanded in discovery that Kaiser produce a signed Arbitration Agreement as required by Cal. Health & Safety Code § 1599.81, but Kaiser could not, so Petitioner won the Arbitration as dismissed without prejudice and is still awaiting Kaiser to pay his reasonable legal fees of $230,364 demanded multiple times since January 3, 2025.

For example, to find seven (7) instances of Physician Malpractice and Corporate Negligence in Kaiser Hospitals look in Appendix A and Appendix K. Pamela underwent five (5) endoscopies with dilation without Botox ("EGD" or "surgeries") in August 2019 because Kaiser's computer AI system for their insurance automatically the approved the surgeries and there were multiple different Kaiser doctors who performed these EGDs and they all failed to apply the standard of care for each surgical procedure. This is the exact definition of Corporate Negligence and Medical Malpractice. Pamela's current Physician, Dr. Luke Putnam, is going to tell you, through deposition, that to meet the standard of care a patient should not exceed one (1) to three (3) such procedures in a six (6) month period. As a result, the fifth EGD in August 2019 perforated Pamela's esophagus in her chest and abdomen area, which Kaiser doctors intentionally concealed in the medical notes, and put her into the Emergency Room and then ICU for a five (5) night hospital stay. A month and half later, she underwent a major esophagus surgery that severed her Vagus Nerve permanently. See *Appendix K.*

For example, in Appendix A, one will find an Aetna Insurance denial of medically necessary surgery of EGD with dilation and Botox ("EGD with Botox every 3 months") to save Pamela's life, so after a year of Pamela going through the appeal process, the

- iii -

State of California Insurance Department overturned Aetna and made them cover the surgery.

For example, in Appendix A, Medicare automatically denied two (2) of Pamela's EGD with Botox every 3 months in 2024 using computer AI to automatically deny covering Botox when she signed an Advanced Beneficiary, at the hospital on the day of the surgery, which states she and Wilson will pay for the Botox ($4,200) if Medicare does not cover it. So, Medicare makes Pamela sign a waiver to pay for the Botox, so Medicare can deny the service via computer AI without having a physician evaluate whether Botox is a medically necessary surgical procedure with the EGD. This is the exact definition of Corporate Negligence, but applied by the US Department of Health and Human Services funded by taxpayers like Pamela and Wilson. Medicare also denied her pain management treatment which had been approved previously by Kaiser and Aetna.

Now considering the examples above and Pamela's 55 surgical procedures, and not limited to, Honorable Justices, please now take a minute break from reading this Mandamus and multiply the above examples of injuries that Kaiser inflicts on US Citizens living in the nine (9) US States, which include California, Colorado, Georgia, Maryland, Hawaii, District of Columbia, Oregon, Virginia, and Washington, then you will understand the urgent need for this Court to immediate grant this Mandamus and start working toward a solution to resolve, judicially, this national problem in order to save all these Americans from injuries due to this systematic, flawed Healthcare system and monopolistic arbitrations system of Kaiser, JAMs ADR, OIA, and La Follette Johnson. As of 2024, Kaiser Permanente had **12.5 million health plan members**, 223,883 employees, 73,618 nurses and 24,605 physicians, 40 hospitals, and 614 medical offices. Kaiser Permanente earned over $100 Billion in revenue in 2023 per their 990 form filing and Kaiser is a 501(c)(3) tax exempt nonprofit organization, so

- iv -

they pay no taxes to the federal government. See *Appendix A*.

To make matters worse the Elected Officials who are supposed to not allow this abuse to happen to US citizens in these nine (9) States or nationally by faithfully executing the laws of their State and the US Constitution do not even follow the US Constitution as they swore to do before entering office or protect the health and safety of their States' citizens.

Therefore, this Court is petitioned to answer these questions that do not involve changing this Courts' Rules or changing Case precedent, but gives the Petitioners the right to try their Case at this Court through Mandamus as Chief Justice John Marshall did concerning William Marbury, so State Decisis is 100% in the favor of Petitioners, who stand powerfully on this bedrock of Supreme Court Jurisprudence.

## PARTIES TO THE PROCEEDING

Pamela Lynn, and Wilson Lynn, Jr. both as a Residents of California who are domiciled in Weaverville, CA, have suffered from all forms of Neglect and violations of the state and federal law at the hands of Kaiser, JAMs ADR, La Follete, OIA, County of Orange, State of California (suit permissible per Amendment 11, and Petitioners seek no money from any Government Organization or Elected Government Officials, but solely from the private organizational or individual Defendants), Gavin Newsom, Aetna, Southern District Court of Texas, Medicare, Articles 1 – 3 branches, Kamala Harris, Patty Murray, and Joe Biden. President Trump is a required Party and the other eight (8) US States (See Fed. R. Civ. P. 19(a)) who are parties due to them being indispensable as this Courts in granting this Mandamus has the power to nationally change the Healthcare system in the US. See Appendix A for the most exhaustive list of Defendants.

## CORPORATE DISCLOSURE STATEMENT

Corporate disclosure is not applicable.

## STATEMENT OF RELATED PROCEEDINGS

The following proceedings are directly related to the case in this Court within the meaning of Rule 14:

1. Private Arbitration between Petitioners v. Kaiser. The neutral arbitration organization is JAMs ADR and their part owner, Kirk H. Nakamura, presided over the arbitration. Outcome: Petitioners dismissed without prejudice the arbitration number 18022 on 04/02/2024 due to demanding in discovery and in hearings that Kaiser produce the signed arbitration agreement by the parties as required by California Health & Safety Code § 1599.81 ("Code"). Kaiser failed to produce the

signed arbitration agreement to make the legal proceeding binding. Due to this, Kaiser, JAMs ADR, OIA, and Kaiser's Counsel (La Follette Johnson, through Brian Meadows and Myra Firth) made up an arbitration agreement using irrelevant Parol evidence, objected to by Counsel of Records, with promises in violation of the Code circumvent the Code's requirement of a signed arbitration agreement by the Petitioners (*See 2ⁿᵈ Restatement of Contracts § 7, Comment a. "Void Contracts"* 2025). After dismissing without prejudice the arbitration, Petitioners' Counsel of Record demanded his reasonable attorneys fee of $230,364 from Kaiser multiple times over the period of January 3, 2025 through current and Kaiser has not paid them. If this Court would like to make an example of these Defendants for this egregious behavior, Counsel of Record for Petitioners is all ears in the hearing or in a writing. This lack of payment has caused extreme financial hardship to Counsel of Record who sought to use the fee to cover litigation costs and, even though not required by law or the Representation Agreement, compensate the Petitioners who have not recovered any monetary compensation from Kaiser.

2. While 1. was still pending, Petitioners filed seven (7) cases in the Superior Court of California, Orange to preserve Petitioners Statute of Limitations and claims. Outcome: These cases were all dismissed without prejudice in order to file Petitioners complaint at the Southern District of Texas due to the Defendants federal and constitutional law violations of Civil Conspiracy, Federal Arbitration Act, Sherman Antitrust Act, IRS Code 501(c) charitable purpose, Fourth, Fifth, and Fourteenth Amendments, which occurred because the Defendants would not formally dismiss without prejudice the arbitration even

- vii -

though this occurred by operation of the law or De Jure due to the Code not being adhered to and you cannot form an agreement based on promises that violate the Code or law. *2nd Restatement of Contracts § 7, Comment a. "Void Contracts"* 2025.

    a. To make matters worse, Defendants held Counsel of Record's past Co-Counsel, Michael Ritter, Esq., hostage via potentially actionable False Imprisonment because they would not let him be dismissed from the arbitration but instead tried to make him Petitioners counsel which the Petitioners vehemently denied verbally and in writing.

3. Federal District Court Outcome: Southern District of Texas Case 4:24-cv-00935 was dismissed without prejudice Sua Sponte by Federal Judge Charles Eskridge and Federal Magistrate Judge Christina Bryan despite being recused for partiality. This dismissal was granted due to the alternate forum of the US Supreme Court, which Federal Judge and Magistrate acknowledged in written opinion. Despite Petitioners moving to stay this proceeding to file an Article III, Section 2 original and exclusive action at this Court, the Federal Judge and Magistrate dismissed without prejudice Sua Sponte and denied the stay. This is why there is no pending legal proceeding in a lower state or federal court.

4. Current status of Petitioners action at this Court: This Courts' Chief Justice has authorized, through his administrators, the rejection of the Petitioners five (5) filings thus far, so the Petitioners proceeding at this Court is halted by an administrative block which is not allowing all eight (8) other Justices (Clarence Thomas, Samuel Alito, Neil Gorsuch,

- viii -

Elena Kagan, Brett Kavanaugh, Amy Barrett, Sonia Sotomayor, and Ketanji Jackson) to review Petitioners five (5) filings.

Despite the above, none of Petitioners Case merits have been decided due to the dismissals without prejudice, so this Courts' Original and Exclusive Jurisdiction is mandated because the above procedural history has so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of this Court's Supervisory Power. This Courts power of Judicial Review.

# TABLE OF CONTENTS

QUESTION PRESENTED ...........................................i

PARTIES TO THE PROCEEDING ......................... vi

CORPORATE DISCLOSURE STATEMENT........... vi

STATEMENT OF RELATED PROCEEDINGS ...... vi

TABLE OF CONTENTS............................................ x

TABLE OF AUTHORITIES ...................................xiii

PETITION FOR A WRIT OF MANDAMUS.............. 1

OPINIONS BELOW ................................................. 1

JURISDICTION........................................................ 1

RELEVANT    CONSTITUTIONAL    AND
STATUTORY PROVISIONS INVOLVED................ 2

ARGUMENT IN FAVOR OF THIS COURT
GRANTING PETITIONERS MANDAMUS ............. 4

EXAMINING THE FIVE FILINGS AND THE
FIVE CHIEF JUSTICE REJECTIONS VIA THE
COURT RULES AND COURT PRECEDENT .......... 5

COURT RULES ....................................................... 5

    1. Motion for Leave to File a Bill of
    Complaint ...................................................... 6

        a.    Rejection by Chief Justice, through
            his Clerk Scott Harris, dated
            November 8, 2024.................................. 6

    2. Motion for Joinder of Required Party
    Under FRCP 19 ............................................... 7

a.   Rejection by Chief Justice, through his Clerk, date is unknown since the rejection was communicated through Counsel of Records Electronic Filing Account at this Court ...................................................... 7

3.   Petition for an Extraordinary Writ ................ 7

a.   Rejection by Chief Justice, through his Clerk Scott Harris, dated December 20, 2024 ............................... 7

4.   Individual Application to Chief Justice Roberts for Review of Writ of Mandamus" Lynn v. Kaiser Foundation Hospitals ............. 9

a.   Rejection by Chief Justice, through his Clerk Scott Harris but written by Robert Meek, dated December 19, 2024 .................................................. 9

5.   DEFAULT Motion to File a Bill of Complaint ........................................................ 10

a.   Rejection by Chief Justice, through his Clerk, dated January 27, 2025, is same reasoning issued for filing 1 ................................................................ 10

COURT PRECEDENT .............................................. 11

*PETITIONERS' PETITION FOR THEIR DREAM OF DUE PROCESS AT THIS COURT* .... 12

REASONS FOR GRANTING THE PETITION ....... 13

COMPARISON OF 1803 SUPREME COURT AND 2024 SUPREME COURT TO ILLUSTRATE THE NEED TO GRANT THIS PETITION ................................................................ 15

CONCLUSION ......................................................... 18

## APPENDIX

APPENDIX A: Motion for Leave to File Complaint ..................................................... 1A

APPENDIX B: November 8, 2024 Clerk Letter ....................................................... 125B

APPENDIX C: Motion for Required Joinder of Parties ....................................................... 126C

APPENDIX D: Rejection of Motion for Required Joinder of Parties ................................................ 138D

APPENDIX E: Writ of Mandamus ....................... 139E

APPENDIX F:  December 20, 2024 Clerk Letter ....................................................... 149F

APPENDIX G:  Individual Application to Chief Justice John G. Roberts, Jr. for Review of Writ of Mandamus ........................................... 150G

APPENDIX H:  December 19, 2024 Clerk Letter ....................................................... 154H

APPENDIX I:  Motion for Leave to File Complaint .................................................. 155I

APPENDIX J:  January 27, 2025 Clerk Letter ....................................................... 288J

APPENDIX K: Pamela Lynn's Surgical Procedures ............................................................ 289K

APPENDIX L:  Lynns' Testimony Re: Kaiser ................................................................ 291I

## TABLE OF AUTHORITIES

### CASES

*Garfield v. United States,*
  211 U.S. 249 (1908)................................................. 13

*Hans v. Louisiana,*
  134 U.S. 1 (1890) ................................................ 6, 8

*Houston v. Ormes,*
  252 U.S. 469 (1920)................................................. 12

*Marbury v. Madison,*
  5 US 137 (1803) ..............................................passim

*Wilbur v. United States,*
  280 U.S. 306 (1930)................................................. 11

### STATUTES

28 U.S.C. §1251........................................................ 6, 7

28 U.S.C. §1651................................................... 1, 3, 9

28 U.S.C. §2241......................................................... 9

28 U.S.C. §2254......................................................... 9

Cal. Health & Safety Code § 1599.81............iii, vi, viii

### RULES

Fed. R. Civ. P. 13(g) ................................................ 1, 3

Fed. R. Civ. P. 19 ...................................................... 3

Fed. R. Civ. P. 19(a) .................................................. vi

Supreme Ct. R., Rule 1 ....................................... i, 5, 11

Supreme Ct. R., Rule 17 ....................................passim

Supreme Ct. R., Rule 2 ................................................. i

Supreme Ct. R., Rule 20 ............................... 13, 14, 18

Supreme Ct. R., Rule 22 .............................................. i

Supreme Ct. R., Rule 30 .............................................. i

Supreme Ct. R., Rule 4 ........................................ 6, 11

Supreme Ct. R., Rule 5 ............................................... i

## **CONSTITUTIONAL PROVISIONS**

Judiciary Act of 1789 ................................................. i

U.S. Const. am. 1 ..................................................... 5

U.S. Const. am. 10 ................................................... 5

U.S. Const. am. 11 .................................................. vi

U.S. Const. am. 12 ................................................... 5

U.S. Const. am. 13 ................................................... 5

U.S. Const. am. 19 ................................................... 5

U.S. Const. am. 24 ................................................... 5

U.S. Const. am. 25 ................................................... 5

U.S. Const. am. 4 .................................................... 5

U.S. Const. am. 5 .................................................... 5

U.S. Const. art. I ....................................................... i

U.S. Const. art. III § 2 ............................................. 18

U.S. Const. art. III, § 2 ......................................... 1, 5

U.S. Const. art. III, § 3 ............................................. 5

U.S. Const. art. III, § 5 ............................................... 5

## PETITION FOR A WRIT OF MANDAMUS

Comes now Petitioners Pamela Lynn and Wilson Lynn, Jr. ("Petitioners" or "the Lynns"), by and through their Counsel of Record, Steven Zamora, pursuant to the authority vested in him under the laws of the United States of America ("USA" or "US") as a duly admitted member of this Supreme Court ("Court") with a bar license number of 323046, and requires this Court under the US Constitution, Court Rule 20, Section 3, and this Court's binding legal precedent cited herein to compel, order, or injunct the Chief Justice of this Court, John G. Roberts, Jr. ("Chief Justice"), to file and docket with one (1) original case number the Petitioners' filings at this Court via this Writ of Mandamus ("Mandamus") (Altogether "Case"): 1) Appendix A - Motion for Leave to File a Bill of Complaint, including the Motion for Proceeding In Forma Pauperis, 2) Appendix C - Motion for Required Joinder of a Party, Donald J. Trump, 3) Appendix E - Writ of Mandamus concerning Scott Harris, 4) Appendix G - Individual Application to the Chief Justice, and 5) Appendix I - Re-filed Motion for Leave to File a Bill of Complaint (DEFAULT).

## OPINIONS BELOW

There are none since all former actions in private arbitration, state court, and federal court have been dismissed without prejudice. Furthermore, this Courts' administrative rejections has prevented an opinion to be issued.

## JURISDICTION

The jurisdiction of this Court is invoked under US Constitution Article III, Section 2, 28 U.S.C. §1651, *Marbury v.* Madison, 5 US 137 (1803)*, Federal Rules of Civil Procedure 13(g), and all other Court precedents cited herein.

1

## RELEVANT CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

"Article III, Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the Unites States, and Treaties made, or which shall be made, under their Authority; -- to all Cases affecting Ambassadors, other public Ministers and Counsels; --to all Cases of admiralty and maritime Jurisdiction; --to Controversies to which the Unites States shall be a Party; --***to Controversies between two or more States***; between Citizens of the same State claiming Lands under Grants of different States. In all Cases affecting Ambassadors, other public Ministers, and Consuls, and ***those in which a State shall be a party, the Supreme Court shall have original Jurisdiction***.

In all other Cases before mentioned the supreme Court shall have appellate Jurisdiction, both as to Law and Fact***, with such Exceptions,*** and under such Regulations as the Congress shall make."

Here, there is a State who is a party, which is California, so this Court has original jurisdiction.

Furthermore, the authority for reviewing this Mandamus is "in all other Cases before mentioned the supreme Court shall have appellate Jurisdiction, both as to Law and Fact***, with such Exceptions,*** and under such Regulations as the Congress shall make…" Petitioners argue that the 1803 Supreme Court who filed and docketed ***Marbury v. Madison***, which was a Writ of Mandamus as well, would have opined that "…with such Exceptions…" gave the Court authority to perform Judicial Review on the case if William Marbury had pled it, and Chief Justice John Marhsall renounced his right to plead when he took his seat on this Courts' bench. Nonetheless, the Court heard that Case to strike down as unconstitutional the original and exclusive

- 2 -

jurisdiction of this Court being granted through the Judiciary Act of 1789, which is an act by Congress.

Moreover, the Petitioners' Case has included two or more States in controversy since there is one being sued by the Petitioners, in compliance with Eleventh Amendment, and the eight (8) are indispensable (See *FRCP 19*) due to the national healthcare, hospital, arbitration, and insurance crisis this Case presents to this Court.

Under Federal Rules of Civil Procedure ("FRCP") 13(g): "A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant."

Here, Petitioners assert that the eight (8) other US States are indispensable and due to this, these States are able to crossclaim on the grant of this Petition so this inevitably creates a case or controversy between two (2) or more US States because they can crossclaim against California to avoid the liability of this Case altogether.

Under 28 U.S.C. §1651(a): "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Applied here, this Court is able to grant this Petition as a writ of mandamus.

Therefore, the relevant constitutional and statutory provisions above.

- 3 -

## ARGUMENT IN FAVOR OF THIS COURT
## GRANTING PETITIONERS MANDAMUS

**This Court has granted Mandamus for a High Officer, Secretary of State, before so it is able to grant Mandamus for another High Officer, Chief Justice, and Stare Decisis so requires it.**

In *Marbury v. Madison*, 5 US 137 (1803), this Court through Chief Justice John Marshall stated "[James Madison] as the agent of the President, he is not liable to a mandamus; **but** as a recorder of the laws of the US; as keeper of the great seal, as recorder of deeds of lands, of letters patent, **and of commissions...he is a ministerial officer of the people of the US. As such, he has duties assigned him by law in the execution of which he is independent of all control, but that of the laws. It is true he is a high officer, but is not above the law...As a ministerial officer he is compellable to do his duty, and if he refuses, is liable to indictment...many cases may be supported... - A mandamus gives no right, but only puts the party in a way to try his right - ...to deliver papers which concern the public."**

Applied to this Case, this Court granted mandamus to have the Secretary of State, James Madison, to perform his legal duty as a ministerial officer to deliver the commissions (i.e., papers which concern the public) regarding William Marbury who had been appointed Justice of the Peace in the District of Columbia by President John Adams, but his commission were not delivered. Here, Petitioners assert that the Chief Justice is the Presiding Officer and/or overall Administrator of this Court, including the management of the Courts' administrative staff. The Chief Justice, through his administrative staff, has failed to file and docket the Lynns five (5) Case filings, which are papers that concern the public. The Chief Justice is high officer, but is not above the law – Petitioners' First Amendment Right of Free Speech to

- 4 -

petition their grievances with this Government Branch -so, in these instances, the Chief Justice has failed to perform his ministerial duty. His actions and inactions are in opposition with *Marbury v. Madison* Stare Decisis by rejecting the Petitioners five (5) filings. Furthermore, the Chief Justice is a ministerial officer of this Court and he is compellable to do his duty, and if he refuses, he is subject to indictment. This is because he has blocked the Petitioners right to try their First Amendment Right of Free Speech, so he shall be ordered via this Mandamus to file and docket the Petitioners Case to comply with *Marbury v. Madison* Stare Decisis.

Therefore, the Chief Justice is compellable to do his duty and this Court shall grant Petitioners Mandamus because he has failed, through his administrative staff, to deliver Petitioners' papers (pleadings) to the Courts' Public Docket which concern the public, and these papers concerns are the abuse of Americans in nine (9) US States ("National Crisis"), including the detailed account of the Lynns suffering in California, from a systematic, flawed Kaiser healthcare system that injures Americans, without any accountability, and it is further perpetuated by those empowered Elected Officials who do no different or better than the Chief Justice, namely, to Respect the Rule of US Law. In Appendix A, which contains the Petitioners' Proposed Complaint, there are several US Constitutional challenges (i.e., Articles 1, 2, 3, and 5, and Amendments 1, 4, 5, 10, 12, 13, 19, 24, and 25) that require this Court to hear them and decide them to help free Americans from this cyclic abuse from Kaiser.

## EXAMINING THE FIVE FILINGS AND THE FIVE CHIEF JUSTICE REJECTIONS VIA THE COURT RULES AND COURT PRECEDENT

### COURT RULES

Rule 1 states: "The Clerk receives documents for filing with the Court and has authority to reject

- 5 -

any submitted filing that does not comply with these Rules."

Rule 17, 4. states: "The case will be placed on the docket when the motion for leave to file and the initial pleading are fled with the Clerk. The Rule 38(a) docket fee shall be paid at that time."

**1. Motion for Leave to File a Bill of Complaint.** *See Appendix A.*

**a. Rejection by Chief Justice, through his Clerk Scott Harris, dated November 8, 2024**. *See Appendix B.*

"Your motion seeking to invoke the original jurisdiction of this Court under Article III of the Constitution was received November 4, 2024 and is hereby returned for the following reason(s):

The original jurisdiction of this Court does not extend to a suit by an individual against a State. The original jurisdiction of this Court generally extends only to cases or controversies between two or more states or between the United States and one or more states. See 28 U.S.C. §1251 and Rule 17 of the Rules of this Court. The Eleventh Amendment amends the language of the Constitution and holds that the Judicial Power of the United States does not extend to any suit commenced or prosecuted against a state by a citizen of another state. The Supreme Court has subsequently held numerous times that states cannot be sued without their consent and that the Eleventh amendment bars suits brought against a state by citizens of that state. *Hans v. Louisiana*, 134 U.S. 1 (1890)."

Therefore, the Chief Justice, through his administrative staff, failed to cite any Court Rules for rejection of the Petitioner filing of their Case demonstrated that the rejection was not in compliance with Rule 1, so it without legal effect, and also, that he failed to docket the Case as required by Rule 17,

- 6 -

Section 4, which are papers that concern the public as a ministerial Court officer, since Petitioners complied with Rule 17 (i.e., rejections contains nothing to do with formatting, proof of service, booklet size, etc.).

**2. Motion for Joinder of Required Party Under FRCP 19.** *See Appendix C.*

    **a. Rejection by Chief Justice, through his Clerk, date is unknown since the rejection was communicated through Counsel of Records Electronic Filing Account at this Court.** *See Appendix D.*

Therefore, the Chief Justice, through his administrative staff, failed to cite any Court Rules for rejection of the Petitioner filing of their Case demonstrated that the rejection was not in compliance with Rule 1, so it without legal effect, and also, that he failed to docket the Case as required by Rule 17, Section 4, which are papers that concern the public as a ministerial Court officer, since Petitioners complied with Rule 17 (i.e., rejections contains nothing to do with formatting, proof of service, booklet size, etc.).

**3. Petition for an Extraordinary Writ of Mandamus.** *See Appendix E.*

    **a. Rejection by Chief Justice, through his Clerk Scott Harris, dated December 20, 2024.** *See Appendix F.*

"The original jurisdiction of this Court does not extend to a suit by an individual against a State. The original jurisdiction of this Court generally extends only to cases or controversies between two or more states or between the United States and one or more states. See 28 U.S.C. §1251 and Rule 17 of the Rules of this Court. The Eleventh Amendment amends the language of the Constitution and holds that the Judicial

- 7 -

Power of the United States does not extend to any suit commenced or prosecuted against a state by a citizen of another state. The Supreme Court has subsequently held numerous times that states cannot be sued without their consent and that the Eleventh amendment bars suits brought against a state by citizens of that state. *Hans v. Louisiana*, 134 U.S. 1 (1890).

(*Note: This is same reasoning stated for filing 1.*)

To the extent you wish to file a petition for an extraordinary writ of mandamus, you are informed the Rules of the Court make no provision for filing a petition for writ of mandamus directed to this Court. The petition for a writ of mandamus must be in compliance with Rule 20 and all other applicable Rules.

Your check in the amount of $300.00 is returned here within."

Therefore, the Chief Justice, through his administrative staff, failed to cite any Court Rules for rejection of the Petitioner filing of their Case demonstrated that the rejection was not in compliance with Rule 1, so it without legal effect, and also, that he failed to docket the Case as required by Rule 17, Section 4, which are papers that concern the public as a ministerial Court officer, since Petitioners complied with Rule 17 (i.e., rejections contains nothing to do with formatting, proof of service, booklet size, etc.).
In addition, the Chief Justice's rejection is one of legal reasoning because it relies on statutory law and case precedent, which are outside the Court Rules. This same occurrence happened in all the rejection, save 4. below.

- 8 -

4. **"Individual Application to Chief Justice Roberts for Review of Writ of Mandamus"** <u>Lynn v. Kaiser Foundation Hospitals</u> (i.e., this is the first time this Court acknowledged Petitioners Case in their correspondence). ***See Appendix G.***

    a. **Rejection by Chief Justice, written by Clerk Robert Meek, dated December 19, 2024. *See Appendix H*.**

"The Rules of this Court make no provision for the filing of a petition for a writ of certiorari or extraordinary writ of mandamus addressed to an individual Justice. The Rules distinguish between applications to individual Justices and petitions to the Court. The sole mechanism established by the Rule by which to seek issuance of a writ authorized by 28 U.S.C. §1651(a), §2241, or §2254(a), is Rule 10 or Rule 20, and such petitions are reviewed by the full Court, not by an individual Justice.

A petition for an extraordinary writ of mandamus may not be filed asking this Court to Direct itself to change its own decision in a prior case or change the Rules of Court."

    Petitioners assert that Robert Meek's explanation of the rejection is according to the Court Rules and specifically applies the Court Rules to the filing as an Administrator, which is extremely helpful to the Petitioners. It is not a legal reasoning.

///

///

///

///

///

- 9 -

5. **"DEFAULT Motion to File a Bill of Complaint."** *See Appendix I.*

    a. **Rejection by Chief Justice, through his Clerk Scott Harris, dated January 27, 2025, is same reasoning issued for filing 1.** *See Appendix J.*

Therefore, the Chief Justice, through his administrative staff, failed to cite any Court Rules for rejection of the Petitioner filing of their Case demonstrated that the rejection was not in compliance with Rule 1, so it without legal effect, and also, that he failed to docket the Case as required by Rule 17, Section 4, which are papers that concern the public as a ministerial Court officer, since Petitioners complied with Rule 17 (i.e., rejections contains nothing to do with formatting, proof of service, booklet size, etc.).

Moreover, under Rule 17, the Respondents are allowed sixty (60) days to respond or accept the Petitioners' motion and this is regardless of the Court issuing a docket number for the Case's motion since service of the motion, and proof of service, occurs at the same time or within three (3) days of the original paper and electronic filed motion per Rule 17. In other words, Petitioner do not know the docket number when filing and serving a motion under Rule 17, so the lack of a docket number for Petitioners' Case is no excuse for the Respondents to fail to respond. Here, all Defendants failed to respond to Petitioners' motion under Rule 17, so Petitioners have taken them in DEFAULT in filing 5., which means that the Defendants can no longer respond to Appendix A or Appendix I to challenge this Courts justiciability of the motion or even the contents of the motion.

///

///

///

- 10 -

## COURT PRECEDENT

**Chief Justice, through Scott Harris as Clerk of this Court, is an official that Performs Ministerial Duties and is subject to mandatory writ of injunction via this Mandamus.**

This Court has established that when an official duty is plainly defined by statute and requires no exercise of discretion, a court can compel performance through mandamus or injunctive relief. For instance, in *Wilbur v. United States*, 280 U.S. 306 (1930), this Court held that if a statute directs an official to perform an act without discretion, the duty is ministerial, and the court can compel its performance. *Id*.

Applied to this Mandamus, Court Rule 1 is the statute and it does not give the Chief Justice, through his administrators, discretion to reject the Petitioners' Case outside the Court Rules. As stated, and demonstrated above, Scott Harris rejected the Petitioners' Case without citing this Court's Rules, so this Court can compel Chief Justice's performance, which is filing and docketing the Petitioners Case as required by Rule 17, Section 4. This would allow the Case to be on the Court's Public Docket, which would make it a public record, and it also gives this Courts' other eight (8) Justices the opportunity via Due Process to either grant or deny Petitioners' Case. Chief Justice, through Scott Harris's rejection(s), is blocking Due Process to occur and taking away the Justices bench and gavel from them by supplanting this Court when he chooses to reject cases like the Petitioners when not relying on his authority founded in Rule 1 or when he fails to comply with Rule 17, Section 4.

In the Book of Genesis, Jacob or Jakob demonstrated this type of behavior with his brother, Esau, and his named actually meant "supplanter" or "heel catcher." Certainly, Chief Justice, through his administrative staff, has supplanted this Court via his

- 11 -

actions and inactions, and also, has unfairly caught the heel of Petitioners' plight for Justice via his rejections of their Case filings.

Therefore, per this Court's precedence, Petitioners require this Court to grant this petition and compel, order, or injunct the Chief Justice, through his administrative staff, to file and docket the Petitioners' Case, inclusive of this Mandamus.

**Chief Justice, through Scott Harris, is an official that performs Ministerial Duties and is subject to mandatory writ of injunction via this Mandamus.**

In *Houston v. Ormes*, 252 U.S. 469 (1920), the Court recognized that when officials have a ministerial duty to perform, a mandatory writ of injunction can be issued to compel performance, especially when the complainant has a particular interest in the matter.

Applied to this Mandamus, the Chief Justice, including his administrative staff, is a Court official who has a ministerial duty to perform, which is filing and docketing cases that are properly filed per this Courts' Rules, and this includes Petitioners' Case. Through this Mandamus, Petitioners require this Court to compel, order, or injunct his performance of filing and docketing the Case, especially since the complainants (Petitioners) have a vested interest in their Case being filed, docketed, their Petition granted, heard, argued, and decided at this Court in Petitioners' favor De Jure and Ipso Facto.

### _PETITIONERS' PETITION FOR THEIR DREAM OF DUE PROCESS AT THIS COURT_.

Therefore, per this Court's precedence, Petitioners require this Court grant this petition and compel, order, or injunct the Chief Justice, through administrative staff, to file and docket the Petitioners' Case.

**Chief Justice, through Scott Harris, acted Ultra Vires in rejecting Petitioners' Case and not docketing it.**

In *Garfield v. United States*, 211 U.S. 249 (1908) this Court affirmed that an official who acts beyond their authority (ultra vires) can be subject to an injunction, just as they would be to a mandamus if they refused to perform a required act.

Applied to this Mandamus, the Chief Justice, through Scott Harris, acted beyond his official authority (ultra vires) because he did not cite any Court Rule for the rejections of Petitioners' Case when Rule 1 requires him to do so, so he is subject to injunction. He is also subject to this Mandamus if he refuses to perform a required act. The Chief Justice, through Scott Harris, is subject to injunction (or order) and mandamus for failure to file and docket the Petitioners' Case even though they complied with this Courts' Rules in their filing.

## REASONS FOR GRANTING THE PETITION

**Petitioners' Right to Issuance of a Writ is Clear because they Comply with Rule 20.** Rule 20 states: "A petition seeking … a writ of mandamus … shall state the name and office or function of every person against whom relief is sought and shall set out with particularity why the relief sought is not available in any other court. A copy of the judgment with respect to which the writ is sought, including any related opinion, shall be appended to the petition together with any other document essential to understanding the petition."

Applied to this Mandamus, Petitioners are seeking this Court to compel, order, or injunct the Chief Justice, including his administrative staff, to file and docket their Case. The Chief Justice's office or duty is being the Chief Justice of this Court, and his office is at this Court. The Chief Justice is the one that the Petitioners are seeking relief from because what

- 13 -

his staff does, he responsible for since he is their boss. This is called the Chain of Command. The relief being sought is for the Chief Justice to simply to do his job and allow his administrative staff to file and docket the Petitioners Case because Petitioners have complied with all this Court's Rules pertaining to filing their Case, including Rule 17.

Thus far, the Chief Justices' rejection of Petitioners' Case was not for formatting, booklet size or weight, service of process, number of copies, or for any other Court Rules, so these Court Rules, and not limited to, are deemed to have been accepted *De Jure* by him.

Moreover, Petitioners filed a Motion to Proceed in Forma Pauperis without paying the Case filing costs due to their demonstrated financial hardship. However, to not delay the filing and docketing of this Case, the Petitioners' obeyed this Court's Electronic Filing instruction to go ahead and pay $300 via check to this Court's Clerk, which they did send via US Mail and their Counsel of Record sent via email to the Clerk Scott Harris pictures of this check and it being mailed USPO. Petitioners' Counsel of Record did this because Scott Harris sent his first rejection of the Case filing via email, so Petitioners sought to meet him where he was at – electronic mail. This check was rejected and returned in the mail to Petitioners Counsel of Record on January 20, 2025.

Only this Court can grant this Mandamus and compel, order, or injunct the Chief Justice to file and docket the Petitioners' Case. No other tribunal, arbitrator, or lower federal or state court can compel, order, or injunct the Chief Justice of this Court to perform an act that the Chief Justice refuses to do even though he is legally required to do under Court Rules 1 and 17, Section 4.

Therefore, Petitioners have complied with this Courts' Rule 20, so this Court can grant this Mandamus.

- 14 -

## COMPARISON OF 1803 SUPREME COURT AND 2024 SUPREME COURT TO ILLUSTRATE THE NEED TO GRANT THIS PETITION

The Dramatization below of the 1803 Supreme Court with Chief Justice John Marshall compared to the 2024 Supreme Court with Chief Justice John G. Roberts, Jr.:

| Filings | Jurisdiction | Marbury v. Madison | Petitioners Case |
|---|---|---|---|
| Motion for Leave to File a Bill of Complaint | Article III, Section 2 as an Original Acton | Allowed (if pled by Marbury), and Judiciary Act of 1789 as a means of filing directly at this Court was declared unconstitutional to proclaim the Courts power of Judicial Review | Rejected, and this Court did not use it power to declare a Court Rule, prior Court Precedent, Statute, and Elected Official title or inaction unconstitutional as argued by Petitioner. |
| Motion to Join Required Party | FRCP 19 | Not applicable because not tried. | Rejected, unknown reason. |
| **This Writ of Mandamus** Compelling Deliverance of | Article III, Section 2 as an Original Acton | Granted, as the Chief Justice John Marshall stated that any high officer operating in | Rejected, there is no provision in the Court Rules to file a mandamus |

- 15 -

| Filings | Jurisdiction | Marbury v. Madison | Petitioners Case |
|---------|--------------|---------------------|-------------------|
| Papers that Concern the Public | | a ministerial capacity shall do his job because no one is above the law. Marshall is saying this when he is writing an opinion on the Judiciary Act of 1789 which made him the Presiding Officer of the Court. In other words, even he is subject to Mandamus for the ministerial side of his job and so is Roberts. | directed at this Court. |
| Individual Application to Chief Justice | Judiciary Act of 1789, Court Rule 20 | Not applicable | Rejected correctly, per Robert Meek, the right pathway for writ of certiorari or mandamus is through |

- 16 -

| Filings | Jurisdiction | Marbury v. Madison | Petitioners Case |
|---------|--------------|--------------------|--------------------|
|         |              |                    | Rule 10 or Rule 20, and the Court did not state that the Rules do not allow for a mandamus to be directed at this Court. |

Based on the above dramatization, if the Petitioners filed their Case with the 1803 Chief Justice John Marshall court, it would have been granted, but as demonstrated above at this Court, their Case has been rejected.

Based on the above dramatization, if William Marbury filed his Case against James Madison with the 2024 Chief Justice Roberts court, his administrative staff would have rejected it stating: "To the extent you wish to file a petition for an extraordinary writ of mandamus, you are informed the Rules of the Court make no provision for filing a petition for writ of mandamus directed to this Court. The petition for a writ of mandamus must be in compliance with Rule 20 and all other applicable Rules."

The reason for this is because the Chief Justice, through his administrative staff, is not following this Court's bedrock, landmark Court Precedent of Judicial Review founded in *Marbury v. Madison* due to Rule 20's language not allowing for a writ of mandamus directed at this Court, and in applying this same reasoning, Rule 20's language does not allow for directing a mandamus at the Secretary of State, but Chief Justice John Marshall did. As a result, this Court, through the Chief Justices and his administrative staff, has elevated the Court Rules

- 17 -

above the US Constitution Article III, Section 2's plain language and Stare Decisis through its four (4) rejections of Petitioners' Case. This is unconstitutional behavior demonstrated by the Chief Justice (Court Rule 20 not adhering to Article III, Section 2, and Stare Decisis of **Marbury v. Madison**.

**As a result, this Mandamus is warranted given the urgent circumstances of this Case because without this Court compelling, ordering, or injuncting the Chief Justice to file and docket the Petitioners' Case their First Amendment Right of Free Speech will be denied without Due Process. Due to this, no other adequate means to obtain relief exist for Pamela Lynn and Wilson Lynn, Jr.**

## CONCLUSION

Therefore, this Court shall use its sound, legal discretion, not an arbitrary will, to compel, injunct, or order the Chief Justice, through his administrative staff, to file and docket this Case, because the Petitioners have made a proper case, as demonstrated above, so this Court cannot refuse Justice to no man or these Petitioners. The Petitioners, once again, exhort this Court to grant their Petition by Being Supreme!

Respectfully submitted,

**Before Abraham was, I AM**

*Steven Zamora*

Steven Zamora, Esq.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioner

- 18 -

# APPENDIX

No. _____

_____

## IN THE SUPREME COURT OF
## THE UNITED STATES

_____

Pamela Lynn and Wilson Lynn, Jr.,

Petitioners

vs.

Kaiser Foundation Hospitals, Inc., et. al.,

Respondents

_____

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2
OF THE UNITED STATES CONSTITUTION**

_____

**MOTION FOR LEAVE TO FILE COMPLAINT**

_____

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

1A

## <u>TABLE OF CONTENTS</u>

Page No.

TABLE OF AUTHORITIES CITED ......................... 7

BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE COMPLAINT ............................................ 12

RELIEF SOUGHT ..................................................... 13

GROUNDS FOR RELIEF ........................................ 13

    Jurisdiction ......................................................... 13

        A.    The Complaint is against the following defendants ....................................... 13

        B.    This is an action by the Petitioners against Kaiser Foundation Hospitals, Inc. et. al. These Defendants are the citizens of the States and countries described above and, therefore, this Court has jurisdiction of the disputed under Article III, Section 2 of the US Constitution ................................... 18

        C.    The main reasons for this Court's Jurisdiction over this Proposed Complaint are as follows and are expounded on in the Purpose of the Proposed Action section ........ 18

    Purpose of the Proposed Action .......................... 19

        I.    The Judicial Power of the US is vested solely in the Supreme Court, so the Lynns seek redress of their grievances under the First Amendment with this Court ............................................................ 19

        II.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's Original

- 1 -

**2A**

Jurisdiction over their Motion for Leave and Proposed Complaint because the State of California is a party .................................... 20

III.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's Original Jurisdiction over their Motion for Leave and Proposed Complaint because eight (8) US States (California, Colorado, District of Columbia, Georgia, Hawaii, Oregon, Maryland, Virginia) are parties in this action due to the Lynns also being US Citizens and because these US States allow for Defendants Kaiser, Kaiser's Legal Representation, Kaiser's Office of Independent Administrator, and JAMs ADR to operate there just like the State of California allows them to operate in their State ............................................................ 22

IV.    This Court has original and exclusive Jurisdiction over a case where two or more States have a case or controversy between each other, so it has this Jurisdiction over this Motion for Leave and Proposed Complaint because there is a case or controversy between eight (8) US States ("States") via the use of crossclaims. ............. 23

V.    This Court is requested to grant this Motion – as a matter of procedural due process under the Fifth and Fourteenth Amendments - in order to allow the Proposed Complaint to be filed, which will enable the States assert their crossclaims, which only become actionable procedurally, when these US States are required to respond or answer to a filed Complaint at this Court ........................................................ 25

VI.    When applied to the Lynns action, this Court's Rule 17 is in conflict with the

- 2 -

3A

US Constitution requirement of hearing an original and exclusive action when there are two or more States in controversy because the initial Motion to Leave does not allow the US Constitution to come alive and be performed by the States actually demonstrating their controversy via crossclaims against each other, and this Rule 17 is conflicting with the US Constitution, so it requires judicial review by this Court, and by De Jure, this Motion for Leave shall be granted .............................. 26

VII.   This Court's Right for Judicial Review is inherent in the US Constitution via the precedent of Marbury v. Madison, but it is also explicit in the US Constitution text: "…with such Exceptions" ...................... 28

VIII.   Supreme Court Rule 17 abridges and modifies the Lynns' substantive right under the First Amendment of the US Constitution...................................................... 28

IX.   The same effect of the Supreme Court Rule 17 demonstrated above occurs in the application of Supreme Court Rule 5 to the Lynns' substantive rights under the First, Fifth, and Fourteenth Amendments, which requires judicial review ....................... 29

X.   There is nothing to appeal since all the Lynns Complaints have been dismissed without prejudice, so this court is requested to exercise Jurisdiction over their claims as it is "…with such Exception." ........................ 31

XI.   In order for the Defendants responsible for the Lynns injuries to be held accountable, this Court needs to exercise Jurisdiction over the Proposed Complaint to determine the nature and amount of injuries that the Lynns have sustained

- 3 -

**4A**

during and after the events of private arbitration, state court, and federal court because the Lynns are eggshell plaintiff with injuries still accruing............................. 32

XII. Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries comes from the Neglect of President Biden (his mental capabilities have been diminished while in office) to manage and faithfully execute the Medicare act under the Social Security Act as required by Article 2 through his Cabinet (Department of Health and Human Services), to ensure that medically necessary surgical procedures shall not be denied to US Citizen seniors like Pamela Lynn who life depends on having the treatment and have a history of obtaining that care (the Lynns had these procedures approved by private healthcare and also, per the State of California Department of Insurance)......................................................... 34

XIII. Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries comes from the Neglect of Vice President Harris and Senate Pro Tempore Murray under Amendment 25 to bring a writing to the Senate that President Biden's mental capabilities have been diminished to prevent this type of Neglect of Medicare denials for medically necessary procedures from occurring to US Citizens like Pamela Lynn .......................................... 35

XIV. Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries come from the Neglect of US President Biden, Vice President Harris, and Senate Pro Tempore Murray for not overseeing the relevant State Governors and Mayor who allowed Kaiser to operate,

- 4 -

**5A**

which did not protect the health and safety of those US Citizens .......................................... 35

XV.    Since this Court has Original and Exclusive Jurisdiction over this matter, then the Lynns ask this Court to use its Power to injunct or estop the Defendant Biden from violating the US Constitution under Article 2 by having Defendant Kamala Harris as Vice President without Amendment to Article 2 of the US Constitution as required by Article 5 to allow for a biological female to be Vice President .......................................................... 36

XVI.   The Lynns ask this Supreme Court to use its Power to injunct or estop the Defendant Kamala Harris' run for US President as her campaign, and even if successful, violates the Article 2, Section 1 which requires a biological male or a "He" to be a US President ...................................... 38

XVII. The Lynns ask this Supreme Court to use its Power to declare judgment that in order for this Article II requirement to allow for a biological female or ...................... 39

XVIII.The Lynns ask this Supreme Court to use it Power to declare judgment that in order for this Article 2, Section 1 requirement to be upheld that Kamala Harris shall be removed from her unconstitutionally acquired position of Vice President since the US Constitution has not been amended under Article V to allow for this and that this Supreme Court shall declare judgment that the Speaker of the House, Mike Johnson, is the Vice President due to Amendment 25 ................................... 40

XIX.   The Lynns ask this Supreme Court to use its Power to declare judgment that

the Governors and Mayor and House of Representatives and Senators violated the US Constitution by allowing for their 2020 States Electors casting their States' electoral college votes for Vice President Harris in violation of the US Constitution Article II that requires the US President to be a "He" or a biological male since the Vice President has the capability of succeeding the President under Article 2 ........................ 40

XXI. Due to reasons stated above, the Lynns as US Citizens ask this Court to injunct the State Electors from 2020 from participating in the 2024 Presidential election............................................................. 40

XXI. The Lynns as US Citizens assert that Defendant Harris nomination and approval of her run for US President in 2024 by the Democratic Party and Elected Officials violates Amendment 24 because the rights of US Citizens to vote in primary elections for US President was denied or abridged by the US and its States ..................................... 41

Direct Precedents Invoking Original Jurisdiction of This Court ................................... 41

Need for the Aid of This Court............................ 49

CONCLUSION....................................................... 50

CERTIFICATE OF WORD COUNT ....................... 51

APPENDIX: PROPOSED COMPLAINT ................. 52

- 6 -

**7A**

## <u>TABLE OF AUTHORITIES CITED</u>

Page No.

### <u>CASES</u>

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016)................................................ 27

*Cherokee Nation v. Georgia*,
   30 U.S. 1 (1831) ..................................................... 20

*Delaware v. Pennsylvania and Wisconsin*,
   143 U.S. 555 (2022)................................................ 49

*Georgia v. Pennsylvania R.R.*,
   324 U.S. 439 (1945)................................................ 44

*Glossip v. Gross*,
   576 U.S. 863 (2015)................................................ 48

Kansas v. Nebraska,
   574 U.S. 445 (2015)........................................ 25, 47

*Mackey v. United States*,
   401 U.S. 667 (1971)................................................ 27

Marbury v. Madison,
   5 U.S. 137 (1803) ..........27, 28, 32, 35, 36, 38, 42, 50

Maryland v. Louisiana,
   451 U.S. 725 (1981)................................................ 23

*Massachusetts v. Missouri*,
   308 U.S. 1 (1939) ................................................... 20

Mississippi v. Louisiana,
   506 U.S. 73 (1992) ................................................. 23

*Moore v. Harper*,
   600 U.S. 1 (2023) ................................................... 27

- 7 -

**8A**

*Ohio v. Wyandotte Chemicals Corp.,*
   401 U.S. 493 (1971).................................................. 43

Paramount Aviation Corp. v. Agusta,
   178 F.3d 132 (3d Cir. 1999) .................................. 24

*Pennsylvania v. New Jersey,*
   426 U.S. 660 (1976)................................................ 46

United States v. Confederate Acres Sanitary Sewage
   & Drainage Sys., Inc.,
   935 F.2d 796 (6th Cir. 1991) ................................ 24

*United States v. West Virginia,*
   295 U.S. 463 (1935)................................................ 42

Vosburg v. Putney,
   86 Wis. 278 (1893) ................................................ 32

*Wash.  v. GM Corp.,*
   406 U.S. 109 (1972)................................................ 45

*Wellness Int'l Network, Ltd.  v. Sharif,*
   575 U.S. 665 (2015)................................................ 47

Wyoming v. Oklahoma,
   502 U.S. 437 (1992)................................................ 23

## **STATUTES**

1 U.S.C § 1................................................................. 38

28 U. S. C. § 1251...................................................... 26

28 U.S.C. § 1251........................................................ 23

28 U.S.C. § 2072........................................................ 28

## **RULES**

Fed. R. Civ. P. 13(g) ................................................. 24

Fed. R. Civ. P. 4 ....................................................... 21

Supreme Court Rules, Rule 17 ........................... 26, 27

Supreme Court Rules, Rule 5 ............................ 29, 31

## **CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III, § 1 ............................................. 19

U.S. Const. art. III, § 2 ................................. 20, 23, 28

Comes now Petitioners Pamela Lynn and Wilson Lynn, Jr. ("Petitioners" or "the Lynns"), by and through their Counsel of Record, Steven Zamora, pursuant to authority vested in him under the laws of the United States of America ("USA" or "US"), and moves the Court for leave to file the accompanying Complaint.

In support of its Motion, the Lynns assert that their claims arise from Kaiser Permanente's healthcare system, which is the **(A)** practice of corporate negligence (putting business or money before medicine or patient care), which uses artificial intelligence software, that results **(B)** in tortious injuries to US Citizens in eight (8) US States, including the Lynns', who are residents of California, then when injured these US Citizens **(C)** seek remedies through Kaiser's private arbitration system that is a **(D)** monopoly because it violates Federal law and the US Constitution through the Sherman Act, Federal Arbitration Act, and/or Federal Civil Conspiracy – inter alia - by limiting patients recovery for their injuries in Arbitration through the use of and control of Kaiser's Legal Representation, Kaiser's Office of Independent Administrator, and Arbitrators, JAMS ADR, and these US Citizens' and the Lynns' claims are so serious and dignified, as demonstrated through the Lynns experiences in these recent years, and there is no alternative forum in which adequate relief may be granted then by coming now to this Supreme Court ("Court"): **E)** In living with catastrophic and chronic injuries, the Lynns, and other US Citizens, face being denied medically necessary treatment by private healthcare providers from the treatment of their injured medical state, and then when they are elders, they are denied further by Medicare in a similar practice of corporate negligence because of the US President who is legally required to manage this cabinet of the Executive Branch, including and not limited to his legal duties under the US Constitution that he swore to uphold January 2020 and all prior years as Vice President and Senator of the US - but does not due his diminished capacity

- 10 -

**11A**

and/or failure to oversee hired Administrators as confirmed by the US Senate or Elected Officials in neglect, and **F)** the Vice President and Senate Pro Tempore for failure to intervene as required by the US Constitution in Article 2 and as amended (Altogether **E)** and **F)** amounting to these Elected Officials' "Neglect", "Gross Negligence", "Intentional Misconduct", and/or "Omission to Act" of their legal duties as required by the supreme law of the land, the US Constitution, for their greed of power and money as warned about by Alexander Hamilton in the Federalist Papers and Thomas Jefferson in the Declaration of Independence), and **G)** the Governors, Mayor, and Supervisors Neglect of the health and safety of its residents and failure to uphold the US Constitution as they swore to do as Elected Officials, and **H)** for this Court to provide any and all type of relief to the Lynns and US Citizens to deter and prevent the Defendants from harming them furthermore and to uphold the US Constitution, and **I)** so without this Motion and Proposed Complaint the Lynns and US Citizens injured as above perpetuates in America and face terrible adversity to even file this case, to the point of making one of the Lynns' cause of action run the Statute of Limitations against Defendant Aetna. For the reasons more fully stated in the accompanying Brief in Support, the Motion of the Lynns for Leave to File their Complaint should be granted by this Court.

Respectfully submitted,

Dated:  November 1, 2024

**Before Abraham was, I AM**

*Steven Zamora*

Steven Zamora, Esq.
9450 Pinecroft Dr. Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioners

- 11 -

No. _____

_____

**IN THE SUPREME COURT OF
THE UNITED STATES**
_____

**Pamela Lynn and Wilson Lynn, Jr.,**

**Petitioners**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Respondents**
_____

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2
OF THE UNITED STATES CONSTITUTION**
_____


**BRIEF IN SUPPORT OF MOTION FOR LEAVE
TO FILE COMPLAINT**

_____


**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**


- 12 -

**13A**

## RELIEF SOUGHT

Petitioners move this Court to grant them leave to file the Complaint attached to this motion in the Appendix.

## GROUNDS FOR RELIEF

### Jurisdiction

A.    The Complaint is against the following defendants:

1.    Kaiser Foundation Hospitals, Inc., a nonprofit corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

2.    Kaiser Foundation Health Plan, Inc., a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

3.    Southern California Permanente Medical Group, Inc., a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections (Altogether 1 through 3, "Kaiser"); and

4.    Greg Adams, CEO of all Kaiser legal entities named, who resides in the State of California and, therefore, a citizen of the State of California; and

13

**14A**

5.     Janet Liang, COO of all Kaiser legal entities named, who resides in the State of California and, therefore, a citizen of the State of California; and

6.     Dr. Andrew Bindman, CMO of all Kaiser legal entities named, who resides in the State of California and, therefore, a citizen of the State of California; and

7.     Dr. Kelvin Nyugen, who resides in the State of California and, therefore, a citizen of the State of California; and

8.     Dr. Marc Davison, who resides in the State of California and, therefore, a citizen of the State of California; and

9.     Dr. Julio Vaquerano, who resides in the State of California and, therefore, a citizen of the State of California; and

10.     Dr. Gavin Jonas, who resides in the State of California and, therefore, a citizen of the State of California; and

11.     Dr. Andrew Giap, who resides in the State of California and, therefore, a citizen of the State of California; and

12.     Dr. Lucio Loza, who resides in the State of California and, therefore, a citizen of the State of California; and

13.     Dr. Roberto Limgenco Barreto, who resides in the State of California and, therefore, a citizen of the State of California; and

14.     Dr. Albert Sung-Unjin, who resides in the State of California and, therefore, a citizen of the State of California; and

15.     Dr. Xaviour James Walker who resides in the State of California and, therefore, a citizen of the State of California; and

- 14 -

**15A**

16.     Dr. Srilakshmi Moturu who resides in the State of California and, therefore, a citizen of the State of California; and

17.     Office of Independent Administrator, a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

18.     JAMS ADR, a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

19.     Kirk H. Nakamura who resides in the State of California and, therefore, a citizen of the State of California; and

20.     Mirra Jhang who resides in the State of California and, therefore, a citizen of the State of California; and

21.     La Follette, Johnson, Dehaas, Fesler & Ames, a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

22.     Brian Meadows, who resides in the State of California and, therefore, a citizen of the State of California; and

- 15 -

**16A**

23.    Myra Firth, who resides in the State of California and, therefore, a citizen of the State of California; and

24.    Mitzi Thomas, who resides in the State of California and, therefore, a citizen of the State of California; and

25.    Aetna Life Insurance Company, who is headquartered in the State of Connecticut, but operates in the State of California, and, therefore, a corporate citizen of the State of Connecticut and foreign business in the State of California.

26.    County of Orange; and

27.    Don Wagner, Chief Board of Supervisors, who resides in the State of California and, therefore, a citizen of the State of California; and

28.    State of California; and

29.    Gavin Newsom, Governor of California, who resides in the State of California and, therefore, a citizen of the State of California; and

30.    District of Columbia; and

31.    Muriel Bowser, Mayor of District of Columbia, who resides in the District of Columbia and, therefore, a citizen of the District of Columbia; and

32.    State of Colorado; and

33.    Jared Polis, Governor of Colorado, who resides in the State of Colorado and, therefore, a citizen of the State of Colorado; and

34.    State of Georgia; and

35.    Brian Kemp, Governor of Georgia, who resides in the State of Georgia and, therefore, a citizen of the State of Georgia; and

- 16 -

**17A**

36.    State of Hawaii; and

37.    Josh Green, Governor of Hawaii, who resides in the State of Hawaii and, therefore, a citizen of the State of Hawaii; and

38.    State of Maryland; and

39.    Wes Moore, Governor of Maryland, who resides in the State of Maryland and, therefore, a citizen of the State of Maryland; and

40.    State of Oregon; and

41.    Christine Kotek, Governor of Oregon, who resides in the State of Oregon and, therefore, a citizen of the State of Oregon; and

42.    State of Virginia; and

43.    Glenn Youngkin, Governor of Virginia, who resides in the State of Virginia and, therefore, a citizen of the State of Virginia; and

44.    State of Washington; and

45.    Jay Inslee, Governor of Washington, who resides in the State of Washington and, therefore, a citizen of the State of Washington; and

46.    Supreme Court of the United States; and

47.    Kamala Harris, Vice President of the United States and President of the Senate; and

48.    Patty Murray, Senate Pro Tempore; and

49.    Library of Congress; and

50.     Executive Branch of the United States; and

51.    Joe Biden, President of the United States; and

- 17 -

**18A**

B. This is an action by the Petitioners against Kaiser Foundation Hospitals, Inc. et. al. These Defendants are the citizens of the States and countries described above and, therefore, this Court has jurisdiction of the disputed under Article III, Section 2 of the US Constitution.

C. The main reasons for this Court's Jurisdiction over this Proposed Complaint are as follows and are expounded on in the Purpose of the Proposed Action section:

    a. The State of California is a Party triggering original Jurisdiction;

    b. Seven (7) other US are Parties triggering original Jurisdiction;

    c. These eight (8) US States are Parties who are in a case or controversy due to their right to crossclaim under FCRP 13;

    d. This Court has the supreme power to perform judicial review and provide relief through legal and equitable remedies of Congressional Acts and Supreme Court Rules enacted after the US Constitution, which are unconstitutional, as per Article III, Section 2 language stating "…with such Exception…" and under this Court's holding under *Marbury v. Madison*;

    e. This Court has the supreme power to perform judicial review and provide relief through legal and equitable remedies for the Neglect of County, State, and Federal Elected Officials whose actions or inactions conflict with and/or violate their sworn to duties under the US Constitution, which injuries the US and its Citizens, including the Lynns substantive rights, as per Article III, Section 2 language stating "…with such Exception…" and under this Court's holding under *Marbury v. Madison*; and

- 18 -

**19A**

f. The Lynns are eggshell plaintiffs, so all injuries that occurred to the Lynns herein have to be heard by this Court to hold the private and public tortfeasors accountable by adjudication, and if found liable, to access the true number of damages owed by the original private Defendant tortfeasors who caused the Lynns (and other US Citizens) past, present, and future injuries and also, to deter this tortious behavior from occurring in the future by the private and governmental Defendants through legal and equitable relief.

### Purpose of the Proposed Action

**I.** **The Judicial Power of the US is vested solely in the Supreme Court, so the Lynns seek redress of their grievances under the First Amendment with this Court.**

"Article III, Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

Applied to this Motion, the Lynns are requesting that this one supreme Court exercise its Judicial Power under the US Constitution over the Lynns' Motion for Leave arguments and their Proposed Complaint.

Moreover, the First Amendment to the US Constitution states that Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances.

Therefore, the Lynns move (petition) this Court (Government) to exercise its judicial Power (for the redress of their grievances, which are the Motion for Leave arguments and their Proposed Complaint) in order for them to exercise their substantiative right under the First Amendment to the US Constitution

- 19 -

**20A**

and for the US Constitution to be performed by this Court.

**II.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's Original Jurisdiction over their Motion for Leave and Proposed Complaint because the State of California is a party.**

"Article III, Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the Unites States, and Treaties made, or which shall be made, under their Authority;-- to all Cases affecting Ambassadors, other public Ministers and Counsels;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the Unites States shall be a Party;--to Controversies between two or more States;--between a State and Citizen of different States,--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof and foreign States, Citizens or Subject. In all Cases affecting Ambassadors, other public Ministers, and Consuls, and **those in which a State shall be a party, the Supreme Court shall have original Jurisdiction**." *Cherokee Nation v. Georgia*, 30 U.S. 1 (1831), *Massachusetts v. Missouri*, 308 U.S. 1 (1939).

Applied to this Motion, the State of California is a Defendant and is a "state [that] shall be a party" in this Motion for Leave and their Proposed Complaint.

After having the Lynns actions in California dismissed without prejudice in private arbitration and then in six (6) Superior Court of Orange cases, the Lynns filed case no. 4-24-cv-00935 in the Southern District of Texas due to Federal Questions and Constitutional violations that occurred at the hands of

- 20 -

**21A**

the private Defendants in the State of California who had the empowerment of State Power via the neutral Arbitrator, Defendant Kirk Nakamura and his employer, Defendant JAMs ADR.  Due to this, when file case no. 4-24-cv-00935's complaint was first amended, the Lynns added the State of California as a defendant and was then issued a summons by the clerk of the court for the State of California via service on the current California Attorney General. The State of California was notified of the lawsuit and asked to waive summons under Federal Rules of Civil Procedure ("FRCP") 4 via a certified carrier delivery.

During the notification of the lawsuit and summons response period for the defendants named, none of them waived the summons, the Lynns' Counsel of Record, Steven Zamora, reread the US Constitution and this particular Article III, section 2. As a result, he could not in good conscience fail to bring the Lynns Complaint to this Court to honor and uphold the US Constitution as he swears to do annually in three US States and Federal Courts (Missouri, Texas, and New York) since this Court by this power has the right of first review when a "state is a party." Theoretically and logically, this makes sense that this Court shall have original (right to first review it) because the Framers of the US Constitution understood that a US State could not be impartial concerning its own defense in a lawsuit, and a lower federal court (district or appellate) established by Congress (i.e., Southern District of Texas) cannot decide a matter that can change a US State governance because that sole power is only vested in this Court by the Supreme Law of the land, the US Constitution. And if these lower state or federal courts could not decide the matter of when a state is a defendant, then a private arbitrator certainly cannot as well.

Moreover, the Lynns' Counsel of Record, then proceeded to motion for stay of this case – to preserve the Lynns' Statute of Limitations - while this Motion to Leave and Proposed Complaint could be filed at this

- 21 -

22A

Court. However, in denying this motion to stay and not recusing themselves after the Lynns moved for this due to their impartiality, Senate confirmed Judge Charles Eskridge and Magistrate Judge Christina Bryan acting Sua Sponte (without prompting of the Lynns and the defendants as none of them had waived the summons) dismissed the Lynns case without prejudice.

Therefore, this Court shall have original Jurisdiction over the Lynns case even if only against one US State: California.

**III.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's Original Jurisdiction over their Motion for Leave and Proposed Complaint because eight (8) US States (California, Colorado, District of Columbia, Georgia, Hawaii, Oregon, Maryland, Virginia) are parties in this action due to the Lynns also being US Citizens and because these US States allow for Defendants Kaiser, Kaiser's Legal Representation, Kaiser's Office of Independent Administrator, and JAMs ADR to operate there just like the State of California allows them to operate in their State.**

Applied to this Motion, the Lynns discovered that Defendant Kaiser operates in this US States as well and felt compelled to add them as Defendants because their injuries from these private Defendants occur to other US Citizens who live in these other US State where these private Defendants are allowed by the State to operate.

Therefore, this Court shall have original Jurisdiction over the Lynns Motion for Leave and Proposed Complaint due to the private Defendants being allowed to operate in these other US States, so

- 22 -

23A

in essence, all eight (8) US States are "state[s] [that] shall be a party."

**IV.    This Court has original and exclusive Jurisdiction over a case where two or more States have a case or controversy between each other, so it has this Jurisdiction over this Motion for Leave and Proposed Complaint because there is a case or controversy between eight (8) US States ("States") via the use of crossclaims.**

Article III, Section 2 of the US Constitution, which was further codified by Congress, in 28 U.S.C. § 1251(a), both state that the supreme court shall have original and exclusive jurisdiction of all controversies between two or more states. *Mississippi v. Louisiana*, 506 U.S. 73 (1992), *Maryland v. Louisiana*, 451 U.S. 725 (1981), *Wyoming v. Oklahoma*, 502 U.S. 437 (1992). This means that no other federal court has the authority to hear these disputes, as the term "exclusive" precludes jurisdiction by any other court. *Id.*

Applied to this Motion, the Lynns' Complaint involves States as being a party to this action. These States are in controversy with each other because the Lynns' are US Citizens who experience the same or similar injuries in these States due to the private Defendants operations described herein. In addition, a determination by this Court in favor of the Lynns has the power to change the way that private healthcare is paid for (cost of healthcare), provided for (insurance covered benefits), and adjudicated for (private arbitration v. public arbitration or even tried in state and federal court) in these States. Note: Kaiser Permanente originated in the State of California.

Therefore, the need for these States to differentiate themselves via crossclaims from the State of California or even each other is crucial to

- 23 -

avoid liability from a healthcare or arbitration standpoint, and this need causes the controversy between the States (co-parties), which meets the two (2) or more States requirements in the US Constitution, Congress enactment of it, and the case law in support of it.

Under FRCP 13(g), a pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant. Unlike counterclaims, crossclaims are almost always permissive. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 146 n.11 (3d Cir. 1999) ("[t]here is no compulsory cross-claim rule in the federal system"); *United States v. Confederate Acres Sanitary Sewage & Drainage Sys., Inc.*, 935 F.2d 796, 799 (6th Cir. 1991).

Applied to this Motion, the States have a legal right to crossclaim against each other as coparties because the crossclaim would arise out of the occurrence in this case. These crossclaims may include a claim that the State making it is not liable but another State is liable.

Therefore, this legal right to crossclaim between these States as coparties to avoid liability for this case creates the controversy as required by the US Constitution for this Courts Original and Exclusive Jurisdiction over this case, so this Motion for Leave shall be granted because this controversy precludes any other court from hearing this case.

///

///

///

- 24 -

**25A**

**V.     This Court is requested to grant this Motion – as a matter of procedural due process under the Fifth and Fourteenth Amendments - in order to allow the Proposed Complaint to be filed, which will enable the States to assert their crossclaims, which only become actionable procedurally, when these US States are required to respond or answer to a filed Complaint at this Court.**

In order for a case to fall under the Supreme Court's original jurisdiction, it must involve a proper "controversy" where the complaining state has suffered a wrong through the actions of another state, or is asserting a right against another state that is susceptible to judicial enforcement according to common law or equity principles. *Id.* The Supreme Court's role in these cases is to act as a substitute for diplomatic resolution between sovereign states, which underscores the gravity and seriousness of such disputes. *Kansas v. Nebraska*, 574 U.S. 445 (2015).

Applied to this Motion, crossclaims between the States that take the form of a State asserting a right against another State that is susceptible to judicial enforcement according to common law or equity principles is precisely what can and will happen when this Court grants this Motion for Leave and the Proposed Complaint is adjudicated.

However, procedurally, the States crossclaims will not be known up and until this Motion for Leave is granted and the Lynns' Proposed Complaint is allowed to be filed at this Court. Prior to this occurring, the States are only allowed to oppose the Motion to Leave but not actually file a crossclaim against another State because they can only oppose the filing of the Complaint, which circumvents their ability to avoid liability. Liability as an outcome to a legal action can only be determined through the litigation of a Complaint so that this Courts' Justices can rendering a ruling.

- 25 -

**26A**

Moreover, the demonstration of these State v. State controversies are cited in the Table of Authorities and as explained in the Direct Precedents involving Original Jurisdiction. In each instance, this Court granted the Motion for Leave in order to resolve the controversy between the States.

Therefore, the Lynns request this Court to grant the Motion for Leave in order for this Court to resolve the controversy via crossclaims between the States.

**VI.** **When applied to the Lynns action, this Court's Rule 17 is in conflict with the US Constitution requirement of hearing an original and exclusive action when there are two or more States in controversy because the initial Motion to Leave does not allow the US Constitution to come alive and be performed by the States actually demonstrating their controversy via crossclaims against each other, and this Rule 17 is conflicting with the US Constitution, so it requires judicial review by this Court, and by De Jure, this Motion for Leave shall be granted.**

Supreme Court Rule 17 states: "This Rule applies only to an action invoking the Court's original jurisdiction under Article III of the Constitution of the United States. See also 28 U. S. C. § 1251 and U.S. Const., Amdt. 11...2. The form of pleadings and motions prescribed by the Federal Rules of Civil Procedure is followed. In other respects, those Rules and the Federal Rules of Evidence may be taken as guides...3. **The initial pleading shall be preceded by a motion for leave to file, and may be accompanied by a brief in support of the motion**.

Procedurally, this is how original and exclusive actions are filed at this Court under Supreme Court Rule 17 since original actions – like the one that the Lynns have brought to this Court today - are predated first by filing a Motion to Leave.

- 26 -

Therefore, the ability for the States to crossclaim against each other to avoid liability, which creates the controversy between them as described in Article III, Section 2 is estopped by this Rule 17, and does not allow the US Constitution to come alive and be performed by the States that are coparty Defendants in this action.

In *Marbury v. Madison*, 5 U.S. 137 (1803), the Supreme Court established its power of judicial review. Chief Justice John Marshall, in his opinion, declared that "it is emphatically the province and duty of the judicial department to say what the law is." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), *Moore v. Harper*, 600 U.S. 1 (2023), *Mackey v. United States*, 401 U.S. 667 (1971). This case marked the first time the Supreme Court asserted its authority to invalidate laws that are in conflict with the Constitution, thereby establishing the principle of judicial review. *Id.*

Applied to this Motion, this Rule 17 is in conflict with the two or more US States in controversy requirement because Rule 17 prevents the controversy from occurring, which is having the States being Defendants coparties in this action having the ability to respond or answer the Lynns' Proposed Complaint.

In this circumstance, then it is the province and duty of the judicial department (this Court) to say what the law is, so this Court shall exercise Original and Exclusive Jurisdiction of the Lynns' Proposed Complaint in order to allow the US Constitution to come alive and be performed by the States.

Therefore, this Court shall grant this Motion to Leave and filing of the Complaint in order for Article III, Section of the US Constitution to be performed just like a government issued contract with line items from the Department of Defense (DoD) to a Prime Contractor like Lockheed Martin or Northrop Grumman, so that the US Citizens can reap the fruit

- 27 -

**28A**

of the goods and services and protections enacted 1787. In other words, the US Constitution, like a contract line items in a DoD prime contract needs to be performed fully, so that the sovereign contract between the US and the people can be adhered to.

**VII.    This Court's Right for Judicial Review is inherent in the US Constitution via the precedent of Marbury v. Madison, but it is also explicit in the US Constitution text: "...with such Exceptions".**

Article III, Section 2 of the US Constitution provides "In all other Cases before mentioned the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

Applied to this Motion, this right of judicial review falls into the category of "with such Exceptions" meaning that there are cases like *Marbury v. Madison* and this case for the Lynns that are outside of appellate Jurisdiction but relevant to a case or controversy that affects the US Constitution and its governance over the States.

Therefore, this Court has original and exclusive jurisdiction over this case just like it had over *Marbury v. Madison*.

**VIII.    Supreme Court Rule 17 abridges and modifies the Lynns' substantive right under the First Amendment of the US Constitution.**

According to 28 U.S.C. § 2072, the Supreme Court has the power to prescribe general rules of practice and procedure and rules of evidence for cases in the US district courts and courts of appeals. However, these rules must not abridge, enlarge, or modify any substantive right, and any laws in conflict with such rules will be of no further force or effect after the rules take effect.

- 28 -

**29A**

Applied to this Motion, this Motion is a procedural hurdle in a marathon race for Justice for the Lynns to file a Complaint. Their First Amendment substantive right to petition the Government for a redress of grievances has been abridged and modified. This is because they cannot exercise this right to petition (file their Complaint) directly with this Court, it has to be motioned for, and that is not what the Framers of the US Constitution wrote in the First Amendment. In other words, this Motion to Leave is an abridgement of the right of the people (Lynns and other U.S. Citizens) to petition (file this Complaint) the Government (Supreme Court) for redress of their grievances (Proposed Complaint).

Now if Congress shall make no law, then the Supreme Court shall definitely make no Rule that is enforced by this Court as law by its administrators and Justices before a petition/Complaint from the Lynns is able to be filed their grievances against the Government.

Therefore, for these reasons, this Court needs to exercise Jurisdiction over the Lynns Complaint for judicial review to occur and this conflict between Rule 17 and the US Constitution be resolved.

IX. **The same effect of the Supreme Court Rule 17 demonstrated above occurs in the application of Supreme Court Rule 5 to the Lynns' substantive rights under the First, Fifth, and Fourteenth Amendments, which requires judicial review.**

Supreme Court Rule 5 states:

"Each applicant shall file with the Clerk (1) a certificate from the presiding judge, clerk, or other authorized official of that court evidencing the applicant's admission to practice there and the applicant's current good standing, and (2) a completely executed copy of the form approved by this Court and

- 29 -

furnished by the Clerk containing (a) the applicant's personal statement, and (b) the statement of two sponsors endorsing the correctness of the applicant's statement, stating that the applicant possesses all the qualifications required for admission, and affirming that the applicant is of good moral and professional character. Both sponsors must be members of the Bar of this Court who personally know, but are not related to, the applicant."

Applied to this Motion, the Lynns' Counsel of Record complied with all the requirements of Rule 5 except for having two Supreme Court Attorneys sponsor him, and this requirement prevented the Lynns' from filing this Motion for Leave and Proposed Complaint because in order for their Counsel of Record to have access to Pacer to electronically file this case he is required to be a Supreme Court Attorney first. This requirement delayed the Lynns filing for five (5) months, which caused their Statute of Limitations for all causes of actions in their Proposed Complaint. It has been prejudiced the Lynns because their Statute of Limitations for Defendant Aetna tolled October 2024.

In addition, the Lynns' Counsel of Record is a Christian, Latino Lawyer who did not know any Supreme Court Attorneys until September 2024, so he was disadvantaged by this requirement and this Court has no tools or resources to help connect him with these Supreme Court Attorneys, so the requirement – although neutral on its face and application – discriminated against the Lynns Counsel of Record due to his demographic background. Note: That this additional requirement only become part of Rule 5 in 1934, which was during the time of racial discrimination against minority Americans. It is logically that the effect of this modification to Rule 5 was intended to discriminate against minorities seeking bar admission to this Court to challenge racial discrimination.

- 30 -

31A

Therefore, this Court's judicial review is required to evaluate the Lynns' First (redress of their grievances, Fifth (procedurally and substantive due process rights), and Fourteenth (equal protection under the law) Amendment rights being denied by Rule 5.

**X.  There is nothing to appeal since all the Lynns Complaints have been dismissed without prejudice, so this court is requested to exercise Jurisdiction over their claims as it is "...with such Exception."**

Applied to this Motion, the Lynns are filing an original action with this Court because, procedurally and substantively, they have to. As explained herein, all of the Lynns actions in private arbitration, state court, and federal court have been dismissed without prejudice due the merits of their case having to be determined by this Court.

The Lynns have nothing to appeal in state or federal court since no determination or dismissal with prejudice occurred, so a writ of certiorari to this Court under Appellate Jurisdiction is implausible and impossible.

Therefore, this Court has exercise Jurisdiction under its "...with such Exceptions..." power over this action.

///

///

///

///

///

///

- 31 -

**32A**

**XI.    In order for the Defendants responsible for the Lynns injuries to be held accountable, this Court needs to exercise Jurisdiction over the Proposed Complaint to determine the nature and amount of injuries that the Lynns have sustained during and after the events of private arbitration, state court, and federal court because the Lynns are eggshell plaintiff with injuries still accruing.**

The "eggshell plaintiff" rule, also known as the "eggshell skull" rule, is a legal doctrine that holds a defendant liable for the plaintiff's unforeseeable and uncommon reactions to the defendant's negligent or intentional act. This rule is encapsulated in the principle that "a tortfeasor takes its victims as it finds them." This means that if a plaintiff has a preexisting condition that makes them more susceptible to injury, the defendant is still fully liable for all the consequences of their actions, even if the injuries are more severe than what would be expected for an average person. *Vosburg v. Putney*, 86 Wis. 278 (1893).

Applied to this Motion, the Lynns have subsequent injuries that relate back to the original injuries of medical malpractice, battery, breach of fiduciary duty, and corporate negligence that the relief is being sought for, so the eggshell plaintiff rule applies to them. In addition, the private Defendants who caused the Lynns original injuries are responsible for the unforeseeable and uncommon reactions to their negligent or intentional act, which includes all the injuries that the Lynns are pleading from Southern District Court of Texas and until the filing of this Motion and Proposed Complaint, which includes violations of the Federal Arbitration Act, Federal Civil Conspiracy, Sherman Act violations, and False Imprisonment.

In *Marbury v. Madison*, this Court via Chief Justice John Marshall stated, "but where a specific duty is assigned by law, and individual rights depend

- 32 -

**33A**

upon the performance of that duty, it seems equally clear that the individual who considers himself injured, has a right to resort to the laws of his country for a remedy."

Applied to this Motion, the Lynns are following his jurisprudence now, as injured eggshell Plaintiffs, to have this Court to access and determine the Neglect of the Defendant Elected Officials and their administrative staff's failure to perform their specific duty assigned by law, which is swearing to uphold the US Constitution, while performing their job.

The County Supervisor, State Governors or Mayor failed to protect their citizens as required under the 10th Amendment to the US Constitution by allowing Kaiser to obtain hospital licenses and perpetuate the injuries named above to the Lynns and/or other US Citizens.

The US President, Vice President, and Senate Pro Tempore have failed to oversee and enforce the US Constitution against these States from allowing Kaiser to operate hospitals and injure US Citizens. Afterall, the Medicare act and Obamacare work hand and hand with the US Executive Branch and the States Executive Branch, so the Lynns injuries due to these Elected Officials conduct shall be reviewed by this Court.

Therefore, the Lynns are eggshell Plaintiffs and this Court shall exercise original and exclusive Jurisdiction over their Complaint because A) theirs and US Citizens injuries are relevant to this Courts holding in this case, B) this holding will impact this reoccurring systematic injury that occurs in the States, and C) this Courts judicial power to require Elected Officials perform or are estopped from failure to perform their legal duties is of most importance to our Country because failure to enforce the Rule of Law leaves us with a US Constitution that is changed without proper Amendment as required by Article 5.

- 33 -

**34A**

So as Chief Justice John Marshall said in 1803 "...Then let us [this Court] apply this rule to the [Lynns] case [that is] under the consideration of this court, and now preliminarily via Motion, the Lynns now call upon Chief Justice John Roberts and the Associate Justice to do the same to protect our Constitution, Country, and its precious Citizens.

**XII.    Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries comes from the Neglect of President Biden (his mental capabilities have been diminished while in office) to manage and faithfully execute the Medicare act under the Social Security Act as required by Article 2 through his Cabinet (Department of Health and Human Services), to ensure that medically necessary surgical procedures shall not be denied to US Citizen seniors like Pamela Lynn who life depends on having the treatment and have a history of obtaining that care (the Lynns had these procedures approved by private healthcare and also, per the State of California Department of Insurance).**

Applied to this Motion, this Court shall review that if Biden failed his legal duty under Article II when allowing his cabinet who manages Medicare to deny a medically necessary procedures (Endoscopy with Botox to open her esophagus for breathing and digestions and a scope guided epidural to relieve her chronic pain from Esophagectomy (major surgery) through the use of medical software as a service and claim service from a company called Noridian Healthcare Solutions, LLC.

Previously, the State of California's Insurance Department had overturned Defendant Aetna's denial of the Lynn's endoscopy with Botox due to the Insurance Department's medical doctor declaration of the procedure as being medically necessary.

- 34 -

35A

In *Marbury v. Madison*, this Court did review a US President, John Adams, actions of having Congress pass the Judiciary Act of 1801, which created new courts, added judges, and gave the President more control over appointment of judges, which this Court declared unconstitutional and in this same way, this Court must perform judicial review to say if this US President, Biden, has Neglected his sworn legal duty and this Neglect has injured the Lynns and other US Citizen.

Therefore, this Court shall exercise Jurisdiction to review and resolve this matter.

**XIII.  Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries comes from the Neglect of Vice President Harris and Senate Pro Tempore Murray under Amendment 25 to bring a writing to the Senate that President Biden's mental capabilities have been diminished to prevent this type of Neglect of Medicare denials for medically necessary procedures from occurring to US Citizens like Pamela Lynn.**

For the same reasons stated in XII. and also, to evaluate their legal duty and the right of the Lynns to seek redress, therefore, this Court shall exercise jurisdiction to evaluate this matter.

**XIV.  Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries come from the Neglect of US President Biden, Vice President Harris, and Senate Pro Tempore Murray for not overseeing the relevant State Governors and Mayor who allowed Kaiser to operate, which did not protect the health and safety of those US Citizens.**

For the same reasons stated in XII. and also, to evaluate their legal duty and the right of the Lynns to

- 35 -

seek redress, therefore, this Court shall exercise jurisdiction to evaluate this claim.

Due to the Neglect of these Elected Officials, it is both just and proper for this Court to hold them accountable to the other legal duties that they swore to uphold, but similarly Neglected, which requires judicial review, and this is supported by *Marbury v. Madison* holding where this Court stated James Madison was legally responsible to send in the commissions for the new Justices of Peace appointed by John Adams, but did not order him to.

**XV.  Since this Court has Original and Exclusive Jurisdiction over this matter, then the Lynns ask this Court to use its Power to injunct or estop the Defendant Biden from violating the US Constitution under Article II by having Defendant Kamala Harris as Vice President without Amendment to Article II of the US Constitution as required by Article 5 to allow for a biological female to be Vice President.**

Article 2, Section 1 of the US Constitution states: "The executive Power shall be vested in a President of the United States of America. **He** shall hold **his** Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected as follows…Before **he** enter on the Execution of **his** Office, he shall take the following Oath or Affirmation: ---'I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States.'"

Applied to this Motion, Joe Biden is a biological male or "He" (one Y chromosome, one X chromosome per 23 pairs of chromosomes) and meets this Article 2 requirement.

- 36 -

37A

Article 2, Sections 2 and 3 also refer to the US President as a biological "He". The US Constitution enacted Article 2 in 1787 and it has not been amended to change or modify the meaning of its original language.

Applied to this Motion, Joe Biden is a biological male, a "He" and meets this Article 2 and 3 requirement. Furthermore, none of the 26 Amendments to the US Constitution change this requirement.

Amendment 25 states: "In the Case of the Removal of the President from Office, or of his Death, Resignation, or inability to discharge the Powers and Duties of the said Office the Same shall devolve on the Vice President.

Applied to this Motion, the Vice President succeeds the President. Currently, the US Vice President is a biological female or a "She" (Two X chromosomes per 23 pairs of chromosomes), so if this were to happen, then her succession violate Article 2 biological male or "He" requirement.

To make a human being, it takes a biological male and a biological female to have sex to create a child who has 46 pairs of chromosomes with each set coming from each parent.

Therefore, President Biden running with her in the 2020 Presidential election and winning and then having her as the Vice President was, is, and shall always be unconstitutional under Article II, which has not been amended, so this Court shall perform judicial review of the President's and Vice President's Neglect for not upholding the US Constitution as they swore to do.

///

///

- 37 -

**38A**

XVI. **The Lynns ask this Supreme Court to use its Power to injunct or estop the Defendant Kamala Harris' run for US President as her campaign, and even if successful, violates the Article II which requires a biological male or a "He" to be a US President.**

Applied to this Motion, Vice President Harris' run for US President violates Article II and this Court shall use its jurisdiction to injunct or estop her actions.

In addition, 1 U.S.C § 1 (1947), which codified the interpretation of Acts of Congress, states that the use of the words gender and words importing the masculine gender include the feminine as well.

Applied to this Motion, this Act of Congress is unconstitutional because it conflicts with the US Constitutions use of the Article 2 requirement for the US President to be a biological male or a "He". It is also unconstitutional because as of the enactment of the US Constitution in1787 the framers did not mean that a male equated to a female, or did they even know of the word named "gender" because "gender" did not become as a word.

This word "gender" became an Act of Congress in 1947, which conflicts with Amendment 25 succession plan for a Vice President, since a Vice President cannot be a biological female or a "She" until Article 2 is amended. In effect, this Court has the power to declare this Act of Congress unconstitutional since its performance is seeking to circumvent the Article 5 amendment process.

Moreover, per the holding *Marbury v. Madison*, this Court has the right to declare a Congressional Act unconstitutional – for that case it was of the Judiciary Act of 1789 enabling Marbury to bring his claim to the Supreme Court was itself unconstitutional and for this case its 1 U.S.C. § 1 and the allowance of the

- 38 -

**39A**

Democratic Party to allow a woman to run for US President and be Vice President since 2020 without amending the US Constitution as required under Article 5.

Also, this line of reasoning is supported by the subsequent Amendments to the US Constitution. Namely, the 13th Amendment outlawing slavery and the 19th Amendment giving women the right to vote. By prospering amending the US Constitution via Acts of Congress, slavery ended and women lack of a right to vote ended and the US Constitution was performed as enacted.

Therefore, the US Constitution would also need to be amended for women to have a right to run for President or even be a Vice President who could succeed to the Office of the US President under Article II succession or the 25th Amendment.

**XVII.  The Lynns ask this Supreme Court to use its Power to declare judgment that in order for this Article II requirement to allow for a biological female or "She" to be a US President the US Constitution would need to be amended per Article V.**

For the same reasons stated above, the Lynns ask this Court to exercise Jurisdiction over this case.

///

///

///

///

///

///

///

- 39 -

**40A**

XVIII.     **The Lynns ask this Supreme Court to use it Power to declare judgment that in order for this Article II requirement to be upheld that Kamala Harris shall be removed from her unconstitutionally acquired position of Vice President since the US Constitution has not been amended under Article V to allow for this and that this Supreme Court shall declare judgment that the Speaker of the House, Mike Johnson, is the Vice President due to Amendment 25.**

For the same reasons stated above, the Lynns ask this Court to exercise Jurisdiction over this case.

XIX.     **The Lynns ask this Supreme Court to use its Power to declare judgment that the Governors and Mayor and House of Representatives and Senators violated the US Constitution by allowing for their 2020 States Electors casting their States' electoral college votes for Vice President Harris in violation of the US Constitution Article II that requires the US President to be a "He" or a biological male since the Vice President has the capability of succeeding the President under Article 2.**

For the same reasons stated above, the Lynns ask this Court to exercise Jurisdiction over this case.

XX.     **Due to reasons stated above, the Lynns as US Citizens ask this Court to injunct the State Electors from 2020 from participating in the 2024 Presidential election.**

For the same reasons stated above, the Lynns ask this Court to exercise Jurisdiction over this case.

///

- 40 -

41A

**XXI.  The Lynns as US Citizens assert that Defendant Harris nomination and approval of her run for US President in 2024 by the Democratic Party and Elected Officials violates Amendment 24 because the rights of US Citizens to vote in primary elections for US President was denied or abridged by the US and its States.**

Under Amendment 24, it states: "The rights of citizens the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax.

Applied to this Motion, Defendant Kamala Harris obtained the right to run for US President over other Democratic Party Presidential nominees without the right of the US Citizens to vote in primary elections guaranteed under Amendment 24 and this blatantly violates the text of the US Constitution. Biden, Harris, and the Democratic Party as supported or endorsed by the States Governors and Mayor and House of Representatives and Senators fail to uphold the US Constitution with their actions. In addition, Amendment inherently gives US citizens the rights to vote in Presidential and Vice Presidential elections.

Therefore, this Court shall exercise its power to review and declare unconstitutional.

### Direct Precedents Invoking Original Jurisdiction of This Court

1. At this time, there are no Direct Precedents Invoking Original Jurisdiction of This Court in the approach that the Lynns have filed in this Court as US Citizens, but there is one case where this Court exercised their Jurisdiction ("with such Exception"). This Precedent is summarized below:

- 41 -

- *Marbury v. Madison¸* 5 U.S. 137 (1803). The applicant (William Marbury) and others (Dennis Ramsay, Robert Townsend Hooe, and William Harper) contended that the late President of the US (John Adams) had nominated them to the Senate and that the Senate had advised and consented to their appointments as justices of the peace. The commissions were signed by the late President and the seal of the US was affixed to the commissions by the Secretary of State. The commissions were withheld from the applicants and they requested their delivery. The Court granted a rule to show cause, requiring the Secretary (Madison) to show cause why a mandamus should not issue to direct him to deliver to the commissions. No cause was shown and the applicant filed a motion for a mandamus. The Court determined that the applicant had a vested legal right in his appointment because his commission had been signed by the President, sealed by the Secretary of State, and the appointment was not revocable. The Court found that because the applicant had a legal title to the office, the laws afforded him a remedy. However, the Court held that § 13 of the Act of 1789, giving the Court authority to issue writs of mandamus to an officer, was contrary to the Constitution as an act of original jurisdiction, and therefore void.

2. All of other Direct Precedents come from a US States challenging other US States or as otherwise written in Article III, Section 2 of the US Constitution. These Direct Precedents are summarized below:

- *United States v. West Virginia*, 295 U.S. 463 (1935). US Supreme Court did not have original jurisdiction over an action brought by the US against Virginia because mere grant of state license to build dams was not an infringement

- 42 -

**43A**

on federal authority to control navigable waters. The State of Virginia granted to the power companies a state license to build dams on the New and Kanawha rivers. Plaintiff filed a bill of complaint with the Court seeking to enjoin the construction of the dams pursuant to section 23 of the Federal Water Power Act, 16 U.S.C. §§ 791, 817, which required a license from the Federal Power Commission in order to build dams that would affect the interests of interstate commerce. The Court dismissed plaintiff's bill of complaint. The Court held that the bill of complaint did not present a case or controversy between the US and West Virginia within the meaning of U.S. Const. art. III, § 2 because it alleged no actual or threatened interference with the authority of the US to control navigable waters. The Court held that the mere grant of the state license was not an infringement of the federal authority, so no federal question was presented, and the Court did not have original jurisdiction over the action. The court dismissed plaintiff's bill of complaint.

- *Ohio v. Wyandotte Chemicals Corp.,* 401 U.S. 493 (1971). The US Supreme Court declined to exercise original jurisdiction over Ohio's nuisance abatement action against out-of-state and foreign defendants because the case was extraordinarily complex and involved novel scientific issues of fact. Ohio alleged that the corporations each dumped mercury into streams, which ultimately reached Lake Erie. Thus, Ohio further alleged that the corporations contaminated and polluted the lake's waters, vegetation, fish, and wildlife. The Court noted initially that it had original jurisdiction over Ohio's complaint. The Court revealed that it had no special competence in resolving disputes between states and foreign defendants. Instead, its competence was in matters of federal law. Additionally, the Court's

- 43 -

structure as an appellate tribunal made factfinding difficult. The Court held that it could decline to exercise original jurisdiction that it possessed over a complaint brought by a state against foreign defendants if two conditions were satisfied. First, declination of jurisdiction was not inconsistent with the reasons that Article III of the Constitution granted the jurisdiction. Second, the Court was persuaded by practical wisdom that it was an inappropriate forum. The Court concluded that it should not exercise jurisdiction in part because the case was extraordinarily complex and involved novel scientific issues of fact. The Court denied without prejudice Ohio's motion for leave to file a bill of complaint to invoke the Court's original jurisdiction.

- *Georgia v. Pennsylvania R.R.*, 324 U.S. 439 (1945). State could bring an antitrust action for injunctive relief against railroad companies, even though the Interstate Commerce Commission established minimum and maximum rates, where the Supreme Court had original jurisdiction over the action. The Court granted plaintiff State leave to file its amended bill of complaint against defendant railroads for conspiring to act in restraint of trade. The Court had original jurisdiction, because plaintiff had sued for its own injuries as a "person," for purposes of the Clayton Act, 15 U.S.C.S. § 11 et seq., even though its interests were not proprietary in nature, because it could sue to protect the interest of its citizens parens patriae. Plaintiff could not recover damages against defendants because the Interstate Commerce Commission set limits on the rates. However, injunctive relief was available. Although the rates that plaintiff claimed defendants had set could have been reasonable, such condition was insufficient to avoid antitrust liability. Plaintiff did not have to prove that it did not have an adequate remedy

- 44 -

elsewhere, once it had shown original jurisdiction. In any case, a district court could not issue process beyond its district limits. The Court granted plaintiff's motion for leave to file an amended bill of complaint because plaintiff had stated a claim for injunctive relief under the federal antitrust laws, even though it could not recover monetary damages, and the Court had original jurisdiction over the action.

- *Wash. v. GM Corp.*, 406 U.S. 109 (1972). The original jurisdiction of the U.S. Supreme Court was not invoked in a suit by 18 states alleging a conspiracy among automobile manufacturers because the injunction sought suggested that the parties be remitted to federal district courts and corrective remedies for air pollution had to be considered in the context of localized situations. The states sought an injunction requiring defendants to undertake an accelerated program of spending, research, and development designed to produce a fully effective pollution control device or devices and/or pollution free engine at the earliest feasible date and also ordering defendants to install effective pollution control devices in all motor vehicles they manufactured during the conspiracy and as standard equipment in all future motor vehicles that they might manufacture. The court granted the joinder motions of North Dakota and West Virginia and denied the states' motion for leave to file. The court not only had to look to the nature of the interest of the complaining state, but also inquire whether recourse to that jurisdiction was necessary for the state's protection. The availability of the federal district court as an alternative forum and the nature of the relief requested suggested that the court remit the parties to the resolution of their controversies in the customary forum. Corrective remedies for air pollution necessarily had to be considered in the context of localized situations.

- 45 -

**46A**

The causes would be properly heard in the appropriate federal district courts. The court granted the motions of North Dakota and West Virginia to be joined as parties plaintiff. The court denied the states' motion for leave to file a bill of complaint and remitted the parties without prejudice to the other federal forum.

- *Pennsylvania v. New Jersey*, 426 U.S. 660 (1976). Although income taxes on nonresident commuters diverted taxes from treasuries of States where commuters resided, such States lacked standing to invoke original jurisdiction of US Supreme Court to prosecute citizens' purely personal claims. States could not complain about damage from exemptions they allowed for taxes paid in other states. The complaints sought to invoke the court's original jurisdiction based on the court's holding in another case that a New Hampshire tax on the New Hampshire derived income of nonresidents violated the Privileges and Immunities Clause. In the cases at bar, defendants taxed the income that nonresidents earned in their states. This taxation effectively diverted taxes from the treasuries of plaintiffs because plaintiffs allowed their citizens a tax credit for the taxes paid in other states. To engage the court's original jurisdiction, plaintiffs had to demonstrate that their injuries were directly caused by defendants' actions. Plaintiffs could not complain about damage inflicted by their own hands. Nothing required plaintiffs to extend a tax credit to their residents, and nothing prevented them from withdrawing that credit. Additionally, both the Privileges and Immunities Clause and the Equal Protection Clause protected people, not States. Although the court recognized the legitimacy of parens patriae suits, plaintiffs lacked standing to sue because they were merely litigating as volunteers the personal claims of their citizens rather than to protect

- 46 -

47A

quasi-sovereign interests. The court denied leave to file the bills of complaint.

- *Kansas v. Nebraska*, 574 U.S. 445 (2015). Nebraska knowingly exposed Kansas to a substantial risk of receiving less water than the Republican River Compact provided, and thus, knowingly failed to comply with the Compact's obligations where Nebraska failed to adopt adequate mechanisms for staying within its allotment, and the Compact contemplated wet and arid years. Holdings included: [1] -A special master properly concluded that Nebraska knowingly exposed Kansas to a substantial risk of receiving less water than the Republican River Compact provided, and thus, knowingly failed to comply with the Compact's obligations where Nebraska failed to adopt adequate mechanisms for staying within its allotment, and the Compact contemplated wet and arid years; [2] -Disgorgement was a fair and equitable remedy for Nebraska's breach given its upstream position and the fact that the higher value of the water on its farmland rewarded its breach; [3] – Kansas's argument that the disgorgement award was too low to ensure Nebraska's future compliance was rejected where Nebraska altered its conduct after the 2006 breach, and had complied with the Compact ever since; and [4] -The settlement accounting procedures were amended so that they no longer charged Nebraska for imported water. Exceptions overruled; special master's recommendations adopted. 5-4 decision; 2 dissents; 2 concurrences.

- *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015). Court reversed determination that debtor's Stern v. Marshall objection could not be waived and that the bankruptcy court lacked constitutional authority to enter final judgment on an alter-ego claim because U.S. Const. art. III, § 1, was not violated when the parties

- 47 -

knowingly and voluntarily consented to adjudication by a bankruptcy judge. Holdings included: [1] A determination that the debtor's Stern v. Marshall objection could not be waived and that the bankruptcy court lacked constitutional authority to enter final judgment on an alter-ego claim was reversed because U.S. Const. art. III, § 1, was not violated when the parties knowingly and voluntarily consented to adjudication by a bankruptcy judge; [2] Consent to adjudication by a bankruptcy court did not need to be express, but had to be knowing and voluntary; and [3] It was up to the lower court to decide on remand whether the debtor's actions evinced the requisite knowing and voluntary consent, and also whether the debtor forfeited his Stern argument below. Judgment reversed; case remanded. 6-3 Decision; 1 concurrence; 2 dissents.

- *Glossip v. Gross*, 576 U.S. 863 (2015). Inmates who were awaiting execution in Oklahoma were not entitled to an order enjoining the State from using a 500-milligram dose of midazolam as the first drug it administered, before it administered a paralytic agent and potassium chloride, based on their claim that the use of midazolam violated the Eighth Amendment. Holdings included: [1] The US Court of Appeals for the Tenth Circuit did not err when it affirmed a district's court's judgment that inmates who were awaiting execution in Oklahoma were not entitled to an order enjoining the State from using a 500-milligram dose of midazolam as the first drug it administered, before it administered a paralytic agent and potassium chloride, because the use of midazolam violated the Eighth Amendment; and [2] The district court's determination that a 500-milligram dose of midazolam would make it a virtual certainty that any individual would be at a sufficient

- 48 -

**49A**

level of unconsciousness to resist the noxious stimuli which could occur from the application of the second and third drugs was not clearly erroneous, and the inmates failed to identify a known and available alternative method of execution that presented a substantially less severe risk of pain. Judgment affirmed. 5-4 Decision; 2 Concurrences; 2 Dissents.

- *Delaware v. Pennsylvania and Wisconsin*, 143 U.S. 555 (2022). **Still before this Court**. MoneyGram Payments Systems, which is headquartered in Delaware, returns unclaimed checks to that state. Pennsylvania and Wisconsin argue that the checks are "money orders" or "similar written instruments," which federal law requires to go to the states where they were purchased. Invoking the U.S. Supreme Court's jurisdiction over interstate disputes, Delaware filed the case directly in the Supreme Court. The Court appointed a special master, who concluded that MoneyGram's checks are "money orders" or "similar written instruments" and thus should go to the states where they were purchased. Delaware asked the Court to review the Special Master's findings for error. Procedurally, the Court granted Original Jurisdiction as this case presented a case or controversy between two or more US States. Moreover, the Second Interim Report of the Special Master received and ordered filed. Exceptions to the Report, with supporting briefs, may be filed by January 10, 2023. Replies, if any, with supporting briefs, may be filed by January 20, 2023.

## Need for the Aid of This Court

3. Without this Court's aid, the Lynns and US Citizens will not be able to achieve Justice for their injuries. As Dr. Martin Luther King spoke, "an injustice anywhere is a threat to justice everywhere" and as Jesus spoke, "a little leaven

- 49 -

**50A**

leavens the whole lump," so we ask this Court to stop this injustice now before it leavens the whole lump of this country.

4. When heard by this Courts original and exclusive Jurisdiction under Article 3, Section 2 and per the holding in *Marbury v. Madison*, then this Court can stop the Injustice (injuries to the US Constitution, our Country, and US Citizens) provide Justice to stop this leaven or sin from spreading further by these named Defendants and a result, destroy our US Constitution.

5. The US and its Citizens needs this Court's immediate and effective start toward solving these Injustices and it justifies this Court's original and exclusive Jurisdiction over the Lynns Proposed Complaint.

6. As the gatekeepers and interpreters of the Supreme Law of the Land, the US Constitution, the Lynns and fellow Americans, whose eyes are wide open to the Defendants injuries upon them, depend on you all to provide them Justice.

7. They all exhort you now to: Be Supreme!

## CONCLUSION

For the reasons stated, this Motion for Leave to file the Proposed Complaint should be granted.

Respectfully submitted,

Dated: November 1, 2024

*Steven Zamora*

Steven Zamora, Esq
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioners

- 50 -

**51A**

## CERTIFICATE OF WORD COUNT

Case No.:
Case Name:  *Pamela Lynn and Wilson Lynn, Jr. v.*
*Kaiser Foundation Hospitals, Inc., et. al.*
Title:  Motion For Leave To File Complaint

      Pursuant to Rule 33.1(h) of the Rules of this Court, I certify that the accompanying Motion for Leave to File Complaint, which was prepared using Century Schoolbook 12-point typeface, contains 8,915 words, excluding the parts of the document that are exempted by Rule 33.1(d). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

      I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Dated:  November 1, 2024

**Before Abraham was, I AM**

*Steven Zamora*

Steven Zamora, Esq.
9450 Pinecroft Dr. Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioners

- 51 -

**52A**

No. _____

_____

**IN THE SUPREME COURT OF
THE UNITED STATES**

_____

**Pamela Lynn and Wilson Lynn, Jr.,**

**Plaintiffs**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Defendants**

_____

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2
OF THE UNITED STATES CONSTITUTION**

_____

**APPENDIX: PROPOSED COMPLAINT**

_____

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

- 52 -

**53A**

To the Honorable Justices of the Supreme Court of the United States who are empowered strictly by the US Constitution and its Amendments, which are the outcome of the US Declaration of Independence as written by Thomas Jefferson:

COMES NOW Plaintiff, Pamela Lynn, and Plaintiff, Wilson Lynn, Jr., (Altogether "Plaintiffs" or "Lynns" or individually "Pamela" or "Wilson") to file this Complaint with this Court against the Defendants named in the Motion for Leave (Altogether "Defendants," grouped or individually as indicated in caption) via their Counsel of Record, Steven Zamora, who was duly admitted to this Court to practice law in accordance with Rule 5 on November 4, 2024, so that he is qualified, authorized, and is acting in this legal capacity for the Lynns by respecting the Rule of Law.

### Parties and Jurisdiction

The Parties are the same as stated in the Motion for Leave with the additional facts concerning the Lynns.

The Lynns are US Citizens who have been married for over forty-six (46) years. They now reside in Weaverville, CA because they had to leave their home in Newport Beach, CA due to the financial hardship they endured from caring for Pamela (at the age of 66) who suffers from several medically chronic conditions at the hand of Defendant Kaiser. Wilson is an honorably discharged Air Force Veteran who worked as Military Police with K-9 in the past and now is a law enforcement officer at the Trinity County California Courthouse at the age of 71. He was the Administrative Pastor and Director of the Bible College for Calvary Chapel Costa Mesa and Pamela was a Sr. Women's Leader for Calvary Chapel Costa Mesa. Until she was injured by Defendant Kaiser, she took care of Sr. Pastor Chuck Smith until he passed onto heaven from cancer. He is the same Sr. Pastor featured in the movie called the "Jesus Revolution."

-53-

**54A**

Moreover, this Court has original and exclusive jurisdiction of this Complaint as stated in the Motion for Leave.

Therefore, this Court shall hear the Lynns Complaints concerning the Defendants.

### Facts Leading to the Lynns'
### Claims for Relief

In August 2019, Pamela was hospitalized for treatment of issues relating to her esophagus and digestion. She experienced trouble swallowing, digesting, and severe acid reflux.

Trusting Defendant Kaiser and Defendant Kaiser Medical Doctors, she underwent medical procedures, which resulted in multiple Kaiser hospital encounters where she was further injured for the rest of her life and Wilson has a loss of consortium due to this.

From May 2019 through August 2019, Pamela underwent eight (8) endoscopies with dilation, or surgeries, which resulted in her esophagus being perforated.

After her esophagus being perforated in her chest and abdomen, Pamela was coughing up air bubbles and could not breathe, so she was rushed by Wilson to the Kaiser Emergency Room (ER) located in Anaheim, CA where she was hospitalized overnight for four (4) nights.

Plaintiffs only just discovered these perforations in her chest and abdomen that caused the unresolved sepsis during the private arbitration discovery process. When the Lynn asked Defendant Kaiser for Pamela's medical record, they gave only 982 pages, which their Counsel of Record. However, in discovery, their Counsel of Record demanded all of Pamelas medical records that resulted in the Defendant turning over Pamela's entire medical

- 54 -

**55A**

record consisting of over 16,000 pages (this was Defendant Kaiser's intentional and fraudulent concealment of the nature of Pamela's injuries from medical malpractice, battery, breach of fiduciary duty, and corporate negligence, which also stayed the three (3) year Statute of Limitations from tolling as per the California Medical Injury Compensation Act).

A month later, she underwent a major esophagus surgery called Ivor Lewis Esophagectomy and she went into a coma for over a month. In this surgery, Kaiser Medical Doctors completely severed her Vagus nerve, which carry signals between her brain, heart, and digestive system. Defendant Marc Davison concealed this severing of her Vagus nerve until her last visit with Kaiser in 2021. Since this surgery Pamela has the following chronic conditions, but not limited to: pain, vomiting, diarrhea, trouble breathing, unable to digest, inflammation, and unable to sleep lying flat on her back (she sleeps in a recliner in a separate room from Wilson).

After this surgery, Kaiser Medical Doctors went beyond the Lynns' consent and placed an esophageal stent on her esophagus, which was cut out or resectioned and then put back in per the Esophagectomy, which dislodged and injured her further and required at least three more surgeries.

In a medical appointment with Kaiser Medical Doctors, Pamela and Wilson were informed that she had this large stent put in her and that the doctor could not believe it had not been taken out yet. So, she was rushed into surgery to remove it two weeks later.

As declared by the State of California Insurance Department, she is required every three (3) months – now four (4) to six (6) weeks -due to her medical condition getting worse – to have an endoscopy with dilation and Botox to keep her alive.

When seeking to obtain this medical necessary surgery, Defendant Aetna denied it and made Pamela

- 55 -

56A

suffer physically, mentally, and emotionally. She appealed her denial up to the State of California Insurance Department who overturned Aetna denial and made them do the procedure as it was deemed medically necessary.

Due to the Lynns elder age and still being under financial hardship (Pamela is on Social Security Disability Income), they obtained Medicare and sought to continue Pamela's medically necessary procedures.

Medicare denied her procedure and deemed it not medically necessary, which made Pamela suffer physically, mentally, and emotionally in 2024. They also denied an epidural pain injection to reduce the inflammation in her spine and ribs and esophagus due to the Esophagectomy, which they deemed as not medically necessary. Previously, Defendant Kaiser and Defendant Aetna did cover this epidural pain injection.

The Lynns live knowing that Pamela is permanently injured and will one day pass away and go to heaven due to the injuries she has sustained from these Defendants.

In seeking relief from the legal process, they have been tortiously injured by Defendants in violation of state, federal, and the US Constitution, so they come seeking legal and equitable relief from this Court.

## Claim for Relief

"We the People (the Lynns and US Citizens who have suffered similarly like them) of the United States, in Order to form a more perfect Union, establish Justice (via this Complaint), insure domestic Tranquility (to uphold the US Constitution and hold the Defendants accountable for their behavior), provide for the common defence, promote the general Welfare (for Elected Officials to perform their oaths so

- 56 -

57A

the Lynns and US Citizens are protected), and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America."

**Note:** *For all causes of actions sought below, the Lynns do not want monetary damages from any County, State, or Federal employee or Elected Official for torts committed against them, but they only want declaratory or injunctive relief from this Court for these Defendants torts against the Lynns. When monetary damages are demanded in these Defendants context it is only for this Court to number the monetary damages total owed by the private Defendants.*

I.    **The Judicial Power of the US is vested solely in the Supreme Court, so the Lynns seek redress of their grievances under the First Amendment with this Court and they want this Court to declare that their action is Constitutional (meaning, that is support by the Constitution's prima facie text).  (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns have exercised their substantive rights under Amendment 1 to seek redress of their grievances via filing this Original and Exclusive case with this Court directly and not as a writ of certiorari because when read together Amendment 1 and Article III, Section 2 give them this right.

Therefore, this Court shall declare that this cause of action, as filed, is Constitutional, so that the Lynns, and in the future, other US Citizens can seek redress of their grievances with this Court similarly.

///

///

///

- 57 -

**58A**

**II.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns now seek this Court's declaration that Original Jurisdiction over their Motion for Leave and Proposed Complaint is Constitutional as filed because the State of California is a party. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns have filed their Original action with this Court directly under Article III, Section 2 because the State of California is a party and the US Constitution states that this Court shall have original jurisdiction over such cases.

Therefore, this Court shall declare that this cause of action, as filed, is Constitutional, so that the Lynns, and in the future, other US Citizens can seek redress of their grievances with this Court similarly.

**III.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's declaration that Original Jurisdiction over their Motion for Leave and Proposed Complaint is Constitutional because eight (8) US States (California, Colorado, District of Columbia, Georgia, Hawaii, Oregon, Maryland, Virginia) are parties in this action, due to the Lynns also being US Citizens, and because all these US States allow for Defendants Kaiser, Kaiser's Legal Representation, Kaiser's Office of Independent Administrator, and JAMs ADR to operate there. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns have filed their Original action with this Court directly under Article III, Section 2 because eight (8) US States are a party to this action and the US Constitution states that this Court shall have original jurisdiction over such cases.

- 58 -

**59A**

Therefore, this Court shall declare that this cause of action, as filed, is Constitutional, so that the Lynns, and in the future, other US Citizens can seek redress of their grievances with this Court similarly.

**IV.**   **This Court has Original and Exclusive Jurisdiction over a case where two or more States have a case or controversy between each other, so it has Jurisdiction over this Motion for Leave and Proposed Complaint because there is a case or controversy between eight (8) US States ("States") via the use of crossclaims, so the Lynns seek this Court to declare that this is Constitutional. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns have filed their Original action with this Court directly under Article III, Section 2 because eight (8) US States are a party to this action and they are in controversy with each other due to the potential use of crossclaims, so their filing meets the US Constitution requirement of having two or more States in controversy for them to exercise the Court's Original and Exclusive Jurisdiction over their case.

Therefore, this Court shall declare that when a case is filed that has multiple US States as coparties, so that there is a potential for US States to crossclaim against each other, then this Court shall exercise its Original and Exclusive Jurisdiction over the action because the requirement of having two or more US States is met.

///

///

///

///

///

- 59 -

**60A**

**V.    This Court is requested to declare this Motion is granted – as a matter of procedural due process under the Fifth and Fourteenth Amendments - in order to allow the Proposed Complaint to be filed, which will enable the States to assert their crossclaims, which only become actionable procedurally, when these States are required to respond or answer to a filed Complaint at this Court. (Fed. R. Civ. P. 57)**

Under Amendment 5, "…No person shall…be deprived of life, liberty, or property, without due process of law."

Applied to this Complaint, this Court has to comply with the Amendment 5 right to due process of the law. By this Court granting this Complaint to be filed at this Court it will have honored the Lynns' substantive right under Amendment 1. In order for the coparty Defendants to all their due process right to defend themselves against coparties under Amendment 5 is also Constitutional.

Therefore, this Court declaring that a Motion for Leave will be granted when there are multiple State coparty Defendants who can potentially crossclaim against each other allows both the Plaintiffs and Defendants herein to exercise their Amendment 5 rights by the Plaintiff's file of this Complaint and the Defendants' ability to respond or answer to the Complaint.

Under Amendment 14, "…nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Applied to this Complaint, the Lynn filing of it allows them to seek redress from the States depriving them of their life, liberty, or property and it also gives them equal protection of the laws, the US

- 60 -

**61A**

Constitutions' Original and Exclusive Jurisdiction over their Complaint. This only happens when this Court grants their Motion for Leave and the filing of this Complaint, so that the Defendants crossclaims can be potentially filed.

Therefore, this Court shall declare that granting this Motion for Leave and filing the Complaint allows for Amendment 5 and 14 to be upheld, so that the Lynns have full due process and also for the States to crossclaim against each other via their response or answer to the Lynns' Complaint.

**VI.    When applied to the Lynns action, this Court's Rule 17 is in conflict with the US Constitution requirement of hearing an original and exclusive action when there are two or more States in controversy because the initial Motion to Leave does not allow the US Constitution to come alive and be performed by the States actually demonstrating their controversy via crossclaims against each other, so this Court shall declare that Rule 17 is Unconstitutional (in this specific context). (Fed. R. Civ. P. 57)**

Applied to this Complaint, the ability for the States to crossclaim against each other to avoid liability, which creates the controversy between them as described in Article III, Section 2 is estopped by this Rule 17, and does not allow the US Constitution to come alive and be performed by the States that are coparty Defendants in this action.

Therefore, this Court shall declare that Rule 17, in this context, is Unconstitutional because this procedure prevents the coparty Defendant States to crossclaim against each other via their response or answer to the Lynns' Complaint.

///

- 61 -

**62A**

**VII.** **The Lynns complain and request that this Court declare that the Right for Judicial Review is inherent in the U.S. Constitution via the precedent of Marbury v. Madison, but also that its Right for Judicial Review it is also explicit in the U.S. Constitution text: "...with such Exceptions." (Fed. R. Civ. P. 57)**

Applied to this Complaint, in *Marbury v. Madison*, this Court heard Marbury and others complaint under its original and exclusive Jurisdiction to declare the Judiciary Act of 1789 unconstitutional. This case was not an indirect action with this Court under its Appellate Jurisdiction because this complaint was filed directly with this Court and this Court heard it.

To this Court its Jurisdiction was exercised because it had to declare its supreme power under Article III to interpret and declare whether an Act of Congress or law was unconstitutional, which of National importance.

The Lynns, through the Counsel of Record, read Article III, Section 2 language plainly - "...the supreme Court shall have appellate Jurisdiction, both as to Law and Fact**, with such Exceptions,** and under such Regulations as the Congress shall make…" – to say that the Supreme Court has the power to "…with such Exceptions…"to hear and decide cases filed with them directly where, in their discretion, are of National importance and that it has to declare an Act of Congress or law unconstitutional, i.e. *Marbury v. Madison,* to uphold the US Constitution. The Lynns, through their Counsel of Record, see their Motion for Leave and Complaint to be a similar case that is directly filed to this Court – for such a time as this of National importance – so that this Court can declare its supreme power of Judicial Review to decide this case, and in doing so, declare an Act of Congress or law unconstitutional.

- 62 -

Therefore, this Court shall declare the Court's supreme power of Judicial Review held in *Marbury v. Madison* is explicitly supported by the US Constitution's language "with such Exceptions" as explained above.

### VIII. Supreme Court Rule 17 abridges and modifies the Lynns' substantive right under the First Amendment of the U.S. Constitution, so the Lynns' ask this Court to declare it, in this specific, unconstitutional. (Fed. R. Civ. P. 57)

Applied to this Complaint, under 28 U.S.C. § 2072, the Supreme Court has the power to prescribe general rules of practice, however, these rules must not abridge, enlarge, or modify any substantive right, and any laws in conflict with such rules will be of no further force or effect after the rules take effect, and the Lynns argue that their Amendment 1 substantiative right to seek redress of the government is abridged and modified by Rule 17 because the preliminary requirement of a Motion for Leave hinders their ability to have this Complaint filed at this Court.

Therefore, this Court shall declare that Rule 17, in this specific context, is unconstitutional as a general rule of practice because it modifies and abridges the Lynns and US Citizens' right under Amendment 1 to seek redress of their grievances, via this Court by filing a Complaint, against their government.

///

///

///

///

///

- 63 -

**IX.   The same effect of the Supreme Court Rule 17 demonstrated above occurs in the application of Supreme Court Rule 5 to the Lynns' substantive rights under the First, Fifth, and Fourteenth Amendments, so the Lynns ask the Court to declare this Rule 5 Unconstitutional. (Fed. R. Civ. P. 57)**

Applied to this Complaint, Rule 5 requires that to be admitted to practice law at the Supreme Court a lawyer has obtain two (2) Supreme Court Attorneys to sponsor his admission. In the Lynns Counsel of Record being a Christian, Latino lawyer obtaining such sponsorship it took five (5) to six (6) months for him to find the sponsorship to be admitted to this Court on November 4, 2024. The Lynns and their Counsel of Record respected the Rule of Law and did not seek to file this Motion for Leave and Complaint until this date of admission, since this Rule 5 is the law as supported by 28 U.S.C. § 2072, so we all used self-control to demonstrate integrity and respect for this Court. As a result of this, the Lynns Statute of Limitation tolled with Defendant Aetna for their causes of action herein, so this Rule 5 did prejudice their ability to exercise their substantiative rights under Amendment 1 (seek redress of their grievances), 5 (due process rights), and 14 (equal protection of the law) was delayed to honor a procedural rule. This delay also demonstrated that Rule 5 – although neutral on its face – has discriminatory impacts on minority lawyers seeking admission to practice law at this Court. In 1935, when this additional requirement was added to this Courts Rules was during the time when racial discrimination was prevalent in the US.

Therefore, this Court shall declare that Rule 5 is unconstitutional as a general rule of practice because it modifies and abridges the Lynns and US Citizens' right under Amendments 1, 5, and 14 to seek redress of their grievances via this Court because the effect of it was tolling their Statute of Limitations with

- 64 -

**65A**

Defendant Aetna while their Counsel of Record had to gain admission, through adversity, to this Court.

**X.    There is nothing to appeal since all the Lynns Complaints have been dismissed without prejudice, so this Court is requested to declare, in this context, that can be exercised without using the appellate process when this Court has Original Jurisdiction under Article III, Section 2's language "...with such Exception." (Fed. R. Civ. P. 57)**

Applied to this Complaint, all of the Lynns prior actions were dismissed without prejudice because 1) there was no Arbitration Agreement between the Lynns and Defendant Kaiser, 2) private Defendants committed violations of federal law and the US Constitution, 3) States became a party to this action, and 4) these States have potential crossclaims against each other.

Therefore, this Court shall declare the Lynns and US Citizens like them can file their Complaint at this Court directly under Article III, Section 2 because their case has not been decided and this Court is the only who can decide their case.

**XI.    In order for the Defendants responsible for the Lynns injuries to be held accountable, this Court shall declare judgment that to determine the nature and amount of injuries that the Lynns because the Lynns are eggshell plaintiffs with injuries still accruing. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns are eggshell Plaintiffs and their original injuries from Defendants Kaiser, Medical Doctors, Legal Representation, JAMs ADR, including all their employees, have compounded, and become worst, so that this Court needs to hear these subsequent

- 65 -

**66A**

injuries to access the damages amount and hold these original tortfeasor responsible through this Complaint's Prayer.

Therefore, this Court shall declare the Lynns are eggshell Plaintiffs and their subsequent injuries via other Defendant named herein are relevant to access the true nature and damages amount due to the Lynns through this Complaint's Prayer.

**XII.** **Lynns assert that this Court shall declare judgement and damages (as to accrue and assert number of damages to original Defendant tortfeasors) because the Lynns' injuries comes from the Neglect of President Biden (his mental capabilities have been diminished while in office) to manage and faithfully execute the Medicare act under the Social Security Act as required by Article 2 through his Cabinet (Department of Health and Human Services), to ensure that medically necessary surgical procedures shall not be denied to US Citizen seniors like Pamela Lynn who life depends on having the treatment and have a history of obtaining that care (the Lynns had these procedures approved by private healthcare and also, per the State of California Department of Insurance). (Fed. R. Civ. P. 57; Fed. R. Civ. P. 8)**

In the context of U.S. Supreme Court jurisprudence, negligence, gross negligence, intentional misconduct, and omission of legal duty (altogether "Neglect") are distinct legal concepts with varying degrees of culpability and legal consequences.

Applied to this Complaint, President Biden's behavior needs to be examined through all the different forms of Neglect in order to determine that failed to meet his legal duty as this Court did in

- 66 -

**67A**

Marbury v. Madison concerning James Madison and John Adams.

Negligence is generally defined as the failure to observe the degree of care that a reasonably prudent person would exercise under similar circumstances. It involves a breach of duty that results in harm to another person. *Gallick v. B & O R.R.*, 372 U.S. 108 (1963).

Applied to this Complaint, President Biden's allowed his Cabinet, The Department of Health and Human Services (HHS) who oversees Medicare and Medicaid, to not approve documented medically necessary procedures for Pamela and this made her suffer twice in 2024. Medicare is an insurance program that works hand and hand with the State of California, so HHS failed to see the California Department of Insurance overturn Aetna's denial of this medically necessary procedure despite the Lynns sending Medicare the letter overturning Aetna's denial. This is failed duty by HHS, in turn, amounts to a failure on behalf of Biden for not protecting the health of all Americans (i.e., the Lynns is only one example) and providing essential human services, especially for those who are least able to help themselves. This breach was the legal and proximate cause of Pamela's suffering in 2024 and it damaged her.

Therefore, Biden's failure to oversee HHS administration of Medicare benefits demonstrates that he was negligent, which is due to his diminished capacity to execute the Social Security Act.

Gross negligence amounts to indifference to present legal duty and utter forgetfulness of legal obligations, falling short of being equivalent to a willful and intentional wrong. *Conway v. O'Brien*, 312 U.S. 492 (1941).

Applied to this Complaint, Biden, through his failure to manage HHS, demonstrated his indifference to his legal duty to not deny medically necessary

- 67 -

**68A**

procedures to Pamela. It is evident that due to his forgetfulness of this legal obligation that Pamela suffered twice from their denials.

Therefore, Biden committed gross negligence against Pamela.

Intentional misconduct involves actions taken with the intent to cause harm or with a reckless disregard for the consequences. It is a voluntary, intentional breach of duty, which may be unlawful, dishonest, or improper, committed with bad intent or with wanton disregard for the consequences. The U.S. Supreme Court has recognized that punitive damages may be awarded for conduct that is outrageous due to the defendant's evil motive or reckless indifference to the rights of others *Smith v. Wade*, 461 U.S. 30 (1983).

Applied to this Complaint, Biden has the option under Article II and Amendment 25 to declare that his has diminished capacity and is unable to faithful perform his job as President of the US. If he would have done this, then a person with mental capacity could have stepped in to perform this legal duty and it would have resulted in Pamela's medically necessary procedures being denied.

Therefore, Biden's failure to perform the procedures in Article II and Amendment 25 is the legal and proximate cause of Pamela's suffering in 2024.

Omission of legal duty refers to the failure to perform a duty required by law, which can result in liability if it leads to harm. For example, in the case of Guardian Trust & Deposit Co. v. Fisher, 200 U.S. 57, the defendant was alleged to have negligently and willfully failed to maintain sufficient water supply and readiness of firefighting equipment, which was a proximate cause of the plaintiff's property damage Guardian Trust & Deposit Co. v. Fisher, 200 U.S. 57.

- 68 -

**69A**

Applied to this Complaint, Biden's intentional misconduct was a demonstration of his omission to act on his legal duty to uphold the US Constitution, which injured Pamela further as an eggshell Plaintiffs.

Therefore, Biden's failure to oversee and manage HHS and take the steps in Article II and Amendment 25 to make sure a US President has mental capacity demonstrated that he is liable for Neglect.

**XIII.    Lynns assert that this Court shall declare judgement and damages (as to accrue and assert number of damages to original Defendant tortfeasors) because the Lynns' injuries comes from the Neglect of Vice President Harris and Senate Pro Tempore Patty Murray under Amendment 25 to bring a writing to the Senate that President Biden's mental capabilities have been diminished to prevent this type of Neglect of Medicare denials for medically necessary procedures from occurring to U.S. Citizens like Pamela Lynn. (Fed. R. Civ. P. 57; Fed. R. Civ. P. 8)**

In the context of U.S. Supreme Court jurisprudence, negligence, gross negligence, intentional misconduct, and omission of legal duty (altogether "Neglect") are distinct legal concepts with varying degrees of culpability and legal consequences.

Applied to this Complaint, Harris' and Murray's behavior needs to be examined through all the different forms of Neglect in order to determine if they failed to meet their legal duty as this Court did in Marbury v. Madison concerning James Madison and John Adams.

For the same reasons stated above concerning Biden, both Harris and Murray demonstrated Neglect and their Neglect is a legal and proximate cause of Pamela's suffering in 2024 for being denied medically

- 69 -

**70A**

necessary procedures since they did not intervene under Article II and Amendment 25 to bring a writing to the Senate noting Biden's diminished capacity.

Therefore, this Court shall declare this and also award damaged due to it.

**XIV.    Since this Court has Original and Exclusive Jurisdiction over this matter, then the Lynns ask this Court to use its Power to injunct or estop the Defendants Biden and Harris from violating the US Constitution under Article 2 by having Defendant Kamala Harris as Vice President without Amendment to Article 2 of the US Constitution as required by Article 5 to allow for a biological female to be Vice President. (Fed. R. Civ. P. 65)**

Applied to this Complaint, Biden is required to uphold the US Constitution. In Article II, as explained in the Motion for Leave, that the US President is a biological male or a "He" like Biden is. Biden knew that his choice for Vice President, Harris, is a biological female or a "She" and is incapable of becoming US President due to this biological male requirement.

This failure to perform his legal duty (sworn to uphold the US Constitution) by choosing a person incapable to serve as US President if he had to be succeeding by her per Article II or Amendment 25 demonstrates his Neglect and his Unconstitutional behavior.

In addition, by Harris swearing into her role of Vice President, she agreed to uphold the US Constitution. When she raised her hand for this swear in, which was administered by Justice Sotomayor, who should have known better, she violated the US Constitution because she swore to uphold the Article II biological male requirement but she could not do so because she is a biological female. This demonstrates

- 70 -

hers and Bidens lack of Respect for the Rule of Law, which our US Constitution.

Due to Biden, Harris, and Murray Neglect in their sworn duties under the US Constitution, they injured Pamela, who is an elder, so this Neglect amounts to Elder Abuse because Medicare denied her medically necessary care.  Also, this Neglect by these Elected Officials violates the ADA since Pamela was denied access to this type of care that is given to other US Citizen elders under Medicare by HHS.

Therefore, the Lynns seek to uphold the US Constitution, so per Article III power, they ask this Court to provide injunctive relief by preventing Biden from having Harris as Vice President because Harris being a biological female or a "She" violates the US Constitution Article II biological male requirement and also, that Biden is liable for Neglect in intentionally doing this from 2020 through 2024.

**XV.    The Lynns ask this Supreme Court to use its Power to injunct or estop the Defendant Kamala Harris' run for US President as her campaign, and even if successful, violates the Article 2, Section 1 which requires a biological male or a "He" to be a US President. (Fed. R. Civ. P. 65)**

Per the reasons stated above, Harris run for US President is unconstitutional because Article II requirement of the US President being a biological male or a "He" is not being met by her candidacy.

Therefore, her run for US President demonstrates her violation of the US Constitution requirement in Article II and the need to amend the US Constitution per Article V, and this all amounts to Neglect of her legal duty to uphold the US Constitution.

*///*

**XVI.  The Lynns ask this Supreme Court to use its Power to declare judgment that in order for this Article 2 requirement to allow for a biological female or "She" to be a US President the US Constitution would need to be amended per Article V, and also that 1 U.S.C. 1 use of the word "gender" is unconstitutional. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the US Constitution was enacted in 1787 prior to the invention of the word "gender" as proscribed by 1 U.S.C. 1, so when an Act of Congress conflicts with the US Constitutional, then the US Constitution is supreme, so this Congressional Act is unconstitutional because it seeks to amend the US Constitutions understanding of a US President being a biological male or "He" as the framers of the US Constitution understood it to be. Amendments 13 and 19 were necessary to end slavery and give women the right to vote, so should there be an Article V amendment to the US Constitution to allow women the right to run for and become Vice President or US President.

**XVII. The Lynns ask this Supreme Court to use it Power to declare judgment and provide injunctive relief that in order for this Article 2, Section 1 requirement to be upheld that Kamala Harris shall be removed from her unconstitutionally acquired position of Vice President since the US Constitution has not been amended under Article V to allow for this and that this Supreme Court shall declare judgment that the Speaker of the House, Mike Johnson, is the Vice President due to Amendment 25. (Fed. R. Civ. P. 57; (Fed. R. Civ. P. 65)**

Applied to this Complaint and for the reasons stated above, the Lynns ask this Court to declare judgment and provide injunctive relief by removing Kamala Harris from her unconstitutionally acquired

- 72 -

73A

position of Vice President and now declare that the Speaker of the House, Mike Johnson, is the Vice President due to Article II and Amendment 25 automatic succession.

Therefore, this Court under the power of Article III and under the holding of *Marbury v. Madison* shall declare judgment and provide injunctive relief as asked for by the Lynns.

XVIII.     **The Lynns ask this Supreme Court to use its Power to declare judgment that the Governors and Mayor violated the US Constitution by allowing for their 2020 States Electors casting their States' electoral college votes for Vice President Harris in violation of the US Constitution Article 2, Section 1 that requires the US President to be a "He" or a biological male since the Vice President has the capability of succeeding the President under Article 2. (Fed. R. Civ. P. 57)**

Applied to this Complaint, in 2020, the US States consisting of Defendants California, Oregon, DC, Georgia, Washington, Colorado, Hawaii, Maryland, and Virginia as led, by their Governor and/or Mayor, casted their electoral college votes all for Biden and Harris. As stated above, Harris being voted for as a Vice Presidential candidate in 2020 violates the prima facie language of Article II requirement of being a biological male as US President since the Vice President succeeds to US President in the circumstances outlined in Article II and Amendment 25.

Therefore, this Court under the power of Article III and the holding of *Marbury v. Madison* shall declare judgment these Defendant States electoral votes in 2020 for Harris was unconstitutional.

///

- 73 -

**74A**

**XIX.** **Due to reasons stated above, the Lynns as US Citizens ask this Court to injunct the State Electors from 2020 from participating in the 2024 Presidential election and also, injunct the Defendant States from casting their electoral votes for Harris as this is violation of Article II requirement that the US President shall be a biological male or "He".**
**(Fed. R. Civ. P. 65)**

Applied to this Complaint, the State Electors for the Defendant States all violated the US Constitution by casting their electoral votes for Harris. Due to their past unconstitutional behavior, they cannot be trusted to cast their votes in the 2024 election in a constitutional manner.

Therefore, this Court shall injunct these Defendant State Electors from being Electors in the 2024 Presidential Election.

Applied to this Complaints, the Defendants States, Governors/Mayor, House of Representative, and Senators, all allowed their States Electoral College votes to be casted for Harris in 2020, which is unconstitutional.  Due to their past behavior, they cannot be trusted to cast their votes in the 2024 in a constitutional manner.

Therefore, this Court shall injunct these Defendant States casting their 2024 Electoral College votes for Presidential Candidate Harris because this would violate the US Constitution's Article II prima facie language requiring a US President to be a biological male.

///

///

///

- 74 -

**75A**

**XX.** **The Lynns as US Citizens assert that Defendant Harris nomination and approval of her run for US President in 2024 by the Democratic Party and Elected Officials violates Amendment 24 because the rights of US Citizens to vote in primary elections for US President was denied or abridged by the US and its States. (Fed. R. Civ. P. 57; (Fed. R. Civ. P. 65)**

Applied to this Complaint, Defendant Harris obtained the right to run for US President over other Democratic Party Presidential nominees without the right of the US Citizens to vote in primary elections guaranteed under Amendment 24 and this blatantly violates the text of the US Constitution. Biden had obtained the Democratic nomination in their primary elections to run for US President as the incumbent, but he dropped out of the race and endorsed Harris, again, in violation of the US Constitution due to his Neglect. Biden, Harris, and the Democratic Party as supported or endorsed by the Defendant States delegates failed to uphold the US Constitution with their actions and this is Neglect.

It does not matter that Amendment 24 says this right to vote, by the Lynns and other US Citizens, cannot be denied for poll tax or any other tax, the point is that the Lynns in California or other US Citizens in the States involved here had a right to vote in primary elections for President in 2024 which was abridged or denied by these State delegates since Harris was never voted for.

Therefore, this Court injunct or estop Harris nomination by the Democratic Party because it violates the Lynns and US Citizens right to vote in a primary election for US President, and this Court shall declare that Harris nomination is unconstitutional and in violated of Amendment 24.

- 75 -

**76A**

**XXI. This Court shall award damages to the Lynns for Defendants Kaiser and their Medical Doctors Medical Malpractice and Loss of Consortium caused by it. (Fed. R. Civ. P. 8)**

Under California Civil Code 3333.2, in any action for injury against a health care provider or health care institution based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage, subject to the limitations in this section…(1) Civil liability for damages for noneconomic losses against one or more **health care providers**, collectively, shall not exceed three hundred fifty thousand dollars ($350,000)…(2) Civil liability for damages for noneconomic losses against one or more **health care institutions**…"

Applied to this Complaint, the Lynns have brought seven (7) different actions (one in private arbitration and six (6) at the Superior Court of Orange in the State of California) for negligence by health care providers (Defendant Medical Doctors) and health care institution (Defendant Kaiser) under this Statute. Once negligence is established by the Lynns current treating physician's expert testimony Pamela is entitled to recover in noneconomic damages $4,900,000.

Under California Civil Code 3333 and 3920, entitles Wilson to claim a loss of consortium (loss of love, affection, companionship, comfort, care, etc.) for each of these actions for the amount of $350,000.

Applied to this Complaint, once negligence is established, then Wilson is able to $350,000 for each of the seven (7) actions listed above, which amounts to $2,450,000.

- 76 -

**77A**

Therefore, the Lynns from medical malpractice negligence and loss of consortium actions are asking this Court to award $7,350,000.

The elements of a cause of action for medical malpractice in California include: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage. *Johnson v. Superior Court*, 143 Cal. App. 4th 297 (2006), *Lattimore v. Dickey*, 239 Cal. App. 4th 959 (2015), *Chakalis v. Elevator Solutions, Inc.*, 205 Cal. App. 4th 1557 (2012).

Applied to this Complaint, the Defendant Medical Doctors and Health Care Facility meet the requirements (1) through (4) as detailed below in the seven (7) different actions.

1. On August 26, 2019, Pamela underwent an eighth Endoscopy (EGD) surgery within a five-month span. Afterward, she became deathly ill upon arriving at home from the EGD and called Kaiser for help. She was unable to eat, breathe, and was coughing up air bubbles. Pamela Lynn was a patient of Respondents for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, pain, and the above, which were all determined to be caused from issues with her esophagus. Respondents were aware of this problem and sought to provide medical services and/or treated her starting on August 26, 2019 through August 31, 2019. Respondents documented Pamela's serious medical conditions, including but not limited to, as 1) Severe sepsis with acute organ dysfunction (bodily infection), 2) Pnemoperitoneum (the presence of air or gas in the abdominal (peritoneal) cavity), and 3) Pneumemdiastinum (a condition in which air is present in the mediastinum (the space in the chest between the two lungs). 2) and 3) above indicated that Pamela Lynn had esophageal perforations in

- 77 -

**78A**

her abdomen and chest. Despite these serious medical conditions being unresolved, Respondents released Pamela Lynn from the facility with follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon, which did not take place until weeks later. Respondents did not even transfer her to another Kaiser hospital to undergo immediate care for her serious medical condition with other doctors who had the expertise. Respondents did not communicate to Pamela Lynn the seriousness of her medical conditions to enable her to make informed decisions related to her health. After being released from the hospital with these serious medical conditions, she continued to suffer from these injuries and/or medical conditions noted above and other to be shown at the arbitration hearing and/or trial. Kaiser did not object to this course and scope of treatment, including Pamela Lynn's release from their facilities and failure to inform her and/or note her medical notes that she had esophageal perforations. Prior to this Pamela Lynn's care, treatments, and release by Respondents, she was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Respondents and Kaiser fell below the standard of care in using this course and scope of treatment, including allowing the release from their facility. Respondents Kaiser failed to identify and/or signs of Pamela's esophagus being severely injured and thereby halting the release of her from the facility. The failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Pamela Lynn. Kaiser failed to supervise their hospital where the above events took place and as a result injured Pamela Lynn. Claimant Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above-described negligence.

- 78 -

79A

2. Pamela Lynn was a patient of Jonas and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. Defendants were aware of this problem and sought to perform seven Endoscopies (EGDs) with dilation on Pamela Lynn in a five-month span starting from May 2019 through August 2019 to resolve the issues. Pamela Lynn consented and trusted Defendants and/or Kaiser to remedy. Defendants treated Pamela Lynn in their hospitals located in Anaheim, and Irvine, California ("Kaiser Facilities"). Jonas seen Mrs. Lynn before and after each of the seven EGD surgeries at Kaiser Facilities. Defendants failed to tell, explain, and/or warn that overuse of EGDs consisting of dilation could cause further injury to Mrs. Lynn's esophagus and increase her symptoms making her susceptible to esophageal perforation. Defendants failed to tell, offer, or explain any alternative or more spread-out treatments which could have avoid further injury to her esophagus as described herein. From May 2019 through August 2019, Mrs. Lynn's condition worsened and her condition rapidly deteriorated to the point that she underwent all seven EGDs to remedy her condition. On August 26, 2019, Jonas ordered and oversaw the eighth EGD surgery that Pamela Lynn underwent and became deathly ill upon arriving back home from the EGD. Pamela was unable to eat, breathe, and was coughing up air bubbles. Due to her medical condition, she was rushed to the Kaiser Hospital in Anaheim, California where she was hospitalized four nights and released on August 31, 2019 for follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon. Additional medical conditions were noted to her file, which included additional serious life-threatening conditions. Before and after August 26, 2019, Jonas failed to tell or explain to Pamela Lynn that the seven EGDs injured and/or damaged

- 79 -

**80A**

her esophagus as her symptoms continued to worsen. Jonas also failed to tell Pamela Lynn that the eighth EGD led to two perforations of her esophagus in her chest and abdomen. The failure to disclose information hindered Pamela Lynn to make informed decisions related to her medical condition.

After being released from Kaiser's hospitals with unresolved esophageal perforations, Pamela continues to suffer due to her esophagus and continues with symptoms described above and others to be proven at trial. In the span of five months, Pamela Lynn underwent eight EGDs with dilation that required anesthesia. In sum, these are eight different EGD surgeries that she underwent per Jonas' order for serial EGDs surgeries with dilation in a Kaiser Facilities where she was hospitalized for her injuries. Defendants Jonas intentionally concealed this information from Pamela Lynn to protect his reputation because this information would have led Plaintiffs to believe that he was professional negligent and a judgment or settlement of a Pamela Lynn claim for professional negligence on this course and scope of treatment would be on his medical license as a form of disciplinary action or public complaint. Kaiser did not object to this course and scope of treatment that included all these EGDs in their facilities which contributed to Mrs. Lynn's injuries. Kaiser medical notes leave out Pamela Lynn's esophageal perforations as a medical condition until later. Prior to Pamela Lynn's care, treatments, surgeries by Defendants, she was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants Jonas and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Jonas and Kaiser failed to identify and/or signs of Pamela's esophagus being injured by the seven EGDs and thereby halting this treatment. Defendants Jonas and Kaiser

- 80 -

**81A**

failed to inform Pamela Lynn of the perforations in her esophagus that were caused by the eighth EGD. Defendants Bindman and Kaiser did not object to this course and scope of treatment that included these EGD surgeries done at their facilities which contributed to Pamela Lynn's injuries. These failures and/or breaches, but not limited to, were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial causes of harm to Pamela Lynn. Bindman and Kaiser failed to supervise their hospital and staff where the above events took place and as a result injured Pamela Lynn. Plaintiffs suffered damages in the form of medical expenses, pain, and suffering because of the above-described negligence.

3. Pamela Lynn was a patient of Jonas, Nguyen, and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. Defendants were aware of this problem and sought to an eighth Endoscopy (EGDs) with dilation on Pamela Lynn in a five-month span starting from May 2019 through August 2019 to resolve the issues, which Pamela Lynn consented and trusted Defendants and/or Kaiser to remedy. Defendants treated Pamela Lynn in their hospitals located in Anaheim, CA and/or Irvine, CA ("Kaiser Facilities"). Jonas, Nguyen, and Kaiser seen Mrs. Lynn before and after each of these treatments at Kaiser locations. Defendants failed to tell, explain, and/or warn that the overuse of EGDs with dilation could injure further Mrs. Lynn's esophagus and make her more susceptible for esophageal perforation on the eighth EGDs. Defendants failed to tell, offer, or explain any alternative treatments or more spread-out treatments which could not injure her esophagus further as described in this herein. From May 2019 through August 2019, Mrs. Lynn's condition worsened and her condition rapidly deteriorated to

- 81 -

the point that she underwent all seven EGDs to remedy her condition. On August 26, 2019, Jonas ordered and oversaw the eighth EGD surgery that Pamela Lynn underwent. The medical notes indicate that Nguyen forced the endoscope through Pamela Lynn's esophagus because the scope would not pass through. Afterward, she became deathly ill upon arriving at home from the EGD and called Kaiser for help. She was unable to eat, breathe, and was coughing up air bubbles. Due to her medical condition, she was rushed to the Kaiser Hospital located in Anaheim, CA where she was hospitalized for four nights and released on August 31, 2019 for follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon. Additional medical conditions were noted to her file, which included many additional serious life-threatening conditions. Jonas, Nguyen, and Kaiser did not tell her that the eighth EGD led to two perforations of her esophagus located in her chest and abdomen. She lacked this information to make informed decisions related to her medical condition. After being released from the hospital with unresolved esophageal perforations, she continued to suffer from this injury to her esophagus and continue with the symptoms noted above. She spent five days being medically treated and hospitalized by Defendants due to this eighth EGD. Defendant Nguyen intentionally concealed this information from Pamela Lynn to protect his reputation because this information would have led Plaintiffs to believe that he was professional negligent and a judgment or settlement of a Pamela Lynn claim for professional negligence on this course and scope of treatment would be on his medical license as a form of disciplinary action or public complaint. Kaiser did not object to this course and scope of treatment that included this eighth EGD at their facilities which contributed to Pamela Lynn's injuries. Kaiser's medical notes leave out the esophageal perforations as a medical condition until later. Prior to this Pamela Lynn's care,

- 82 -

**83A**

treatments, surgeries by Defendants, she was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants Jonas, Nguyen, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Jonas, Nguyen, and Kaiser failed to identify and/or signs of Pamela's esophagus being injured by the eighth EGD and thereby halting this treatment. Defendants Jonas, Nguyen, and Kaiser failed to inform Pamela Lynn of the perforations in her esophagus that were caused by the eighth EGD and released her from their facility located in Irvine, CA. Defendants Bindman and Kaiser did not object to this course and scope of treatment that included this eighth EGD surgery done at their facilities which contributed to Pamela Lynn's injuries. The failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Mrs. Lynn. Bindman and Kaiser failed to supervise their hospital where the above events took place and as a result injured Pamela Lynn. Plaintiffs suffered damages in the form of medical expenses, pain and suffering because of the above-described negligence.

4. Pamela Lynn was a patient of Davison, Vaquerano, and Kaiser for treatment to resolve her issues including but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. Defendants were aware of this problem and sought to perform an Ivor Lewis Surgery (an esophagus surgery for cancer removal, which Pamela Lynn did not have) on October 14, 2019 to resolve these issues, not the perforations in her esophagus, which Pamela Lynn consented to and trusted the Defendants to remedy her symptoms while unaware of her perforations. Defendants approved and carried out this course and scope of treatment in their hospitals located in

- 83 -

Anaheim, CA and/or Irvine, CA, which are overseen by Bindman. Davison and Kaiser seen Pamela Lynn before, during, and after this major, open surgery at Kaiser locations. None of the Defendants never told, offered, or explained any other treatment options which could help relieve her symptoms related to her esophagus. Davison, Vaquerano, Bindman, and Kaiser did not inform Pamela Lynn that on August 26, 2019 her esophagus was perforated in two locations (chest, abdomen, not limited to) and that this was the reason for Davison's order and performance of an Ivor Lewis Surgery on her on October 14, 2019. Vaquerano assisted and helped perform the Ivor Lewis Surgery with Davison. Pamela Lynn lacked this information to make medical decision, especially opting for an Ivor Lewis Surgery. She lacked this concealed information until 2023. Plaintiffs were told by Defendants that her hospital stay would be a weeklong; however, she ended up being hospitalized from 10/14/2019 through 11/21/2019. She almost died multiple times because of her chronic injuries suffered by Defendants, including but not limited to severe sepsis twice, respiratory failure, a tracheostomy, metal plates and wires put in her chest and ribs and unconsented to esophageal stent put in her. She underwent a substantial amount of further medical treatment related to this Ivor Lewis Surgery. After her release, Pamela Lynn's symptoms only increased and did not resolve the prior ones she experienced. In a telephone visit with Defendant Davison in 2021, Plaintiffs were informed by Davison that he severed Pamela Lynn's Vagus Nerve and then he hung up on them. Defendant Davison intentionally concealed this information (and her perforations) from Pamela Lynn to protect his reputation because this information would have led Plaintiffs to believe that he was professional negligent (and other claims) and a judgment or settlement of a Pamela Lynn claim for professional negligence on this course and scope of treatment would be on his

- 84 -

85A

medical license as a form of disciplinary action or public complaint. Kaiser, Davison, Vaquerano, and Dr. Bindman did not object to this course and scope of treatment that included this Ivor Lewis Surgery at their facilities which contributed to Mrs. Lynn's injuries. Kaiser's medical notes leave out the esophageal perforations as a medical condition until later. Prior to this event, Mrs. Lynn was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants Davison, Vaquerano, Bindman, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Davison, Vaquerano, Bindman, and Kaiser failed to identify and/or signs of Pamela's esophagus being injured prior to and after the Ivor Lewis surgery thereby halting this treatment or taking different approaches for her long-term medical care. Defendants Davison, Vaquerano, Bindman, and Kaiser failed to inform Pamela Lynn of her injuries and released her from their facility located in Anaheim, CA whom Bindman oversaw and others in Orange County, CA. The failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Mrs. Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above-described negligence.

5. Pamela Lynn was a patient of Giap and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. Defendants were aware of this problem and sought to perform a ninth EGD surgery to fix a dislodged esophageal stent (prevent further dislodgement) that was put in Pamela Lynn during and/or after Ivor Lewis Surgery (an esophagus surgery for cancer removal, which Pamela Lynn did not have) on October 17,

- 85 -

86A

2019 to resolve these issues, not the perforations in her esophagus. Defendants Giap and Bindman, through supervision and management, approved and carried out this course and scope of treatment in their hospitals located in Orange County, CA. Giap and Kaiser seen Mrs. Lynn before, during, and this corrective surgery at Kaiser locations. None of the Defendants never told, offered, or explained any other treatment options which could help relieve her symptoms related to her esophagus. Giap and Kaiser did not inform Plaintiffs that on October 14, 2023 through October 17, 2023 that Giap had to fix a prior doctor(s) unsuccessful esophageal stent placement to prevent the leakage side effect of Ivor Lewis surgery. Plaintiffs lacked this information to make medical decisions, especially concerning undergoing a corrective EGD surgery for the esophageal stent. She lacked this concealed information until 2020 when Giap had to remove the stent, which was five-month post his corrective EGD surgery. Plaintiffs never consented to Giap and Kaiser performing this corrective surgery to secure the esophageal stent which was used to prevent continue leakage from her body, which is a known and common side effect of an Ivor Lewis surgery. After her release, Pamela Lynn's symptoms only increased and did not resolve the prior ones she experienced. She experienced more pain due to the stent and the Plaintiffs had no idea that Defendants had placed a stent in her. Due to the stent being placed in her, Giap performed two additional EGD surgeries on her. Kaiser, Giap, and Dr. Bindman did not object to this course and scope of treatment that included this corrective EGD surgery and removal EGD surgery of the stent at their facilities located in Orange County, CA which contributed to Mrs. Lynn's injuries. Kaiser's medical notes leave out the esophageal perforations as a medical condition until later. Prior to this event, Mrs. Lynn was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants

- 86 -

87A

Giap, Bindman, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Giap and Kaiser failed to identify and/or signs of taking alternative approaches for her long-term medical care. Defendants Giap, Bindman, and Kaiser failed to inform Pamela Lynn of her injuries and released her from their facility located in Anaheim, CA whom Bindman oversaw and others in Orange County, CA. These failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above-described negligence.

6. Pamela Lynn was a patient of Loza (he was the primary care physician) and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. From the onset of Pamela Lynns esophagus issues (2019) until she was no longer a Kaiser insured her Defendants Loza (2021) never told, offered, or explained any other treatment options which could help relieve her symptoms related to her esophagus nor did he intervene to stop or recommend immediate care to help her. Kaiser, Loza, and Dr. Bindman did not object to this course and scope of treatment that included this corrective over nine (9) EGD surgeries, Ivor Lewis Surgery, use of Esophageal stent and removal of the stent through another EGD surgery at their facilities located in Orange County, CA which contributed to Pamela Lynn's injuries. Defendant Loza did not inform Pamela Lynn of her esophageal perforations or investigate further the result of her Ivor Lewis surgery. His recommendations for her care was nonexistent. Prior to this event, Mrs. Lynn was active and live independently with her husband, Wilson Lynn, Jr.

- 87 -

**88A**

However, this is no longer the case. Defendants Loza, Bindman, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Loza and Kaiser failed to identify and/or signs of taking alternative approaches for her long-term medical care. Defendants Loza, Bindman, and Kaiser failed to inform Pamela Lynn of her injuries and released her from their facility located in Anaheim, CA whom Bindman oversaw and others in Orange County, CA. These failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above-described negligence.

7. Pamela Lynn was a patient of Defendant Barreto and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. After undergoing the Ivor Lewis Surgery and EGD surgeries in October 2019, Pamela was on a breathing ventilator everyday. Defendant Barreto waited until November 2019 to perform a tracheotomy surgery via a non-licensed resident even though Pamela Lynn was in the intensive care unit. Kaiser, Barreto, and Dr. Bindman did not object to this course and scope of treatment that included this delay in performing the tracheotomy surgery at their facilities located in Orange County, CA which contributed to Pamela Lynn's injuries. Defendant Barreto did not inform Pamela Lynn of the delay of performing the tracheotomy surgery. Defendant Barreto did not inform Pamela Lynn that the performing of the tracheotomy surgery would be done by a non-licensed resident and that the surgery would not be done by him who is an experienced head and neck surgeon. Prior to this event, Mrs. Lynn was

- 88 -

**89A**

active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants Barreto, Bindman, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Barreto and Kaiser failed to identify and/or signs of taking alternative approaches for her long-term medical care including earlier medical intervention by an experienced head and neck surgeon. Defendants Barreto, Bindman, and Kaiser failed to inform Pamela Lynn of her injuries, the need to have tracheotomy surgery sooner and for it to be done by an experience surgeon such as Barreto in their facility located in Anaheim, CA whom Bindman oversaw and others in Orange County, CA. These failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above-described negligence.

Applied to this Complaint, the Defendant Medical Doctors and Health Care Facility negligence in the seven (7) different actions give Wilson his Loss of Consortium claims against them. The above-described failures and/or breaches of the standard of care were a substantial cause of Pamela Lynn undergoing eight surgeries, having two perforations in her esophagus unresolved, and inability to be the wife that she was prior to May 2019 to her husband. Defendant suffered damages including but not limited to the loss of companionship, comfort, care, assistance, protection, affection, society, and moral support in addition to other non-economic damages.

Therefore, the Defendant Health Care Providers and Health Care Institutions are liable for negligence and loss of consortium and this Court shall award the Lynns the damages of $7,350,000.

- 89 -

**90A**

**XXII. This Court shall award damages to the Lynns for Defendant Adams and Janet Liang for negligence in all of their seven (7) actions.**

Defendants Adams (Chief Executive Officer) and Liang (Chief Operating Officer) had a duty to manage and oversee the Kaiser entities employees and facilities as, and to exercise due care such that it did not result in damage to Plaintiffs. Plaintiff is informed and believes, and thereon alleges, that the Defendants failed to excise such due care, and negligently caused damage to Plaintiffs. Plaintiff is informed and believes, and based thereon alleges, that at said time and place, the Defendants acted negligently, and that such negligence was the proximate cause of damage to Plaintiffs and the Defendants are therefore liable to Plaintiff for their damages.

Therefore, this Court shall award damages of the total of $7,350,000.

**XXIII.     This Court shall award damages to the Lynns for Defendants Kaiser and their Medical Doctors Battery and Breach of Fiduciary Duty. (Fed. R. Civ. P. 8)**

Medical battery in California is defined as an intentional tort that occurs when a doctor performs a medical procedure without obtaining any consent from the patient, or when the doctor performs a substantially different procedure than the one for which consent was given. The essence of medical battery is the intentional and unlawful contact, which is considered harmful if it is unconsented to *Ashcraft v. King*, 228 Cal. App. 3d 604 (1991), *Saxena v. Goffney*, 159 Cal. App. 4th 316 (2008), So v. Shin, 212 Cal. App. 4th 652 (2013).

The following instances are actions brought by Pamela for Medical Battery:

- 90 -

**91A**

1. Defendants Davison, Vaquerano, and Kaiser touched Pamela Lynn by putting an esophageal stent in her during and/or after Ivor Lewis Surgery. By Defendants Davison, Vaquerano, and Kaiser putting in this esophageal stent they did so with intent to harm and/or offend her because she did not consent to this type of touching. As a result of this stent, which dislodged and required further surgical procedures to correct and removal, she was harmed and offended by the Defendants conduct and a reasonable person would have been offended by the touching due to them not giving consent for this type of touching. The Ivor Lewis Surgery has a known and common side effect of leakage from the procedure, which an esophageal stent is the preferred treatment of choice to prevent further leakage. This was not communicated to Plaintiff who specifically did not consent to any use of the stent due to the risk of dislodgment as other physicians at Kaiser represented. Use of the stent for the side effect of leakage, is a non emergency occurrence being that it is a known side effect and/or risk of doing the surgery. Defendants was intentional and deliberate to deviate from the scope of the consent to perform this costly and complex Ivor Lewis Surgery knowing that a esophageal stent would be required to mitigate the leakage side effect. Defendants Davison, Vaquerano, and Kaiser called the common side effect of leakage as an emergent situation that required them to use the stent to save Pamela Lynn's life. This was not communicated to Plaintiffs, and the Defendants performed operation(s) during and after the Ivor Lewis Surgery which Pamela Lynn did not consent to. Defendants obtained Pamela Lynn's consent for the Ivor Lewis Surgery but not for a substantially different treatment, which was the use of the esophageal stent. As a result of the use the stent, Pamela Lynn was injured permanently and underwent further medical care and hospitalization all to which the Defendants are liable for. Bindman and Kaiser failed to supervise

- 91 -

**92A**

their hospital and staff where the above events took place and as a result injured Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above batteries.

2.      Defendants Giap and Kaiser touched Pamela Lynn by performing EGD surgeries to secure the esophageal stent and remove the stent in her during and/or after Ivor Lewis Surgery. By Defendants Giap and Kaiser performed this an intent to harm and/or offend her because she did not consent to this type of touching. As a result of Defendants actions, Pamela required further surgical procedures to correct and remove the stent, which caused her significant chronic pain, she was harmed and offended by the Defendants conduct and a reasonable person would have been offended by the touching due to them not obtaining consent for this type of touching. The Ivor Lewis Surgery has a known and common side effect of leakage from the procedure, which an esophageal stent is the treatment to prevent further leakage. This was not communicated to Plaintiff who specifically did not consent to any use of the stent due to the risk of dislodgment as other physicians at Kaiser represented. Use of the stent for the side effect of leakage, a non emergency occurrence being that it is a known side effect and/or risk of doing the surgery, was an intentional and deliberate action to deviate from the scope of the consent to perform the Ivor Lewis surgery. Defendants Giap and Kaiser called the common side effect of leakage as an emergent situation that required them to perform EGD surgeries to save Pamela Lynns life. This was not communicated to Plaintiffs, and the Defendants performed operation(s) during and after the Ivor Lewis Surgery which Pamela Lynn did not consent to. Defendants obtained Pamela Lynn's consent for the Ivor Lewis Surgery but not for a substantially different treatment, which were the corrective and removal surgeries for the stent. As a result of

- 92 -

Defendants actions, Pamela Lynn was injured permanently and underwent further medical care and hospitalization all to which the Defendants are liable for. Bindman failed to supervise Giap and Kaiser in regards to these corrective and removal stent surgeries at facilities located in Orange County, CA. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above batteries.

Therefore, this Court shall award Medical Battery damages to Pamela in an amount of $22,050,000, which is approximately three (3) times the amount of damages already accrued for each instance, not including exemplary damages, which upon grant of this Court to proceed via motion, Plaintiffs will do.

Moreover, a breach of fiduciary duty can be based on either negligence or fraud, depending on the circumstances *Ash v. North American Title Co.*, 223 Cal. App. 4th 1258 (2014), *Tribeca Companies, LLC v. First American Title Ins. Co.*, 239 Cal. App. 4th 1088 (2015). For example, in *Scripps Clinic v. Superior Court*, the court found a breach of fiduciary duty where a medical clinic terminated care without providing ample opportunity for the patient to secure alternative medical attendance, thus violating the standard of care and medical ethics *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917 (2003).

The following instances are actions brought by Pamela for Breach of Fiduciary Duty:

1. Pamela Lynn was a patient of Respondents, which demonstrated the existence of a fiduciary relationship. Respondents breached this relationship when they released Pamela Lynn from the facility prematurely in an unstable medical condition, and doing so, they put their and Kaiser's monetary interest above the health of Pamela Lynn. Respondents did this to save Kaiser money since it cost more to keep Pamela Lynn in

- 93 -

94A

their facility and, to not risk themselves being found professional negligent for keeping her in the facility with unresolved medical conditions. In effect, Respondents shifted the responsibility to caring for Pamela Lynn to the follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon, which did not take place until weeks later. Again, Kaiser's medical notes did not document any esophageal perforation for the dates of these services. If they disclosed this material information to Pamela Lynn, a judgment and/or claim paid out for their and their colleagues' professional negligence would be put on their medical license in California as a disciplinary action. Kaiser may have discontinued their and their colleagues' employment, which includes his medical practice, salary, and/or benefits, due to their reputation being diminished for professional negligence. Respondents and their colleagues' reputation is also diminished when future patients see that they were professionally negligence due to the disciplinary action of negligence being placed on his medical license by the State of California Medical Board for conducting or not timely conducting the medical services and/or treatment needed by Pamela Lynn before discharge. They could have also been responsible for paying out these claims with their own money or insurance. As a result of this, Respondents actions proximately caused damage to Pamela Lynn since she was prematurely discharged from the facilities all for the Respondent's and Kaiser's financial gain or prevention of their financial loss. As a result of this breach by Respondents, they breach proximately caused damage to Pamela Lynn because she lacked this material information to make decisions about her health, which involved her serious and true medical state, and she also continued to suffer from these medical conditions that were still unresolved. Kaiser did not object to this course and scope of treatment, including Pamela Lynn's release from their facilities and

- 94 -

**95A**

failure to inform her and/or note her medical notes that she had esophageal perforations, and she also continued to suffer from these medical conditions that were still unresolved. Kaiser failed to supervise their hospital where the above events took place and as a result injured Pamela Lynn. Claimant Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above-described breach of fiduciary duty. Respondents breached this relationship when they released Pamela Lynn from the facility prematurely in an unstable medical condition, and doing so, they put their and Kaiser's monetary interest above the health of Pamela Lynn. Respondents did this to save Kaiser money since it cost more to keep Pamela Lynn in their facility and, to not risk themselves being found professional negligent for keeping her in the facility with unresolved medical conditions. In effect, Respondents shifted the responsibility to caring for Pamela Lynn to the follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon, which did not take place until weeks later. Again, Kaiser's medical notes did not document any esophageal perforation for the dates of these services. If they disclosed this material information to Pamela Lynn, a judgment and/or claim paid out for their and their colleagues' professional negligence would be put on their medical license in California as a disciplinary action. Kaiser may have discontinued their and their colleagues' employment, which includes his medical practice, salary, and/or benefits, due to their reputation being diminished for professional negligence. Respondents and their colleagues' reputation is also diminished when future patients see that they were professionally negligence due to the disciplinary action of negligence being placed on his medical license by the State of California Medical Board for conducting or not timely conducting the medical services and/or treatment needed by Pamela Lynn before discharge. They

- 95 -

**96A**

could have also been responsible for paying out these claims with their own money or insurance. As a result of this, Respondents actions proximately caused damage to Pamela Lynn since she was prematurely discharged from the facilities all for the Respondent's and Kaiser's financial gain or prevention of their financial loss. As a result of this breach by Respondents, they breach proximately caused damage to Pamela Lynn because she lacked this material information to make decisions about her health, which involved her serious and true medical state, and she also continued to suffer from these medical conditions that were still unresolved. Kaiser did not object to this course and scope of treatment, including Pamela Lynn's release from their facilities and failure to inform her and/or note her medical notes that she had esophageal perforations, and she also continued to suffer from these medical conditions that were still unresolved. Kaiser failed to supervise their hospital where the above events took place and as a result injured Pamela Lynn. Claimant Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above-described breach of fiduciary duty.

2. Pamela Lynn was a patient of Jonas and Kaiser, which demonstrated the existence of a fiduciary relationship. Jonas breached this relationship when he ordered eight EGD surgeries on Pamela Lynn within a five month span to obtain financial compensation for these treatments. He knew that doing this many EGDs could injure her esophagus further, but he disregarded this to order and oversee these treatments to earn money thereby putting his monetary interest above the health of Pamela Lynn. Kaiser also increased monetarily for allowing and housing these EGDs in their Kaiser Facilities. Jonas also breached this relationship when he intentionally concealed the two perforations in Pamela Lynn's esophagus due to the eighth EGD performed on her. He concealed

- 96 -

**97A**

this specific injury to protect his financial wherewithal because his reputation is tied to his monetary interest. Kaiser's medical notes did not document any esophageal perforation for date of the eighth EGD. If he had disclosed this material information to Pamela Lynn, a judgment and/or claim paid for his professional negligence would be put on his medical license in California as a disciplinary action. Kaiser may have discontinued his employment, which includes his medical practice, salary, and/or benefits, due to his reputation being diminished for his professional negligence. His reputation is also diminished when future patients see that he was professionally negligence due to the disciplinary action of negligence being placed on his medical license by the State of California Medical Board. He could have also been responsible for paying out these claims with his own money or insurance. As a result of this breach by Jonas and Kaiser, their breaches proximately caused damage to Pamela Lynn since she underwent unnecessary eight EGDs surgeries for Dr. Jonas' and Kaiser's financial gain. As a result of this breach by Jonas, his breach proximately caused damage to Pamela Lynn because she lacked this material information to make decisions about her health. Bindman and Kaiser failed to supervise their hospital and staff where the above events took place and as a result injured Pamela Lynn. Plaintiffs suffered damages in the form of medical expenses, pain and suffering because of the above-described breach(es) of fiduciary duty.

3. Pamela Lynn was a patient of Davison, Vaquerano, and Kaiser, which demonstrated the existence of a fiduciary relationship. Davison breached this relationship when he performed the Ivor Lewis Surgery despite other less costly and relevant alternative surgeries which he did not present to the Plaintiffs. He did this to earn more money for himself and Kaiser due to this surgery being more complex and costly then alternatives,

- 97 -

which directly dealt with her esophageal
perforations. In doing this he put his monetary
interest above Pamela Lynn's remedying of her
medical condition. In telling Pamela Lynn that the
Ivor Lewis Surgery would help relieve her
symptoms and not her esophageal perforations, he
was able to obtain her consent to go forward with
the surgery which was not the direct surgery to
heal her medical condition. Davison breached this
relationship when he when he intentionally
concealed the that he severed Pamela Lynn's
Vagus Nerve in 2019, which he did not tell the
Plaintiffs until 2021 and he did not even explain
what he meant. He concealed this injury to protect
his financial wherewithal because his reputation is
tied to his monetary interest. Again, Kaiser's
medical notes did not document any esophageal
perforation for the date of this service. If he
disclosed this material information to Pamela
Lynn, a judgment and/or claim paid out for his
professional negligence would be put on his
medical license in California as a disciplinary
action. Kaiser may have discontinued his
employment, which includes his medical practice,
salary, and/or benefits, due to his reputation being
diminished for his professional negligence. His
reputation is also diminished when future patients
see that he was professionally negligence due to
the disciplinary action of negligence being placed
on his medical license by the State of California
Medical Board for severing her Vagus nerve. He
could have also been responsible for paying out
these claims with his own money or insurance.
The same is true as applied to Vaquerano and
Kaiser relationship with Pamela Lynn. As a result
of this, all their actions proximately caused
damage to Pamela Lynn since she underwent an
unnecessary, complex surgery and was injured by
Defendants permanently from it, which was all
Defendant's financial gain. As a result of this
breach by Defendants, their breach proximately
caused damage to Pamela Lynn because she lacked
this material information to make decisions about

- 98 -

**99A**

her health. Bindman and Kaiser failed to supervise their hospital and staff where the above events took place and as a result injured Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above- breaches.

Therefore, this Court shall award Breach of Fiduciary Duty damages to Pamela in an amount of $22,050,000, which is approximately three (3) times the amount of damages already accrued for each instance, not including exemplary damages, which upon grant of this Court to proceed via motion, Plaintiffs will do.

## XXIV. This Court shall award damages to the Lynns for Defendants Kaiser, Kaiser Medical Doctors, and Kaiser Non-Medical Doctors Executives corporate negligence and administrative negligence. (Fed. R. Civ. P. 8)

In essence, when a hospital or medical plan puts the business before the medicine or care of patient then it is corporately negligent and administratively negligent. The State of Texas has a law that bans what is called "The Corporate Practice of Medicine."

Applied to these circumstances, in Pamela's medical record, there are instances where the words *OVERRIDE* appear whenever a treating physician had to order antibiotics or specialty medicine. This is only one example and is not exhaustive of the words' use.

The point is that a physician has to override the business system in order to provide medical care.

A logical deduction of this process is that Kaiser physicians have to override the business programmed recommendation (software and/or artificial intelligence) to provide Patient/Pamela needed

- 99 -

**100A**

medicine and/or medical care. The recommendation could be to reduce cost for the Kaiser medical plan and/or hospital.

Another logical deduction of this business process is that when a Kaiser physician does not override the recommendation, then the business wins out and potentially the patient/Pamela does not get the care they needed in order to save costs.

Another logical deduction is this system has a built in incentive or metrics that Kaiser physicians have to report into to either be rewarded or not rewarded, which indicates a sort of Game Theory simulation.

Defendant Kaiser Non-Medical Executives, their CEO and COO, would be overseeing and/or approving this practice, and they also approved directly or indirectly of this software system.

There may be a systemic flaw for patient care that has been put in practice by Kaiser executives who were hired most likely by the Kaiser Board of Directors.

Therefore, Plaintiffs have allegations of this type of harm being perpetrated against them.

## XXV. This Court shall award damages to the Lynns for Defendants Kaiser indemnification contractual obligations of the State of California and County of Orange. (Fed. R. Civ. P. 8)

Cal Health & Safety Code §101833 states "any contract executed by and between the county and the hospital authority shall provide that liabilities or obligations of the hospital authority with respect to its activities pursuant to the contract shall be the liabilities or obligations of the hospital authority, and shall not become the liabilities or obligations of the county."

- 100 -

**101A**

Applied to these circumstances, Kaiser is a hospital that operates in the State of California and in the County of Orange. In the County of Orange there are no county hospitals, so the hospitals are owned privately. Kaiser operates two hospitals in the County of Orange, one in Irvine, CA and another in Anaheim, CA, both of which are the hospitals where the first and second claims for relief stem from.

In order to operate as a hospital in the State of California Kaiser must meet the California Department of Health & Safety requirements to be issued their licensing number, which is California License Number: 550003560.

Plaintiff believe in good faith that – per the code – Kaiser may have an agreement between themselves and County of Orange and State of California, which may have Kaiser's contractual indemnification obligations as stated in the code within them.

Therefore, Plaintiffs want to use that obligation to help Kaiser pay for Plaintiffs entire damages and even above and beyond the California Medical Malpractice code limitations set forth above.

**XXVI. This Court shall declare judgment that the private arbitration agreement between Kaiser and the Lynns was not signed, so this Court is to take judicial notice of it, and dismiss the arbitration and vacate any and all arbitrator awards to comply with the Federal Arbitration Act. (Fed. R. Civ. P. 56)**

Under the 9 U.S. Code § 4, if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

Applied to this circumstance, on February 12, 2024, the Plaintiffs requested from Defendant Kaiser and their Legal Representation the production of the

- 101 -

2019 and 2020 Medical Plan, Arbitration Agreement, or Enrollment forms (altogether "Arbitration Agreement"), which contain the Plaintiff's signature on them. Defendants have not produced the signed Arbitration Agreement so the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, which is the case here. Since Defendants have not produced the Arbitration Agreement signed, then the court shall proceed summarily to the trial thereof.

Therefore, this Court shall proceed to a Federal trial due to this.

Under the 9 U.S. Code § 4, if the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.

Applied to this circumstance, on February 28, 2024, the Plaintiffs requested Defendant Office of Independent Adminstrator ("OIA") administratively to revoke the OIA Arbitration number 18022 and suspend JAMS ADR Arbitration reference number 1200060834 ("Arbitration") and dismiss the Arbitration without prejudice due to the Defendants not producing the signed Arbitration Agreement.

Therefore, this Court via Judicial Notice of these facts stated herein and as provided as evidence shall dismiss or affirm Plaintiffs dismissal of the Arbitration without prejudice due to there is no default in proceeding thereunder.

Under California Health and Safety Code **§** 1363.1 (2024), any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions: **(a)** The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including

- 102 -

**103A**

specifically whether the plan uses binding arbitration to settle claims of medical malpractice. **(b)** The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee … wording provided in subdivision (a) of Section 1295 of the California Code of Civil Procedure.

Applied to this case, the Lynns sought Kaiser to produce their signed enrolled agreement containing their signatures for their health plan with Kaiser for the years of 2019 and 2020 and Kaiser could not produce them.

Therefore, Kaiser's failure to produce these signed enrollment agreements demonstrates that there was no compliance by them of this California law, so the Arbitration was properly dismissed without prejudice by the Lynns counsel on April 2, 2023 and we ask for this Court to affirm this.

Under 9 U.S. Code § 5, the court can only appoint an arbitrator or umpire when there is an enforceable agreement with the procedure for the appointment.

Applied to this circumstance, since there is no Arbitration Agreement, then this Court is required to adjudicate all of Plaintiffs claims.

Under 9 U.S. Code § 10, in any of the following cases the US court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) … the award was procured by corruption, fraud, or undue means…;

Applied to this circumstance, from the start of the Arbitration until today, March 13, 2024, Defendant JAMS ADR through State Arbitrator

- 103 -

**104A**

Nakamura has ruled all in favor of Defendant Kaiser. State Arbitrator granted Kaiser's 1st motion to strike and demurrer. In doing so, State Arbitrator did not rule that Defendant Kaiser's two (2) motions were a motion for summary judgment due to them including extrinsic evidence without any authentication and foundation thereby allowing these motions to defeat Plaintiffs' cause of action for medical battery and damages in total amounting to approximately over $20,000,000.00. In addition, State Arbitrator has not included Defendant Kaiser Medical Doctors in the Arbitration who were personally served under California law.

Therefore, due to the above, the award/ruling/decision by the State Arbitrator were procured through corruption, fraud, and undue means as they were made contrary to California law and this court shall vacate the award/ruling/decision made by the State Arbitrator.

Under Fed. R. Civ. P. 8, in alleging fraud…a party must state with particularity the circumstances constituting fraud ... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Applied to this circumstance, in order to preserve Plaintiffs' cause of action and to include the Defendants Kaiser Medical Doctors, and Defendants Kaiser Non-Medical Executives, Plaintiffs filed the six (6) OCSC cases and uploaded the First Amendment Demand in the Arbitration and called it "5000-0001." In response to this, Kaiser's Legal Representation then proceeded to upload - under the direction of Myra Firth and Brian Meadow through their Legal Assistant / Paralegal, Mitizi Thomas - different and distinct versions of the six (6) OCSC cases (excluding Defendant Greg Adams and different causes of actions) to the JAMS Portal. These are the particular circumstances constituting fraud (an act fitted to deceive another) by Kaiser which intended to deceive JAMS ADR to believing that the Plaintiffs had pled

- 104 -

**105A**

these modified six (6) OCSC cases in the Arbitration. Over Plaintiffs oral and written objections, Kaiser submitted seven (7) motions: Five (5) to compel discovery and two (2) to demurrer and strike all the uploads into JAMS Portal. Again, Plaintiffs did not plead them in Arbitration but a distinct and different version in OCSC. State Arbitrator has not sustained Plaintiffs objections, but instead proceeded with the Arbitration with the inclusion of them (Kaiser Legal Representation uploads).

Therefore, Defendants JAMS ADR and Kaiser committed fraud against the Plaintiffs to deny them of their rights to recovery and it was done with malice, intent, knowledge, and other conditions of these person's minds. As of result of this, this court shall vacate the award/ruling/decision made by the State Arbitrator.

Furthermore, this pattern where the award is procured through corruption, fraud, and undue means continues despite Plaintiff demonstrating more elements to vacate.

"… (2) …there was evident partiality or corruption in the arbitrators, or either of them…";

Due to the above, there was evidence of partiality (all Defendant JAMS ADR rulings made for Defendant Kaiser) or corruption (Defendant Kaiser pleading the Plaintiffs case to prejudice and injure their rights). Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

"… (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or…"

On February 28, 2024, Plaintiffs via email requested State Arbitrator to stay the Arbitration

- 105 -

**106A**

until Defendants could produce the signed Arbitration Agreements and as a result of this request, and also, continue the Defendants seven (7) motions schedule as described above. Defendants via email opposed Plaintiff's requests by asserting legal arguments based on 2002 and 2005 enrollment/arbitration agreements signed by Wilson Lynn, Jr. Plaintiffs responded that these outdated arbitration agreements were irrelevant and prejudicial and that 2019 and 2020 agreements are necessary for this as this is the time period where Plaintiffs allege Defendants injured Pamela.

Due to the above, State Arbitrator, as determined by this Court, [was/were] guilty of misconduct in refusing to postpone the motions hearing or even staying the Arbitration until the production of the Arbitration Agreement.

Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

Continuing the narrative of February 28, 2024, within a total of an hour and a half including the emails above, State Arbitrator via email wrote "In light of the signed agreements and the other arguments set forth by Mr. Meadows (Defendants Kaiser Legal Representation), I must again deny the request to dismiss the arbitration by Mr. Zamora [Plaintiff's counsel]" and in doing so, created the 2019 and 2020 Arbitrations Agreements from the 2002 and 2005 enrollment/arbitration agreements. Afterward, Plaintiff objected to this ruling as without the production of the Arbitration Agreements the State Arbitrator's ruling(s) have no legal binding effect and that Plaintiff would file this lawsuit in Federal court to have a federal judge rule on the existence of an arbitration agreement absent the Defendants production of the signed Arbitration Agreements.

Due to the above, State Arbitrator, as determined by this Court, [was/were] guilty of misconduct in refusing to dismiss the Arbitration

- 106 -

absent the signed Arbitration Agreements, and a result, this court shall vacate the award/ruling/decision made by the State Arbitrator.

On March 1, 2024, Plaintiff ordered the State Arbitrator under California law to rule on their objections, including a new one that the 2002 and 2005 enrollment/arbitration agreements were parol evidence, which barred them from use as evidence, and amend his ruling with the exclusion of this parol evidence. Plaintiffs also opposed seven (7) motions of Defendants Kaiser in this communication as well based on the objections and order to amend his rulings. State Arbitrator overruled the objections and did not amend his ruling to exclude the parol evidence, and ignored Plaintiff opposition to the Defendants seven (7) motions based on Plaintiffs challenges for Defendant not producing the Arbitration Agreements. State Arbitrator denied Plaintiffs request for continence of the motions schedule (Defendant Kaiser's reply, 3/7/24) and Motion Hearing, 3/15/24).

The above demonstrates how the State Arbitrator refused to hear evidence pertinent and material to the controversy, which is that there is no signed Arbitration Agreement and that he did not exclude parol evidence which is a matter of substantive law and not subject to the Arbitrator/Judge weigh on relevancy restriction such as probability and prejudice to the parties engaged in the lawsuit. Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

"… (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made..."

Applied to this Arbitration, State Arbitrator has exceeded his powers by making rulings absent the authority given to him by having an Arbitration Agreement signed by the Plaintiffs. Therefore, this

- 107 -

**108A**

Court shall vacate the award/ruling/decision made by the State Arbitrator.

**XXVII.** **This Court shall award damages to the Lynns for Defendants Kaiser, Kaiser Legal Representation, JAMS ADR, including Nakamura, for their perpetration of a Federal Civil Conspiracy. (Fed. R. Civ. P. 8)**

Under Fed. R. Civ. P. 8, in alleging fraud…a party must state with particularity the circumstances constituting fraud … Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. In Leisure Founders, the trial judge dismissed plaintiff's conspiracy to commit common law fraud claim for failure to comply with Fed. R. Civ. P. 8(b), finding that it did not state "the circumstance constituting fraud… with particularity". *Leisure Founders, Inc., v. CUC Int'l, Inc.*, 833 F.Supp. 1564 (S.D. Fla. 1993).

Applied to these circumstances, the above discussion for vacation of the awards/rulings/decisions has complied with Fed. R. Civ. P. 8(b).

The Pinkerton doctrine (conspirator is vicariously liable for substantiative acts committed in the furtherance of conspiracy which are foreseeable) is applicable in civil cases as it is in criminal cases. *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983); *Pinkerton v. United States*, 328 U.S. 640 (1946).

Applied to these circumstances, Defendants Kaiser, Kaiser's Legal Representation, and JAMS ADR have engaged in a conspiracy to commit fraud against the Plaintiffs rights to recover for their injuries. All of the acts described in the vacation of the awards are the substantive acts that these Defendants have committed in the furtherance of this conspiracy which are foreseeable because they all injure the Plaintiffs right to recover on claims

- 108 -

**109A**

asserted and also this conspiracy substantive acts remove liability from Defendant Kaiser.

Therefore, these Defendants shall be held responsible for their damages caused to the Lynns in the amount of three times their overall damages plead herein.

**XXVIII.     This Court shall award damages to the Lynns for Defendants Kaiser, Kaiser Legal Representation, JAMS ADR, including Nakamura, and State of California's violation of the Lynns due process rights and equal protection guaranteed under Amendment 14. (Fed. R. Civ. P. 8)**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Applied to these circumstances, the State of California has given an arbitrator authority to make binding, legal awards/rulings/decisions in the presence of a signed arbitration agreement thereby giving Defendant JAMS ADR state power. In Defendant JAMS ADR exercising this state power without a signed Arbitration Agreement it has abused this power – the same is true with the discussion of vacating awards and Federal Civil Conspiracy – and has deprive any person of life, liberty, or property, without due process of law (an actual court hearing this matter) and has denied the Plaintiffs within its jurisdiction the equal protection of the laws because Defendant JAMS ADR rulings are injuring the Plaintiffs and not protecting them.

- 109 -

**110A**

Therefore, this court shall not allow Defendant JAMS ADR to abuse state power and deny the Plaintiffs due process of the law or equal protection of the law. In doing so, Plaintiffs ask this court to dismiss the Arbitration and hold relevant Defendants liable to the fullest extent of the Supreme Law of the land, the US Constitution.

## XXIX. This Court shall automatically revoke Defendant Kaiser Federal Tax Exempt Status due to perform their Charitable Purpose as demonstrated through the injuries to the Lynns. (Fed. R. Civ. P. 54)

Under 26 USCS § 501…Exemption from taxation. An organization…shall be exempt from taxation…[any] Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable [purpose]…

Applied to these circumstances, Defendant Kaiser is a tax exempt organization under this federal statute and they are a nonprofit corporation organized and operated exclusively for a charitable purpose. Per their 990 form filed in 2022, Defendant Kaiser's charitable purpose is:

TO PROVIDE HIGH-QUALITY, AFFORDABLE HEALTH CARE SERVICES TO IMPROVE THE HEALTH OF OUR MEMBERS AND THE COMMUNITIES WE SERVE.

The Plaintiffs have not received high-quality, affordable health care services to improve their health (as they were members) because Plaintiffs have been subject to catastrophic injuries stemming from Medical Malpractice, Battery, Breach of Fiduciary Duty, Corporate Negligence and Administrative Negligence, Federal Civil Conspiracy, a corrupt, fraudulent, and undue means Arbitration procedural and substantive process, 14th Amendment and Sherman Act violations, which in total amount to

- 110 -

**111A**

Defendant Kaiser not meeting their charitable purpose.

Therefore, this court shall engage the IRS via the Southern District of Texas to come down the hall and revoke Defendant Kaiser's tax exempt status immediately as they should not enjoy the privileges and immunities granted to nonprofit / public charities who execute their charitable purpose.

**XXX. This Court shall award damages to the Lynns for Defendants Kaiser, Kaiser's Legal Representation, JAMS ADR and their employees' violation of the Sherman Act, 15 U.S.C. §§ 1–7, for enforcing arbitration agreements (expressed or implied) between two or persons that restrain trader by producing anticompetitive effects that negatively affect interstate or foreign commerce which injures Kaiser Patients in these Defendant US States. (Fed. R. Civ. P. 8)**

Enacted in 1890, the Sherman Act is U.S. antitrust law's backbone. According to *N. Pac. R. Co. v. United States*, 356 U.S. 1, 4 (1958), the act was designed to be "a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade." However, the Act itself is brief, with just two main sections. Section 1 prohibits unreasonable restraints of trade among parties, also referred to as "coordinated conduct" or "concerted action." In full, Section 1 states:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or

- 111 -

**112A**

by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 1. At its core, a violation of Section 1 requires: An agreement (express or implied), Between two or more persons, That restrains trade by producing anticompetitive effects outweighing any procompetitive effects stemming from the agreement –and– Affects interstate or foreign commerce

The relevant Defendants, which are highly sophisticated organizations, are aware of the Sherman Act and that its the U.S.'s antitrust law's backbone. According to N. Pac. R. Co. v. United States, 356 U.S. 1, 4 (1958), the act was designed to be "a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade", and applied to this complaint, Plaintiffs did not have economic liberty or freedom to choose and alternative arbitration system like:

American Arbitration Association, Arbitration Institute of the Stockholm Chamber of Commerce (SCC), China International Economic and Trade Arbitration Commission (CIETAC), Court of Arbitration for Sport (CAS), European Court of Arbitration, German Institute for Arbitration (DIS), Hong Kong International Arbitration Centre (HKIAC), International Centre for Dispute Resolution of the American Arbitration Association (ICDR), International Centre for Settlement of Investment Disputes (ICSID), International Court of Arbitration of the International Chamber of Commerce (ICC), London Court of International Arbitration (LCIA), Permanent Court of Arbitration at the Hague, Swiss Arbitration Association, Vienna International Arbitral Centre (VIAC), World Intellectual Property Organization Arbitration and Mediation Center (WIPO).

Instead, the Plaintiffs, as well as any other patient(s) of Kaisers, are stuck going through the Defendant Kaiser's private arbitration system

- 112 -

**113A**

administered by the OIA and Arbitrators provided by Defendant JAMS ADR state arbitrators. Where Kaiser's Legal Representation make it extremely long, arduous arbitration where the Plaintiffs have not received an award.  Plaintiffs, as well as any other patient(s) of Kaisers, do not have the ability to choose any of the arbitration systems listed in 114. above. Furthermore, the Kaiser Arbitration system through the OIA Rules 2024 controls who are state arbitrators via their own list of them that Plaintiffs, as well as any other patient(s) of Kaisers, have to choose from and Kaiser and Kaiser's Legal Representation have the right to oppose the state arbitrator selected. If Plaintiffs, as well as any other patient(s) of Kaisers, seek to bring in an outside arbitrator or even one in the OIA system who is not on the list offered by the OIA, Kaiser and Kaiser Legal Representation can unilaterally say no and deny the access to that specific arbitrator. This happened to the Plaintiffs.

Therefore, Plaintiffs, as well as any other patient(s) of Kaisers, do not have the liberty or freedom that the Sherman Act requires, so the relevant Defendants have violations the Plaintiffs right to free trade due to them not have access to other arbitration systems or even a fair system to pick their own arbitrators.

Moreover, the Defendants have rigged their system in their favor and have injured the Plaintiffs, as well as any other patient(s) of Kaisers, which has been occurring since March 1999.

Section 1 prohibits unreasonable restraints of trade among parties, also referred to as "coordinated conduct" or "concerted action." In full, Section 1 states:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be

- 113 -

**114A**

deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

Applied to the Plaintiffs, the Federal Civil Conspiracy as complained about above by the Plaintiffs is illegal per the Act.

In addition, there is a clear and repetitive restraint on trade ongoing since March 1999, which Plaintiffs, as well as any other patient(s) of Kaisers, have been injured by.

Furthermore, Defendants have made contract (Plaintiffs did not sign the Arbitration Agreement but Defendant imply one through use of parol evidence) and have engaged in any combination or conspiracy (as pleaded herein) hereby declared to be illegal shall be … Plaintiffs leave this to the proper Federal Authorities.

15 U.S.C. § 1. At its core, a violation of Section 1 requires:

An agreement (express or implied). Plaintiff pled this element in 121. above.

Between two or more persons. There are two or more person / organizational Defendants that have injured Plaintiffs, as well as any other patient(s) of Kaisers.

That restrains trade by producing anticompetitive effects outweighing any procompetitive effects stemming from the agreement –and – There is a restraint on trade by producing anticompetitive effects that outweigh any procompetitive effects stemming from the agreement. As pled, all of those other arbitration systems or unapproved arbitrators outside Defendants arbitration system are excluded so this give them a

- 114 -

**115A**

monopoly and there is no procompetitive effects from the agreement.

Affects interstate or foreign commerce. This negatively affects interstate or foreign commerce between there are arbitration systems and arbitrators outside this Defendant arbitration system who are left out and cannot compete to earn any capital in our great Capitalist country, the USA.

Therefore, due to the above, the Defendants have violated the Act and this court is to hold them responsible for TREBLE the damages incurred by the Plaintiffs, which is tallied in the PRAYER FOR RELIEF.

**XXXI. This Court shall automatically revoke Defendants Kaiser, Kaiser's Legal Representation, and JAMS ADR Arbitration System that is violation of the Sherman Act, 15 U.S.C. §§ 1–7, for enforcing arbitration agreements (expressed or implied) between two or persons that restrain trader by producing anticompetitive effects that negatively affect interstate or foreign commerce which injures Kaiser Patients in these Defendant US States. (Fed. R. Civ. P. 8; Fed. R. Civ. P. 39)**

As stated in the COMPLAINT NO. 8, Defendants have violated the Act and injured the Plaintiffs, as well as any other patient(s) of Kaisers.

Therefore, this court shall revoke and strike down Defendants arbitration system immediately and use whatever legal enforcement that the court deems proper to prevent this continual violation of the Act.

///

///

- 115 -

**116A**

**XXXII.     This Court declare judgment that the US States Governors and Mayor and Board of Supervisor demonstrated Neglect by issuing Defendant Kaiser their license number to operate hospitals in their State that promotes all the civil and criminal (not pled here but for the proper authorities to do so) lawbreaking that injure US Citizens like the Lynns, so as result of this, the Lynns also ask this Court to provide injunctive relief to the Lynns and US Citizens automatically revoke Defendants Kaiser's license to operate up and until they can demonstrate adherence to civil and criminal law throughout the US. (Fed. R. Civ. P. 8; Fed. R. Civ. P. 39)**

PLAINTIFFS ARE US CITIZENS AND HAVE STANDING AND THEIR CLAIMS ARE RIPE FOR DETERMINATION.

### Prayer

For the reasons set forth above, Plaintiffs respectfully request that this Court enter a judgment and injunctive relief and damages against Defendants, granting Plaintiffs the following relief:

1. This Court render a declaratory judgment as Sought for above;

2. This Court to provide injunctive relief as Sought for above;

3. This Court to provide damages as Sought for above;

4. The entry of judgment in favor of the plaintiff on each and every cause of action;

5. The award of the original requested amount of FOUR HUNDRED AND NINETY MILLION

- 116 -

**117A**

DOLLARS ($490,000,000.00) at least, but not limited to;

6. The award of TREBLE of the originally requested amount due the relevant Defendants' Sherman Act violation(s), which is ONE BILLION FOUR HUNDRED AND SEVENTY MILLION DOLLARS ($1,470,000,000) at least, but not limited to;

7. The sum of 7. and 8. above is ONE BILLION NINE HUNDRED AND SIXTY MILLION DOLLARS ($1,960,000,000) at least, but not limited to;

8. The award of costs for all costs, suit and attorney's fees, and

9. Such other relief as the Court deems just and proper.

## CONCLUSION

For the reasons stated, this Complaint shall be granted to file the Proposed Complaint should be granted.

Respectfully submitted,

Dated:  November 1, 2024

**Before Abraham was, I AM**

*Steven Zamora*

Steven Zamora, Esq.
9450 Pinecroft Dr. Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Plaintiffs

- 117 -

No. _____

_____

IN THE SUPREME COURT OF
THE UNITED STATES
_____

Pamela Lynn and Wilson Lynn, Jr.,

Petitioners

vs.

Kaiser Foundation Hospitals, Inc., et. al.,

Respondents
_____


PROOF OF SERVICE RE:
MOTION FOR LEAVE TO PROCEED *IN
FORMA* PAUPERIS AND MOTION FOR LEAVE
TO FILE COMPLAINT


_____

Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064

119A

## PROOF OF SERVICE

I, Steven Zamora, do swear or declare that on this date, November 1, 2024, as required by Supreme Court Rule 29, I have served the enclosed MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* and MOTION FOR LEAVE TO FILE COMPLAINT on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents, properly addressed to each of them by delivery to a third-party commercial carrier (UPS) for deliver within 3 calendar days.

The names and addresses of those served are as follows:

| | |
|---|---|
| Kaiser Foundation Hospitals, Inc. 1505 Corporation CSC Lawyers Incorporating Service c/o Becky DeGeorge or Koy Saechao or Nicole Stauss 2710 Gateway Oaks Drive Sacramento, CA 95833 | Kaiser Foundation Health Plan, Inc. 1505 Corporation CSC Lawyers Incorporating Service c/o Becky DeGeorge or Koy Saechao or Nicole Stauss 2710 Gateway Oaks Drive Sacramento, CA 95833 |
| Southern California Permanente Medical Group, Inc. Kaiser Legal Department 393 East Walnut Street Pasadena, CA 91188 | Greg Adams 1 Kaiser Plaza, Floor 19 Oakland, CA 94612 |
| Janet Liang 1 Kaiser Plaza, Floor 19 Oakland, CA 94612 | Dr. Andrew Bindman 1 Kaiser Plaza, Floor 27 Oakland, CA 94612 |
| Dr. Kelvin Nyugen 3460 E. La Palma Avenue Anaheim, CA 92806-2020 | Dr. Marc Davison 3430 E La Palma Avenue Anaheim, CA 92806 |

- 2 -

**120A**

| | |
|---|---|
| Dr. Julio Vaquerano<br>3430 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Gavin Jonas<br>San Canyon Medical<br>Offices<br>6670 Alton Parkway<br>Irvine, CA 92618 |
| Dr. Andrew Giap<br>Kraemer Medical Office 1<br>3460 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Lucio Loza<br>1900 E 4th Street<br>Santa Ana, CA 92705 |
| Dr. Roberto Limgenco<br>Barreto<br>3460 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Albert Sung-Unjin<br>3440 E La Palma<br>Avenue<br>Anaheim, CA 92806 |
| Dr. Xaviour James<br>Walker<br>291 Chastain Park Dr<br>NE<br>Atlanta, GA 30342 | Dr. Srilakshmi Moturu<br>3440 E La Palma<br>Avenue<br>Anaheim, CA 92806 |
| Office of Independent<br>Administrator<br>Marcella Bell<br>3580 Wilshire Blvd.,<br>Suite 2020<br>Los Angeles, CA 90010 | JAMS ADR<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 |
| Kirk H. Nakamura<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 | Mirra Jhang<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 |
| La Follette, Johnson,<br>Dehaas, Fesler & Ames<br>Attn: Brian Meadows<br>2677 North Main Street,<br>Suite 901<br>Santa Ana, CA 92705 | Brian Meadows<br>2677 North Main<br>Street, Suite 901<br>Santa Ana, CA 92705 |
| Myra Firth<br>2677 North Main Street,<br>Suite 901<br>Santa Ana, CA 92705 | Mitzi Thomas<br>2677 North Main<br>Street, Suite 901<br>Santa Ana, CA 92705 |

- 3 -

**121A**

| | |
|---|---|
| Aetna Life Insurance Company<br>Amanda Garcia and Gabriela Sanchez<br>330 N. Brand Blvd.<br>Glendale, CA 91203 | County of Orange<br>Orange County Board of Supervisors<br>400 W. Civic Center Drive<br>Santa Ana, CA 92701 |
| Don Wagner, Chief Board of Supervisor<br>County of Orange<br>400 W. Civic Center Drive, Santa Ana, CA 92701 | Rob Bonta, Attorney General<br>State of California<br>1300 "I" Street<br>Sacramento, CA 95814 |
| Gavin Newsom, Governor of California<br>1021 O Street, Suite 9000<br>Sacramento, CA 95814 | Brian Schwalb, Attorney General<br>District of Columbia<br>400 6th Street NW<br>Washington, D.C. 20001 |
| Muriel Bowser, Mayor of District of Columbia<br>John A. Wilson Building<br>1350 Pennsylvania Avenue, NW,<br>Washington, DC 20004 | Phil Weiser, Attorney General<br>State of Colorado<br>Ralph L. Carr Judicial Building<br>1300 Broadway, 10th Floor<br>Denver, CO 80203 |
| Jared Polis, Governor of Colorado<br>200 E. Colfax<br>Denver, CO 80203-1716 | Christopher M. Carr, Attorney General<br>State of Georgia<br>40 Capitol Square, SW<br>Atlanta,<br>Georgia  30334 |
| Brian Kemp, Governor of Georgia<br>206 Washington Street<br>Suite 203, State Capitol<br>Atlanta, GA 30334 | Anne E. Lopez,<br>Attorney General<br>State of Hawaii<br>425 Queen Street<br>Honolulu, HI 96813 |
| Josh Green, Governor of Hawaii<br>Executive Chambers<br>State Capitol<br>415 South Beretania St.<br>Honolulu, Hawai'i 96813 | Anthony G. Brown,<br>Attorney General<br>State of Maryland<br>200 St. Paul Place,<br>Baltimore, MD 21202 |

- 4 -

**122A**

| | |
|---|---|
| Wes Moore, Governor of Maryland<br>100 State Circle<br>Annapolis, Maryland 21401-1925 | Ellen F. Rosenblum,<br>Attorney General<br>State of Oregon<br>1162 Court St. NE<br>Salem, OR 97301-4096 |
| Christine Kotek, Governor of Oregon<br>900 Court Street, Suite 254<br>Salem, OR 97301-4047 | Jason Miyares,<br>Attorney General<br>State of Virginia<br>202 North Ninth Street<br>Richmond, Virginia 23219 |
| Glenn Youngkin, Governor of Virginia<br>P.O. Box 1475<br>Richmond, VA 23218 | Bob Ferguson,<br>Attorney General<br>State of Washington<br>11 Washington St SE<br>PO Box 40100<br>Olympia, WA 98504 |
| Jay Inslee, Governor of Washington<br>PO Box 40002<br>Olympia, WA 98504-0002 | Supreme Court of the United States<br>c/o Solicitor General of the United States<br>Room 5616<br>Department of Justice<br>950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 |
| Congress of the United States<br>c/o Solicitor General of the United States<br>Room 5616<br>Department of Justice<br>950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 | Kamala Harris,<br>Vice President of the United States and President of the Senate<br>1600 Pennsylvania Ave NW<br>Washington, DC 20500 |

- 5 -

**123A**

| | |
|---|---|
| Patty Murray<br>Senate Pro Tempore<br>154 Russell Senate Office<br>Building<br>Washington, D.C. 20510<br>Department of Justice<br>950 Pennsylvania Ave.<br>N. W., Washington, DC<br>20530-0001 | |
| Executive Branch of the<br>United States<br>c/o Solicitor General of<br>the United States<br>Room 5616<br>Department of Justice<br>950 Pennsylvania Ave.<br>N. W., Washington, DC<br>20530-0001 | Joe Biden<br>President of the United<br>States<br>1600 Pennsylvania Ave<br>NW<br>Washington, DC 20500 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 1, 2024.

*Steven Zamora*
Steven Zamora, Esq.

- 6 -

**124A**

From: <No-Reply@supremecourt.gov>
Date: Tue, Nov 19, 2024 at 11:50 AM
Subject: Correspondence from The Supreme Court of the United States
To: <stevenzamora@beforeabrahamwas-iam.org>

## SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC  20543-0001

November 8, 2024

Steven Zamora
9450 Pinecroft Drive
The Woodlands, TX 77380

Dear Mr. Zamora:

Your motion seeking to invoke the original jurisdiction of this Court under Article III of the Constitution was received November 4, 2024 and is hereby returned for the following reason(s):

The original jurisdiction of this Court does not extend to a suit by an individual against a State.  The original jurisdiction of this Court generally extends only to cases or controversies between two or more states or between the United States and one or more states.  See 28 U.S.C. 1251 and Rule 17 of the Rules of this Court.  The Eleventh Amendment amends the language of the Constitution and holds that the Judicial Power of the United States does not extend to any suit commenced or prosecuted against a state by a citizen of another state.  The Supreme Court has subsequently held numerous times that states cannot be sued without their consent and that the Eleventh amendment bars suits brought against a state by citizens of that state. *Hans v. Louisiana,* 134 U.S. 1 (1890).

Sincerely,
Scott S. Harris, Clerk
By:

Scott S. Harris
(202) 479-3014

**125B**

No. _____

_____

## IN THE SUPREME COURT OF
## THE UNITED STATES

_____

Pamela Lynn and Wilson Lynn, Jr.,

Petitioners

vs.

Kaiser Foundation Hospitals, Inc., et. al.,

Respondents

_____

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2**

**OF THE UNITED STATES CONSTITUTION**

_____

**MOTION FOR REQUIRED JOINDER OF
PARTIES**

_____

**Steven Zamora, Esq.**
**Counsel of Record for Petitioners**
**Pamela Lynn and Wilson Lynn, Jr.**
**9450 Pinecroft Dr., Unit 9834**
**The Woodlands, TX 77380**
**stevenzamora@beforeabrahamwas-iam.org**
**(858) 382-1064**

126C

Comes now Petitioners Pamela Lynn and Wilson Lynn, Jr. ("Petitioners" or "the Lynns"), by and through their Counsel of Record, Steven Zamora, pursuant to the authority vested in him under the laws of the United States of America ("USA" or "US") as an admitted member of this Supreme Court ("Court"), and moves the Court for required joinder of parties, which for this Case, is the required joinder of 2020 US President Donald J. Trump and 2024 President Elect Donald J. Trump (altogether "President Trump") under Federal Rule of Civil Procedure ("FRCP") 19 and the case law cited herein.

FRCP 19 states that: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Applied to this motion, President Trump is subject to service of process and has been served via UPS commercial carrier who delivered a copy of the Case in booklet form of the Motion for Leave to File a Bill of Complaint ("Case"), which was filed in paper and electronic form with this Court on November 4, 2024. In addition, he has received the original proof of service and motion of in forma pauperis as filed with this Court and served on the Defendants.

To join President Trump to this Case does not deprive this Court of subject-matter jurisdiction but instead makes this Court have, in addition to the arguments made in the Case, even more subject-matter jurisdiction. This is because President Trump in 2020 was the US President on November 5, 2020

- 2 -

**127C**

through January 19, 2021 while the Cases' Defendant eight (8) States ("States") casted their electoral college votes for Vice President Harris in violation of the US Constitution in December 2020 per the reasoning set forth in the Case. Also, President Trump has been elected US President starting January 20, 2025, but had to run against a Presidential Candidate whose candidacy was in violation of Article II of the US Constitution and Amendments 12 and 24 as per the reasoning set forth in the Case. In both circumstances, President Trump was and is the leader of the US Executive Branch, which makes Trump joinder as a party both as an individual and as a US Government Official.

Due to this, the joinder of President Trump makes the Case meet the subject matter jurisdiction of this Court under 28 USC § 1251 (a) and (b). This is because President Trump as a Florida resident, via his private residence being at Mar-a-Lago, is joined to the outcome of the arguments of the Case which involve meeting section (a) a case in controversy between two or more States in the use of Co-Defendants crossclaims. Also, this is because (b) President Trump is being joined to this Case as the US Article II Leader, so it presents a scenario to this Court where the USA is a Plaintiff versus the USA as a Defendant. Currently, this scenario is outside 28 USC § 1251 (a) and (b) requirements, but not outside the Article III language "…, with such Exception,…" so this required party joinder and Case requires judicial review. This same reasoning holds true for the 2020 and 2024 US Presidential Elections.

Moreover, the Lynns argue that Congress' enactment of 28 USC § 1251 to codify the US Constitution is unconstitutional because the US Constitution stands on its own and only can be amended by a ¾ of the US States ratification of a potential 26th amendment. This is important because this codification by Congress is a circumvention of the requirement to amend the US Constitution since 28 USC § 1251 does not include Article III, Section 2

- 3 -

**128C**

language "…, with such Exceptions,…" which demonstrates that this congressional act is not a word for word law enactment of Article III, but an unconstitutional modification of the US Constitution since there is no 26th amendment. Due to this, this Case and joinder of President Trump requires judicial review because this statute removes this Court's power of judicial review since it modifies this Courts authority under Article III.

This explanation is further supported by Chief Justice John Marshall in this Court's holding in *Marbury v. Madison* whereby this Court decided a case involving elected officials Marbury (Congress) and Madison (Secretary of State) and John Adams and Thomas Jefferson (US Presidents), so it ought to apply here because similar Elected Officials are present here in this Case and motion. Joining President Trump to this Case allows this Court to exercise its supreme power of judicial review over the Case arguments and this motion, which includes a constitutional challenge to 28 USC § 1251 and Court rules 5 and 17.

Moreover, in the absence of President Trump to this Case, this Court cannot accord complete relief among existing parties because the Cases' arguments can only be decided with the joinder of President Trump since the Case arguments and proposed Complaints remedy are germane to the 2020 and 2024 Presidential Elections, which he was and is involved in.

Upon being joined, President Trump may claim[s] an interest relating to the subject of the action (i.e., damages for US Constitution violations by Defendants Biden, Harris, Murray, and the States for making him spent campaign money to run a race against an unconstitutional VP and Presidential Candidate in the 2020 and 2024 Elections.

In addition, President Trump is so situated that disposing of the action in his absence may: (i) as a

- 4 -

**129C**

practical matter impair or impede the ability to protect his, US Citizens', and this country's interest in protecting the US Constitution from being circumvented without proper amendment of it; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Furthermore, in addressing the joinder of parties in cases before this Court, several key cases provide relevant and applicable holdings for this Court to use in granting this motion. In *Martin v. Wilks*, 490 U.S. 755 (1989), this Court emphasized that joinder as a party is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree. In *Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989) this Court has managerial responsibility to oversee the joinder of additional parties to ensure efficiency and avoid duplicative suits. In *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968) this Court agrees with the necessity of joining parties to ensure complete justice.

Applied to this motion, this Court joining President Trump 1) follows the method by which he is subject to this Court's jurisdiction of this Case and to be bound by this Court's judgment or decree; 2) demonstrates this Court's managerial responsibility to oversee the joinder of additional parties to ensure efficiency and avoid duplicative suits; and 3) the necessity of joining parties to ensure complete justice.

For avoidance of doubt, Defendants Biden, Harris, Murray, USA Article I, II, and III Branches, and the States, including California, violated the US Constitution for not adhering, abiding, or upholding it (as they swore to do) because Article II requires the US President to be a biological male (its stated 18 times in its ratification in 1787), Amendment 12 requires a Vice President to meet the requirements of the US President, one being a biological male, and Amendment 25 requires succession of the Vice

- 5 -

**130C**

President by the Speaker of the House when that person is not capable of being Vice President or President and all of these Constitutional requirements have all not been obeyed due to Defendant Harris, a biological woman, is incapable of being Vice President or President since no amendment to the US Constitution has been made to change the original text as ratified to allow for it.

Therefore, this Court shall require joinder of President Trump to this Case for the legal and factual reasonings stated above without unreasonable delay.

Respectfully submitted,

**Before Abraham was, I AM**

*Steven Zamora, Esq. for JESUS*

Steven Zamora, Esq.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioner

- 6 -

**131C**

No. _____

_____

## IN THE SUPREME COURT OF
## THE UNITED STATES

_____

Pamela Lynn and Wilson Lynn, Jr.,

Petitioners

vs.

Kaiser Foundation Hospitals, Inc., et. al.,

Respondents

_____

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2
OF THE UNITED STATES CONSTITUTION**

_____

**PROOF OF SERVICE RE:
MOTION FOR REQUIRED JOINDER OF
PARTIES**

_____

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

## PROOF OF SERVICE

I, Steven Zamora, do swear or declare that on this date, November 20, 2024, as required by Supreme Court Rule 29, I have served the enclosed MOTION FOR REQUIRED JOINDER OF PARTIES on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents, properly addressed to each of them by delivery to the United States Post Office (USPO) to deliver within 3 calendar days.

The names and addresses of those served are as follows:

| | |
|---|---|
| Kaiser Foundation Hospitals, Inc. 1505 Corporation CSC Lawyers Incorporating Service c/o Becky DeGeorge or Koy Saechao or Nicole Stauss 2710 Gateway Oaks Drive Sacramento, CA 95833 | Kaiser Foundation Health Plan, Inc. 1505 Corporation CSC Lawyers Incorporating Service c/o Becky DeGeorge or Koy Saechao or Nicole Stauss 2710 Gateway Oaks Drive Sacramento, CA 95833 |
| Southern California Permanente Medical Group, Inc. Kaiser Legal Department 393 East Walnut Street Pasadena, CA 91188 | Greg Adams 1 Kaiser Plaza, Floor 19 Oakland, CA 94612 |
| Janet Liang 1 Kaiser Plaza, Floor 19 Oakland, CA 94612 | Dr. Andrew Bindman 1 Kaiser Plaza, Floor 27 Oakland, CA 94612 |
| Dr. Kelvin Nyugen 3460 E. La Palma Avenue Anaheim, CA 92806-2020 | Dr. Marc Davison 3430 E La Palma Avenue Anaheim, CA 92806 |

- 2 -

| | |
|---|---|
| Dr. Julio Vaquerano<br>3430 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Gavin Jonas<br>San Canyon Medical<br>Offices<br>6670 Alton Parkway<br>Irvine, CA 92618 |
| Dr. Andrew Giap<br>Kraemer Medical Office 1<br>3460 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Lucio Loza<br>1900 E 4th Street<br>Santa Ana, CA 92705 |
| Dr. Roberto Limgenco<br>Barreto<br>3460 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Albert Sung-Unjin<br>3440 E La Palma<br>Avenue<br>Anaheim, CA 92806 |
| Dr. Xaviour James<br>Walker<br>291 Chastain Park Dr<br>NE<br>Atlanta, GA 30342 | Dr. Srilakshmi Moturu<br>3440 E La Palma<br>Avenue<br>Anaheim, CA 92806 |
| Office of Independent<br>Administrator<br>Marcella Bell<br>3580 Wilshire Blvd.,<br>Suite 2020<br>Los Angeles, CA 90010 | JAMS ADR<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 |
| Kirk H. Nakamura<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 | Mirra Jhang<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 |
| La Follette, Johnson,<br>Dehaas, Fesler & Ames<br>Attn: Brian Meadows<br>2677 North Main Street,<br>Suite 901<br>Santa Ana, CA 92705 | Brian Meadows<br>2677 North Main<br>Street, Suite 901<br>Santa Ana, CA 92705 |
| Myra Firth<br>2677 North Main Street,<br>Suite 901<br>Santa Ana, CA 92705 | Mitzi Thomas<br>2677 North Main<br>Street, Suite 901<br>Santa Ana, CA 92705 |
| Aetna Life Insurance<br>Company<br>Amanda Garcia and<br>Gabriela Sanchez<br>330 N. Brand Blvd.<br>Glendale, CA 91203 | County of Orange<br>Orange County Board<br>of Supervisors<br>400 W. Civic Center<br>Drive<br>Santa Ana, CA 92701 |

- 3 -

**134C**

| | |
|---|---|
| Don Wagner, Chief Board of Supervisor County of Orange 400 W. Civic Center Drive, Santa Ana, CA 92701 | Rob Bonta, Attorney General State of California 1300 "I" Street Sacramento, CA 95814 |
| Gavin Newsom, Governor of California 1021 O Street, Suite 9000 Sacramento, CA 95814 | Brian Schwalb, Attorney General District of Columbia 400 6th Street NW Washington, D.C. 20001 |
| Muriel Bowser, Mayor of District of Columbia John A. Wilson Building 1350 Pennsylvania Avenue, NW, Washington, DC 20004 | Phil Weiser, Attorney General State of Colorado Ralph L. Carr Judicial Building 1300 Broadway, 10th Floor Denver, CO 80203 |
| Jared Polis, Governor of Colorado 200 E. Colfax Denver, CO 80203-1716 | Christopher M. Carr, Attorney General State of Georgia 40 Capitol Square, SW Atlanta, Georgia 30334 |
| Brian Kemp, Governor of Georgia 206 Washington Street Suite 203, State Capitol Atlanta, GA 30334 | Anne E. Lopez, Attorney General State of Hawaii 425 Queen Street Honolulu, HI 96813 |
| Josh Green, Governor of Hawaii Executive Chambers State Capitol 415 South Beretania St. Honolulu, HI 96813 | Anthony G. Brown, Attorney General State of Maryland 200 St. Paul Place, Baltimore, MD 21202 |
| Wes Moore, Governor of Maryland 100 State Circle Annapolis, Maryland 21401-1925 | Ellen F. Rosenblum, Attorney General State of Oregon 1162 Court St. NE Salem, OR 97301-4096 |

- 4 -

| | |
|---|---|
| Christine Kotek, Governor of Oregon 900 Court Street, Suite 254 Salem, OR 97301-4047 | Jason Miyares, Attorney General State of Virginia 202 North Ninth Street Richmond, Virginia 23219 |
| Glenn Youngkin, Governor of Virginia P.O. Box 1475 Richmond, VA 23218 | Bob Ferguson, Attorney General State of Washington 11 Washington St SE PO Box 40100 Olympia, WA 98504 |
| Jay Inslee, Governor of Washington PO Box 40002 Olympia, WA 98504-0002 | Supreme Court of the United States c/o Solicitor General of the United States Room 5616 Department of Justice 950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 |
| Congress of the United States c/o Solicitor General of the United States Room 5616 Department of Justice 950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 | Kamala Harris, Vice President of the United States and President of the Senate 1600 Pennsylvania Ave NW Washington, DC 20500 |
| Patty Murray Senate Pro Tempore 154 Russell Senate Office Building Washington, D.C. 20510 | Executive Branch of the United States c/o Solicitor General of the United States Room 5616 Department of Justice 950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 |
| | |

- 5 -

**136C**

| Joe Biden | Donald J. Trump |
|---|---|
| President of the United States | President of the United States |
| 1600 Pennsylvania Ave NW | 1100 S. Ocean Blvd |
| Washington, DC 20500 | Palm Beach, FL 33480 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 20, 2024.

*Steven Zamora, Esq. for JESUS*

Steven Zamora, Esq.

- 6 -

**137C**



**No. _____**

———————————

# IN THE SUPREME COURT OF
# THE UNITED STATES

———————————

**Pamela Lynn and Wilson Lynn, Jr.,**

**Petitioners**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Respondents**

———————————

## AN ORIGINAL AND EXCLUSIVE ACTION
## UNDER ARTICLE III, SECTION 2

## OF THE UNITED STATES CONSTITUTION

———————————

## WRIT OF MANDAMUS ORDERING SCOTT
## HARRIS TO FILE AND DOCKET THIS CASE

———————————

**Steven Zamora, Esq.**
**Counsel of Record for Petitioners**
**Pamela Lynn and Wilson Lynn, Jr.**
**9450 Pinecroft Dr., Unit 9834**
**The Woodlands, TX 77380**
**stevenzamora@beforeabrahamwas-iam.org**
**(858) 382-1064**

**139E**

Comes now Petitioners Pamela Lynn and Wilson Lynn, Jr. ("Petitioners" or "the Lynns"), by and through their Counsel of Record, Steven Zamora, pursuant to the authority vested in him under the laws of the United States of America ("USA" or "US") as an admitted member of this Supreme Court ("Court") license number 323046, and requires this Court under Supreme Court Rule 20, Section 3 and this Court's precedent cited herein to compel, order, or injunct the Clerk of this Court, Scott Harris, to file and docket the Petitioners' Motion for Leave to File a Proposed Complaint, Motion for In Forma Pauperis, and Motion for Required Joinder of a Party, Donald J. Trump, including all proofs of services and relevant documents (Altogether "Case"), via this Writ of Mandamus ("Mandamus").

This Mandamus is of first impression because there is no direct Court precedent where a Petitioner has had to require this Court to compel, order, or injunct the Clerk of this Court to do his job (file and docket a case) as required by this Court's Rules. Petitioners would have sought to recuse Scott Harris through motion; however, recusal is reserved only for sitting judges and practicing lawyers in their current job, which Scott Harris does not qualify for. Moreover, only in *Marbury v. Madison*, 5 US 137 (1803) did this Court grant mandamus to have the Secretary of State, James Madison, to perform his legal duty as a ministerial officer, which is applied to this Mandamus below.

### Petitioners Comply with Rule 20.

Rule 20 states: "A petition seeking … a writ of mandamus … shall state the name and office or function of every person against whom relief is sought and shall set out with particularity why the relief sought is not available in any other court. A copy of the judgment with respect to which the writ is sought, including any related opinion, shall be appended to the petition together with any other document essential to understanding the petition.

**140E**

Applied to this Mandamus, Petitioners are seeking this Court to compel, order, or injunct Scott Harris whose office is being the Clerk of this Court, and he is the only Clerk that the Petitioners are seeking relief from. The relief being sought is for him simply to do his job and file and docket the Petitioners Case because Petitioners have complied with all this Court's Rules pertaining to filing their Case, including Rule 17. Please note that Scott Harris did not reject Petitioners' Case filing for any cited Court Rule, but for reasons outside the Court Rules. Thus, his rejection of Petitioners' Case was not for formatting, booklet size or weight, service of process, number of copies, or for any other Court Rules, so these Court Rules, and not limited to, are deemed to have been accepted *De Jure* by the Clerk.

Moreover, Petitioners filed a Motion to Proceed in Forma Pauperis without paying the Case filing costs due to their demonstrated financial hardship. However, to not delay the filing and docketing of this Case, the Petitioners' obeyed this Court's Electronic Filing instruction to go ahead and pay $300 via check to this Court's Clerk Scott Harris, which they did send via US Mail and their Counsel of Record sent via email to Scott Harris pictures of this check and it being mailed USPO. Petitioners' Counsel of Record did this because Scott Harris sent his first rejection of the Case filing via email, so Petitioners sought to meet him where he was at – electronic mail.

In addition, there is no judgment to give this Court since Scott Harris' rejection is one that came from a Clerk of this Court and not an actual Justice of this Court who can render a judgment.

Furthermore, Petitioners' Counsel of Record is including with this Mandamus filing the electronic copies of the Case documents and a picture of the $300 check, which all have already been properly filed with this Court (original paper copies and electronic PDF copies in this Court's Electronic Filing System) and

**141E**

served on the Respondents because these documents are essential for this Court's Justices to understand the context of this Mandamus.

Also, only this Court can grant this Mandamus and compel, order, or injunct their own Clerk to file and docket the Petitioners Case. No other tribunal, arbitrator, or lower federal or state court can compel, order, or injunct the Clerk of this Court to perform an act that the Clerk refuses to do even though he is legally required to under Rule 1 and Rule 17, Section 4 ("The case will be placed on the docket when the motion for leave to file and the initial pleading are filed with the Clerk. The Rule 38(a) docket fee shall be paid at that time.").

Therefore, Petitioners have complied with this Courts' Rule 20, so this Court can grant this petition and compel, order, or injunct the Clerk to file and docket this Case.

**Scott Harris Rejected Petitioners Case Twice Without Citing Any Court Rule for Rejection Thereby Exceeding His Authority Given by This Court Under Rule 1 Making His Rejections Invalid and He Failed to Docket the Case as Required by Rule 17, Section 4, and as a Consequence, Forced Petitioners to Write and File this Mandamus.**

Rule 1 states: "The Clerk receives documents for filing with the Court and has authority to reject any submitted filing that does not comply with these Rules."

Thus far, Scott Harris has rejected Petitioners' Case filings twice, which were not in compliance this Court's Rule 1 and Rule 17: Once, on the original filing date of November 4, 2024; and again, on November 20, 2024, but this amended filing included a Motion for Required Joinder of a Party, Donald J. Trump as a Plaintiff, and its proof of service. This is because Scott Harris did not cite any Rules from the Supreme Court

Rules to reject the Petitioners' Case filings. Also, Scott Harris did not comply with Rule 17, Section 4 because he failed to put Petitioners' Case on the Docket even after he had received the Motion for Leave and initial pleading (or proposed Complaint) on November 4, 2024 and November 20, 2024.

Therefore, his failure to cite any Court Rules for rejection of the Case demonstrated that there were no Court Rules to reject the Petitioners Case and also, that he exceeded the authority given him as Clerk of the Court per Rule 1 and failed to docket the Case as required by Rule 17, Section 4.

**Scott Harris as Clerk of this Court is an official that Performs Ministerial Duties and is subject to mandatory writ of injunction via this Mandamus.**

This Court has established that when an official duty is plainly defined by statute and requires no exercise of discretion, a court can compel performance through mandamus or injunctive relief. For instance, in *Wilbur v. United States*, 280 U.S. 306 (1930), this Court held that if a statute directs an official to perform an act without discretion, the duty is ministerial, and the court can compel its performance. *Id*.

Applied to this Mandamus, Court Rule 1 is the statute and it does not give Scott Harris discretion to reject the Petitioners' Case outside the confines of the Court Rules.  As stated, and demonstrated above, Scott Harris rejected the Petitioners' Case without citing this Court's Rules, so this Court can compel his performance, which is filing and docketing the Petitioners Case as required by Rule 17, Section 4. This would allow the Case to be on the Court's Docket, which would make it a public record, and it also gives this Courts' Justice the opportunity via Due Process to either grant or deny Petitioners' Case. Scott Harris through his rejection is blocking Due Process to occur and taking away the Justices bench and gavel from

**143E**

them by supplanting this Court when he chooses to reject cases like the Petitioners when not relying on his authority founded in Rule 1 or when he fails to comply with Rule 17, Section 4. In Ancient Hebrew text, Jacob or Jakob demonstrated this type of behavior and his named actually meant "supplanter" or "heel catcher." Certainly, Scott Harris has supplanted this Court via his actions and inactions, and also, has unfairly caught the heel of Petitioners' plight for Justice via his rejections.

Therefore, per this Court's precedence, Petitioners require this Court grant this petition and compel, order, or injunct Scott Harris to file and docket the Petitioners' Case, inclusive of this Mandamus.

**Scott Harris as Clerk of this Court is an official that Performs Ministerial Duties and is subject to mandatory writ of injunction via this Mandamus.**

In *Houston v. Ormes*, 252 U.S. 469 (1920), the Court recognized that when officials have a ministerial duty to perform, a mandatory writ of injunction can be issued to compel performance, especially when the complainant has a particular interest in the matter.

Applied to this Mandamus, Scott Harris is an official of this Court who has a ministerial duty to perform, which is filing and docketing cases that are properly filed per this Courts' Rules, which the Petitioners' Case has done. Through this Mandamus, Petitioners require this Court to compel, order, or injunct his performance of filing and docketing the Case, especially since the complainants (Petitioners) have a vested interest in having their Case filed at this Court regardless of whether the Justice either grant or deny the hearing of their Case based on their review of the Petitioners and Respondents arguments. Petitioners' petition for their Dream of Due Process at this Court.

**144E**

Therefore, per this Court's precedence, Petitioners require this Court grant this petition and compel, order, or injunct Scott Harris to file and docket the Petitioners' Case.

### Scott Harris Acted Ultra Vires in Rejecting Petitioners' Case Twice and Failing to Docket the Case.

In *Garfield v. United States*, 211 U.S. 249 (1908) this Court affirmed that an official who acts beyond their authority (ultra vires) can be subject to an injunction, just as they would be to a mandamus if they refused to perform a required act.

Applied to this Mandamus, Scott Harris is an official who acted beyond his authority (ultra vires) because he did not cite any Court Rule for the rejections of Petitioners' Case two times, so he is subject to injunction, just as he would be to a mandamus if he refused to perform a required act. Scott Harris is subject to injunction (or order) and mandamus for failure to file and docket the Petitioners' Case even though they complied with this Courts' Rules in their filing.

### This Court has granted Mandamus for a Higher Officer, Secretary of State, so it is easy for this Court to grant Mandamus for a lower officer, Clerk of this Court, and Justice so requires it.

In *Marbury v. Madison*, 5 US 137 (1803), this Court through Chief Justice John Marshall stated "[James Madison] as the agent of the President, he is not liable to a mandamus; but as a recorder of the laws of the US; as keeper of the great seal, as recorder of deeds of lands, of letters patent, and of commissions…he is a ministerial officer of the people of the US. As such, he has duties assigned him by law in the execution of which he is independent of all control, but that of the laws. It is true he is a high

**145E**

officer, but is not above the law…As a ministerial officer he is compellable to do his duty, and if he refuses, is liable to indictment…many cases may be supported… - A mandamus gives no right, but only puts the party in a way to try his right - …to deliver papers which concern the public."

Applied to this Mandamus, James Madison as secretary of state was subject to Mandamus, then Scott Harris is also due to him being a ministerial officer for this Court. He is not above the law, and in this instance, the Petitioners' Due Process rights to file their Case at this Court. Scott Harris is compellable to do his duty (job) which is to file and docket the Petitioners' Case per Rule 17, Section 4. He is to deliver papers to the docket which concern the public, which is the Petitioners' Case that contains several US Constitutional challenges (i.e., Articles 2, 3, and 5, and Amendments 1, 4, 5, 10, 12, 13, 19, 24, and 25) that require this Court to hear them and decide them.

Therefore, this Court shall use its sound, legal discretion, not an arbitrary will, to compel, injunct, or order Scott Harris to file and docket this Case because the Petitioners have made a proper case, so this Court cannot refuse Justice to no man or these Petitioners. The Petitioners, once again, exhort this Court to grant their petition - inter alia - by Being Supreme!

Respectfully submitted with a Word Count of 2261,

**Before Abraham was, I AM**

*Steven Zamora, Esq. for JESUS*

Steven Zamora, Esq.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioners

**146E**

No. _____

_____

**IN THE SUPREME COURT OF
THE UNITED STATES**

_____

**Pamela Lynn and Wilson Lynn, Jr.,**

**Petitioners**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Respondents**

_____

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2
OF THE UNITED STATES CONSTITUTION**

_____

**PROOF OF SERVICE RE:
WRIT OF MANDAMUS ORDERING SCOTT
HARRIS TO FILE AND DOCKET THIS CASE**

_____

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

**147E**

## PROOF OF SERVICE

I, Steven Zamora, do swear or declare that on this date, December 11, 2024, as required by Supreme Court Rule 29, I have served the enclosed **WRIT OF MANDAMUS ORDERING SCOTT HARRIS TO FILE AND DOCKET THIS CASE** on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents, properly addressed to each of them by delivery to the United States Post Office (USPO) to deliver within 3 calendar days.

The names and addresses of those served are as follows:

| | |
|---|---|
| Supreme Court of the United States c/o Solicitor General of the United States Room 5616 Department of Justice 950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 | Scott Harris Clerk of the Supreme Court of the United States First Street, N. E. Washington, DC 20543 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 11, 2024.

*Steven Zamora, Esq. for JCSUS*

---

Steven Zamora, Esq.

**148E**

## SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC  20543-0001

December 20, 2024

Steven Zamora
9450 Pinecroft Drive
The Woodlands, TX 77380

RE: "An Original and Exclusive Action under Article III, Section 2..."

Dear Mr. Zamora:

Your document titled as "an original and exclusive action under article III, section 2..." was received on December 19, 2024 and is hereby returned for the following reason (s):

The original jurisdiction of this Court does not extend to a suit by an individual against a State.  The original jurisdiction of this Court generally extends only to cases or controversies between two or more states or between the United States and one or more states.  See 28 U.S.C. 1251 and Rule 17 of the Rules of this Court.  The Eleventh Amendment amends the language of the Constitution and holds that the Judicial Power of the United States does not extend to any suit commenced or prosecuted against a state by a citizen of another state.  The Supreme Court has subsequently held numerous times that states cannot be sued without their consent and that the Eleventh amendment bars suits brought against a state by citizens of that state. *Hans v. Louisiana,* 134 U.S. 1 (1890).

To the extent you wish to file a petition for an extraordinary writ of mandamus, you are informed the Rules of the Court make no provision for filing a petition for a writ of mandamus directed to this Court. The petition for a writ of mandamus must be in compliance with Rule 20 and all other applicable Rules.

Your check in the amount of $300.00 is returned here within.

Sincerely,
Scott S. Harris, Clerk
By:

Katie Heidrick
(202) 479-3038

Enclosures



**149F**

No. _____

———————————————

**IN THE SUPREME COURT OF
THE UNITED STATES**

———————————————

**Pamela Lynn and Wilson Lynn, Jr.,**

**Petitioners**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Respondents**

———————————————

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2**

**OF THE UNITED STATES CONSTITUTION**

———————————————

**INDIVIDUAL APPLICATION TO CHIEF
JUSTICE JOHN G. ROBERTS, JR. FOR
REVIEW OF WRIT OF MANDAMUS**

———————————————

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

**150G**

Comes now Petitioners Pamela Lynn and Wilson Lynn, Jr., by and through their Counsel of Record, Steven Zamora, pursuant to the authority vested in him under the laws of the United States of America ("US") as an admitted member of this Supreme Court ("Court") license #323046, and requires you, Chief Justice John G. Roberts, Jr., to review and grant the Petitioners' Writ of Mandamus, which was filed on December 11, 2024 under Rule 20, Section 3, since each Chief Justice of each Court oversees the daily administration of the Court.

We all have a legal duty to be a defender of the US Constitution, and in this instance, you are empowered to review and grant Petitioners' Writ of Mandamus in accordance with this Court Rules and precedent to compel, order, or injunct the Clerk to file and docket this Case. Americans look to you as the leader of this Court as they once looked upon Chief Justice John Marshall as a leader of his Court – you both are defenders of Justice.

Therefore, your oversight is required under Rule 22 to review this Court's Clerk, Scott Harris, twice rejections (first one on November 4, 2024 and second one on November 20, 2024) to file and docket Petitioners' Case, which were contrary to Rule 1, Rule 17, Section 4, and cited Court precedent, so this Individual Application is made to direct this Mandamus upon you, America's hero.

Respectfully submitted with a Word Count of 354,

**Before Abraham was, I AM**

*Steven Zamora, Esq. for JESUS*

Steven Zamora, Esq.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioners

**151G**

**No. _____**

———————————————

**IN THE SUPREME COURT OF
THE UNITED STATES**
———————————————

**Pamela Lynn and Wilson Lynn, Jr.,**

**Petitioners**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Respondents**
———————————————

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2
OF THE UNITED STATES CONSTITUTION**
———————————————

**PROOF OF SERVICE RE:
INDIVIDUAL APPLICATION TO CHIEF
JUSTICE JOHN G. ROBERTS, JR. FOR
REVIEW OF WRIT OF MANDAMUS**
———————————————

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

**152G**

## PROOF OF SERVICE

I, Steven Zamora, do swear or declare that on this date, December 11, 2024, as required by Supreme Court Rule 29, I have served the enclosed **INDIVIDUAL APPLICATION TO CHIEF JUSTICE JOHN G. ROBERTS, JR. FOR REVIEW OF WRIT OF MANDAMUS** on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents, properly addressed to each of them by delivery to the United States Post Office (USPO) to deliver within 3 calendar days.

The names and addresses of those served are as follows:

| | |
|---|---|
| Supreme Court of the United States c/o Solicitor General of the United States Room 5616 Department of Justice 950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 | John G. Roberts, Jr. Chief Justice of the Supreme Court of the United States First Street, N. E. Washington, DC 20543 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 11, 2024.

*Steven Zamora, Esq. for JESUS*
_____
Steven Zamora, Esq.

**153G**

## SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC  20543-0001

December 19, 2024

Steven Zamora
9450 Pinecroft Drive
Unit 9834
The Woodlands, TX 77380

RE: "Individual Application to Chief Justice Roberts for Review of Writ of Mandamus"
Lynn v. Kaiser Foundation Hospitals

Dear Mr. Zamora:

Your application that was received December 19, 2024 is herewith returned for the following reason(s):

The Rules of this Court make no provision for the filing of a petition for a writ of certiorari or extraordinary writ of mandamus addressed to an individual Justice. The Rules distinguish between applications to individual Justices and petitions to the Court. The sole mechanism established by the Rules by which to seek issuance of a writ authorized by 28 U.S.C. §1651(a), §2241, or §2254(a), is Rule 10 or Rule 20, and such petitions are reviewed by the full Court, not by an individual Justice.

A petition for an extraordinary writ of mandamus may not be filed asking this Court to direct itself to change its own decision in a prior case or change the Rules of Court.

Sincerely,
Scott S. Harris, Clerk
By:

Robert Meek
(202) 479-3027

Enclosures

**154H**

No. _____

———————————————

**IN THE SUPREME COURT OF
THE UNITED STATES**

———————————————

Pamela Lynn and Wilson Lynn, Jr.,

Petitioners

vs.

Kaiser Foundation Hospitals, Inc., et. al.,

Respondents

———————————————

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2
OF THE UNITED STATES CONSTITUTION**

———————————————

**MOTION FOR LEAVE TO FILE COMPLAINT**

———————————————

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

# **TABLE OF CONTENTS**

Page No.

TABLE OF AUTHORITIES CITED ......................... 7

BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE COMPLAINT ............................................. 12

RELIEF SOUGHT ..................................................... 13

GROUNDS FOR RELIEF ........................................ 13

    Jurisdiction ........................................................ 13

        A.    The Complaint is against the following defendants ....................................... 13

        B.    This is an action by the Petitioners against Kaiser Foundation Hospitals, Inc. et. al. These Defendants are the citizens of the States and countries described above and, therefore, this Court has jurisdiction of the disputed under Article III, Section 2 of the US Constitution ................................... 18

        C.    The main reasons for this Court's Jurisdiction over this Proposed Complaint are as follows and are expounded on in the Purpose of the Proposed Action section ........ 18

    Purpose of the Proposed Action ......................... 19

        I.    The Judicial Power of the US is vested solely in the Supreme Court, so the Lynns seek redress of their grievances under the First Amendment with this Court ........................................................... 19

        II.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's Original

- 1 -

Jurisdiction over their Motion for Leave and Proposed Complaint because the State of California is a party .................................... 20

III.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's Original Jurisdiction over their Motion for Leave and Proposed Complaint because eight (8) US States (California, Colorado, District of Columbia, Georgia, Hawaii, Oregon, Maryland, Virginia) are parties in this action due to the Lynns also being US Citizens and because these US States allow for Defendants Kaiser, Kaiser's Legal Representation, Kaiser's Office of Independent Administrator, and JAMs ADR to operate there just like the State of California allows them to operate in their State ............................................................ 22

IV.    This Court has original and exclusive Jurisdiction over a case where two or more States have a case or controversy between each other, so it has this Jurisdiction over this Motion for Leave and Proposed Complaint because there is a case or controversy between eight (8) US States ("States") via the use of crossclaims............. 23

V.    This Court is requested to grant this Motion – as a matter of procedural due process under the Fifth and Fourteenth Amendments - in order to allow the Proposed Complaint to be filed, which will enable the States assert their crossclaims, which only become actionable procedurally, when these US States are required to respond or answer to a filed Complaint at this Court........................................................ 25

VI.    When applied to the Lynns action, this Court's Rule 17 is in conflict with the

- 2 -

**157I**

US Constitution requirement of hearing an original and exclusive action when there are two or more States in controversy because the initial Motion to Leave does not allow the US Constitution to come alive and be performed by the States actually demonstrating their controversy via crossclaims against each other, and this Rule 17 is conflicting with the US Constitution, so it requires judicial review by this Court, and by De Jure, this Motion for Leave shall be granted ............................. 26

VII.   This Court's Right for Judicial Review is inherent in the US Constitution via the precedent of Marbury v. Madison, but it is also explicit in the US Constitution text: "…with such Exceptions" ...................... 28

VIII.   Supreme Court Rule 17 abridges and modifies the Lynns' substantive right under the First Amendment of the US Constitution..................................................... 28

IX.   The same effect of the Supreme Court Rule 17 demonstrated above occurs in the application of Supreme Court Rule 5 to the Lynns' substantive rights under the First, Fifth, and Fourteenth Amendments, which requires judicial review....................... 29

X.   There is nothing to appeal since all the Lynns Complaints have been dismissed without prejudice, so this court is requested to exercise Jurisdiction over their claims as it is "…with such Exception." ........................ 31

XI.   In order for the Defendants responsible for the Lynns injuries to be held accountable, this Court needs to exercise Jurisdiction over the Proposed Complaint to determine the nature and amount of injuries that the Lynns have sustained

- 3 -

during and after the events of private arbitration, state court, and federal court because the Lynns are eggshell plaintiff with injuries still accruing............................. 32

XII. Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries comes from the Neglect of President Biden (his mental capabilities have been diminished while in office) to manage and faithfully execute the Medicare act under the Social Security Act as required by Article 2 through his Cabinet (Department of Health and Human Services), to ensure that medically necessary surgical procedures shall not be denied to US Citizen seniors like Pamela Lynn who life depends on having the treatment and have a history of obtaining that care (the Lynns had these procedures approved by private healthcare and also, per the State of California Department of Insurance)........................................................ 34

XIII. Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries comes from the Neglect of Vice President Harris and Senate Pro Tempore Murray under Amendment 25 to bring a writing to the Senate that President Biden's mental capabilities have been diminished to prevent this type of Neglect of Medicare denials for medically necessary procedures from occurring to US Citizens like Pamela Lynn .......................................... 35

XIV. Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries come from the Neglect of US President Biden, Vice President Harris, and Senate Pro Tempore Murray for not overseeing the relevant State Governors and Mayor who allowed Kaiser to operate,

- 4 -

which did not protect the health and safety
of those US Citizens ........................................ 35

XV.   Since this Court has Original and
Exclusive Jurisdiction over this matter,
then the Lynns ask this Court to use its
Power to injunct or estop the Defendant
Biden from violating the US Constitution
under Article 2 by having Defendant
Kamala Harris as Vice President without
Amendment to Article 2 of the US
Constitution as required by Article 5 to
allow for a biological female to be Vice
President ......................................................... 36

XVI.  The Lynns ask this Supreme Court
to use its Power to injunct or estop the
Defendant Kamala Harris' run for US
President as her campaign, and even if
successful, violates the Article 2, Section 1
which requires a biological male or a "He"
to be a US President ...................................... 38

XVII. The Lynns ask this Supreme Court
to use its Power to declare judgment that in
order for this Article II requirement to
allow for a biological female or ...................... 39

XVIII.The Lynns ask this Supreme Court
to use it Power to declare judgment that in
order for this Article 2, Section 1
requirement to be upheld that Kamala
Harris shall be removed from her
unconstitutionally acquired position of Vice
President since the US Constitution has not
been amended under Article V to allow for
this and that this Supreme Court shall
declare judgment that the Speaker of the
House, Mike Johnson, is the Vice President
due to Amendment 25 .................................... 40

XIX.  The Lynns ask this Supreme Court
to use its Power to declare judgment that

the Governors and Mayor and House of Representatives and Senators violated the US Constitution by allowing for their 2020 States Electors casting their States' electoral college votes for Vice President Harris in violation of the US Constitution Article II that requires the US President to be a "He" or a biological male since the Vice President has the capability of succeeding the President under Article 2 ........................ 40

XXI. Due to reasons stated above, the Lynns as US Citizens ask this Court to injunct the State Electors from 2020 from participating in the 2024 Presidential election............................................................ 40

XXI. The Lynns as US Citizens assert that Defendant Harris nomination and approval of her run for US President in 2024 by the Democratic Party and Elected Officials violates Amendment 24 because the rights of US Citizens to vote in primary elections for US President was denied or abridged by the US and its States ..................................... 41

Direct Precedents Invoking Original Jurisdiction of This Court ................................... 41

Need for the Aid of This Court............................ 49

CONCLUSION........................................................ 50

CERTIFICATE OF WORD COUNT ........................ 51

APPENDIX: PROPOSED COMPLAINT ................. 52

## <u>TABLE OF AUTHORITIES CITED</u>

Page No.

### <u>CASES</u>

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016)................................................ 27

*Cherokee Nation v. Georgia*,
   30 U.S. 1 (1831) .................................................... 20

*Delaware v. Pennsylvania and Wisconsin*,
   143 U.S. 555 (2022)............................................... 49

*Georgia v. Pennsylvania R.R.*,
   324 U.S. 439 (1945)............................................... 44

*Glossip v. Gross*,
   576 U.S. 863 (2015)............................................... 48

Kansas v. Nebraska,
   574 U.S. 445 (2015)......................................... 25, 47

*Mackey v. United States*,
   401 U.S. 667 (1971)............................................... 27

Marbury v. Madison,
   5 U.S. 137 (1803) ..........27, 28, 32, 35, 36, 38, 42, 50

Maryland v. Louisiana,
   451 U.S. 725 (1981)............................................... 23

*Massachusetts v. Missouri*,
   308 U.S. 1 (1939) .................................................. 20

Mississippi v. Louisiana,
   506 U.S. 73 (1992) ................................................ 23

*Moore v. Harper*,
   600 U.S. 1 (2023) .................................................. 27

*Ohio v. Wyandotte Chemicals Corp.,*
    401 U.S. 493 (1971)..................................................43

Paramount Aviation Corp. v. Agusta,
    178 F.3d 132 (3d Cir. 1999)...................................24

*Pennsylvania v. New Jersey,*
    426 U.S. 660 (1976)..................................................46

United States v. Confederate Acres Sanitary Sewage
    & Drainage Sys., Inc.,
    935 F.2d 796 (6th Cir. 1991) ..................................24

*United States v. West Virginia,*
    295 U.S. 463 (1935)..................................................42

Vosburg v. Putney,
    86 Wis. 278 (1893) .................................................32

*Wash.  v. GM Corp.,*
    406 U.S. 109 (1972)..................................................45

*Wellness Int'l Network, Ltd.  v. Sharif,*
    575 U.S. 665 (2015)..................................................47

Wyoming v. Oklahoma,
    502 U.S. 437 (1992)..................................................23

## **STATUTES**

1 U.S.C § 1..................................................................38

28 U. S. C. § 1251........................................................26

28 U.S.C. § 1251...........................................................23

28 U.S.C. § 2072...........................................................28

## **RULES**

Fed. R. Civ. P. 13(g) ................................................24

Fed. R. Civ. P. 4 .......................................................21

- 8 -

Supreme Court Rules, Rule 17 ............................ 26, 27

Supreme Court Rules, Rule 5 ............................. 29, 31

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III, § 1 ............................................ 19

U.S. Const. art. III, § 2 ................................. 20, 23, 28

Comes now Petitioners Pamela Lynn and Wilson Lynn, Jr. ("Petitioners" or "the Lynns"), by and through their Counsel of Record, Steven Zamora, pursuant to authority vested in him under the laws of the United States of America ("USA" or "US"), and moves the Court for leave to file the accompanying Complaint.

In support of its Motion, the Lynns assert that their claims arise from Kaiser Permanente's healthcare system, which is the **(A)** practice of corporate negligence (putting business or money before medicine or patient care), which uses artificial intelligence software, that results **(B)** in tortious injuries to US Citizens in eight (8) US States, including the Lynns', who are residents of California, then when injured these US Citizens **(C)** seek remedies through Kaiser's private arbitration system that is a **(D)** monopoly because it violates Federal law and the US Constitution through the Sherman Act, Federal Arbitration Act, and/or Federal Civil Conspiracy – inter alia - by limiting patients recovery for their injuries in Arbitration through the use of and control of Kaiser's Legal Representation, Kaiser's Office of Independent Administrator, and Arbitrators, JAMS ADR, and these US Citizens' and the Lynns' claims are so serious and dignified, as demonstrated through the Lynns experiences in these recent years, and there is no alternative forum in which adequate relief may be granted then by coming now to this Supreme Court ("Court"): **E)** In living with catastrophic and chronic injuries, the Lynns, and other US Citizens, face being denied medically necessary treatment by private healthcare providers from the treatment of their injured medical state, and then when they are elders, they are denied further by Medicare in a similar practice of corporate negligence because of the US President who is legally required to manage this cabinet of the Executive Branch, including and not limited to his legal duties under the US Constitution that he swore to uphold January 2020 and all prior years as Vice President and Senator of the US - but does not due his diminished capacity

- 10 -

**165I**

and/or failure to oversee hired Administrators as confirmed by the US Senate or Elected Officials in neglect, and **F)** the Vice President and Senate Pro Tempore for failure to intervene as required by the US Constitution in Article 2 and as amended (Altogether **E)** and **F)** amounting to these Elected Officials "Neglect", "Gross Negligence", "Intentional Misconduct", and/or "Omission to Act" of their legal duties as required by the supreme law of the land, the US Constitution, for their greed of power and money as warned about by Alexander Hamilton in the Federalist Papers and Thomas Jefferson in the Declaration of Independence), and **G)** the Governors, Mayor, and Supervisors Neglect of the health and safety of its residents and failure to uphold the US Constitution as they swore to do as Elected Officials, and **H)** for this Court to provide any and all type of relief to the Lynns and US Citizens to deter and prevent the Defendants from harming them furthermore and to uphold the US Constitution, and **I)** so without this Motion and Proposed Complaint the Lynns and US Citizens injured as above perpetuates in America and face terrible adversity to even file this case, to the point of making one of the Lynns' cause of action run the Statute of Limitations against Defendant Aetna. For the reasons more fully stated in the accompanying Brief in Support, the Motion of the Lynns for Leave to File their Complaint should be granted by this Court.

Respectfully submitted,

Dated:  November 1, 2024

**Before Abraham was, I AM**

*Steven Zamora*

Steven Zamora, Esq.
9450 Pinecroft Dr. Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioners

- 11 -

No. _____

_____

**IN THE SUPREME COURT OF
THE UNITED STATES**

_____

**Pamela Lynn and Wilson Lynn, Jr.,**

**Petitioners**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Respondents**

_____

**AN ORIGINAL AND EXCLUSIVE ACTION
UNDER ARTICLE III, SECTION 2
OF THE UNITED STATES CONSTITUTION**

_____

**BRIEF IN SUPPORT OF MOTION FOR LEAVE
TO FILE COMPLAINT**

_____

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

- 12 -

## RELIEF SOUGHT

Petitioners move this Court to grant them leave to file the Complaint attached to this motion in the Appendix.

## GROUNDS FOR RELIEF

### Jurisdiction

A.    The Complaint is against the following defendants:

1.    Kaiser Foundation Hospitals, Inc., a nonprofit corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

2.    Kaiser Foundation Health Plan, Inc., a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

3.    Southern California Permanente Medical Group, Inc., a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections (Altogether 1 through 3, "Kaiser"); and

4.    Greg Adams, CEO of all Kaiser legal entities named, who resides in the State of California and, therefore, a citizen of the State of California; and

13

5.    Janet Liang, COO of all Kaiser legal entities named, who resides in the State of California and, therefore, a citizen of the State of California; and

6.    Dr. Andrew Bindman, CMO of all Kaiser legal entities named, who resides in the State of California and, therefore, a citizen of the State of California; and

7.    Dr. Kelvin Nyugen, who resides in the State of California and, therefore, a citizen of the State of California; and

8.    Dr. Marc Davison, who resides in the State of California and, therefore, a citizen of the State of California; and

9.    Dr. Julio Vaquerano, who resides in the State of California and, therefore, a citizen of the State of California; and

10.    Dr. Gavin Jonas, who resides in the State of California and, therefore, a citizen of the State of California; and

11.    Dr. Andrew Giap, who resides in the State of California and, therefore, a citizen of the State of California; and

12.    Dr. Lucio Loza, who resides in the State of California and, therefore, a citizen of the State of California; and

13.    Dr. Roberto Limgenco Barreto, who resides in the State of California and, therefore, a citizen of the State of California; and

14.    Dr. Albert Sung-Unjin, who resides in the State of California and, therefore, a citizen of the State of California; and

15.    Dr. Xaviour James Walker who resides in the State of California and, therefore, a citizen of the State of California; and

- 14 -

**169I**

16.    Dr. Srilakshmi Moturu who resides in the State of California and, therefore, a citizen of the State of California; and

17.    Office of Independent Administrator, a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

18.    JAMS ADR, a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

19.    Kirk H. Nakamura who resides in the State of California and, therefore, a citizen of the State of California; and

20.    Mirra Jhang who resides in the State of California and, therefore, a citizen of the State of California; and

21.    La Follette, Johnson, Dehaas, Fesler & Ames, a corporation organized and existing under the laws of State of California and, therefore, a citizen of the State of California, but also registered as a foreign corporation in each of the States named herein thereby availing themselves to the State and its citizens resources namely their money, roads, protections; and

22.    Brian Meadows, who resides in the State of California and, therefore, a citizen of the State of California; and

- 15 -

23.    Myra Firth, who resides in the State of California and, therefore, a citizen of the State of California; and

24.    Mitzi Thomas, who resides in the State of California and, therefore, a citizen of the State of California; and

25.    Aetna Life Insurance Company, who is headquartered in the State of Connecticut, but operates in the State of California, and, therefore, a corporate citizen of the State of Connecticut and foreign business in the State of California.

26.    County of Orange; and

27.    Don Wagner, Chief Board of Supervisors, who resides in the State of California and, therefore, a citizen of the State of California; and

28.    State of California; and

29.    Gavin Newsom, Governor of California, who resides in the State of California and, therefore, a citizen of the State of California; and

30.    District of Columbia; and

31.    Muriel Bowser, Mayor of District of Columbia, who resides in the District of Columbia and, therefore, a citizen of the District of Columbia; and

32.    State of Colorado; and

33.    Jared Polis, Governor of Colorado, who resides in the State of Colorado and, therefore, a citizen of the State of Colorado; and

34.    State of Georgia; and

35.    Brian Kemp, Governor of Georgia, who resides in the State of Georgia and, therefore, a citizen of the State of Georgia; and

- 16 -

**171I**

36.    State of Hawaii; and

37.    Josh Green, Governor of Hawaii, who resides in the State of Hawaii and, therefore, a citizen of the State of Hawaii; and

38.    State of Maryland; and

39.    Wes Moore, Governor of Maryland, who resides in the State of Maryland and, therefore, a citizen of the State of Maryland; and

40.    State of Oregon; and

41.    Christine Kotek, Governor of Oregon, who resides in the State of Oregon and, therefore, a citizen of the State of Oregon; and

42.    State of Virginia; and

43.    Glenn Youngkin, Governor of Virginia, who resides in the State of Virginia and, therefore, a citizen of the State of Virginia; and

44.    State of Washington; and

45.    Jay Inslee, Governor of Washington, who resides in the State of Washington and, therefore, a citizen of the State of Washington; and

46.    Supreme Court of the United States; and

47.    Kamala Harris, Vice President of the United States and President of the Senate; and

48.    Patty Murray, Senate Pro Tempore; and

49.    Library of Congress; and

50.     Executive Branch of the United States; and

51.    Joe Biden, President of the United States; and

- 17 -

**172I**

B. This is an action by the Petitioners against Kaiser Foundation Hospitals, Inc. et. al. These Defendants are the citizens of the States and countries described above and, therefore, this Court has jurisdiction of the disputed under Article III, Section 2 of the US Constitution.

C. The main reasons for this Court's Jurisdiction over this Proposed Complaint are as follows and are expounded on in the Purpose of the Proposed Action section:

   a. The State of California is a Party triggering original Jurisdiction;

   b. Seven (7) other US are Parties triggering original Jurisdiction;

   c. These eight (8) US States are Parties who are in a case or controversy due to their right to crossclaim under FCRP 13;

   d. This Court has the supreme power to perform judicial review and provide relief through legal and equitable remedies of Congressional Acts and Supreme Court Rules enacted after the US Constitution, which are unconstitutional, as per Article III, Section 2 language stating "…with such Exception…" and under this Court's holding under *Marbury v. Madison*;

   e. This Court has the supreme power to perform judicial review and provide relief through legal and equitable remedies for the Neglect of County, State, and Federal Elected Officials whose actions or inactions conflict with and/or violate their sworn to duties under the US Constitution, which injuries the US and its Citizens, including the Lynns substantive rights, as per Article III, Section 2 language stating "…with such Exception…" and under this Court's holding under *Marbury v. Madison*; and

- 18 -

**173I**

f. The Lynns are eggshell plaintiffs, so all injuries that occurred to the Lynns herein have to be heard by this Court to hold the private and public tortfeasors accountable by adjudication, and if found liable, to access the true number of damages owed by the original private Defendant tortfeasors who caused the Lynns (and other US Citizens) past, present, and future injuries and also, to deter this tortious behavior from occurring in the future by the private and governmental Defendants through legal and equitable relief.

### Purpose of the Proposed Action

**I.    The Judicial Power of the US is vested solely in the Supreme Court, so the Lynns seek redress of their grievances under the First Amendment with this Court.**

"Article III, Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

Applied to this Motion, the Lynns are requesting that this one supreme Court exercise its Judicial Power under the US Constitution over the Lynns' Motion for Leave arguments and their Proposed Complaint.

Moreover, the First Amendment to the US Constitution states that Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances.

Therefore, the Lynns move (petition) this Court (Government) to exercise its judicial Power (for the redress of their grievances, which are the Motion for Leave arguments and their Proposed Complaint) in order for them to exercise their substantiative right under the First Amendment to the US Constitution

- 19 -

**174I**

and for the US Constitution to be performed by this Court.

**II.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's Original Jurisdiction over their Motion for Leave and Proposed Complaint because the State of California is a party.**

"Article III, Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the Unites States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Counsels;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the Unites States shall be a Party;--to Controversies between two or more States;--between a State and Citizen of different States,--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof and foreign States, Citizens or Subject. In all Cases affecting Ambassadors, other public Ministers, and Consuls, and **those in which a State shall be a party, the Supreme Court shall have original Jurisdiction**." *Cherokee Nation v. Georgia*, 30 U.S. 1 (1831), *Massachusetts v. Missouri*, 308 U.S. 1 (1939).

Applied to this Motion, the State of California is a Defendant and is a "state [that] shall be a party" in this Motion for Leave and their Proposed Complaint.

After having the Lynns actions in California dismissed without prejudice in private arbitration and then in six (6) Superior Court of Orange cases, the Lynns filed case no. 4-24-cv-00935 in the Southern District of Texas due to Federal Questions and Constitutional violations that occurred at the hands of

- 20 -

**175I**

the private Defendants in the State of California who had the empowerment of State Power via the neutral Arbitrator, Defendant Kirk Nakamura and his employer, Defendant JAMs ADR.  Due to this, when file case no. 4-24-cv-00935's complaint was first amended, the Lynns added the State of California as a defendant and was then issued a summons by the clerk of the court for the State of California via service on the current California Attorney General. The State of California was notified of the lawsuit and asked to waive summons under Federal Rules of Civil Procedure ("FRCP") 4 via a certified carrier delivery.

During the notification of the lawsuit and summons response period for the defendants named, none of them waived the summons, the Lynns' Counsel of Record, Steven Zamora, reread the US Constitution and this particular Article III, section 2. As a result, he could not in good conscience fail to bring the Lynns Complaint to this Court to honor and uphold the US Constitution as he swears to do annually in three US States and Federal Courts (Missouri, Texas, and New York) since this Court by this power has the right of first review when a "state is a party." Theoretically and logically, this makes sense that this Court shall have original (right to first review it) because the Framers of the US Constitution understood that a US State could not be impartial concerning its own defense in a lawsuit, and a lower federal court (district or appellate) established by Congress (i.e., Southern District of Texas) cannot decide a matter that can change a US State governance because that sole power is only vested in this Court by the Supreme Law of the land, the US Constitution. And if these lower state or federal courts could not decide the matter of when a state is a defendant, then a private arbitrator certainly cannot as well.

Moreover, the Lynns' Counsel of Record, then proceeded to motion for stay of this case – to preserve the Lynns' Statute of Limitations - while this Motion to Leave and Proposed Complaint could be filed at this

- 21 -

Court. However, in denying this motion to stay and not recusing themselves after the Lynns moved for this due to their impartiality, Senate confirmed Judge Charles Eskridge and Magistrate Judge Christina Bryan acting Sua Sponte (without prompting of the Lynns and the defendants as none of them had waived the summons) dismissed the Lynns case without prejudice.

Therefore, this Court shall have original Jurisdiction over the Lynns case even if only against one US State: California.

**III.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's Original Jurisdiction over their Motion for Leave and Proposed Complaint because eight (8) US States (California, Colorado, District of Columbia, Georgia, Hawaii, Oregon, Maryland, Virginia) are parties in this action due to the Lynns also being US Citizens and because these US States allow for Defendants Kaiser, Kaiser's Legal Representation, Kaiser's Office of Independent Administrator, and JAMs ADR to operate there just like the State of California allows them to operate in their State.**

Applied to this Motion, the Lynns discovered that Defendant Kaiser operates in this US States as well and felt compelled to add them as Defendants because their injuries from these private Defendants occur to other US Citizens who live in these other US State where these private Defendants are allowed by the State to operate.

Therefore, this Court shall have original Jurisdiction over the Lynns Motion for Leave and Proposed Complaint due to the private Defendants being allowed to operate in these other US States, so

- 22 -

**177I**

in essence, all eight (8) US States are "state[s] [that] shall be a party."

### IV. This Court has original and exclusive Jurisdiction over a case where two or more States have a case or controversy between each other, so it has this Jurisdiction over this Motion for Leave and Proposed Complaint because there is a case or controversy between eight (8) US States ("States") via the use of crossclaims.

Article III, Section 2 of the US Constitution, which was further codified by Congress, in 28 U.S.C. § 1251(a), both state that the supreme court shall have original and exclusive jurisdiction of all controversies between two or more states. *Mississippi v. Louisiana*, 506 U.S. 73 (1992), *Maryland v. Louisiana*, 451 U.S. 725 (1981), *Wyoming v. Oklahoma*, 502 U.S. 437 (1992). This means that no other federal court has the authority to hear these disputes, as the term "exclusive" precludes jurisdiction by any other court. *Id.*

Applied to this Motion, the Lynns' Complaint involves States as being a party to this action. These States are in controversy with each other because the Lynns' are US Citizens who experience the same or similar injuries in these States due to the private Defendants operations described herein. In addition, a determination by this Court in favor of the Lynns has the power to change the way that private healthcare is paid for (cost of healthcare), provided for (insurance covered benefits), and adjudicated for (private arbitration v. public arbitration or even tried in state and federal court) in these States. Note: Kaiser Permanente originated in the State of California.

Therefore, the need for these States to differentiate themselves via crossclaims from the State of California or even each other is crucial to

- 23 -

avoid liability from a healthcare or arbitration standpoint, and this need causes the controversy between the States (co-parties), which meets the two (2) or more States requirements in the US Constitution, Congress enactment of it, and the case law in support of it.

Under FRCP 13(g), a pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant. Unlike counterclaims, crossclaims are almost always permissive. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 146 n.11 (3d Cir. 1999) ("[t]here is no compulsory cross-claim rule in the federal system"); *United States v. Confederate Acres Sanitary Sewage & Drainage Sys., Inc.*, 935 F.2d 796, 799 (6th Cir. 1991).

Applied to this Motion, the States have a legal right to crossclaim against each other as coparties because the crossclaim would arise out of the occurrence in this case. These crossclaims may include a claim that the State making it is not liable but another State is liable.

Therefore, this legal right to crossclaim between these States as coparties to avoid liability for this case creates the controversy as required by the US Constitution for this Courts Original and Exclusive Jurisdiction over this case, so this Motion for Leave shall be granted because this controversy precludes any other court from hearing this case.

///

///

///

- 24 -

**179I**

**V.    This Court is requested to grant this Motion – as a matter of procedural due process under the Fifth and Fourteenth Amendments - in order to allow the Proposed Complaint to be filed, which will enable the States to assert their crossclaims, which only become actionable procedurally, when these US States are required to respond or answer to a filed Complaint at this Court.**

In order for a case to fall under the Supreme Court's original jurisdiction, it must involve a proper "controversy" where the complaining state has suffered a wrong through the actions of another state, or is asserting a right against another state that is susceptible to judicial enforcement according to common law or equity principles. *Id.* The Supreme Court's role in these cases is to act as a substitute for diplomatic resolution between sovereign states, which underscores the gravity and seriousness of such disputes. *Kansas v. Nebraska*, 574 U.S. 445 (2015).

Applied to this Motion, crossclaims between the States that take the form of a State asserting a right against another State that is susceptible to judicial enforcement according to common law or equity principles is precisely what can and will happen when this Court grants this Motion for Leave and the Proposed Complaint is adjudicated.

However, procedurally, the States crossclaims will not be known up and until this Motion for Leave is granted and the Lynns' Proposed Complaint is allowed to be filed at this Court. Prior to this occurring, the States are only allowed to oppose the Motion to Leave but not actually file a crossclaim against another State because they can only oppose the filing of the Complaint, which circumvents their ability to avoid liability. Liability as an outcome to a legal action can only be determined through the litigation of a Complaint so that this Courts' Justices can rendering a ruling.

- 25 -

**180I**

Moreover, the demonstration of these State v. State controversies are cited in the Table of Authorities and as explained in the Direct Precedents involving Original Jurisdiction. In each instance, this Court granted the Motion for Leave in order to resolve the controversy between the States.

Therefore, the Lynns request this Court to grant the Motion for Leave in order for this Court to resolve the controversy via crossclaims between the States.

**VI.    When applied to the Lynns action, this Court's Rule 17 is in conflict with the US Constitution requirement of hearing an original and exclusive action when there are two or more States in controversy because the initial Motion to Leave does not allow the US Constitution to come alive and be performed by the States actually demonstrating their controversy via crossclaims against each other, and this Rule 17 is conflicting with the US Constitution, so it requires judicial review by this Court, and by De Jure, this Motion for Leave shall be granted.**

Supreme Court Rule 17 states: "This Rule applies only to an action invoking the Court's original jurisdiction under Article III of the Constitution of the United States. See also 28 U. S. C. § 1251 and U.S. Const., Amdt. 11...2. The form of pleadings and motions prescribed by the Federal Rules of Civil Procedure is followed. In other respects, those Rules and the Federal Rules of Evidence may be taken as guides…3. **The initial pleading shall be preceded by a motion for leave to file, and may be accompanied by a brief in support of the motion**.

Procedurally, this is how original and exclusive actions are filed at this Court under Supreme Court Rule 17 since original actions – like the one that the Lynns have brought to this Court today - are predated first by filing a Motion to Leave.

- 26 -

Therefore, the ability for the States to crossclaim against each other to avoid liability, which creates the controversy between them as described in Article III, Section 2 is estopped by this Rule 17, and does not allow the US Constitution to come alive and be performed by the States that are coparty Defendants in this action.

In *Marbury v. Madison*, 5 U.S. 137 (1803), the Supreme Court established its power of judicial review. Chief Justice John Marshall, in his opinion, declared that "it is emphatically the province and duty of the judicial department to say what the law is." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), *Moore v. Harper*, 600 U.S. 1 (2023), *Mackey v. United States*, 401 U.S. 667 (1971). This case marked the first time the Supreme Court asserted its authority to invalidate laws that are in conflict with the Constitution, thereby establishing the principle of judicial review. *Id.*

Applied to this Motion, this Rule 17 is in conflict with the two or more US States in controversy requirement because Rule 17 prevents the controversy from occurring, which is having the States being Defendants coparties in this action having the ability to respond or answer the Lynns' Proposed Complaint.

In this circumstance, then it is the province and duty of the judicial department (this Court) to say what the law is, so this Court shall exercise Original and Exclusive Jurisdiction of the Lynns' Proposed Complaint in order to allow the US Constitution to come alive and be performed by the States.

Therefore, this Court shall grant this Motion to Leave and filing of the Complaint in order for Article III, Section of the US Constitution to be performed just like a government issued contract with line items from the Department of Defense (DoD) to a Prime Contractor like Lockheed Martin or Northrop Grumman, so that the US Citizens can reap the fruit

- 27 -

**182I**

of the goods and services and protections enacted 1787. In other words, the US Constitution, like a contract line items in a DoD prime contract needs to be performed fully, so that the sovereign contract between the US and the people can be adhered to.

**VII.   This Court's Right for Judicial Review is inherent in the US Constitution via the precedent of Marbury v. Madison, but it is also explicit in the US Constitution text: "…with such Exceptions".**

Article III, Section 2 of the US Constitution provides "In all other Cases before mentioned the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

Applied to this Motion, this right of judicial review falls into the category of "with such Exceptions" meaning that there are cases like *Marbury v. Madison* and this case for the Lynns that are outside of appellate Jurisdiction but relevant to a case or controversy that affects the US Constitution and its governance over the States.

Therefore, this Court has original and exclusive jurisdiction over this case just like it had over *Marbury v. Madison*.

**VIII.  Supreme Court Rule 17 abridges and modifies the Lynns' substantive right under the First Amendment of the US Constitution.**

According to 28 U.S.C. § 2072, the Supreme Court has the power to prescribe general rules of practice and procedure and rules of evidence for cases in the US district courts and courts of appeals. However, these rules must not abridge, enlarge, or modify any substantive right, and any laws in conflict with such rules will be of no further force or effect after the rules take effect.

- 28 -

Applied to this Motion, this Motion is a procedural hurdle in a marathon race for Justice for the Lynns to file a Complaint. Their First Amendment substantive right to petition the Government for a redress of grievances has been abridged and modified. This is because they cannot exercise this right to petition (file their Complaint) directly with this Court, it has to be motioned for, and that is not what the Framers of the US Constitution wrote in the First Amendment. In other words, this Motion to Leave is an abridgement of the right of the people (Lynns and other U.S. Citizens) to petition (file this Complaint) the Government (Supreme Court) for redress of their grievances (Proposed Complaint).

Now if Congress shall make no law, then the Supreme Court shall definitely make no Rule that is enforced by this Court as law by its administrators and Justices before a petition/Complaint from the Lynns is able to be filed their grievances against the Government.

Therefore, for these reasons, this Court needs to exercise Jurisdiction over the Lynns Complaint for judicial review to occur and this conflict between Rule 17 and the US Constitution be resolved.

IX.     **The same effect of the Supreme Court Rule 17 demonstrated above occurs in the application of Supreme Court Rule 5 to the Lynns' substantive rights under the First, Fifth, and Fourteenth Amendments, which requires judicial review.**

Supreme Court Rule 5 states:

"Each applicant shall file with the Clerk (1) a certificate from the presiding judge, clerk, or other authorized official of that court evidencing the applicant's admission to practice there and the applicant's current good standing, and (2) a completely executed copy of the form approved by this Court and

- 29 -

**184I**

furnished by the Clerk containing (a) the applicant's personal statement, and (b) the statement of two sponsors endorsing the correctness of the applicant's statement, stating that the applicant possesses all the qualifications required for admission, and affirming that the applicant is of good moral and professional character. Both sponsors must be members of the Bar of this Court who personally know, but are not related to, the applicant."

Applied to this Motion, the Lynns' Counsel of Record complied with all the requirements of Rule 5 except for having two Supreme Court Attorneys sponsor him, and this requirement prevented the Lynns' from filing this Motion for Leave and Proposed Complaint because in order for their Counsel of Record to have access to Pacer to electronically file this case he is required to be a Supreme Court Attorney first. This requirement delayed the Lynns filing for five (5) months, which caused their Statute of Limitations for all causes of actions in their Proposed Complaint. It has been prejudiced the Lynns because their Statute of Limitations for Defendant Aetna tolled October 2024.

In addition, the Lynns' Counsel of Record is a Christian, Latino Lawyer who did not know any Supreme Court Attorneys until September 2024, so he was disadvantaged by this requirement and this Court has no tools or resources to help connect him with these Supreme Court Attorneys, so the requirement – although neutral on its face and application – discriminated against the Lynns Counsel of Record due to his demographic background. Note: That this additional requirement only become part of Rule 5 in 1934, which was during the time of racial discrimination against minority Americans. It is logically that the effect of this modification to Rule 5 was intended to discriminate against minorities seeking bar admission to this Court to challenge racial discrimination.

- 30 -

Therefore, this Court's judicial review is required to evaluate the Lynns' First (redress of their grievances, Fifth (procedurally and substantive due process rights), and Fourteenth (equal protection under the law) Amendment rights being denied by Rule 5.

**X.    There is nothing to appeal since all the Lynns Complaints have been dismissed without prejudice, so this court is requested to exercise Jurisdiction over their claims as it is "…with such Exception."**

Applied to this Motion, the Lynns are filing an original action with this Court because, procedurally and substantively, they have to. As explained herein, all of the Lynns actions in private arbitration, state court, and federal court have been dismissed without prejudice due the merits of their case having to be determined by this Court.

The Lynns have nothing to appeal in state or federal court since no determination or dismissal with prejudice occurred, so a writ of certiorari to this Court under Appellate Jurisdiction is implausible and impossible.

Therefore, this Court has exercise Jurisdiction under its "…with such Exceptions…" power over this action.

///

///

///

///

///

///

- 31 -

**186I**

**XI.** **In order for the Defendants responsible for the Lynns injuries to be held accountable, this Court needs to exercise Jurisdiction over the Proposed Complaint to determine the nature and amount of injuries that the Lynns have sustained during and after the events of private arbitration, state court, and federal court because the Lynns are eggshell plaintiff with injuries still accruing.**

The "eggshell plaintiff" rule, also known as the "eggshell skull" rule, is a legal doctrine that holds a defendant liable for the plaintiff's unforeseeable and uncommon reactions to the defendant's negligent or intentional act. This rule is encapsulated in the principle that "a tortfeasor takes its victims as it finds them." This means that if a plaintiff has a preexisting condition that makes them more susceptible to injury, the defendant is still fully liable for all the consequences of their actions, even if the injuries are more severe than what would be expected for an average person. *Vosburg v. Putney*, 86 Wis. 278 (1893).

Applied to this Motion, the Lynns have subsequent injuries that relate back to the original injuries of medical malpractice, battery, breach of fiduciary duty, and corporate negligence that the relief is being sought for, so the eggshell plaintiff rule applies to them. In addition, the private Defendants who caused the Lynns original injuries are responsible for the unforeseeable and uncommon reactions to their negligent or intentional act, which includes all the injuries that the Lynns are pleading from Southern District Court of Texas and until the filing of this Motion and Proposed Complaint, which includes violations of the Federal Arbitration Act, Federal Civil Conspiracy, Sherman Act violations, and False Imprisonment.

In *Marbury v. Madison*, this Court via Chief Justice John Marshall stated, "but where a specific duty is assigned by law, and individual rights depend

- 32 -

**187I**

upon the performance of that duty, it seems equally clear that the individual who considers himself injured, has a right to resort to the laws of his country for a remedy."

Applied to this Motion, the Lynns are following his jurisprudence now, as injured eggshell Plaintiffs, to have this Court to access and determine the Neglect of the Defendant Elected Officials and their administrative staff's failure to perform their specific duty assigned by law, which is swearing to uphold the US Constitution, while performing their job.

The County Supervisor, State Governors or Mayor failed to protect their citizens as required under the 10th Amendment to the US Constitution by allowing Kaiser to obtain hospital licenses and perpetuate the injuries named above to the Lynns and/or other US Citizens.

The US President, Vice President, and Senate Pro Tempore have failed to oversee and enforce the US Constitution against these States from allowing Kaiser to operate hospitals and injure US Citizens. Afterall, the Medicare act and Obamacare work hand and hand with the US Executive Branch and the States Executive Branch, so the Lynns injuries due to these Elected Officials conduct shall be reviewed by this Court.

Therefore, the Lynns are eggshell Plaintiffs and this Court shall exercise original and exclusive Jurisdiction over their Complaint because A) theirs and US Citizens injuries are relevant to this Courts holding in this case, B) this holding will impact this reoccurring systematic injury that occurs in the States, and C) this Courts judicial power to require Elected Officials perform or are estopped from failure to perform their legal duties is of most importance to our Country because failure to enforce the Rule of Law leaves us with a US Constitution that is changed without proper Amendment as required by Article 5.

- 33 -

So as Chief Justice John Marshall said in 1803 "...Then let us [this Court] apply this rule to the [Lynns] case [that is] under the consideration of this court, and now preliminarily via Motion, the Lynns now call upon Chief Justice John Roberts and the Associate Justice to do the same to protect our Constitution, Country, and its precious Citizens.

**XII.** **Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries comes from the Neglect of President Biden (his mental capabilities have been diminished while in office) to manage and faithfully execute the Medicare act under the Social Security Act as required by Article 2 through his Cabinet (Department of Health and Human Services), to ensure that medically necessary surgical procedures shall not be denied to US Citizen seniors like Pamela Lynn who life depends on having the treatment and have a history of obtaining that care (the Lynns had these procedures approved by private healthcare and also, per the State of California Department of Insurance).**

Applied to this Motion, this Court shall review that if Biden failed his legal duty under Article II when allowing his cabinet who manages Medicare to deny a medically necessary procedures (Endoscopy with Botox to open her esophagus for breathing and digestions and a scope guided epidural to relieve her chronic pain from Esophagectomy (major surgery) through the use of medical software as a service and claim service from a company called Noridian Healthcare Solutions, LLC.

Previously, the State of California's Insurance Department had overturned Defendant Aetna's denial of the Lynn's endoscopy with Botox due to the Insurance Department's medical doctor declaration of the procedure as being medically necessary.

- 34 -

**189I**

In *Marbury v. Madison*, this Court did review a US President, John Adams, actions of having Congress pass the Judiciary Act of 1801, which created new courts, added judges, and gave the President more control over appointment of judges, which this Court declared unconstitutional and in this same way, this Court must perform judicial review to say if this US President, Biden, has Neglected his sworn legal duty and this Neglect has injured the Lynns and other US Citizen.

Therefore, this Court shall exercise Jurisdiction to review and resolve this matter.

**XIII.  Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries comes from the Neglect of Vice President Harris and Senate Pro Tempore Murray under Amendment 25 to bring a writing to the Senate that President Biden's mental capabilities have been diminished to prevent this type of Neglect of Medicare denials for medically necessary procedures from occurring to US Citizens like Pamela Lynn.**

For the same reasons stated in XII. and also, to evaluate their legal duty and the right of the Lynns to seek redress, therefore, this Court shall exercise jurisdiction to evaluate this matter.

**XIV.  Lynns assert that this Court shall exercise Jurisdiction because the Lynns' injuries come from the Neglect of US President Biden, Vice President Harris, and Senate Pro Tempore Murray for not overseeing the relevant State Governors and Mayor who allowed Kaiser to operate, which did not protect the health and safety of those US Citizens.**

For the same reasons stated in XII. and also, to evaluate their legal duty and the right of the Lynns to

- 35 -

**190I**

seek redress, therefore, this Court shall exercise jurisdiction to evaluate this claim.

Due to the Neglect of these Elected Officials, it is both just and proper for this Court to hold them accountable to the other legal duties that they swore to uphold, but similarly Neglected, which requires judicial review, and this is supported by *Marbury v. Madison* holding where this Court stated James Madison was legally responsible to send in the commissions for the new Justices of Peace appointed by John Adams, but did not order him to.

**XV.** **Since this Court has Original and Exclusive Jurisdiction over this matter, then the Lynns ask this Court to use its Power to injunct or estop the Defendant Biden from violating the US Constitution under Article II by having Defendant Kamala Harris as Vice President without Amendment to Article II of the US Constitution as required by Article 5 to allow for a biological female to be Vice President.**

Article 2, Section 1 of the US Constitution states: "The executive Power shall be vested in a President of the United States of America. **He** shall hold **his** Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected as follows…Before **he** enter on the Execution of **his** Office, he shall take the following Oath or Affirmation: ---'I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States.'"

Applied to this Motion, Joe Biden is a biological male or "He" (one Y chromosome, one X chromosome per 23 pairs of chromosomes) and meets this Article 2 requirement.

- 36 -

**191I**

Article 2, Sections 2 and 3 also refer to the US President as a biological "He". The US Constitution enacted Article 2 in 1787 and it has not been amended to change or modify the meaning of its original language.

Applied to this Motion, Joe Biden is a biological male, a "He" and meets this Article 2 and 3 requirement. Furthermore, none of the 26 Amendments to the US Constitution change this requirement.

Amendment 25 states: "In the Case of the Removal of the President from Office, or of his Death, Resignation, or inability to discharge the Powers and Duties of the said Office the Same shall devolve on the Vice President.

Applied to this Motion, the Vice President succeeds the President. Currently, the US Vice President is a biological female or a "She" (Two X chromosomes per 23 pairs of chromosomes), so if this were to happen, then her succession violate Article 2 biological male or "He" requirement.

To make a human being, it takes a biological male and a biological female to have sex to create a child who has 46 pairs of chromosomes with each set coming from each parent.

Therefore, President Biden running with her in the 2020 Presidential election and winning and then having her as the Vice President was, is, and shall always be unconstitutional under Article II, which has not been amended, so this Court shall perform judicial review of the President's and Vice President's Neglect for not upholding the US Constitution as they swore to do.

///

///

- 37 -

**192I**

XVI. **The Lynns ask this Supreme Court to use its Power to injunct or estop the Defendant Kamala Harris' run for US President as her campaign, and even if successful, violates the Article II which requires a biological male or a "He" to be a US President.**

Applied to this Motion, Vice President Harris' run for US President violates Article II and this Court shall use its jurisdiction to injunct or estop her actions.

In addition, 1 U.S.C § 1 (1947), which codified the interpretation of Acts of Congress, states that the use of the words gender and words importing the masculine gender include the feminine as well.

Applied to this Motion, this Act of Congress is unconstitutional because it conflicts with the US Constitutions use of the Article 2 requirement for the US President to be a biological male or a "He". It is also unconstitutional because as of the enactment of the US Constitution in1787 the framers did not mean that a male equated to a female, or did they even know of the word named "gender" because "gender" did not become as a word.

This word "gender" became an Act of Congress in 1947, which conflicts with Amendment 25 succession plan for a Vice President, since a Vice President cannot be a biological female or a "She" until Article 2 is amended. In effect, this Court has the power to declare this Act of Congress unconstitutional since its performance is seeking to circumvent the Article 5 amendment process.

Moreover, per the holding *Marbury v. Madison*, this Court has the right to declare a Congressional Act unconstitutional – for that case it was of the Judiciary Act of 1789 enabling Marbury to bring his claim to the Supreme Court was itself unconstitutional and for this case its 1 U.S.C. § 1 and the allowance of the

- 38 -

**193I**

Democratic Party to allow a woman to run for US President and be Vice President since 2020 without amending the US Constitution as required under Article 5.

Also, this line of reasoning is supported by the subsequent Amendments to the US Constitution. Namely, the 13th Amendment outlawing slavery and the 19th Amendment giving women the right to vote. By prospering amending the US Constitution via Acts of Congress, slavery ended and women lack of a right to vote ended and the US Constitution was performed as enacted.

Therefore, the US Constitution would also need to be amended for women to have a right to run for President or even be a Vice President who could succeed to the Office of the US President under Article II succession or the 25th Amendment.

**XVII.  The Lynns ask this Supreme Court to use its Power to declare judgment that in order for this Article II requirement to allow for a biological female or "She" to be a US President the US Constitution would need to be amended per Article V.**

For the same reasons stated above, the Lynns ask this Court to exercise Jurisdiction over this case.

///

///

///

///

///

///

///

- 39 -

**194I**

XVIII.    **The Lynns ask this Supreme Court to use it Power to declare judgment that in order for this Article II requirement to be upheld that Kamala Harris shall be removed from her unconstitutionally acquired position of Vice President since the US Constitution has not been amended under Article V to allow for this and that this Supreme Court shall declare judgment that the Speaker of the House, Mike Johnson, is the Vice President due to Amendment 25.**

For the same reasons stated above, the Lynns ask this Court to exercise Jurisdiction over this case.

XIX.    **The Lynns ask this Supreme Court to use its Power to declare judgment that the Governors and Mayor and House of Representatives and Senators violated the US Constitution by allowing for their 2020 States Electors casting their States' electoral college votes for Vice President Harris in violation of the US Constitution Article II that requires the US President to be a "He" or a biological male since the Vice President has the capability of succeeding the President under Article 2.**

For the same reasons stated above, the Lynns ask this Court to exercise Jurisdiction over this case.

XX.    **Due to reasons stated above, the Lynns as US Citizens ask this Court to injunct the State Electors from 2020 from participating in the 2024 Presidential election.**

For the same reasons stated above, the Lynns ask this Court to exercise Jurisdiction over this case.

///

- 40 -

**195I**

**XXI. The Lynns as US Citizens assert that Defendant Harris nomination and approval of her run for US President in 2024 by the Democratic Party and Elected Officials violates Amendment 24 because the rights of US Citizens to vote in primary elections for US President was denied or abridged by the US and its States.**

Under Amendment 24, it states: "The rights of citizens the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax.

Applied to this Motion, Defendant Kamala Harris obtained the right to run for US President over other Democratic Party Presidential nominees without the right of the US Citizens to vote in primary elections guaranteed under Amendment 24 and this blatantly violates the text of the US Constitution. Biden, Harris, and the Democratic Party as supported or endorsed by the States Governors and Mayor and House of Representatives and Senators fail to uphold the US Constitution with their actions. In addition, Amendment inherently gives US citizens the rights to vote in Presidential and Vice Presidential elections.

Therefore, this Court shall exercise its power to review and declare unconstitutional.

### Direct Precedents Invoking Original Jurisdiction of This Court

1. At this time, there are no Direct Precedents Invoking Original Jurisdiction of This Court in the approach that the Lynns have filed in this Court as US Citizens, but there is one case where this Court exercised their Jurisdiction ("with such Exception"). This Precedent is summarized below:

- 41 -

**196I**

- *Marbury v. Madison¸* 5 U.S. 137 (1803). The applicant (William Marbury) and others (Dennis Ramsay, Robert Townsend Hooe, and William Harper) contended that the late President of the US (John Adams) had nominated them to the Senate and that the Senate had advised and consented to their appointments as justices of the peace. The commissions were signed by the late President and the seal of the US was affixed to the commissions by the Secretary of State. The commissions were withheld from the applicants and they requested their delivery. The Court granted a rule to show cause, requiring the Secretary (Madison) to show cause why a mandamus should not issue to direct him to deliver to the commissions. No cause was shown and the applicant filed a motion for a mandamus. The Court determined that the applicant had a vested legal right in his appointment because his commission had been signed by the President, sealed by the Secretary of State, and the appointment was not revocable. The Court found that because the applicant had a legal title to the office, the laws afforded him a remedy. However, the Court held that § 13 of the Act of 1789, giving the Court authority to issue writs of mandamus to an officer, was contrary to the Constitution as an act of original jurisdiction, and therefore void.

2. All of other Direct Precedents come from a US States challenging other US States or as otherwise written in Article III, Section 2 of the US Constitution. These Direct Precedents are summarized below:

- *United States v. West Virginia*, 295 U.S. 463 (1935). US Supreme Court did not have original jurisdiction over an action brought by the US against Virginia because mere grant of state license to build dams was not an infringement

- 42 -

**197I**

on federal authority to control navigable waters. The State of Virginia granted to the power companies a state license to build dams on the New and Kanawha rivers. Plaintiff filed a bill of complaint with the Court seeking to enjoin the construction of the dams pursuant to section 23 of the Federal Water Power Act, 16 U.S.C. §§ 791, 817, which required a license from the Federal Power Commission in order to build dams that would affect the interests of interstate commerce. The Court dismissed plaintiff's bill of complaint. The Court held that the bill of complaint did not present a case or controversy between the US and West Virginia within the meaning of U.S. Const. art. III, § 2 because it alleged no actual or threatened interference with the authority of the US to control navigable waters. The Court held that the mere grant of the state license was not an infringement of the federal authority, so no federal question was presented, and the Court did not have original jurisdiction over the action. The court dismissed plaintiff's bill of complaint.

- *Ohio v. Wyandotte Chemicals Corp.*, 401 U.S. 493 (1971). The US Supreme Court declined to exercise original jurisdiction over Ohio's nuisance abatement action against out-of-state and foreign defendants because the case was extraordinarily complex and involved novel scientific issues of fact. Ohio alleged that the corporations each dumped mercury into streams, which ultimately reached Lake Erie. Thus, Ohio further alleged that the corporations contaminated and polluted the lake's waters, vegetation, fish, and wildlife. The Court noted initially that it had original jurisdiction over Ohio's complaint. The Court revealed that it had no special competence in resolving disputes between states and foreign defendants. Instead, its competence was in matters of federal law. Additionally, the Court's

- 43 -

structure as an appellate tribunal made factfinding difficult. The Court held that it could decline to exercise original jurisdiction that it possessed over a complaint brought by a state against foreign defendants if two conditions were satisfied. First, declination of jurisdiction was not inconsistent with the reasons that Article III of the Constitution granted the jurisdiction. Second, the Court was persuaded by practical wisdom that it was an inappropriate forum. The Court concluded that it should not exercise jurisdiction in part because the case was extraordinarily complex and involved novel scientific issues of fact. The Court denied without prejudice Ohio's motion for leave to file a bill of complaint to invoke the Court's original jurisdiction.

- *Georgia v. Pennsylvania R.R.*, 324 U.S. 439 (1945). State could bring an antitrust action for injunctive relief against railroad companies, even though the Interstate Commerce Commission established minimum and maximum rates, where the Supreme Court had original jurisdiction over the action. The Court granted plaintiff State leave to file its amended bill of complaint against defendant railroads for conspiring to act in restraint of trade. The Court had original jurisdiction, because plaintiff had sued for its own injuries as a "person," for purposes of the Clayton Act, 15 U.S.C.S. § 11 et seq., even though its interests were not proprietary in nature, because it could sue to protect the interest of its citizens parens patriae. Plaintiff could not recover damages against defendants because the Interstate Commerce Commission set limits on the rates. However, injunctive relief was available. Although the rates that plaintiff claimed defendants had set could have been reasonable, such condition was insufficient to avoid antitrust liability. Plaintiff did not have to prove that it did not have an adequate remedy

- 44 -

**199I**

elsewhere, once it had shown original jurisdiction. In any case, a district court could not issue process beyond its district limits. The Court granted plaintiff's motion for leave to file an amended bill of complaint because plaintiff had stated a claim for injunctive relief under the federal antitrust laws, even though it could not recover monetary damages, and the Court had original jurisdiction over the action.

- *Wash. v. GM Corp.*, 406 U.S. 109 (1972). The original jurisdiction of the U.S. Supreme Court was not invoked in a suit by 18 states alleging a conspiracy among automobile manufacturers because the injunction sought suggested that the parties be remitted to federal district courts and corrective remedies for air pollution had to be considered in the context of localized situations. The states sought an injunction requiring defendants to undertake an accelerated program of spending, research, and development designed to produce a fully effective pollution control device or devices and/or pollution free engine at the earliest feasible date and also ordering defendants to install effective pollution control devices in all motor vehicles they manufactured during the conspiracy and as standard equipment in all future motor vehicles that they might manufacture. The court granted the joinder motions of North Dakota and West Virginia and denied the states' motion for leave to file. The court not only had to look to the nature of the interest of the complaining state, but also inquire whether recourse to that jurisdiction was necessary for the state's protection. The availability of the federal district court as an alternative forum and the nature of the relief requested suggested that the court remit the parties to the resolution of their controversies in the customary forum. Corrective remedies for air pollution necessarily had to be considered in the context of localized situations.

- 45 -

The causes would be properly heard in the appropriate federal district courts. The court granted the motions of North Dakota and West Virginia to be joined as parties plaintiff. The court denied the states' motion for leave to file a bill of complaint and remitted the parties without prejudice to the other federal forum.

- *Pennsylvania v. New Jersey*, 426 U.S. 660 (1976). Although income taxes on nonresident commuters diverted taxes from treasuries of States where commuters resided, such States lacked standing to invoke original jurisdiction of US Supreme Court to prosecute citizens' purely personal claims. States could not complain about damage from exemptions they allowed for taxes paid in other states. The complaints sought to invoke the court's original jurisdiction based on the court's holding in another case that a New Hampshire tax on the New Hampshire derived income of nonresidents violated the Privileges and Immunities Clause. In the cases at bar, defendants taxed the income that nonresidents earned in their states. This taxation effectively diverted taxes from the treasuries of plaintiffs because plaintiffs allowed their citizens a tax credit for the taxes paid in other states. To engage the court's original jurisdiction, plaintiffs had to demonstrate that their injuries were directly caused by defendants' actions. Plaintiffs could not complain about damage inflicted by their own hands. Nothing required plaintiffs to extend a tax credit to their residents, and nothing prevented them from withdrawing that credit. Additionally, both the Privileges and Immunities Clause and the Equal Protection Clause protected people, not States. Although the court recognized the legitimacy of parens patriae suits, plaintiffs lacked standing to sue because they were merely litigating as volunteers the personal claims of their citizens rather than to protect

- 46 -

quasi-sovereign interests. The court denied leave to file the bills of complaint.

- *Kansas v. Nebraska*, 574 U.S. 445 (2015). Nebraska knowingly exposed Kansas to a substantial risk of receiving less water than the Republican River Compact provided, and thus, knowingly failed to comply with the Compact's obligations where Nebraska failed to adopt adequate mechanisms for staying within its allotment, and the Compact contemplated wet and arid years. Holdings included: [1] -A special master properly concluded that Nebraska knowingly exposed Kansas to a substantial risk of receiving less water than the Republican River Compact provided, and thus, knowingly failed to comply with the Compact's obligations where Nebraska failed to adopt adequate mechanisms for staying within its allotment, and the Compact contemplated wet and arid years; [2] -Disgorgement was a fair and equitable remedy for Nebraska's breach given its upstream position and the fact that the higher value of the water on its farmland rewarded its breach; [3] – Kansas's argument that the disgorgement award was too low to ensure Nebraska's future compliance was rejected where Nebraska altered its conduct after the 2006 breach, and had complied with the Compact ever since; and [4] -The settlement accounting procedures were amended so that they no longer charged Nebraska for imported water. Exceptions overruled; special master's recommendations adopted. 5-4 decision; 2 dissents; 2 concurrences.

- *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015). Court reversed determination that debtor's Stern v. Marshall objection could not be waived and that the bankruptcy court lacked constitutional authority to enter final judgment on an alter-ego claim because U.S. Const. art. III, § 1, was not violated when the parties

- 47 -

knowingly and voluntarily consented to adjudication by a bankruptcy judge. Holdings included: [1] A determination that the debtor's Stern v. Marshall objection could not be waived and that the bankruptcy court lacked constitutional authority to enter final judgment on an alter-ego claim was reversed because U.S. Const. art. III, § 1, was not violated when the parties knowingly and voluntarily consented to adjudication by a bankruptcy judge; [2] Consent to adjudication by a bankruptcy court did not need to be express, but had to be knowing and voluntary; and [3] It was up to the lower court to decide on remand whether the debtor's actions evinced the requisite knowing and voluntary consent, and also whether the debtor forfeited his Stern argument below. Judgment reversed; case remanded. 6-3 Decision; 1 concurrence; 2 dissents.

- *Glossip v. Gross*, 576 U.S. 863 (2015). Inmates who were awaiting execution in Oklahoma were not entitled to an order enjoining the State from using a 500-milligram dose of midazolam as the first drug it administered, before it administered a paralytic agent and potassium chloride, based on their claim that the use of midazolam violated the Eighth Amendment. Holdings included: [1] The US Court of Appeals for the Tenth Circuit did not err when it affirmed a district's court's judgment that inmates who were awaiting execution in Oklahoma were not entitled to an order enjoining the State from using a 500-milligram dose of midazolam as the first drug it administered, before it administered a paralytic agent and potassium chloride, because the use of midazolam violated the Eighth Amendment; and [2] The district court's determination that a 500-milligram dose of midazolam would make it a virtual certainty that any individual would be at a sufficient

- 48 -

level of unconsciousness to resist the noxious stimuli which could occur from the application of the second and third drugs was not clearly erroneous, and the inmates failed to identify a known and available alternative method of execution that presented a substantially less severe risk of pain. Judgment affirmed. 5-4 Decision; 2 Concurrences; 2 Dissents.

- *Delaware v. Pennsylvania and Wisconsin*, 143 U.S. 555 (2022). **Still before this Court**. MoneyGram Payments Systems, which is headquartered in Delaware, returns unclaimed checks to that state. Pennsylvania and Wisconsin argue that the checks are "money orders" or "similar written instruments," which federal law requires to go to the states where they were purchased. Invoking the U.S. Supreme Court's jurisdiction over interstate disputes, Delaware filed the case directly in the Supreme Court. The Court appointed a special master, who concluded that MoneyGram's checks are "money orders" or "similar written instruments" and thus should go to the states where they were purchased. Delaware asked the Court to review the Special Master's findings for error. Procedurally, the Court granted Original Jurisdiction as this case presented a case or controversy between two or more US States. Moreover, the Second Interim Report of the Special Master received and ordered filed. Exceptions to the Report, with supporting briefs, may be filed by January 10, 2023. Replies, if any, with supporting briefs, may be filed by January 20, 2023.

### Need for the Aid of This Court

3. Without this Court's aid, the Lynns and US Citizens will not be able to achieve Justice for their injuries. As Dr. Martin Luther King spoke, "an injustice anywhere is a threat to justice everywhere" and as Jesus spoke, "a little leaven

- 49 -

leavens the whole lump," so we ask this Court to stop this injustice now before it leavens the whole lump of this country.

4. When heard by this Courts original and exclusive Jurisdiction under Article 3, Section 2 and per the holding in *Marbury v. Madison*, then this Court can stop the Injustice (injuries to the US Constitution, our Country, and US Citizens) provide Justice to stop this leaven or sin from spreading further by these named Defendants and a result, destroy our US Constitution.

5. The US and its Citizens needs this Court's immediate and effective start toward solving these Injustices and it justifies this Court's original and exclusive Jurisdiction over the Lynns Proposed Complaint.

6. As the gatekeepers and interpreters of the Supreme Law of the Land, the US Constitution, the Lynns and fellow Americans, whose eyes are wide open to the Defendants injuries upon them, depend on you all to provide them Justice.

7. They all exhort you now to:  Be Supreme!

## CONCLUSION

For the reasons stated, this Motion for Leave to file the Proposed Complaint should be granted.

Respectfully submitted,

Dated:  November 1, 2024

*Steven Zamora*

Steven Zamora, Esq
9450 Pinecroft Dr, Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioners

- 50 -

## <u>CERTIFICATE OF WORD COUNT</u>

Case No.:
Case Name:  *Pamela Lynn and Wilson Lynn, Jr. v.*
*Kaiser Foundation Hospitals, Inc., et. al.*
Title:  Motion For Leave To File Complaint

Pursuant to Rule 33.1(h) of the Rules of this Court, I certify that the accompanying Motion for Leave to File Complaint, which was prepared using Century Schoolbook 12-point typeface, contains 8,915 words, excluding the parts of the document that are exempted by Rule 33.1(d). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Dated:  November 1, 2024

**Before Abraham was, I AM**

*Steven Zamora*

Steven Zamora, Esq.
9450 Pinecroft Dr. Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Petitioners

- 51 -

**206I**

No. _____

_____

**IN THE SUPREME COURT OF**
**THE UNITED STATES**

_____

**Pamela Lynn and Wilson Lynn, Jr.,**

**Plaintiffs**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Defendants**

_____

**AN ORIGINAL AND EXCLUSIVE ACTION**
**UNDER ARTICLE III, SECTION 2**
**OF THE UNITED STATES CONSTITUTION**

_____

**APPENDIX: PROPOSED COMPLAINT**

_____

**Steven Zamora, Esq.**
**Counsel of Record for Petitioners**
**Pamela Lynn and Wilson Lynn, Jr.**
**9450 Pinecroft Dr., Unit 9834**
**The Woodlands, TX 77380**
**stevenzamora@beforeabrahamwas-iam.org**
**(858) 382-1064**

- 52 -

**207I**

To the Honorable Justices of the Supreme Court of the United States who are empowered strictly by the US Constitution and its Amendments, which are the outcome of the US Declaration of Independence as written by Thomas Jefferson:

COMES NOW Plaintiff, Pamela Lynn, and Plaintiff, Wilson Lynn, Jr., (Altogether "Plaintiffs" or "Lynns" or individually "Pamela" or "Wilson") to file this Complaint with this Court against the Defendants named in the Motion for Leave (Altogether "Defendants," grouped or individually as indicated in caption) via their Counsel of Record, Steven Zamora, who was duly admitted to this Court to practice law in accordance with Rule 5 on November 4, 2024, so that he is qualified, authorized, and is acting in this legal capacity for the Lynns by respecting the Rule of Law.

### Parties and Jurisdiction

The Parties are the same as stated in the Motion for Leave with the additional facts concerning the Lynns.

The Lynns are US Citizens who have been married for over forty-six (46) years. They now reside in Weaverville, CA because they had to leave their home in Newport Beach, CA due to the financial hardship they endured from caring for Pamela (at the age of 66) who suffers from several medically chronic conditions at the hand of Defendant Kaiser. Wilson is an honorably discharged Air Force Veteran who worked as Military Police with K-9 in the past and now is a law enforcement officer at the Trinity County California Courthouse at the age of 71. He was the Administrative Pastor and Director of the Bible College for Calvary Chapel Costa Mesa and Pamela was a Sr. Women's Leader for Calvary Chapel Costa Mesa. Until she was injured by Defendant Kaiser, she took care of Sr. Pastor Chuck Smith until he passed onto heaven from cancer. He is the same Sr. Pastor featured in the movie called the "Jesus Revolution."

-53-

**208I**

Moreover, this Court has original and exclusive jurisdiction of this Complaint as stated in the Motion for Leave.

Therefore, this Court shall hear the Lynns Complaints concerning the Defendants.

### Facts Leading to the Lynns' Claims for Relief

In August 2019, Pamela was hospitalized for treatment of issues relating to her esophagus and digestion. She experienced trouble swallowing, digesting, and severe acid reflux.

Trusting Defendant Kaiser and Defendant Kaiser Medical Doctors, she underwent medical procedures, which resulted in multiple Kaiser hospital encounters where she was further injured for the rest of her life and Wilson has a loss of consortium due to this.

From May 2019 through August 2019, Pamela underwent eight (8) endoscopies with dilation, or surgeries, which resulted in her esophagus being perforated.

After her esophagus being perforated in her chest and abdomen, Pamela was coughing up air bubbles and could not breathe, so she was rushed by Wilson to the Kaiser Emergency Room (ER) located in Anaheim, CA where she was hospitalized overnight for four (4) nights.

Plaintiffs only just discovered these perforations in her chest and abdomen that caused the unresolved sepsis during the private arbitration discovery process. When the Lynn asked Defendant Kaiser for Pamela's medical record, they gave only 982 pages, which their Counsel of Record. However, in discovery, their Counsel of Record demanded all of Pamelas medical records that resulted in the Defendant turning over Pamela's entire medical

- 54 -

record consisting of over 16,000 pages (this was Defendant Kaiser's intentional and fraudulent concealment of the nature of Pamela's injuries from medical malpractice, battery, breach of fiduciary duty, and corporate negligence, which also stayed the three (3) year Statute of Limitations from tolling as per the California Medical Injury Compensation Act).

A month later, she underwent a major esophagus surgery called Ivor Lewis Esophagectomy and she went into a coma for over a month. In this surgery, Kaiser Medical Doctors completely severed her Vagus nerve, which carry signals between her brain, heart, and digestive system. Defendant Marc Davison concealed this severing of her Vagus nerve until her last visit with Kaiser in 2021. Since this surgery Pamela has the following chronic conditions, but not limited to: pain, vomiting, diarrhea, trouble breathing, unable to digest, inflammation, and unable to sleep lying flat on her back (she sleeps in a recliner in a separate room from Wilson).

After this surgery, Kaiser Medical Doctors went beyond the Lynns' consent and placed an esophageal stent on her esophagus, which was cut out or resectioned and then put back in per the Esophagectomy, which dislodged and injured her further and required at least three more surgeries.

In a medical appointment with Kaiser Medical Doctors, Pamela and Wilson were informed that she had this large stent put in her and that the doctor could not believe it had not been taken out yet. So, she was rushed into surgery to remove it two weeks later.

As declared by the State of California Insurance Department, she is required every three (3) months – now four (4) to six (6) weeks -due to her medical condition getting worse – to have an endoscopy with dilation and Botox to keep her alive.

When seeking to obtain this medical necessary surgery, Defendant Aetna denied it and made Pamela

- 55 -

**210I**

suffer physically, mentally, and emotionally. She appealed her denial up to the State of California Insurance Department who overturned Aetna denial and made them do the procedure as it was deemed medically necessary.

Due to the Lynns elder age and still being under financial hardship (Pamela is on Social Security Disability Income), they obtained Medicare and sought to continue Pamela's medically necessary procedures.

Medicare denied her procedure and deemed it not medically necessary, which made Pamela suffer physically, mentally, and emotionally in 2024. They also denied an epidural pain injection to reduce the inflammation in her spine and ribs and esophagus due to the Esophagectomy, which they deemed as not medically necessary. Previously, Defendant Kaiser and Defendant Aetna did cover this epidural pain injection.

The Lynns live knowing that Pamela is permanently injured and will one day pass away and go to heaven due to the injuries she has sustained from these Defendants.

In seeking relief from the legal process, they have been tortiously injured by Defendants in violation of state, federal, and the US Constitution, so they come seeking legal and equitable relief from this Court.

### Claim for Relief

"We the People (the Lynns and US Citizens who have suffered similarly like them) of the United States, in Order to form a more perfect Union, establish Justice (via this Complaint), insure domestic Tranquility (to uphold the US Constitution and hold the Defendants accountable for their behavior), provide for the common defence, promote the general Welfare (for Elected Officials to perform their oaths so

- 56 -

**211I**

the Lynns and US Citizens are protected), and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America."

**Note:** *For all causes of actions sought below, the Lynns do not want monetary damages from any County, State, or Federal employee or Elected Official for torts committed against them, but they only want declaratory or injunctive relief from this Court for these Defendants torts against the Lynns. When monetary damages are demanded in these Defendants context it is only for this Court to number the monetary damages total owed by the private Defendants.*

I.      **The Judicial Power of the US is vested solely in the Supreme Court, so the Lynns seek redress of their grievances under the First Amendment with this Court and they want this Court to declare that their action is Constitutional (meaning, that is support by the Constitution's prima facie text). (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns have exercised their substantive rights under Amendment 1 to seek redress of their grievances via filing this Original and Exclusive case with this Court directly and not as a writ of certiorari because when read together Amendment 1 and Article III, Section 2 give them this right.

Therefore, this Court shall declare that this cause of action, as filed, is Constitutional, so that the Lynns, and in the future, other US Citizens can seek redress of their grievances with this Court similarly.

///

///

///

- 57 -

**212I**

**II.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns now seek this Court's declaration that Original Jurisdiction over their Motion for Leave and Proposed Complaint is Constitutional as filed because the State of California is a party. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns have filed their Original action with this Court directly under Article III, Section 2 because the State of California is a party and the US Constitution states that this Court shall have original jurisdiction over such cases.

Therefore, this Court shall declare that this cause of action, as filed, is Constitutional, so that the Lynns, and in the future, other US Citizens can seek redress of their grievances with this Court similarly.

**III.    The Court has Original Jurisdiction over a Case where a State is a party, so this is why the Lynns seek this Court's declaration that Original Jurisdiction over their Motion for Leave and Proposed Complaint is Constitutional because eight (8) US States (California, Colorado, District of Columbia, Georgia, Hawaii, Oregon, Maryland, Virginia) are parties in this action, due to the Lynns also being US Citizens, and because all these US States allow for Defendants Kaiser, Kaiser's Legal Representation, Kaiser's Office of Independent Administrator, and JAMs ADR to operate there. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns have filed their Original action with this Court directly under Article III, Section 2 because eight (8) US States are a party to this action and the US Constitution states that this Court shall have original jurisdiction over such cases.

- 58 -

213I

Therefore, this Court shall declare that this cause of action, as filed, is Constitutional, so that the Lynns, and in the future, other US Citizens can seek redress of their grievances with this Court similarly.

**IV. This Court has Original and Exclusive Jurisdiction over a case where two or more States have a case or controversy between each other, so it has Jurisdiction over this Motion for Leave and Proposed Complaint because there is a case or controversy between eight (8) US States ("States") via the use of crossclaims, so the Lynns seek this Court to declare that this is Constitutional. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns have filed their Original action with this Court directly under Article III, Section 2 because eight (8) US States are a party to this action and they are in controversy with each other due to the potential use of crossclaims, so their filing meets the US Constitution requirement of having two or more States in controversy for them to exercise the Court's Original and Exclusive Jurisdiction over their case.

Therefore, this Court shall declare that when a case is filed that has multiple US States as coparties, so that there is a potential for US States to crossclaim against each other, then this Court shall exercise its Original and Exclusive Jurisdiction over the action because the requirement of having two or more US States is met.

///

///

///

///

///

- 59 -

**214I**

**V.    This Court is requested to declare this Motion is granted – as a matter of procedural due process under the Fifth and Fourteenth Amendments - in order to allow the Proposed Complaint to be filed, which will enable the States to assert their crossclaims, which only become actionable procedurally, when these States are required to respond or answer to a filed Complaint at this Court. (Fed. R. Civ. P. 57)**

Under Amendment 5, "…No person shall…be deprived of life, liberty, or property, without due process of law."

Applied to this Complaint, this Court has to comply with the Amendment 5 right to due process of the law. By this Court granting this Complaint to be filed at this Court it will have honored the Lynns' substantive right under Amendment 1. In order for the coparty Defendants to all their due process right to defend themselves against coparties under Amendment 5 is also Constitutional.

Therefore, this Court declaring that a Motion for Leave will be granted when there are multiple State coparty Defendants who can potentially crossclaim against each other allows both the Plaintiffs and Defendants herein to exercise their Amendment 5 rights by the Plaintiff's file of this Complaint and the Defendants' ability to respond or answer to the Complaint.

Under Amendment 14, "…nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Applied to this Complaint, the Lynn filing of it allows them to seek redress from the States depriving them of their life, liberty, or property and it also gives them equal protection of the laws, the US

- 60 -

**215I**

Constitutions' Original and Exclusive Jurisdiction over their Complaint. This only happens when this Court grants their Motion for Leave and the filing of this Complaint, so that the Defendants crossclaims can be potentially filed.

Therefore, this Court shall declare that granting this Motion for Leave and filing the Complaint allows for Amendment 5 and 14 to be upheld, so that the Lynns have full due process and also for the States to crossclaim against each other via their response or answer to the Lynns' Complaint.

**VI.    When applied to the Lynns action, this Court's Rule 17 is in conflict with the US Constitution requirement of hearing an original and exclusive action when there are two or more States in controversy because the initial Motion to Leave does not allow the US Constitution to come alive and be performed by the States actually demonstrating their controversy via crossclaims against each other, so this Court shall declare that Rule 17 is Unconstitutional (in this specific context). (Fed. R. Civ. P. 57)**

Applied to this Complaint, the ability for the States to crossclaim against each other to avoid liability, which creates the controversy between them as described in Article III, Section 2 is estopped by this Rule 17, and does not allow the US Constitution to come alive and be performed by the States that are coparty Defendants in this action.

Therefore, this Court shall declare that Rule 17, in this context, is Unconstitutional because this procedure prevents the coparty Defendant States to crossclaim against each other via their response or answer to the Lynns' Complaint.

///

- 61 -

**216I**

**VII.    The Lynns complain and request that this Court declare that the Right for Judicial Review is inherent in the U.S. Constitution via the precedent of Marbury v. Madison, but also that its Right for Judicial Review it is also explicit in the U.S. Constitution text: "...with such Exceptions." (Fed. R. Civ. P. 57)**

Applied to this Complaint, in *Marbury v. Madison*, this Court heard Marbury and others complaint under its original and exclusive Jurisdiction to declare the Judiciary Act of 1789 unconstitutional. This case was not an indirect action with this Court under its Appellate Jurisdiction because this complaint was filed directly with this Court and this Court heard it.

To this Court its Jurisdiction was exercised because it had to declare its supreme power under Article III to interpret and declare whether an Act of Congress or law was unconstitutional, which of National importance.

The Lynns, through the Counsel of Record, read Article III, Section 2 language plainly - "...the supreme Court shall have appellate Jurisdiction, both as to Law and Fact**, with such Exceptions,** and under such Regulations as the Congress shall make..." – to say that the Supreme Court has the power to "...with such Exceptions..."to hear and decide cases filed with them directly where, in their discretion, are of National importance and that it has to declare an Act of Congress or law unconstitutional, i.e. *Marbury v. Madison,* to uphold the US Constitution. The Lynns, through their Counsel of Record, see their Motion for Leave and Complaint to be a similar case that is directly filed to this Court – for such a time as this of National importance – so that this Court can declare its supreme power of Judicial Review to decide this case, and in doing so, declare an Act of Congress or law unconstitutional.

- 62 -

**217I**

Therefore, this Court shall declare the Court's supreme power of Judicial Review held in *Marbury v. Madison* is explicitly supported by the US Constitution's language "with such Exceptions" as explained above.

### VIII. Supreme Court Rule 17 abrides and modifies the Lynns' substantive right under the First Amendment of the U.S. Constitution, so the Lynns' ask this Court to declare it, in this specific, unconstitutional. (Fed. R. Civ. P. 57)

Applied to this Complaint, under 28 U.S.C. § 2072, the Supreme Court has the power to prescribe general rules of practice, however, these rules must not abridge, enlarge, or modify any substantive right, and any laws in conflict with such rules will be of no further force or effect after the rules take effect, and the Lynns argue that their Amendment 1 substantiative right to seek redress of the government is abridged and modified by Rule 17 because the preliminary requirement of a Motion for Leave hinders their ability to have this Complaint filed at this Court.

Therefore, this Court shall declare that Rule 17, in this specific context, is unconstitutional as a general rule of practice because it modifies and abridges the Lynns and US Citizens' right under Amendment 1 to seek redress of their grievances, via this Court by filing a Complaint, against their government.

///

///

///

///

///

- 63 -

**218I**

**IX.** **The same effect of the Supreme Court Rule 17 demonstrated above occurs in the application of Supreme Court Rule 5 to the Lynns' substantive rights under the First, Fifth, and Fourteenth Amendments, so the Lynns ask the Court to declare this Rule 5 Unconstitutional. (Fed. R. Civ. P. 57)**

Applied to this Complaint, Rule 5 requires that to be admitted to practice law at the Supreme Court a lawyer has obtain two (2) Supreme Court Attorneys to sponsor his admission. In the Lynns Counsel of Record being a Christian, Latino lawyer obtaining such sponsorship it took five (5) to six (6) months for him to find the sponsorship to be admitted to this Court on November 4, 2024. The Lynns and their Counsel of Record respected the Rule of Law and did not seek to file this Motion for Leave and Complaint until this date of admission, since this Rule 5 is the law as supported by 28 U.S.C. § 2072, so we all used self-control to demonstrate integrity and respect for this Court. As a result of this, the Lynns Statute of Limitation tolled with Defendant Aetna for their causes of action herein, so this Rule 5 did prejudice their ability to exercise their substantiative rights under Amendment 1 (seek redress of their grievances), 5 (due process rights), and 14 (equal protection of the law) was delayed to honor a procedural rule. This delay also demonstrated that Rule 5 – although neutral on its face – has discriminatory impacts on minority lawyers seeking admission to practice law at this Court. In 1935, when this additional requirement was added to this Courts Rules was during the time when racial discrimination was prevalent in the US.

Therefore, this Court shall declare that Rule 5 is unconstitutional as a general rule of practice because it modifies and abridges the Lynns and US Citizens' right under Amendments 1, 5, and 14 to seek redress of their grievances via this Court because the effect of it was tolling their Statute of Limitations with

- 64 -

**219I**

Defendant Aetna while their Counsel of Record had to gain admission, through adversity, to this Court.

**X.    There is nothing to appeal since all the Lynns Complaints have been dismissed without prejudice, so this Court is requested to declare, in this context, that can be exercised without using the appellate process when this Court has Original Jurisdiction under Article III, Section 2's language "...with such Exception." (Fed. R. Civ. P. 57)**

Applied to this Complaint, all of the Lynns prior actions were dismissed without prejudice because 1) there was no Arbitration Agreement between the Lynns and Defendant Kaiser, 2) private Defendants committed violations of federal law and the US Constitution, 3) States became a party to this action, and 4) these States have potential crossclaims against each other.

Therefore, this Court shall declare the Lynns and US Citizens like them can file their Complaint at this Court directly under Article III, Section 2 because their case has not been decided and this Court is the only who can decide their case.

**XI.    In order for the Defendants responsible for the Lynns injuries to be held accountable, this Court shall declare judgment that to determine the nature and amount of injuries that the Lynns because the Lynns are eggshell plaintiffs with injuries still accruing. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the Lynns are eggshell Plaintiffs and their original injuries from Defendants Kaiser, Medical Doctors, Legal Representation, JAMs ADR, including all their employees, have compounded, and become worst, so that this Court needs to hear these subsequent

- 65 -

injuries to access the damages amount and hold these original tortfeasor responsible through this Complaint's Prayer.

Therefore, this Court shall declare the Lynns are eggshell Plaintiffs and their subsequent injuries via other Defendant named herein are relevant to access the true nature and damages amount due to the Lynns through this Complaint's Prayer.

**XII.    Lynns assert that this Court shall declare judgement and damages (as to accrue and assert number of damages to original Defendant tortfeasors) because the Lynns' injuries comes from the Neglect of President Biden (his mental capabilities have been diminished while in office) to manage and faithfully execute the Medicare act under the Social Security Act as required by Article 2 through his Cabinet (Department of Health and Human Services), to ensure that medically necessary surgical procedures shall not be denied to US Citizen seniors like Pamela Lynn who life depends on having the treatment and have a history of obtaining that care (the Lynns had these procedures approved by private healthcare and also, per the State of California Department of Insurance). (Fed. R. Civ. P. 57; Fed. R. Civ. P. 8)**

In the context of U.S. Supreme Court jurisprudence, negligence, gross negligence, intentional misconduct, and omission of legal duty (altogether "Neglect") are distinct legal concepts with varying degrees of culpability and legal consequences.

Applied to this Complaint, President Biden's behavior needs to be examined through all the different forms of Neglect in order to determine that failed to meet his legal duty as this Court did in

- 66 -

**221I**

Marbury v. Madison concerning James Madison and John Adams.

Negligence is generally defined as the failure to observe the degree of care that a reasonably prudent person would exercise under similar circumstances. It involves a breach of duty that results in harm to another person. *Gallick v. B & O R.R.*, 372 U.S. 108 (1963).

Applied to this Complaint, President Biden's allowed his Cabinet, The Department of Health and Human Services (HHS) who oversees Medicare and Medicaid, to not approve documented medically necessary procedures for Pamela and this made her suffer twice in 2024. Medicare is an insurance program that works hand and hand with the State of California, so HHS failed to see the California Department of Insurance overturn Aetna's denial of this medically necessary procedure despite the Lynns sending Medicare the letter overturning Aetna's denial. This is failed duty by HHS, in turn, amounts to a failure on behalf of Biden for not protecting the health of all Americans (i.e., the Lynns is only one example) and providing essential human services, especially for those who are least able to help themselves. This breach was the legal and proximate cause of Pamela's suffering in 2024 and it damaged her.

Therefore, Biden's failure to oversee HHS administration of Medicare benefits demonstrates that he was negligent, which is due to his diminished capacity to execute the Social Security Act.

Gross negligence amounts to indifference to present legal duty and utter forgetfulness of legal obligations, falling short of being equivalent to a willful and intentional wrong. *Conway v. O'Brien*, 312 U.S. 492 (1941).

Applied to this Complaint, Biden, through his failure to manage HHS, demonstrated his indifference to his legal duty to not deny medically necessary

- 67 -

procedures to Pamela. It is evident that due to his forgetfulness of this legal obligation that Pamela suffered twice from their denials.

Therefore, Biden committed gross negligence against Pamela.

Intentional misconduct involves actions taken with the intent to cause harm or with a reckless disregard for the consequences. It is a voluntary, intentional breach of duty, which may be unlawful, dishonest, or improper, committed with bad intent or with wanton disregard for the consequences. The U.S. Supreme Court has recognized that punitive damages may be awarded for conduct that is outrageous due to the defendant's evil motive or reckless indifference to the rights of others *Smith v. Wade*, 461 U.S. 30 (1983).

Applied to this Complaint, Biden has the option under Article II and Amendment 25 to declare that his has diminished capacity and is unable to faithful perform his job as President of the US. If he would have done this, then a person with mental capacity could have stepped in to perform this legal duty and it would have resulted in Pamela's medically necessary procedures being denied.

Therefore, Biden's failure to perform the procedures in Article II and Amendment 25 is the legal and proximate cause of Pamela's suffering in 2024.

Omission of legal duty refers to the failure to perform a duty required by law, which can result in liability if it leads to harm. For example, in the case of Guardian Trust & Deposit Co. v. Fisher, 200 U.S. 57, the defendant was alleged to have negligently and willfully failed to maintain sufficient water supply and readiness of firefighting equipment, which was a proximate cause of the plaintiff's property damage Guardian Trust & Deposit Co. v. Fisher, 200 U.S. 57.

- 68 -

**223I**

Applied to this Complaint, Biden's intentional misconduct was a demonstration of his omission to act on his legal duty to uphold the US Constitution, which injured Pamela further as an eggshell Plaintiffs.

Therefore, Biden's failure to oversee and manage HHS and take the steps in Article II and Amendment 25 to make sure a US President has mental capacity demonstrated that he is liable for Neglect.

**XIII.** **Lynns assert that this Court shall declare judgement and damages (as to accrue and assert number of damages to original Defendant tortfeasors) because the Lynns' injuries comes from the Neglect of Vice President Harris and Senate Pro Tempore Patty Murray under Amendment 25 to bring a writing to the Senate that President Biden's mental capabilities have been diminished to prevent this type of Neglect of Medicare denials for medically necessary procedures from occurring to U.S. Citizens like Pamela Lynn. (Fed. R. Civ. P. 57; Fed. R. Civ. P. 8)**

In the context of U.S. Supreme Court jurisprudence, negligence, gross negligence, intentional misconduct, and omission of legal duty (altogether "Neglect") are distinct legal concepts with varying degrees of culpability and legal consequences.

Applied to this Complaint, Harris' and Murray's behavior needs to be examined through all the different forms of Neglect in order to determine if they failed to meet their legal duty as this Court did in Marbury v. Madison concerning James Madison and John Adams.

For the same reasons stated above concerning Biden, both Harris and Murray demonstrated Neglect and their Neglect is a legal and proximate cause of Pamela's suffering in 2024 for being denied medically

- 69 -

**224I**

necessary procedures since they did not intervene under Article II and Amendment 25 to bring a writing to the Senate noting Biden's diminished capacity.

Therefore, this Court shall declare this and also award damaged due to it.

**XIV. Since this Court has Original and Exclusive Jurisdiction over this matter, then the Lynns ask this Court to use its Power to injunct or estop the Defendants Biden and Harris from violating the US Constitution under Article 2 by having Defendant Kamala Harris as Vice President without Amendment to Article 2 of the US Constitution as required by Article 5 to allow for a biological female to be Vice President. (Fed. R. Civ. P. 65)**

Applied to this Complaint, Biden is required to uphold the US Constitution. In Article II, as explained in the Motion for Leave, that the US President is a biological male or a "He" like Biden is. Biden knew that his choice for Vice President, Harris, is a biological female or a "She" and is incapable of becoming US President due to this biological male requirement.

This failure to perform his legal duty (sworn to uphold the US Constitution) by choosing a person incapable to serve as US President if he had to be succeeding by her per Article II or Amendment 25 demonstrates his Neglect and his Unconstitutional behavior.

In addition, by Harris swearing into her role of Vice President, she agreed to uphold the US Constitution. When she raised her hand for this swear in, which was administered by Justice Sotomayor, who should have known better, she violated the US Constitution because she swore to uphold the Article II biological male requirement but she could not do so because she is a biological female. This demonstrates

- 70 -

**225I**

hers and Bidens lack of Respect for the Rule of Law, which our US Constitution.

Due to Biden, Harris, and Murray Neglect in their sworn duties under the US Constitution, they injured Pamela, who is an elder, so this Neglect amounts to Elder Abuse because Medicare denied her medically necessary care. Also, this Neglect by these Elected Officials violates the ADA since Pamela was denied access to this type of care that is given to other US Citizen elders under Medicare by HHS.

Therefore, the Lynns seek to uphold the US Constitution, so per Article III power, they ask this Court to provide injunctive relief by preventing Biden from having Harris as Vice President because Harris being a biological female or a "She" violates the US Constitution Article II biological male requirement and also, that Biden is liable for Neglect in intentionally doing this from 2020 through 2024.

**XV.    The Lynns ask this Supreme Court to use its Power to injunct or estop the Defendant Kamala Harris' run for US President as her campaign, and even if successful, violates the Article 2, Section 1 which requires a biological male or a "He" to be a US President. (Fed. R. Civ. P. 65)**

Per the reasons stated above, Harris run for US President is unconstitutional because Article II requirement of the US President being a biological male or a "He" is not being met by her candidacy.

Therefore, her run for US President demonstrates her violation of the US Constitution requirement in Article II and the need to amend the US Constitution per Article V, and this all amounts to Neglect of her legal duty to uphold the US Constitution.

*///*

- 71 -

**226I**

**XVI.   The Lynns ask this Supreme Court to use its Power to declare judgment that in order for this Article 2 requirement to allow for a biological female or "She" to be a US President the US Constitution would need to be amended per Article V, and also that 1 U.S.C. 1 use of the word "gender" is unconstitutional. (Fed. R. Civ. P. 57)**

Applied to this Complaint, the US Constitution was enacted in 1787 prior to the invention of the word "gender" as proscribed by 1 U.S.C. 1, so when an Act of Congress conflicts with the US Constitutional, then the US Constitution is supreme, so this Congressional Act is unconstitutional because it seeks to amend the US Constitutions understanding of a US President being a biological male or "He" as the framers of the US Constitution understood it to be. Amendments 13 and 19 were necessary to end slavery and give women the right to vote, so should there be an Article V amendment to the US Constitution to allow women the right to run for and become Vice President or US President.

**XVII. The Lynns ask this Supreme Court to use it Power to declare judgment and provide injunctive relief that in order for this Article 2, Section 1 requirement to be upheld that Kamala Harris shall be removed from her unconstitutionally acquired position of Vice President since the US Constitution has not been amended under Article V to allow for this and that this Supreme Court shall declare judgment that the Speaker of the House, Mike Johnson, is the Vice President due to Amendment 25. (Fed. R. Civ. P. 57; (Fed. R. Civ. P. 65)**

Applied to this Complaint and for the reasons stated above, the Lynns ask this Court to declare judgment and provide injunctive relief by removing Kamala Harris from her unconstitutionally acquired

- 72 -

**227I**

position of Vice President and now declare that the Speaker of the House, Mike Johnson, is the Vice President due to Article II and Amendment 25 automatic succession.

Therefore, this Court under the power of Article III and under the holding of *Marbury v. Madison* shall declare judgment and provide injunctive relief as asked for by the Lynns.

**XVIII.     The Lynns ask this Supreme Court to use its Power to declare judgment that the Governors and Mayor violated the US Constitution by allowing for their 2020 States Electors casting their States' electoral college votes for Vice President Harris in violation of the US Constitution Article 2, Section 1 that requires the US President to be a "He" or a biological male since the Vice President has the capability of succeeding the President under Article 2. (Fed. R. Civ. P. 57)**

Applied to this Complaint, in 2020, the US States consisting of Defendants California, Oregon, DC, Georgia, Washington, Colorado, Hawaii, Maryland, and Virginia as led, by their Governor and/or Mayor, casted their electoral college votes all for Biden and Harris. As stated above, Harris being voted for as a Vice Presidential candidate in 2020 violates the prima facie language of Article II requirement of being a biological male as US President since the Vice President succeeds to US President in the circumstances outlined in Article II and Amendment 25.

Therefore, this Court under the power of Article III and the holding of *Marbury v. Madison* shall declare judgment these Defendant States electoral votes in 2020 for Harris was unconstitutional.

*///*

- 73 -

**228I**

**XIX. Due to reasons stated above, the Lynns as US Citizens ask this Court to injunct the State Electors from 2020 from participating in the 2024 Presidential election and also, injunct the Defendant States from casting their electoral votes for Harris as this is violation of Article II requirement that the US President shall be a biological male or "He".**
**(Fed. R. Civ. P. 65)**

Applied to this Complaint, the State Electors for the Defendant States all violated the US Constitution by casting their electoral votes for Harris. Due to their past unconstitutional behavior, they cannot be trusted to cast their votes in the 2024 election in a constitutional manner.

Therefore, this Court shall injunct these Defendant State Electors from being Electors in the 2024 Presidential Election.

Applied to this Complaints, the Defendants States, Governors/Mayor, House of Representative, and Senators, all allowed their States Electoral College votes to be casted for Harris in 2020, which is unconstitutional.  Due to their past behavior, they cannot be trusted to cast their votes in the 2024 in a constitutional manner.

Therefore, this Court shall injunct these Defendant States casting their 2024 Electoral College votes for Presidential Candidate Harris because this would violate the US Constitution's Article II prima facie language requiring a US President to be a biological male.

///

///

///

- 74 -

**229I**

XX.    **The Lynns as US Citizens assert that Defendant Harris nomination and approval of her run for US President in 2024 by the Democratic Party and Elected Officials violates Amendment 24 because the rights of US Citizens to vote in primary elections for US President was denied or abridged by the US and its States. (Fed. R. Civ. P. 57; (Fed. R. Civ. P. 65)**

Applied to this Complaint, Defendant Harris obtained the right to run for US President over other Democratic Party Presidential nominees without the right of the US Citizens to vote in primary elections guaranteed under Amendment 24 and this blatantly violates the text of the US Constitution. Biden had obtained the Democratic nomination in their primary elections to run for US President as the incumbent, but he dropped out of the race and endorsed Harris, again, in violation of the US Constitution due to his Neglect. Biden, Harris, and the Democratic Party as supported or endorsed by the Defendant States delegates failed to uphold the US Constitution with their actions and this is Neglect.

It does not matter that Amendment 24 says this right to vote, by the Lynns and other US Citizens, cannot be denied for poll tax or any other tax, the point is that the Lynns in California or other US Citizens in the States involved here had a right to vote in primary elections for President in 2024 which was abridged or denied by these State delegates since Harris was never voted for.

Therefore, this Court injunct or estop Harris nomination by the Democratic Party because it violates the Lynns and US Citizens right to vote in a primary election for US President, and this Court shall declare that Harris nomination is unconstitutional and in violated of Amendment 24.

- 75 -

**230I**

**XXI. This Court shall award damages to the Lynns for Defendants Kaiser and their Medical Doctors Medical Malpractice and Loss of Consortium caused by it. (Fed. R. Civ. P. 8)**

Under California Civil Code 3333.2, in any action for injury against a health care provider or health care institution based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage, subject to the limitations in this section…(1) Civil liability for damages for noneconomic losses against one or more **health care providers**, collectively, shall not exceed three hundred fifty thousand dollars ($350,000)…(2) Civil liability for damages for noneconomic losses against one or more **health care institutions**…"

Applied to this Complaint, the Lynns have brought seven (7) different actions (one in private arbitration and six (6) at the Superior Court of Orange in the State of California) for negligence by health care providers (Defendant Medical Doctors) and health care institution (Defendant Kaiser) under this Statute. Once negligence is established by the Lynns current treating physician's expert testimony Pamela is entitled to recover in noneconomic damages $4,900,000.

Under California Civil Code 3333 and 3920, entitles Wilson to claim a loss of consortium (loss of love, affection, companionship, comfort, care, etc.) for each of these actions for the amount of $350,000.

Applied to this Complaint, once negligence is established, then Wilson is able to $350,000 for each of the seven (7) actions listed above, which amounts to $2,450,000.

- 76 -

Therefore, the Lynns from medical malpractice negligence and loss of consortium actions are asking this Court to award $7,350,000.

The elements of a cause of action for medical malpractice in California include: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage. *Johnson v. Superior Court*, 143 Cal. App. 4th 297 (2006), *Lattimore v. Dickey*, 239 Cal. App. 4th 959 (2015), *Chakalis v. Elevator Solutions, Inc.*, 205 Cal. App. 4th 1557 (2012).

Applied to this Complaint, the Defendant Medical Doctors and Health Care Facility meet the requirements (1) through (4) as detailed below in the seven (7) different actions.

1. On August 26, 2019, Pamela underwent an eighth Endoscopy (EGD) surgery within a five-month span. Afterward, she became deathly ill upon arriving at home from the EGD and called Kaiser for help. She was unable to eat, breathe, and was coughing up air bubbles. Pamela Lynn was a patient of Respondents for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, pain, and the above, which were all determined to be caused from issues with her esophagus. Respondents were aware of this problem and sought to provide medical services and/or treated her starting on August 26, 2019 through August 31, 2019. Respondents documented Pamela's serious medical conditions, including but not limited to, as 1) Severe sepsis with acute organ dysfunction (bodily infection), 2) Pnemoperitoneum (the presence of air or gas in the abdominal (peritoneal) cavity), and 3) Pneumemdiastinum (a condition in which air is present in the mediastinum (the space in the chest between the two lungs). 2) and 3) above indicated that Pamela Lynn had esophageal perforations in

- 77 -

her abdomen and chest. Despite these serious medical conditions being unresolved, Respondents released Pamela Lynn from the facility with follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon, which did not take place until weeks later. Respondents did not even transfer her to another Kaiser hospital to undergo immediate care for her serious medical condition with other doctors who had the expertise. Respondents did not communicate to Pamela Lynn the seriousness of her medical conditions to enable her to make informed decisions related to her health. After being released from the hospital with these serious medical conditions, she continued to suffer from these injuries and/or medical conditions noted above and other to be shown at the arbitration hearing and/or trial. Kaiser did not object to this course and scope of treatment, including Pamela Lynn's release from their facilities and failure to inform her and/or note her medical notes that she had esophageal perforations. Prior to this Pamela Lynn's care, treatments, and release by Respondents, she was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Respondents and Kaiser fell below the standard of care in using this course and scope of treatment, including allowing the release from their facility. Respondents Kaiser failed to identify and/or signs of Pamela's esophagus being severely injured and thereby halting the release of her from the facility. The failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Pamela Lynn. Kaiser failed to supervise their hospital where the above events took place and as a result injured Pamela Lynn. Claimant Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above-described negligence.

- 78 -

**233I**

2.  Pamela Lynn was a patient of Jonas and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. Defendants were aware of this problem and sought to perform seven Endoscopies (EGDs) with dilation on Pamela Lynn in a five-month span starting from May 2019 through August 2019 to resolve the issues. Pamela Lynn consented and trusted Defendants and/or Kaiser to remedy. Defendants treated Pamela Lynn in their hospitals located in Anaheim, and Irvine, California ("Kaiser Facilities"). Jonas seen Mrs. Lynn before and after each of the seven EGD surgeries at Kaiser Facilities. Defendants failed to tell, explain, and/or warn that overuse of EGDs consisting of dilation could cause further injury to Mrs. Lynn's esophagus and increase her symptoms making her susceptible to esophageal perforation. Defendants failed to tell, offer, or explain any alternative or more spread-out treatments which could have avoid further injury to her esophagus as described herein. From May 2019 through August 2019, Mrs. Lynn's condition worsened and her condition rapidly deteriorated to the point that she underwent all seven EGDs to remedy her condition. On August 26, 2019, Jonas ordered and oversaw the eighth EGD surgery that Pamela Lynn underwent and became deathly ill upon arriving back home from the EGD. Pamela was unable to eat, breathe, and was coughing up air bubbles. Due to her medical condition, she was rushed to the Kaiser Hospital in Anaheim, California where she was hospitalized four nights and released on August 31, 2019 for follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon. Additional medical conditions were noted to her file, which included additional serious life-threatening conditions. Before and after August 26, 2019, Jonas failed to tell or explain to Pamela Lynn that the seven EGDs injured and/or damaged

- 79 -

her esophagus as her symptoms continued to worsen. Jonas also failed to tell Pamela Lynn that the eighth EGD led to two perforations of her esophagus in her chest and abdomen. The failure to disclose information hindered Pamela Lynn to make informed decisions related to her medical condition.

After being released from Kaiser's hospitals with unresolved esophageal perforations, Pamela continues to suffer due to her esophagus and continues with symptoms described above and others to be proven at trial. In the span of five months, Pamela Lynn underwent eight EGDs with dilation that required anesthesia. In sum, these are eight different EGD surgeries that she underwent per Jonas' order for serial EGDs surgeries with dilation in a Kaiser Facilities where she was hospitalized for her injuries. Defendants Jonas intentionally concealed this information from Pamela Lynn to protect his reputation because this information would have led Plaintiffs to believe that he was professional negligent and a judgment or settlement of a Pamela Lynn claim for professional negligence on this course and scope of treatment would be on his medical license as a form of disciplinary action or public complaint. Kaiser did not object to this course and scope of treatment that included all these EGDs in their facilities which contributed to Mrs. Lynn's injuries. Kaiser medical notes leave out Pamela Lynn's esophageal perforations as a medical condition until later. Prior to Pamela Lynn's care, treatments, surgeries by Defendants, she was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants Jonas and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Jonas and Kaiser failed to identify and/or signs of Pamela's esophagus being injured by the seven EGDs and thereby halting this treatment. Defendants Jonas and Kaiser

- 80 -

**235I**

failed to inform Pamela Lynn of the perforations in her esophagus that were caused by the eighth EGD. Defendants Bindman and Kaiser did not object to this course and scope of treatment that included these EGD surgeries done at their facilities which contributed to Pamela Lynn's injuries. These failures and/or breaches, but not limited to, were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial causes of harm to Pamela Lynn. Bindman and Kaiser failed to supervise their hospital and staff where the above events took place and as a result injured Pamela Lynn. Plaintiffs suffered damages in the form of medical expenses, pain, and suffering because of the above-described negligence.

3. Pamela Lynn was a patient of Jonas, Nguyen, and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. Defendants were aware of this problem and sought to an eighth Endoscopy (EGDs) with dilation on Pamela Lynn in a five-month span starting from May 2019 through August 2019 to resolve the issues, which Pamela Lynn consented and trusted Defendants and/or Kaiser to remedy. Defendants treated Pamela Lynn in their hospitals located in Anaheim, CA and/or Irvine, CA ("Kaiser Facilities"). Jonas, Nguyen, and Kaiser seen Mrs. Lynn before and after each of these treatments at Kaiser locations. Defendants failed to tell, explain, and/or warn that the overuse of EGDs with dilation could injure further Mrs. Lynn's esophagus and make her more susceptible for esophageal perforation on the eighth EGDs. Defendants failed to tell, offer, or explain any alternative treatments or more spread-out treatments which could not injure her esophagus further as described in this herein. From May 2019 through August 2019, Mrs. Lynn's condition worsened and her condition rapidly deteriorated to

- 81 -

236I

the point that she underwent all seven EGDs to remedy her condition. On August 26, 2019, Jonas ordered and oversaw the eighth EGD surgery that Pamela Lynn underwent. The medical notes indicate that Nguyen forced the endoscope through Pamela Lynn's esophagus because the scope would not pass through. Afterward, she became deathly ill upon arriving at home from the EGD and called Kaiser for help. She was unable to eat, breathe, and was coughing up air bubbles. Due to her medical condition, she was rushed to the Kaiser Hospital located in Anaheim, CA where she was hospitalized for four nights and released on August 31, 2019 for follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon. Additional medical conditions were noted to her file, which included many additional serious life-threatening conditions. Jonas, Nguyen, and Kaiser did not tell her that the eighth EGD led to two perforations of her esophagus located in her chest and abdomen. She lacked this information to make informed decisions related to her medical condition. After being released from the hospital with unresolved esophageal perforations, she continued to suffer from this injury to her esophagus and continue with the symptoms noted above. She spent five days being medically treated and hospitalized by Defendants due to this eighth EGD. Defendant Nguyen intentionally concealed this information from Pamela Lynn to protect his reputation because this information would have led Plaintiffs to believe that he was professional negligent and a judgment or settlement of a Pamela Lynn claim for professional negligence on this course and scope of treatment would be on his medical license as a form of disciplinary action or public complaint. Kaiser did not object to this course and scope of treatment that included this eighth EGD at their facilities which contributed to Pamela Lynn's injuries. Kaiser's medical notes leave out the esophageal perforations as a medical condition until later. Prior to this Pamela Lynn's care,

- 82 -

**237I**

treatments, surgeries by Defendants, she was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants Jonas, Nguyen, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Jonas, Nguyen, and Kaiser failed to identify and/or signs of Pamela's esophagus being injured by the eighth EGD and thereby halting this treatment. Defendants Jonas, Nguyen, and Kaiser failed to inform Pamela Lynn of the perforations in her esophagus that were caused by the eighth EGD and released her from their facility located in Irvine, CA. Defendants Bindman and Kaiser did not object to this course and scope of treatment that included this eighth EGD surgery done at their facilities which contributed to Pamela Lynn's injuries. The failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Mrs. Lynn. Bindman and Kaiser failed to supervise their hospital where the above events took place and as a result injured Pamela Lynn. Plaintiffs suffered damages in the form of medical expenses, pain and suffering because of the above-described negligence.

4. Pamela Lynn was a patient of Davison, Vaquerano, and Kaiser for treatment to resolve her issues including but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. Defendants were aware of this problem and sought to perform an Ivor Lewis Surgery (an esophagus surgery for cancer removal, which Pamela Lynn did not have) on October 14, 2019 to resolve these issues, not the perforations in her esophagus, which Pamela Lynn consented to and trusted the Defendants to remedy her symptoms while unaware of her perforations. Defendants approved and carried out this course and scope of treatment in their hospitals located in

- 83 -

238I

Anaheim, CA and/or Irvine, CA, which are overseen by Bindman. Davison and Kaiser seen Pamela Lynn before, during, and after this major, open surgery at Kaiser locations. None of the Defendants never told, offered, or explained any other treatment options which could help relieve her symptoms related to her esophagus. Davison, Vaquerano, Bindman, and Kaiser did not inform Pamela Lynn that on August 26, 2019 her esophagus was perforated in two locations (chest, abdomen, not limited to) and that this was the reason for Davison's order and performance of an Ivor Lewis Surgery on her on October 14, 2019. Vaquerano assisted and helped perform the Ivor Lewis Surgery with Davison. Pamela Lynn lacked this information to make medical decision, especially opting for an Ivor Lewis Surgery. She lacked this concealed information until 2023. Plaintiffs were told by Defendants that her hospital stay would be a weeklong; however, she ended up being hospitalized from 10/14/2019 through 11/21/2019. She almost died multiple times because of her chronic injuries suffered by Defendants, including but not limited to severe sepsis twice, respiratory failure, a tracheostomy, metal plates and wires put in her chest and ribs and unconsented to esophageal stent put in her. She underwent a substantial amount of further medical treatment related to this Ivor Lewis Surgery. After her release, Pamela Lynn's symptoms only increased and did not resolve the prior ones she experienced. In a telephone visit with Defendant Davison in 2021, Plaintiffs were informed by Davison that he severed Pamela Lynn's Vagus Nerve and then he hung up on them. Defendant Davison intentionally concealed this information (and her perforations) from Pamela Lynn to protect his reputation because this information would have led Plaintiffs to believe that he was professional negligent (and other claims) and a judgment or settlement of a Pamela Lynn claim for professional negligence on this course and scope of treatment would be on his

- 84 -

medical license as a form of disciplinary action or public complaint. Kaiser, Davison, Vaquerano, and Dr. Bindman did not object to this course and scope of treatment that included this Ivor Lewis Surgery at their facilities which contributed to Mrs. Lynn's injuries. Kaiser's medical notes leave out the esophageal perforations as a medical condition until later. Prior to this event, Mrs. Lynn was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants Davison, Vaquerano, Bindman, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Davison, Vaquerano, Bindman, and Kaiser failed to identify and/or signs of Pamela's esophagus being injured prior to and after the Ivor Lewis surgery thereby halting this treatment or taking different approaches for her long-term medical care. Defendants Davison, Vaquerano, Bindman, and Kaiser failed to inform Pamela Lynn of her injuries and released her from their facility located in Anaheim, CA whom Bindman oversaw and others in Orange County, CA. The failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Mrs. Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above-described negligence.

5.  Pamela Lynn was a patient of Giap and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. Defendants were aware of this problem and sought to perform a ninth EGD surgery to fix a dislodged esophageal stent (prevent further dislodgement) that was put in Pamela Lynn during and/or after Ivor Lewis Surgery (an esophagus surgery for cancer removal, which Pamela Lynn did not have) on October 17,

- 85 -

2019 to resolve these issues, not the perforations in her esophagus. Defendants Giap and Bindman, through supervision and management, approved and carried out this course and scope of treatment in their hospitals located in Orange County, CA. Giap and Kaiser seen Mrs. Lynn before, during, and this corrective surgery at Kaiser locations. None of the Defendants never told, offered, or explained any other treatment options which could help relieve her symptoms related to her esophagus. Giap and Kaiser did not inform Plaintiffs that on October 14, 2023 through October 17, 2023 that Giap had to fix a prior doctor(s) unsuccessful esophageal stent placement to prevent the leakage side effect of Ivor Lewis surgery. Plaintiffs lacked this information to make medical decisions, especially concerning undergoing a corrective EGD surgery for the esophageal stent. She lacked this concealed information until 2020 when Giap had to remove the stent, which was five-month post his corrective EGD surgery. Plaintiffs never consented to Giap and Kaiser performing this corrective surgery to secure the esophageal stent which was used to prevent continue leakage from her body, which is a known and common side effect of an Ivor Lewis surgery. After her release, Pamela Lynn's symptoms only increased and did not resolve the prior ones she experienced. She experienced more pain due to the stent and the Plaintiffs had no idea that Defendants had placed a stent in her. Due to the stent being placed in her, Giap performed two additional EGD surgeries on her. Kaiser, Giap, and Dr. Bindman did not object to this course and scope of treatment that included this corrective EGD surgery and removal EGD surgery of the stent at their facilities located in Orange County, CA which contributed to Mrs. Lynn's injuries. Kaiser's medical notes leave out the esophageal perforations as a medical condition until later. Prior to this event, Mrs. Lynn was active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants

- 86 -

**241I**

Giap, Bindman, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Giap and Kaiser failed to identify and/or signs of taking alternative approaches for her long-term medical care. Defendants Giap, Bindman, and Kaiser failed to inform Pamela Lynn of her injuries and released her from their facility located in Anaheim, CA whom Bindman oversaw and others in Orange County, CA. These failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above-described negligence.

6. Pamela Lynn was a patient of Loza (he was the primary care physician) and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. From the onset of Pamela Lynns esophagus issues (2019) until she was no longer a Kaiser insured her Defendants Loza (2021) never told, offered, or explained any other treatment options which could help relieve her symptoms related to her esophagus nor did he intervene to stop or recommend immediate care to help her. Kaiser, Loza, and Dr. Bindman did not object to this course and scope of treatment that included this corrective over nine (9) EGD surgeries, Ivor Lewis Surgery, use of Esophageal stent and removal of the stent through another EGD surgery at their facilities located in Orange County, CA which contributed to Pamela Lynn's injuries. Defendant Loza did not inform Pamela Lynn of her esophageal perforations or investigate further the result of her Ivor Lewis surgery. His recommendations for her care was nonexistent. Prior to this event, Mrs. Lynn was active and live independently with her husband, Wilson Lynn, Jr.

- 87 -

**242I**

However, this is no longer the case. Defendants Loza, Bindman, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Loza and Kaiser failed to identify and/or signs of taking alternative approaches for her long-term medical care. Defendants Loza, Bindman, and Kaiser failed to inform Pamela Lynn of her injuries and released her from their facility located in Anaheim, CA whom Bindman oversaw and others in Orange County, CA. These failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above-described negligence.

7. Pamela Lynn was a patient of Defendant Barreto and Kaiser for treatment to resolve her issues consisting but not limited to swallowing, digesting, diarrhea, and pain, which were all determined to be caused from issues with her esophagus. After undergoing the Ivor Lewis Surgery and EGD surgeries in October 2019, Pamela was on a breathing ventilator everyday. Defendant Barreto waited until November 2019 to perform a tracheotomy surgery via a non-licensed resident even though Pamela Lynn was in the intensive care unit. Kaiser, Barreto, and Dr. Bindman did not object to this course and scope of treatment that included this delay in performing the tracheotomy surgery at their facilities located in Orange County, CA which contributed to Pamela Lynn's injuries. Defendant Barreto did not inform Pamela Lynn of the delay of performing the tracheotomy surgery. Defendant Barreto did not inform Pamela Lynn that the performing of the tracheotomy surgery would be done by a non-licensed resident and that the surgery would not be done by him who is an experienced head and neck surgeon. Prior to this event, Mrs. Lynn was

- 88 -

243I

active and live independently with her husband, Wilson Lynn, Jr. However, this is no longer the case. Defendants Barreto, Bindman, and Kaiser fell below the standard of care in using this course and scope of treatment and allowing it to be done at their facility. Defendants Barreto and Kaiser failed to identify and/or signs of taking alternative approaches for her long-term medical care including earlier medical intervention by an experienced head and neck surgeon. Defendants Barreto, Bindman, and Kaiser failed to inform Pamela Lynn of her injuries, the need to have tracheotomy surgery sooner and for it to be done by an experience surgeon such as Barreto in their facility located in Anaheim, CA whom Bindman oversaw and others in Orange County, CA. These failures and/or breaches listed above were intentional and/or fraudulent. These failures and/or breaches of the standard of care were substantial cause of harm to Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above-described negligence.

Applied to this Complaint, the Defendant Medical Doctors and Health Care Facility negligence in the seven (7) different actions give Wilson his Loss of Consortium claims against them. The above-described failures and/or breaches of the standard of care were a substantial cause of Pamela Lynn undergoing eight surgeries, having two perforations in her esophagus unresolved, and inability to be the wife that she was prior to May 2019 to her husband. Defendant suffered damages including but not limited to the loss of companionship, comfort, care, assistance, protection, affection, society, and moral support in addition to other non-economic damages.

Therefore, the Defendant Health Care Providers and Health Care Institutions are liable for negligence and loss of consortium and this Court shall award the Lynns the damages of $7,350,000.

- 89 -

**244I**

**XXII. This Court shall award damages to the Lynns for Defendant Adams and Janet Liang for negligence in all of their seven (7) actions.**

Defendants Adams (Chief Executive Officer) and Liang (Chief Operating Officer) had a duty to manage and oversee the Kaiser entities employees and facilities as, and to exercise due care such that it did not result in damage to Plaintiffs. Plaintiff is informed and believes, and thereon alleges, that the Defendants failed to excise such due care, and negligently caused damage to Plaintiffs. Plaintiff is informed and believes, and based thereon alleges, that at said time and place, the Defendants acted negligently, and that such negligence was the proximate cause of damage to Plaintiffs and the Defendants are therefore liable to Plaintiff for their damages.

Therefore, this Court shall award damages of the total of $7,350,000.

**XXIII.       This Court shall award damages to the Lynns for Defendants Kaiser and their Medical Doctors Battery and Breach of Fiduciary Duty. (Fed. R. Civ. P. 8)**

Medical battery in California is defined as an intentional tort that occurs when a doctor performs a medical procedure without obtaining any consent from the patient, or when the doctor performs a substantially different procedure than the one for which consent was given. The essence of medical battery is the intentional and unlawful contact, which is considered harmful if it is unconsented to *Ashcraft v. King*, 228 Cal. App. 3d 604 (1991), *Saxena v. Goffney*, 159 Cal. App. 4th 316 (2008), So v. Shin, 212 Cal. App. 4th 652 (2013).

The following instances are actions brought by Pamela for Medical Battery:

- 90 -

1. Defendants Davison, Vaquerano, and Kaiser touched Pamela Lynn by putting an esophageal stent in her during and/or after Ivor Lewis Surgery. By Defendants Davison, Vaquerano, and Kaiser putting in this esophageal stent they did so with intent to harm and/or offend her because she did not consent to this type of touching. As a result of this stent, which dislodged and required further surgical procedures to correct and removal, she was harmed and offended by the Defendants conduct and a reasonable person would have been offended by the touching due to them not giving consent for this type of touching. The Ivor Lewis Surgery has a known and common side effect of leakage from the procedure, which an esophageal stent is the preferred treatment of choice to prevent further leakage. This was not communicated to Plaintiff who specifically did not consent to any use of the stent due to the risk of dislodgment as other physicians at Kaiser represented. Use of the stent for the side effect of leakage, is a non emergency occurrence being that it is a known side effect and/or risk of doing the surgery. Defendants was intentional and deliberate to deviate from the scope of the consent to perform this costly and complex Ivor Lewis Surgery knowing that a esophageal stent would be required to mitigate the leakage side effect. Defendants Davison, Vaquerano, and Kaiser called the common side effect of leakage as an emergent situation that required them to use the stent to save Pamela Lynn's life. This was not communicated to Plaintiffs, and the Defendants performed operation(s) during and after the Ivor Lewis Surgery which Pamela Lynn did not consent to. Defendants obtained Pamela Lynn's consent for the Ivor Lewis Surgery but not for a substantially different treatment, which was the use of the esophageal stent. As a result of the use the stent, Pamela Lynn was injured permanently and underwent further medical care and hospitalization all to which the Defendants are liable for. Bindman and Kaiser failed to supervise

- 91 -

246I

their hospital and staff where the above events took place and as a result injured Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above batteries.

2.    Defendants Giap and Kaiser touched Pamela Lynn by performing EGD surgeries to secure the esophageal stent and remove the stent in her during and/or after Ivor Lewis Surgery. By Defendants Giap and Kaiser performed this an intent to harm and/or offend her because she did not consent to this type of touching. As a result of Defendants actions, Pamela required further surgical procedures to correct and remove the stent, which caused her significant chronic pain, she was harmed and offended by the Defendants conduct and a reasonable person would have been offended by the touching due to them not obtaining consent for this type of touching. The Ivor Lewis Surgery has a known and common side effect of leakage from the procedure, which an esophageal stent is the treatment to prevent further leakage. This was not communicated to Plaintiff who specifically did not consent to any use of the stent due to the risk of dislodgment as other physicians at Kaiser represented. Use of the stent for the side effect of leakage, a non emergency occurrence being that it is a known side effect and/or risk of doing the surgery, was an intentional and deliberate action to deviate from the scope of the consent to perform the Ivor Lewis surgery. Defendants Giap and Kaiser called the common side effect of leakage as an emergent situation that required them to perform EGD surgeries to save Pamela Lynns life. This was not communicated to Plaintiffs, and the Defendants performed operation(s) during and after the Ivor Lewis Surgery which Pamela Lynn did not consent to. Defendants obtained Pamela Lynn's consent for the Ivor Lewis Surgery but not for a substantially different treatment, which were the corrective and removal surgeries for the stent. As a result of

- 92 -

Defendants actions, Pamela Lynn was injured permanently and underwent further medical care and hospitalization all to which the Defendants are liable for. Bindman failed to supervise Giap and Kaiser in regards to these corrective and removal stent surgeries at facilities located in Orange County, CA. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above batteries.

Therefore, this Court shall award Medical Battery damages to Pamela in an amount of $22,050,000, which is approximately three (3) times the amount of damages already accrued for each instance, not including exemplary damages, which upon grant of this Court to proceed via motion, Plaintiffs will do.

Moreover, a breach of fiduciary duty can be based on either negligence or fraud, depending on the circumstances *Ash v. North American Title Co.*, 223 Cal. App. 4th 1258 (2014), *Tribeca Companies, LLC v. First American Title Ins. Co.*, 239 Cal. App. 4th 1088 (2015). For example, in *Scripps Clinic v. Superior Court*, the court found a breach of fiduciary duty where a medical clinic terminated care without providing ample opportunity for the patient to secure alternative medical attendance, thus violating the standard of care and medical ethics *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917 (2003).

The following instances are actions brought by Pamela for Breach of Fiduciary Duty:

1. Pamela Lynn was a patient of Respondents, which demonstrated the existence of a fiduciary relationship. Respondents breached this relationship when they released Pamela Lynn from the facility prematurely in an unstable medical condition, and doing so, they put their and Kaiser's monetary interest above the health of Pamela Lynn. Respondents did this to save Kaiser money since it cost more to keep Pamela Lynn in

- 93 -

their facility and, to not risk themselves being found professional negligent for keeping her in the facility with unresolved medical conditions. In effect, Respondents shifted the responsibility to caring for Pamela Lynn to the follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon, which did not take place until weeks later. Again, Kaiser's medical notes did not document any esophageal perforation for the dates of these services. If they disclosed this material information to Pamela Lynn, a judgment and/or claim paid out for their and their colleagues' professional negligence would be put on their medical license in California as a disciplinary action. Kaiser may have discontinued their and their colleagues' employment, which includes his medical practice, salary, and/or benefits, due to their reputation being diminished for professional negligence. Respondents and their colleagues' reputation is also diminished when future patients see that they were professionally negligence due to the disciplinary action of negligence being placed on his medical license by the State of California Medical Board for conducting or not timely conducting the medical services and/or treatment needed by Pamela Lynn before discharge. They could have also been responsible for paying out these claims with their own money or insurance. As a result of this, Respondents actions proximately caused damage to Pamela Lynn since she was prematurely discharged from the facilities all for the Respondent's and Kaiser's financial gain or prevention of their financial loss. As a result of this breach by Respondents, they breach proximately caused damage to Pamela Lynn because she lacked this material information to make decisions about her health, which involved her serious and true medical state, and she also continued to suffer from these medical conditions that were still unresolved. Kaiser did not object to this course and scope of treatment, including Pamela Lynn's release from their facilities and

- 94 -

**249I**

failure to inform her and/or note her medical notes that she had esophageal perforations, and she also continued to suffer from these medical conditions that were still unresolved. Kaiser failed to supervise their hospital where the above events took place and as a result injured Pamela Lynn. Claimant Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above-described breach of fiduciary duty. Respondents breached this relationship when they released Pamela Lynn from the facility prematurely in an unstable medical condition, and doing so, they put their and Kaiser's monetary interest above the health of Pamela Lynn. Respondents did this to save Kaiser money since it cost more to keep Pamela Lynn in their facility and, to not risk themselves being found professional negligent for keeping her in the facility with unresolved medical conditions. In effect, Respondents shifted the responsibility to caring for Pamela Lynn to the follow-up appointments with her primary care physician, a thoracic surgeon, and other general surgeon, which did not take place until weeks later. Again, Kaiser's medical notes did not document any esophageal perforation for the dates of these services. If they disclosed this material information to Pamela Lynn, a judgment and/or claim paid out for their and their colleagues' professional negligence would be put on their medical license in California as a disciplinary action. Kaiser may have discontinued their and their colleagues' employment, which includes his medical practice, salary, and/or benefits, due to their reputation being diminished for professional negligence. Respondents and their colleagues' reputation is also diminished when future patients see that they were professionally negligence due to the disciplinary action of negligence being placed on his medical license by the State of California Medical Board for conducting or not timely conducting the medical services and/or treatment needed by Pamela Lynn before discharge. They

- 95 -

**250I**

could have also been responsible for paying out these claims with their own money or insurance. As a result of this, Respondents actions proximately caused damage to Pamela Lynn since she was prematurely discharged from the facilities all for the Respondent's and Kaiser's financial gain or prevention of their financial loss. As a result of this breach by Respondents, they breach proximately caused damage to Pamela Lynn because she lacked this material information to make decisions about her health, which involved her serious and true medical state, and she also continued to suffer from these medical conditions that were still unresolved. Kaiser did not object to this course and scope of treatment, including Pamela Lynn's release from their facilities and failure to inform her and/or note her medical notes that she had esophageal perforations, and she also continued to suffer from these medical conditions that were still unresolved. Kaiser failed to supervise their hospital where the above events took place and as a result injured Pamela Lynn. Claimant Pamela Lynn suffered damages in the form of medical expenses, pain and suffering because of the above-described breach of fiduciary duty.

2. Pamela Lynn was a patient of Jonas and Kaiser, which demonstrated the existence of a fiduciary relationship. Jonas breached this relationship when he ordered eight EGD surgeries on Pamela Lynn within a five month span to obtain financial compensation for these treatments. He knew that doing this many EGDs could injure her esophagus further, but he disregarded this to order and oversee these treatments to earn money thereby putting his monetary interest above the health of Pamela Lynn. Kaiser also increased monetarily for allowing and housing these EGDs in their Kaiser Facilities. Jonas also breached this relationship when he intentionally concealed the two perforations in Pamela Lynn's esophagus due to the eighth EGD performed on her. He concealed

- 96 -

251I

this specific injury to protect his financial wherewithal because his reputation is tied to his monetary interest. Kaiser's medical notes did not document any esophageal perforation for date of the eighth EGD. If he had disclosed this material information to Pamela Lynn, a judgment and/or claim paid for his professional negligence would be put on his medical license in California as a disciplinary action. Kaiser may have discontinued his employment, which includes his medical practice, salary, and/or benefits, due to his reputation being diminished for his professional negligence. His reputation is also diminished when future patients see that he was professionally negligence due to the disciplinary action of negligence being placed on his medical license by the State of California Medical Board. He could have also been responsible for paying out these claims with his own money or insurance. As a result of this breach by Jonas and Kaiser, their breaches proximately caused damage to Pamela Lynn since she underwent unnecessary eight EGDs surgeries for Dr. Jonas' and Kaiser's financial gain. As a result of this breach by Jonas, his breach proximately caused damage to Pamela Lynn because she lacked this material information to make decisions about her health. Bindman and Kaiser failed to supervise their hospital and staff where the above events took place and as a result injured Pamela Lynn. Plaintiffs suffered damages in the form of medical expenses, pain and suffering because of the above-described breach(es) of fiduciary duty.

3. Pamela Lynn was a patient of Davison, Vaquerano, and Kaiser, which demonstrated the existence of a fiduciary relationship. Davison breached this relationship when he performed the Ivor Lewis Surgery despite other less costly and relevant alternative surgeries which he did not present to the Plaintiffs. He did this to earn more money for himself and Kaiser due to this surgery being more complex and costly then alternatives,

- 97 -

which directly dealt with her esophageal perforations. In doing this he put his monetary interest above Pamela Lynn's remedying of her medical condition. In telling Pamela Lynn that the Ivor Lewis Surgery would help relieve her symptoms and not her esophageal perforations, he was able to obtain her consent to go forward with the surgery which was not the direct surgery to heal her medical condition. Davison breached this relationship when he when he intentionally concealed the that he severed Pamela Lynn's Vagus Nerve in 2019, which he did not tell the Plaintiffs until 2021 and he did not even explain what he meant. He concealed this injury to protect his financial wherewithal because his reputation is tied to his monetary interest. Again, Kaiser's medical notes did not document any esophageal perforation for the date of this service. If he disclosed this material information to Pamela Lynn, a judgment and/or claim paid out for his professional negligence would be put on his medical license in California as a disciplinary action. Kaiser may have discontinued his employment, which includes his medical practice, salary, and/or benefits, due to his reputation being diminished for his professional negligence. His reputation is also diminished when future patients see that he was professionally negligence due to the disciplinary action of negligence being placed on his medical license by the State of California Medical Board for severing her Vagus nerve. He could have also been responsible for paying out these claims with his own money or insurance. The same is true as applied to Vaquerano and Kaiser relationship with Pamela Lynn. As a result of this, all their actions proximately caused damage to Pamela Lynn since she underwent an unnecessary, complex surgery and was injured by Defendants permanently from it, which was all Defendant's financial gain. As a result of this breach by Defendants, their breach proximately caused damage to Pamela Lynn because she lacked this material information to make decisions about

- 98 -

253I

her health. Bindman and Kaiser failed to supervise their hospital and staff where the above events took place and as a result injured Pamela Lynn. Plaintiff Pamela Lynn suffered damages in the form of medical expenses, pain, and suffering because of the above- breaches.

Therefore, this Court shall award Breach of Fiduciary Duty damages to Pamela in an amount of $22,050,000, which is approximately three (3) times the amount of damages already accrued for each instance, not including exemplary damages, which upon grant of this Court to proceed via motion, Plaintiffs will do.

## XXIV. This Court shall award damages to the Lynns for Defendants Kaiser, Kaiser Medical Doctors, and Kaiser Non-Medical Doctors Executives corporate negligence and administrative negligence. (Fed. R. Civ. P. 8)

In essence, when a hospital or medical plan puts the business before the medicine or care of patient then it is corporately negligent and administratively negligent. The State of Texas has a law that bans what is called "The Corporate Practice of Medicine."

Applied to these circumstances, in Pamela's medical record, there are instances where the words *OVERRIDE* appear whenever a treating physician had to order antibiotics or specialty medicine. This is only one example and is not exhaustive of the words' use.

The point is that a physician has to override the business system in order to provide medical care.

A logical deduction of this process is that Kaiser physicians have to override the business programmed recommendation (software and/or artificial intelligence) to provide Patient/Pamela needed

- 99 -

254I

medicine and/or medical care. The recommendation could be to reduce cost for the Kaiser medical plan and/or hospital.

Another logical deduction of this business process is that when a Kaiser physician does not override the recommendation, then the business wins out and potentially the patient/Pamela does not get the care they needed in order to save costs.

Another logical deduction is this system has a built in incentive or metrics that Kaiser physicians have to report into to either be rewarded or not rewarded, which indicates a sort of Game Theory simulation.

Defendant Kaiser Non-Medical Executives, their CEO and COO, would be overseeing and/or approving this practice, and they also approved directly or indirectly of this software system.

There may be a systemic flaw for patient care that has been put in practice by Kaiser executives who were hired most likely by the Kaiser Board of Directors.

Therefore, Plaintiffs have allegations of this type of harm being perpetrated against them.

## XXV. This Court shall award damages to the Lynns for Defendants Kaiser indemnification contractual obligations of the State of California and County of Orange. (Fed. R. Civ. P. 8)

Cal Health & Safety Code §101833 states "any contract executed by and between the county and the hospital authority shall provide that liabilities or obligations of the hospital authority with respect to its activities pursuant to the contract shall be the liabilities or obligations of the hospital authority, and shall not become the liabilities or obligations of the county."

- 100 -

255I

Applied to these circumstances, Kaiser is a hospital that operates in the State of California and in the County of Orange. In the County of Orange there are no county hospitals, so the hospitals are owned privately. Kaiser operates two hospitals in the County of Orange, one in Irvine, CA and another in Anaheim, CA, both of which are the hospitals where the first and second claims for relief stem from.

In order to operate as a hospital in the State of California Kaiser must meet the California Department of Health & Safety requirements to be issued their licensing number, which is California License Number: 550003560.

Plaintiff believe in good faith that – per the code – Kaiser may have an agreement between themselves and County of Orange and State of California, which may have Kaiser's contractual indemnification obligations as stated in the code within them.

Therefore, Plaintiffs want to use that obligation to help Kaiser pay for Plaintiffs entire damages and even above and beyond the California Medical Malpractice code limitations set forth above.

**XXVI. This Court shall declare judgment that the private arbitration agreement between Kaiser and the Lynns was not signed, so this Court is to take judicial notice of it, and dismiss the arbitration and vacate any and all arbitrator awards to comply with the Federal Arbitration Act. (Fed. R. Civ. P. 56)**

Under the 9 U.S. Code § 4, if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

Applied to this circumstance, on February 12, 2024, the Plaintiffs requested from Defendant Kaiser and their Legal Representation the production of the

- 101 -

2019 and 2020 Medical Plan, Arbitration Agreement, or Enrollment forms (altogether "Arbitration Agreement"), which contain the Plaintiff's signature on them. Defendants have not produced the signed Arbitration Agreement so the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, which is the case here. Since Defendants have not produced the Arbitration Agreement signed, then the court shall proceed summarily to the trial thereof.

Therefore, this Court shall proceed to a Federal trial due to this.

Under the 9 U.S. Code § 4, if the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.

Applied to this circumstance, on February 28, 2024, the Plaintiffs requested Defendant Office of Independent Adminstrator ("OIA") administratively to revoke the OIA Arbitration number 18022 and suspend JAMS ADR Arbitration reference number 1200060834 ("Arbitration") and dismiss the Arbitration without prejudice due to the Defendants not producing the signed Arbitration Agreement.

Therefore, this Court via Judicial Notice of these facts stated herein and as provided as evidence shall dismiss or affirm Plaintiffs dismissal of the Arbitration without prejudice due to there is no default in proceeding thereunder.

Under California Health and Safety Code **§** 1363.1 (2024), any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions: **(a)** The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including

- 102 -

**257I**

specifically whether the plan uses binding arbitration to settle claims of medical malpractice. **(b)** The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee … wording provided in subdivision (a) of Section 1295 of the California Code of Civil Procedure.

Applied to this case, the Lynns sought Kaiser to produce their signed enrolled agreement containing their signatures for their health plan with Kaiser for the years of 2019 and 2020 and Kaiser could not produce them.

Therefore, Kaiser's failure to produce these signed enrollment agreements demonstrates that there was no compliance by them of this California law, so the Arbitration was properly dismissed without prejudice by the Lynns counsel on April 2, 2023 and we ask for this Court to affirm this.

Under 9 U.S. Code § 5, the court can only appoint an arbitrator or umpire when there is an enforceable agreement with the procedure for the appointment.

Applied to this circumstance, since there is no Arbitration Agreement, then this Court is required to adjudicate all of Plaintiffs claims.

Under 9 U.S. Code § 10, in any of the following cases the US court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1)    … the award was procured by corruption, fraud, or undue means…;

Applied to this circumstance, from the start of the Arbitration until today, March 13, 2024, Defendant JAMS ADR through State Arbitrator

- 103 -

**258I**

Nakamura has ruled all in favor of Defendant Kaiser. State Arbitrator granted Kaiser's 1st motion to strike and demurrer. In doing so, State Arbitrator did not rule that Defendant Kaiser's two (2) motions were a motion for summary judgment due to them including extrinsic evidence without any authentication and foundation thereby allowing these motions to defeat Plaintiffs' cause of action for medical battery and damages in total amounting to approximately over $20,000,000.00. In addition, State Arbitrator has not included Defendant Kaiser Medical Doctors in the Arbitration who were personally served under California law.

Therefore, due to the above, the award/ruling/decision by the State Arbitrator were procured through corruption, fraud, and undue means as they were made contrary to California law and this court shall vacate the award/ruling/decision made by the State Arbitrator.

Under Fed. R. Civ. P. 8, in alleging fraud…a party must state with particularity the circumstances constituting fraud … Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Applied to this circumstance, in order to preserve Plaintiffs' cause of action and to include the Defendants Kaiser Medical Doctors, and Defendants Kaiser Non-Medical Executives, Plaintiffs filed the six (6) OCSC cases and uploaded the First Amendment Demand in the Arbitration and called it "5000-0001." In response to this, Kaiser's Legal Representation then proceeded to upload - under the direction of Myra Firth and Brian Meadow through their Legal Assistant / Paralegal, Mitizi Thomas - different and distinct versions of the six (6) OCSC cases (excluding Defendant Greg Adams and different causes of actions) to the JAMS Portal. These are the particular circumstances constituting fraud (an act fitted to deceive another) by Kaiser which intended to deceive JAMS ADR to believing that the Plaintiffs had pled

- 104 -

**259I**

these modified six (6) OCSC cases in the Arbitration. Over Plaintiffs oral and written objections, Kaiser submitted seven (7) motions: Five (5) to compel discovery and two (2) to demurrer and strike all the uploads into JAMS Portal. Again, Plaintiffs did not plead them in Arbitration but a distinct and different version in OCSC. State Arbitrator has not sustained Plaintiffs objections, but instead proceeded with the Arbitration with the inclusion of them (Kaiser Legal Representation uploads).

Therefore, Defendants JAMS ADR and Kaiser committed fraud against the Plaintiffs to deny them of their rights to recovery and it was done with malice, intent, knowledge, and other conditions of these person's minds. As of result of this, this court shall vacate the award/ruling/decision made by the State Arbitrator.

Furthermore, this pattern where the award is procured through corruption, fraud, and undue means continues despite Plaintiff demonstrating more elements to vacate.

"… (2) …there was evident partiality or corruption in the arbitrators, or either of them…";

Due to the above, there was evidence of partiality (all Defendant JAMS ADR rulings made for Defendant Kaiser) or corruption (Defendant Kaiser pleading the Plaintiffs case to prejudice and injure their rights). Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

"… (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or…"

On February 28, 2024, Plaintiffs via email requested State Arbitrator to stay the Arbitration

- 105 -

**260I**

until Defendants could produce the signed Arbitration Agreements and as a result of this request, and also, continue the Defendants seven (7) motions schedule as described above. Defendants via email opposed Plaintiff's requests by asserting legal arguments based on 2002 and 2005 enrollment/arbitration agreements signed by Wilson Lynn, Jr. Plaintiffs responded that these outdated arbitration agreements were irrelevant and prejudicial and that 2019 and 2020 agreements are necessary for this as this is the time period where Plaintiffs allege Defendants injured Pamela.

Due to the above, State Arbitrator, as determined by this Court, [was/were] guilty of misconduct in refusing to postpone the motions hearing or even staying the Arbitration until the production of the Arbitration Agreement.

Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

Continuing the narrative of February 28, 2024, within a total of an hour and a half including the emails above, State Arbitrator via email wrote "In light of the signed agreements and the other arguments set forth by Mr. Meadows (Defendants Kaiser Legal Representation), I must again deny the request to dismiss the arbitration by Mr. Zamora [Plaintiff's counsel]" and in doing so, created the 2019 and 2020 Arbitrations Agreements from the 2002 and 2005 enrollment/arbitration agreements. Afterward, Plaintiff objected to this ruling as without the production of the Arbitration Agreements the State Arbitrator's ruling(s) have no legal binding effect and that Plaintiff would file this lawsuit in Federal court to have a federal judge rule on the existence of an arbitration agreement absent the Defendants production of the signed Arbitration Agreements.

Due to the above, State Arbitrator, as determined by this Court, [was/were] guilty of misconduct in refusing to dismiss the Arbitration

- 106 -

**261I**

absent the signed Arbitration Agreements, and a result, this court shall vacate the award/ruling/decision made by the State Arbitrator.

On March 1, 2024, Plaintiff ordered the State Arbitrator under California law to rule on their objections, including a new one that the 2002 and 2005 enrollment/arbitration agreements were parol evidence, which barred them from use as evidence, and amend his ruling with the exclusion of this parol evidence. Plaintiffs also opposed seven (7) motions of Defendants Kaiser in this communication as well based on the objections and order to amend his rulings. State Arbitrator overruled the objections and did not amend his ruling to exclude the parol evidence, and ignored Plaintiff opposition to the Defendants seven (7) motions based on Plaintiffs challenges for Defendant not producing the Arbitration Agreements. State Arbitrator denied Plaintiffs request for continence of the motions schedule (Defendant Kaiser's reply, 3/7/24) and Motion Hearing, 3/15/24).

The above demonstrates how the State Arbitrator refused to hear evidence pertinent and material to the controversy, which is that there is no signed Arbitration Agreement and that he did not exclude parol evidence which is a matter of substantive law and not subject to the Arbitrator/Judge weigh on relevancy restriction such as probability and prejudice to the parties engaged in the lawsuit. Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

"… (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made..."

Applied to this Arbitration, State Arbitrator has exceeded his powers by making rulings absent the authority given to him by having an Arbitration Agreement signed by the Plaintiffs. Therefore, this

- 107 -

**262I**

Court shall vacate the award/ruling/decision made by the State Arbitrator.

**XXVII.    This Court shall award damages to the Lynns for Defendants Kaiser, Kaiser Legal Representation, JAMS ADR, including Nakamura, for their perpetration of a Federal Civil Conspiracy. (Fed. R. Civ. P. 8)**

Under Fed. R. Civ. P. 8, in alleging fraud…a party must state with particularity the circumstances constituting fraud … Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. In Leisure Founders, the trial judge dismissed plaintiff's conspiracy to commit common law fraud claim for failure to comply with Fed. R. Civ. P. 8(b), finding that it did not state "the circumstance constituting fraud… with particularity". *Leisure Founders, Inc., v. CUC Int'l, Inc.*, 833 F.Supp. 1564 (S.D. Fla. 1993).

Applied to these circumstances, the above discussion for vacation of the awards/rulings/decisions has complied with Fed. R. Civ. P. 8(b).

The Pinkerton doctrine (conspirator is vicariously liable for substantiative acts committed in the furtherance of conspiracy which are foreseeable) is applicable in civil cases as it is in criminal cases. *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983); *Pinkerton v. United States*, 328 U.S. 640 (1946).

Applied to these circumstances, Defendants Kaiser, Kaiser's Legal Representation, and JAMS ADR have engaged in a conspiracy to commit fraud against the Plaintiffs rights to recover for their injuries. All of the acts described in the vacation of the awards are the substantive acts that these Defendants have committed in the furtherance of this conspiracy which are foreseeable because they all injure the Plaintiffs right to recover on claims

- 108 -

**263I**

asserted and also this conspiracy substantive acts remove liability from Defendant Kaiser.

Therefore, these Defendants shall be held responsible for their damages caused to the Lynns in the amount of three times their overall damages plead herein.

**XXVIII.     This Court shall award damages to the Lynns for Defendants Kaiser, Kaiser Legal Representation, JAMS ADR, including Nakamura, and State of California's violation of the Lynns due process rights and equal protection guaranteed under Amendment 14. (Fed. R. Civ. P. 8)**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Applied to these circumstances, the State of California has given an arbitrator authority to make binding, legal awards/rulings/decisions in the presence of a signed arbitration agreement thereby giving Defendant JAMS ADR state power. In Defendant JAMS ADR exercising this state power without a signed Arbitration Agreement it has abused this power – the same is true with the discussion of vacating awards and Federal Civil Conspiracy – and has deprive any person of life, liberty, or property, without due process of law (an actual court hearing this matter) and has denied the Plaintiffs within its jurisdiction the equal protection of the laws because Defendant JAMS ADR rulings are injuring the Plaintiffs and not protecting them.

- 109 -

264I

Therefore, this court shall not allow Defendant JAMS ADR to abuse state power and deny the Plaintiffs due process of the law or equal protection of the law. In doing so, Plaintiffs ask this court to dismiss the Arbitration and hold relevant Defendants liable to the fullest extent of the Supreme Law of the land, the US Constitution.

## XXIX. This Court shall automatically revoke Defendant Kaiser Federal Tax Exempt Status due to perform their Charitable Purpose as demonstrated through the injuries to the Lynns. (Fed. R. Civ. P. 54)

Under 26 USCS § 501…Exemption from taxation. An organization…shall be exempt from taxation…[any] Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable [purpose]…

Applied to these circumstances, Defendant Kaiser is a tax exempt organization under this federal statute and they are a nonprofit corporation organized and operated exclusively for a charitable purpose. Per their 990 form filed in 2022, Defendant Kaiser's charitable purpose is:

TO PROVIDE HIGH-QUALITY, AFFORDABLE HEALTH CARE SERVICES TO IMPROVE THE HEALTH OF OUR MEMBERS AND THE COMMUNITIES WE SERVE.

The Plaintiffs have not received high-quality, affordable health care services to improve their health (as they were members) because Plaintiffs have been subject to catastrophic injuries stemming from Medical Malpractice, Battery, Breach of Fiduciary Duty, Corporate Negligence and Administrative Negligence, Federal Civil Conspiracy, a corrupt, fraudulent, and undue means Arbitration procedural and substantive process, 14th Amendment and Sherman Act violations, which in total amount to

- 110 -

265I

Defendant Kaiser not meeting their charitable purpose.

Therefore, this court shall engage the IRS via the Southern District of Texas to come down the hall and revoke Defendant Kaiser's tax exempt status immediately as they should not enjoy the privileges and immunities granted to nonprofit / public charities who execute their charitable purpose.

**XXX. This Court shall award damages to the Lynns for Defendants Kaiser, Kaiser's Legal Representation, JAMS ADR and their employees' violation of the Sherman Act, 15 U.S.C. §§ 1–7, for enforcing arbitration agreements (expressed or implied) between two or persons that restrain trader by producing anticompetitive effects that negatively affect interstate or foreign commerce which injures Kaiser Patients in these Defendant US States. (Fed. R. Civ. P. 8)**

Enacted in 1890, the Sherman Act is U.S. antitrust law's backbone. According to *N. Pac. R. Co. v. United States*, 356 U.S. 1, 4 (1958), the act was designed to be "a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade." However, the Act itself is brief, with just two main sections. Section 1 prohibits unreasonable restraints of trade among parties, also referred to as "coordinated conduct" or "concerted action." In full, Section 1 states:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or

- 111 -

**266I**

by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 1. At its core, a violation of Section 1 requires: An agreement (express or implied), Between two or more persons, That restrains trade by producing anticompetitive effects outweighing any procompetitive effects stemming from the agreement –and– Affects interstate or foreign commerce

The relevant Defendants, which are highly sophisticated organizations, are aware of the Sherman Act and that its the U.S.'s antitrust law's backbone. According to N. Pac. R. Co. v. United States, 356 U.S. 1, 4 (1958), the act was designed to be "a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade", and applied to this complaint, Plaintiffs did not have economic liberty or freedom to choose and alternative arbitration system like:

American Arbitration Association, Arbitration Institute of the Stockholm Chamber of Commerce (SCC), China International Economic and Trade Arbitration Commission (CIETAC), Court of Arbitration for Sport (CAS), European Court of Arbitration, German Institute for Arbitration (DIS), Hong Kong International Arbitration Centre (HKIAC), International Centre for Dispute Resolution of the American Arbitration Association (ICDR), International Centre for Settlement of Investment Disputes (ICSID), International Court of Arbitration of the International Chamber of Commerce (ICC), London Court of International Arbitration (LCIA), Permanent Court of Arbitration at the Hague, Swiss Arbitration Association, Vienna International Arbitral Centre (VIAC), World Intellectual Property Organization Arbitration and Mediation Center (WIPO).

Instead, the Plaintiffs, as well as any other patient(s) of Kaisers, are stuck going through the Defendant Kaiser's private arbitration system

- 112 -

**267I**

administered by the OIA and Arbitrators provided by Defendant JAMS ADR state arbitrators. Where Kaiser's Legal Representation make it extremely long, arduous arbitration where the Plaintiffs have not received an award. Plaintiffs, as well as any other patient(s) of Kaisers, do not have the ability to choose any of the arbitration systems listed in 114. above. Furthermore, the Kaiser Arbitration system through the OIA Rules 2024 controls who are state arbitrators via their own list of them that Plaintiffs, as well as any other patient(s) of Kaisers, have to choose from and Kaiser and Kaiser's Legal Representation have the right to oppose the state arbitrator selected. If Plaintiffs, as well as any other patient(s) of Kaisers, seek to bring in an outside arbitrator or even one in the OIA system who is not on the list offered by the OIA, Kaiser and Kaiser Legal Representation can unilaterally say no and deny the access to that specific arbitrator. This happened to the Plaintiffs.

Therefore, Plaintiffs, as well as any other patient(s) of Kaisers, do not have the liberty or freedom that the Sherman Act requires, so the relevant Defendants have violations the Plaintiffs right to free trade due to them not have access to other arbitration systems or even a fair system to pick their own arbitrators.

Moreover, the Defendants have rigged their system in their favor and have injured the Plaintiffs, as well as any other patient(s) of Kaisers, which has been occurring since March 1999.

Section 1 prohibits unreasonable restraints of trade among parties, also referred to as "coordinated conduct" or "concerted action." In full, Section 1 states:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be

- 113 -

**268I**

deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

Applied to the Plaintiffs, the Federal Civil Conspiracy as complained about above by the Plaintiffs is illegal per the Act.

In addition, there is a clear and repetitive restraint on trade ongoing since March 1999, which Plaintiffs, as well as any other patient(s) of Kaisers, have been injured by.

Furthermore, Defendants have made contract (Plaintiffs did not sign the Arbitration Agreement but Defendant imply one through use of parol evidence) and have engaged in any combination or conspiracy (as pleaded herein) hereby declared to be illegal shall be … Plaintiffs leave this to the proper Federal Authorities.

15 U.S.C. § 1. At its core, a violation of Section 1 requires:

An agreement (express or implied). Plaintiff pled this element in 121. above.

Between two or more persons. There are two or more person / organizational Defendants that have injured Plaintiffs, as well as any other patient(s) of Kaisers.

That restrains trade by producing anticompetitive effects outweighing any procompetitive effects stemming from the agreement –and – There is a restraint on trade by producing anticompetitive effects that outweigh any procompetitive effects stemming from the agreement. As pled, all of those other arbitration systems or unapproved arbitrators outside Defendants arbitration system are excluded so this give them a

- 114 -

monopoly and there is no procompetitive effects from the agreement.

Affects interstate or foreign commerce. This negatively affects interstate or foreign commerce between there are arbitration systems and arbitrators outside this Defendant arbitration system who are left out and cannot compete to earn any capital in our great Capitalist country, the USA.

Therefore, due to the above, the Defendants have violated the Act and this court is to hold them responsible for TREBLE the damages incurred by the Plaintiffs, which is tallied in the PRAYER FOR RELIEF.

**XXXI. This Court shall automatically revoke Defendants Kaiser, Kaiser's Legal Representation, and JAMS ADR Arbitration System that is violation of the Sherman Act, 15 U.S.C. §§ 1–7, for enforcing arbitration agreements (expressed or implied) between two or persons that restrain trader by producing anticompetitive effects that negatively affect interstate or foreign commerce which injures Kaiser Patients in these Defendant US States. (Fed. R. Civ. P. 8; Fed. R. Civ. P. 39)**

As stated in the COMPLAINT NO. 8, Defendants have violated the Act and injured the Plaintiffs, as well as any other patient(s) of Kaisers.

Therefore, this court shall revoke and strike down Defendants arbitration system immediately and use whatever legal enforcement that the court deems proper to prevent this continual violation of the Act.

///

///

- 115 -

**270I**

**XXXII.    This Court declare judgment that the US States Governors and Mayor and Board of Supervisor demonstrated Neglect by issuing Defendant Kaiser their license number to operate hospitals in their State that promotes all the civil and criminal (not pled here but for the proper authorities to do so) lawbreaking that injure US Citizens like the Lynns, so as result of this, the Lynns also ask this Court to provide injunctive relief to the Lynns and US Citizens automatically revoke Defendants Kaiser's license to operate up and until they can demonstrate adherence to civil and criminal law throughout the US. (Fed. R. Civ. P. 8; Fed. R. Civ. P. 39)**

PLAINTIFFS ARE US CITIZENS AND HAVE STANDING AND THEIR CLAIMS ARE RIPE FOR DETERMINATION.

## Prayer

For the reasons set forth above, Plaintiffs respectfully request that this Court enter a judgment and injunctive relief and damages against Defendants, granting Plaintiffs the following relief:

1. This Court render a declaratory judgment as Sought for above;

2. This Court to provide injunctive relief as Sought for above;

3. This Court to provide damages as Sought for above;

4. The entry of judgment in favor of the plaintiff on each and every cause of action;

5. The award of the original requested amount of FOUR HUNDRED AND NINETY MILLION

- 116 -

**271I**

DOLLARS ($490,000,000.00) at least, but not limited to;

6. The award of TREBLE of the originally requested amount due the relevant Defendants' Sherman Act violation(s), which is ONE BILLION FOUR HUNDRED AND SEVENTY MILLION DOLLARS ($1,470,000,000) at least, but not limited to;

7. The sum of 7. and 8. above is ONE BILLION NINE HUNDRED AND SIXTY MILLION DOLLARS ($1,960,000,000) at least, but not limited to;

8. The award of costs for all costs, suit and attorney's fees, and

9. Such other relief as the Court deems just and proper.

### CONCLUSION

For the reasons stated, this Complaint shall be granted to file the Proposed Complaint should be granted.

Respectfully submitted,

Dated:  November 1, 2024

**Before Abraham was, I AM**

*Steven Zamora*

Steven Zamora, Esq
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064
Counsel of Record for Plaintiffs

- 117 -

**272I**

No. _____

_____

### IN THE

### SUPREME COURT OF THE UNITED STATES

_____

Wilson Lynn, Jr. and Pamela Lynn as Husband and Wife — **PETITIONER(S)**
_____
(Your Name)

### VS.

Kaiser Foundation Hospitals, Inc., et. al. — **RESPONDENT(S)**
_____

### MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

an Original and Exclusive Action Under Article III, Section 2 of the United States Constitution

The petitioner asks leave to file the attached petition for ~~a writ of certiorari~~ without prepayment of costs and to proceed *in forma pauperis*.

**Please check the appropriate boxes:**

☒ Petitioner has previously been granted leave to proceed *in forma pauperis* in the following court(s):

Superior Court of Orange County in the State of California
_____

_____

☐ Petitioner has **not** previously been granted leave to proceed *in forma pauperis* in any other court.

☐ Petitioner's affidavit or declaration in support of this motion is attached hereto.

☐ Petitioner's affidavit or declaration is **not** attached because the court below appointed counsel in the current proceeding, and:

☐ The appointment was made under the following provision of law: _____

_____, or

☐ a copy of the order of appointment is appended.

_____
(Signature)

273I

## AFFIDAVIT OR DECLARATION
## IN SUPPORT OF MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

I, Pamela Lynn and Wilson Lynn, Jr., am the petitioner in the above-entitled case.   In support of my motion to proceed *in forma pauperis*, I state that because of my poverty I am unable to pay the costs of this case or to give security therefor; and I believe I am entitled to redress.

1. For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months.  Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.  Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ ⊘ | $ 4900⁰⁰ | $ ⊘ | $ 4900⁰⁰ |
| Self-employment | $ ⊘ | $ ∅ | $ ⊘ | $ ∅ |
| Income from real property (such as rental income) | $ ⊘ | $ ∅ | $ ⊘ | $ ∅ |
| Interest and dividends | $ ⊘ | $ ∅ | $ ⊘ | $ ∅ |
| Gifts | $ ∅ | $ ∅ | $ ⊘ | $ ∅ |
| Alimony | $ ⊘ | $ ∅ | $ ⊘ | $ ∅ |
| Child Support | $ ⊘ | $ ∅ | $ ⊘ | $ ∅ |
| Retirement (such as social security, pensions, annuities, insurance) | $ 304⁰⁰ | $ 3100 | $ Same | $ 3100 |
| Disability (such as social security, insurance payments) | $ 325.⁰⁰ | $ 170⁰⁰ | $ Same | $ 170⁰⁰ |
| Unemployment payments | $ ⊘ | $ ⊘ | $ ⊘ | $ ⊘ |
| Public-assistance (such as welfare) | $ ⊘ | $ ⊘ | $ ⊘ | $ ⊘ |
| Other (specify): _____ | $ ____ | $ ____ | $ ____ | $ ____ |
| **Total monthly income:** | $ 629 | $ 8170 | $ ⊘ | $ 8170 |

2. List your employment history for the past two years, most recent first.   (Gross monthly pay is before taxes or other deductions.)

| Employer | Address | Dates of Employment | Gross monthly pay |
|----------|---------|---------------------|-------------------|
| | | | $ |
| | | | $ |
| | | | $ |

3. List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)

| Employer | Address | Dates of Employment | Gross monthly pay |
|----------|---------|---------------------|-------------------|
| Superior Court (CA) County of Trinity | 11 Court St Weaverville, CA 96093 | 03-2023 | $ 4900 |
| | | | $ |
| | | | $ |

4. How much cash do you and your spouse have? $_____
Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Type of account (e.g., checking or savings) | Amount you have | Amount your spouse has |
|----------------------------------------------|-----------------|------------------------|
| Savings | $ | $ 10,000 |
| Checking | $ | $ 4,000 |
| Savings | $ | $ 129 |
| Checking | | 300 |

5. List the assets, and their values, which you own or your spouse owns.  Do not list clothing and ordinary household furnishings.

☐ Home
Value _____

☐ Other real estate
Value _____

☒ Motor Vehicle #1
Year, make & model  2022 Subaru OUTBACK
Value  25,000

☐ Motor Vehicle #2  1992 FORD F
Year, make & model _____
Value  $ 1000.

☐ Other assets
Description _____
Value _____

6. State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |

7. State the persons who rely on you or your spouse for support.   For minor children, list initials instead of names (e.g. "J.S." instead of "John Smith").

| Name | Relationship | Age |
|---|---|---|
| | | |
| | | |

8. Estimate the average monthly expenses of you and your family.   Show separately the amounts paid by your spouse.   Adjust any payments that are made weekly, biweekly, quarterly, or annually to show the monthly rate.



|  | You | Your spouse |
|---|---|---|
| Rent or home-mortgage payment (include lot rented for mobile home) | $ | $ 1720 |
| Are real estate taxes included? ☐ Yes ☒ No | | |
| Is property insurance included? ☐ Yes ☒ No | | |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ 600 |
| Home maintenance (repairs and upkeep) | $ | $ 200 |
| Food | $ | $ 1800 |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ 175 |
| Medical and dental expenses | $ | $ 485 |

Total: $4980

9. Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?

    ☒ Yes    ☐ No    If yes, describe on an attached sheet.

10. Have you paid – or will you be paying – an attorney any money for services in connection with this case, including the completion of this form?  ☒ Yes  ☐ No

If yes, how much? <u>This is Confidential and Legally Privileged information.</u>

If yes, state the attorney's name, address, and telephone number:

Steven Zamora, Esq.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
(858) 382-1064

11. Have you paid—or will you be paying—anyone other than an attorney (such as a paralegal or a typist) any money for services in connection with this case, including the completion of this form?

    ☐ Yes    ☒ No

If yes, how much? _____

If yes, state the person's name, address, and telephone number:

12. Provide any other information that will help explain why you cannot pay the costs of this case.

Not applicable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: <u>   November 4th                </u>, 20<u>24</u>

<u>                     </u>
(Signature)

277I

|  | You | Your spouse |
|---|---|---|
| Transportation (not including motor vehicle payments) | $_____ | $ _100_ |
| Recreation, entertainment, newspapers, magazines, etc. | $_____ | $ _100_ |

Insurance (not deducted from wages or included in mortgage payments)

|  | You | Your spouse |
|---|---|---|
| Homeowner's or renter's | $_____ | $ _35_ |
| Life | $_____ | $_____ |
| Health | $ _289_ | $ _290_ |
| Motor Vehicle | $_____ | $ _190_ |
| Other: _____ | $_____ | $_____ |

Taxes (not deducted from wages or included in mortgage payments)

|  | You | Your spouse |
|---|---|---|
| (specify): _____ | $ _Ø_ | $ _Ø_ |

Installment payments

|  | You | Your spouse |
|---|---|---|
| Motor Vehicle #1 Subaru 339⁰⁰ | $_____ | $ _339_ |
| Credit card(s) | $_____ | $ _400_ |
| Department store(s) | $ _Ø_ | $ _Ø_ |
| Other: Signature loan | $_____ | $ _348_ |
| Alimony, maintenance, and support paid to others | $ _Ø_ | $ _Ø_ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ _Ø_ | $ _Ø_ |
| Other (specify): _____ | $_____ | $_____ |
| **Total monthly expenses:** | $ _289_ | $ _1802_ |

NUMBER 9 YES

The answer is yes, as we do not know if my husband (Wilson Lynn Jr) health at the age of 71. Will withstand the requirements in law enforcement. So, September 2025 will be the year of major income deficits.

No. _____

_____

**IN THE SUPREME COURT OF
THE UNITED STATES**

_____

**Pamela Lynn and Wilson Lynn, Jr.,**

**Petitioners**

**vs.**

**Kaiser Foundation Hospitals, Inc., et. al.,**

**Respondents**

_____

**PROOF OF SERVICE RE:
MOTION FOR LEAVE TO PROCEED *IN
FORMA* PAUPERIS AND MOTION FOR LEAVE
TO FILE COMPLAINT**

_____

**Steven Zamora, Esq.
Counsel of Record for Petitioners
Pamela Lynn and Wilson Lynn, Jr.
9450 Pinecroft Dr., Unit 9834
The Woodlands, TX 77380
stevenzamora@beforeabrahamwas-iam.org
(858) 382-1064**

## PROOF OF SERVICE

I, Steven Zamora, do swear or declare that on this date, November 1, 2024, as required by Supreme Court Rule 29, I have served the enclosed MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* and MOTION FOR LEAVE TO FILE COMPLAINT on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents, properly addressed to each of them by delivery to a third-party commercial carrier (UPS) for deliver within 3 calendar days.

The names and addresses of those served are as follows:

| | |
|---|---|
| Kaiser Foundation Hospitals, Inc. 1505 Corporation CSC Lawyers Incorporating Service c/o Becky DeGeorge or Koy Saechao or Nicole Stauss 2710 Gateway Oaks Drive Sacramento, CA 95833 | Kaiser Foundation Health Plan, Inc. 1505 Corporation CSC Lawyers Incorporating Service c/o Becky DeGeorge or Koy Saechao or Nicole Stauss 2710 Gateway Oaks Drive Sacramento, CA 95833 |
| Southern California Permanente Medical Group, Inc. Kaiser Legal Department 393 East Walnut Street Pasadena, CA 91188 | Greg Adams 1 Kaiser Plaza, Floor 19 Oakland, CA 94612 |
| Janet Liang 1 Kaiser Plaza, Floor 19 Oakland, CA 94612 | Dr. Andrew Bindman 1 Kaiser Plaza, Floor 27 Oakland, CA 94612 |
| Dr. Kelvin Nyugen 3460 E. La Palma Avenue Anaheim, CA 92806-2020 | Dr. Marc Davison 3430 E La Palma Avenue Anaheim, CA 92806 |

- 2 -

| | |
|---|---|
| Dr. Julio Vaquerano<br>3430 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Gavin Jonas<br>San Canyon Medical Offices<br>6670 Alton Parkway<br>Irvine, CA 92618 |
| Dr. Andrew Giap<br>Kraemer Medical Office 1<br>3460 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Lucio Loza<br>1900 E 4th Street<br>Santa Ana, CA 92705 |
| Dr. Roberto Limgenco Barreto<br>3460 E La Palma Avenue<br>Anaheim, CA 92806 | Dr. Albert Sung-Unjin<br>3440 E La Palma Avenue<br>Anaheim, CA 92806 |
| Dr. Xaviour James Walker<br>291 Chastain Park Dr NE<br>Atlanta, GA 30342 | Dr. Srilakshmi Moturu<br>3440 E La Palma Avenue<br>Anaheim, CA 92806 |
| Office of Independent Administrator<br>Marcella Bell<br>3580 Wilshire Blvd., Suite 2020<br>Los Angeles, CA 90010 | JAMS ADR<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 |
| Kirk H. Nakamura<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 | Mirra Jhang<br>5 Park Plaza, Suite 400<br>Irvine, CA 92614 |
| La Follette, Johnson, Dehaas, Fesler & Ames<br>Attn: Brian Meadows<br>2677 North Main Street, Suite 901<br>Santa Ana, CA 92705 | Brian Meadows<br>2677 North Main Street, Suite 901<br>Santa Ana, CA 92705 |
| Myra Firth<br>2677 North Main Street, Suite 901<br>Santa Ana, CA 92705 | Mitzi Thomas<br>2677 North Main Street, Suite 901<br>Santa Ana, CA 92705 |

- 3 -

**282I**

| | |
|---|---|
| Aetna Life Insurance Company<br>Amanda Garcia and Gabriela Sanchez<br>330 N. Brand Blvd.<br>Glendale, CA 91203 | County of Orange<br>Orange County Board of Supervisors<br>400 W. Civic Center Drive<br>Santa Ana, CA 92701 |
| Don Wagner, Chief Board of Supervisor<br>County of Orange<br>400 W. Civic Center Drive, Santa Ana, CA 92701 | Rob Bonta, Attorney General<br>State of California<br>1300 "I" Street<br>Sacramento, CA 95814 |
| Gavin Newsom, Governor of California<br>1021 O Street, Suite 9000<br>Sacramento, CA 95814 | Brian Schwalb, Attorney General<br>District of Columbia<br>400 6th Street NW<br>Washington, D.C. 20001 |
| Muriel Bowser, Mayor of District of Columbia<br>John A. Wilson Building<br>1350 Pennsylvania Avenue, NW,<br>Washington, DC 20004 | Phil Weiser, Attorney General<br>State of Colorado<br>Ralph L. Carr Judicial Building<br>1300 Broadway, 10th Floor<br>Denver, CO 80203 |
| Jared Polis, Governor of Colorado<br>200 E. Colfax<br>Denver, CO 80203-1716 | Christopher M. Carr, Attorney General<br>State of Georgia<br>40 Capitol Square, SW<br>Atlanta,<br>Georgia  30334 |
| Brian Kemp, Governor of Georgia<br>206 Washington Street<br>Suite 203, State Capitol<br>Atlanta, GA 30334 | Anne E. Lopez,<br>Attorney General<br>State of Hawaii<br>425 Queen Street<br>Honolulu, HI 96813 |
| Josh Green, Governor of Hawaii<br>Executive Chambers<br>State Capitol<br>415 South Beretania St.<br>Honolulu, Hawai'i 96813 | Anthony G. Brown,<br>Attorney General<br>State of Maryland<br>200 St. Paul Place,<br>Baltimore, MD 21202 |

- 4 -

| | |
|---|---|
| Wes Moore, Governor of Maryland<br>100 State Circle<br>Annapolis, Maryland 21401-1925 | Ellen F. Rosenblum,<br>Attorney General<br>State of Oregon<br>1162 Court St. NE<br>Salem, OR 97301-4096 |
| Christine Kotek,<br>Governor of Oregon<br>900 Court Street, Suite 254<br>Salem, OR 97301-4047 | Jason Miyares,<br>Attorney General<br>State of Virginia<br>202 North Ninth Street<br>Richmond, Virginia 23219 |
| Glenn Youngkin,<br>Governor of Virginia<br>P.O. Box 1475<br>Richmond, VA 23218 | Bob Ferguson,<br>Attorney General<br>State of Washington<br>11 Washington St SE<br>PO Box 40100<br>Olympia, WA 98504 |
| Jay Inslee, Governor of Washington<br>PO Box 40002<br>Olympia, WA 98504-0002 | Supreme Court of the United States<br>c/o Solicitor General of the United States<br>Room 5616<br>Department of Justice<br>950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 |
| Congress of the United States<br>c/o Solicitor General of the United States<br>Room 5616<br>Department of Justice<br>950 Pennsylvania Ave. N. W., Washington, DC 20530-0001 | Kamala Harris,<br>Vice President of the United States and President of the Senate<br>1600 Pennsylvania Ave NW<br>Washington, DC 20500 |

- 5 -

**284I**

| | |
|---|---|
| Patty Murray<br>Senate Pro Tempore<br>154 Russell Senate Office Building<br>Washington, D.C. 20510<br>Department of Justice<br>950 Pennsylvania Ave.<br>N. W., Washington, DC 20530-0001 | |
| Executive Branch of the United States<br>c/o Solicitor General of the United States<br>Room 5616<br>Department of Justice<br>950 Pennsylvania Ave.<br>N. W., Washington, DC 20530-0001 | Joe Biden<br>President of the United States<br>1600 Pennsylvania Ave NW<br>Washington, DC 20500 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 1, 2024.

*Steven Zamora*
Steven Zamora, Esq.

- 6 -



RECEIVED
SUPREME COURT OF THE
US POLICE OFFICE

2024 NOV -4 PM 1: 08

AA
557

**287I**

From: <No-Reply@supremecourt.gov>
Date: Mon, Jan 27, 2025 at 2:19 PM
Subject: Correspondence from The Supreme Court of the United States
To: <stevenzamora@beforeabrahamwas-iam.org>

## SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC  20543-0001

January 27, 2025

Steven Zamora
9450 Pinecroft Drive
Unit 9834
The Woodlands, TX 77380

RE: "An Original and Exclusive Action under Article III, Section 2..."

Dear Mr. Zamora:

Your document titled as "an original and exclusive action under article III, section 2..." was received on January 22, 2024 and is hereby returned for the following reason(s):

The original jurisdiction of this Court does not extend to a suit by an individual against a State.  The original jurisdiction of this Court generally extends only to cases or controversies between two or more states or between the United States and one or more states.  See 28 U.S.C. 1251 and Rule 17 of the Rules of this Court.  The Eleventh Amendment amends the language of the Constitution and holds that the Judicial Power of the United States does not extend to any suit commenced or prosecuted against a state by a citizen of another state.  The Supreme Court has subsequently held numerous times that states cannot be sued without their consent and that the Eleventh amendment bars suits brought against a state by citizens of that state. *Hans v. Louisiana,* 134 U.S. 1 (1890).

Sincerely,
Scott S. Harris, Clerk
By:

Katie Heidrick
(202) 479-3038

**288J**

## Procedures - from 01/01/2015 to 02/18/2021

| Procedure Name | Priority | Date/Time | Associated Diagnosis | Comments |
|---|---|---|---|---|
| ESOPHAGOGASTRODUODENOSCOPY | Routine | 03/12/2020 2:00 PM PDT | HISTORY OF ESOPHAGECTOMY | |
| ESOPHAGOGASTRODUODENOSCOPY | Routine | 11/19/2019 1:17 PM PST | | |
| ANESTHESIA PROCEDURE (OR AIRWAY, ANESTH PROC) | Routine | 11/19/2019 9:49 AM PST | | |
| ANESTHESIA PROCEDURE (OR AIRWAY, ANESTH PROC) | Routine | 11/04/2019 3:07 PM PST | | |
| TRACHEOSTOMY TEMPORARY | | 11/04/2019 2:34 PM PST | RESPIRATORY FAILURE | |
| BRONCHOSCOPY | Routine | 10/29/2019 4:31 PM PDT | | |
| NON-GYNECOLOGY CYTOLOGY (NON-GYN CYTOLOGY) | STAT | 10/29/2019 2:43 PM PDT | ESOPHAGEAL STRICTURE | |
| ESOPHAGOGASTRODUODENOSCOPY | Routine | 10/23/2019 2:03 PM PDT | | |
| ANESTHESIA PROCEDURE (OR AIRWAY, ANESTH PROC) | Routine | 10/23/2019 1:36 PM PDT | | |
| ESOPHAGOGASTRODUODENOSCOPY | Routine | 10/17/2019 4:56 PM PDT | | |
| ARTERIAL LINE PLACEMENT, ANESTH PROC | Routine | 10/17/2019 12:11 PM PDT | | |
| ANESTHESIA PROCEDURE (OR | Routine | 10/17/2019 11:42 | | |
| AIRWAY, ANESTH PROC) | | AM PDT | | |
| ARTERIAL LINE PLACEMENT, ANESTH PROC | Routine | 10/15/2019 11:11 AM PDT | | |
| SURGICAL PATHOLOGY | Routine | 10/14/2019 1:13 PM PDT | ESOPHAGEAL STRICTURE | |
| ESOPHAGOGASTRODUODENOSCOPY | Routine | 10/14/2019 8:47 AM PDT | | |
| ESOPHAGOGASTRODUODENOSCOPY | Routine | 10/14/2019 8:47 AM PDT | | |
| ANESTHESIA PROCEDURE (IV PERIPROCEDURE INSERTION, ANESTH PROC) | Routine | 10/14/2019 8:31 AM PDT | | |
| ARTERIAL LINE PLACEMENT, ANESTH PROC | Routine | 10/14/2019 8:30 AM PDT | | |
| ANESTHESIA PROCEDURE (OR AIRWAY, ANESTH PROC) | Routine | 10/14/2019 8:21 AM PDT | | |
| EXPLORATORY THORACOTOMY | | 10/14/2019 7:25 AM PDT | BENIGN ESOPHAGEAL STRICTURE | |
| LAPAROSCOPIC JEJUNOSTOMY TUBE PLACEMENT | | 10/14/2019 7:25 AM PDT | BENIGN ESOPHAGEAL STRICTURE | |
| THORACOSCOPY TRANSPLEURAL | | 10/14/2019 7:25 AM PDT | BENIGN ESOPHAGEAL STRICTURE | |
| BRONCHOSCOPY | | 10/14/2019 7:25 AM PDT | BENIGN ESOPHAGEAL STRICTURE | |
| LYSIS OF ADHESIONS, THORACOSCOPIC | | 10/14/2019 7:25 AM PDT | BENIGN ESOPHAGEAL STRICTURE | |
| LAPAROSCOPIC ESOPHAGECTOMY TRANSHIATAL | | 10/14/2019 7:25 AM PDT | BENIGN ESOPHAGEAL STRICTURE | |

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 7/11/2019)

**NON-GYNECOLOGY CYTOLOGY (NON-GYN CYTOLOGY)** (Performed 6/6/2(
   Performed for THYROID NODULE

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 5/21/2019)
   Performed for DYSPHAGIA (DIFFICULTY SWALLOWING)

**SURGICAL PATHOLOGY** (Performed 5/21/2019)
   Performed for DYSPHAGIA (DIFFICULTY SWALLOWING)

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 4/23/2019)

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 3/18/2019)
   Performed for DYSPHAGIA (DIFFICULTY SWALLOWING)

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 8/26/2019)

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 8/15/2019)

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 8/15/2019)

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 8/8/2019)

**ESOPHAGOGASTRODUODENOSCOPY** (Performed 8/1/2019)

**Note: This is a total of 38 different surgical procedures on different incident dates. Originally, Kaiser gave the Lynns 982 pages of medical notes. However, in discovery, Counsel of Record demanded Kaiser to produce all medical records and Kaiser gave us over 16,000 pages.**

**290K**

**PAMELA AND WILSON LYNN JRS.' TESTIMONY REGARDING KAISER AND RELATED DOCTORS**
**November 27, 2023**

In 2019, I had numerous Endoscopy (EGD) procedures performed to help me swallow. During this process, Kaiser and Related Doctors' overused these procedures and caused serious physical damage and negative health issues that I must live with to this day. What is more, Kaiser and Related Doctors then had me undergo a surgery that is used for people with esophageal cancer which subsequently led to numerous emergency procedures. As a result, I almost died four times. After my 38-day stay at Kaiser, this information was made known to me and to complete strangers by my surgeon who paraded me through the Kaiser medical offices. Surprisingly, I even had one surgeon confess (long after my surgery) to damaging my Vagus Nerve and told me that I would die if I ever had to have surgery again. This same doctor wanted me to stay with him for the rest of my life and guide me through my now major health issues. Unfortunately, due to concerns about medical insurance and funds, I felt I had no other choice but to stay with him. To my surprise, he then started to resent me and make me doubt my decisions. His voice rang in my head each time I had an upcoming date at the hospital, causing me to question "Is this my last day?" or "Will my family find me dead at home?" Because of this, I have had to struggle against ongoing severe medical and emotional issues, as does my nearly 70-year-old husband and my family, who have watched me almost die four times in October 2019.

Thankfully, with the help of KWAVE 107.9, hundreds of people everywhere prayed for us in 2019. It doesn't go unnoticed. Thank you all! I can't begin to share with you the many times I experienced "code blues" and became accustomed to near death experiences. On, one occasion, I woke up while medical staff were screaming at each other about who was going to call the time of death. My first thought was "I am dying," I had no fear at that time, just peace. I spoke with God and He told me that He has always been by my side, and that I had nothing to fear. He said do not fret and worry - I am with you. Well, here I am, and though He did not heal me, I am very broken but not dead. If reading of my ordeal of pain and suffering helps anyone, then this is why God saw fit to preserve my life. And while some could be mad at God, I know He is always good and has my best interests in mind. My understanding of God's good nature doesn't remove my desire for justice for medical wrongdoing. Because of this wrongdoing, I now must undergo the same EGD procedure (every three months) that initially injured me just so I can stay alive. This has caused me (as well as for my family) severe PTSD. Moreover, I have injuries to my Vagus Nerve and continue to have dumping syndrome and aspiration issues.

Kaiser and Related Doctors must be held accountable and take responsibility for their wrongdoing. Basic human and professional integrity and truth should matter. It's extremely humbling and embarrassing to have to share with you my ongoing medical and psychological struggles. I'm sure some of you have experienced similar issues. I have deep sympathy for you. The struggle is real.

Moreover, it's even more disturbing to me that Kaiser attempted to hide from me what they did not just once, but repeatedly. To see my family and young grandchildren fear doctors and have such a lack of trust is disturbing to my core. Though not all doctors and big health organizations deliberately misuse their authority, it certainly makes one think about the number of times Kaiser

1

and Related Doctors have gotten away with hiding major medical errors which have led to tragic consequences. If I had died, no one would have been the wiser to the horrendous neglect that took place. My family was called over and over again to come quickly when I was dying or in critical condition, moving from one emergency procedure to another. Many friends and family stayed overnight numerous times so that I was not alone.

I may physically *appear* to be healthy, but I am not! I lack bowel control, fall sleep in a lounge chair in hopes of not aspirating while I sleep, have severe spasms in my right chest from metal plates, screws, and wires, regularly choke on food, and regurgitate undigested food eaten 4-5 days ago. Several procedures had to be rescheduled due to undigested meals. Very dangerous! What is more, I walk unstably (which makes me look like I'm inebriated), my feet and hands spasm, and bending over can cause me to cough, spew and choke. All this while desperately trying not to draw attention to myself. Whether I'm happy or upset I gnaw at my lip and cheeks and have major stomach issues which can be humiliating when in public or with family and friends. I am in physical therapy twice per week and see other health professionals. I regularly travel to Southern California from Northern California to have my every 90-day procedures to keep me alive. To add insult to injury, Kaiser did not share vital health information with me and my family, even lying when they said they explained everything to me (while I was in a medically induced coma).

In addition, when I was confused and seeking answers, I requested my medical records and received only 992 pages. It took my lawyer to demand the whole amount from Kaiser counsel to receive all my medical records, which turned out to be over 16,000 pages. I saw myself as a guineapig being used for (some unlicensed) people and licensed medical personnel (without experience) to experiment.

To simply arbitrate as Kaiser does only gives them a way to hide and prolong their many mistakes and mishaps, never revealing the truth that leaves some permanently injured or even dead. They overpower with aggressive attorneys that are hired to intimidate and cause stress until you comply with their demands. They can be powerful bullies with endless corporate resources to support their never-ending assault on accountability and justice. Where is the justice for people who are damaged for life? I want answers so I can understand what my body is doing and why.

With this said, I desire to be a positive role model to my family and not a hindrance to them in becoming people with compassion. My husband and I enjoy helping others and encouraging healthy relationships. Though it is not easy, WE believe in God and want to be strong through this adversity. However, Kaiser's medical community needs to be held to their medical oath. Where is compassion and the promise to do no harm? Without truth coming to light, how are we to have true knowledge which can help the injured find ways to cope as well as discover pathways to temporary relief? Keeping the truth hidden behind closed doors is too heavy a price to pay. Speaking the truth with love,

Pamela and Wilson Lynn

949-877-2402  Pamela Mobile  / Email: yayapapa6@me.com
951-551-8119  Wilson Mobile  / Email: wilsonlynnjr@me.com                    2





**294L**