IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| PAMELA LYNN AND WILSON LYNN, JR., | § | |
| *Plaintiffs*, | § | Civil Action No. 4:25-cv-02465 |
| | § | |
| v. | § | |
| | § | |
| KAISER FOUNDATION HEALTH PLAN, | § | |
| INC., KAISER FOUNDATION HOSPITALS, | § | |
| INC., SOUTHERN CALIFORNIA | § | |
| PERMANENTE MEDICAL GROUP, INC. | § | |
| (ALTOGETHER "KAISER"), THE OFFICE | § | |
| OF INDEPENDENT ADMINISTRATOR | § | |
| ("OIA"), DR. MARC DAVISON, DR. | § | |
| JULIO VAQUERANO, DR. GAVIN JONAS, | § | |
| DR. ANDREW GIAP, DR. LUCIO LOZA, | § | |
| DR. ROBERTO LIMGENCO BARRETO, | § | |
| DR. ALBERT SUNG-UNJIN, DR. XAVIOUR | § | |
| JAMES WALKER, DR. SRILAKSHMI | § | |
| MOTURU (ALTOGETHER "MEDICAL | § | |
| DOCTORS"), DR. ANDREW BINDMAN | § | |
| ("KAISER MEDICAL DOCTOR | § | |
| EXECUTIVE), GREG ADAMS, JANET | § | |
| LIANG (ALTOGETHER "KAISER | § | |
| NON-MEDICAL DOCTOR EXECUTIVES"), | § | |
| JAMS ADR, KIRK NAKAMURA, MIRRA | § | |
| JHANG (ALTOGETHER JAMS ADR), LA | § | |
| FOLLETTE, JOHNSON, DEHAAS, FESLER | § | |
| & AMES, BRIAN MEADOWS, MYRA | § | |
| FIRTH, MITZI THOMAS (ALTOGETHER | § | |
| "KAISER LEGAL REPRESENTATION"), | § | |
| STATE OF CALIFORNIA, COUNTY OF | § | |
| ORANGE, AETNA LIFE INSURANCE | § | |
| COMPANY, DOES 1-100, | § | |
| *Defendants*. | § | |

**DEFENDANTS LA FOLLETTE, JOHNSON, DEHAAS, FESLER & AMES;
BRIAN MEADOWS; MYRA FIRTH; AND MITZI THOMAS'
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUAN TO
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(3), 12(b)(2), 12(b)(6), AND 12(b)(1)**

Pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(2), 12(b)(6), and 12(b)(1),

Defendants La Follette, Johnson, Dehaas, Fesler & Ames (the "La Follette Firm"); Brian

---

Meadows; Myra Firth; and Mitzi Thomas (collectively, the "La Follette Defendants") file this Motion to Dismiss Plaintiffs' First Amended Complaint (the "Complaint"), and would respectfully show the Court as follows:

## INTRODUCTION

The La Follette Firm—a California law firm that specializes in civil defense—represented the Kaiser Parties[1] against Plaintiffs Pamela ("Mrs. Lynn") and Wilson Lynn (Mr. Lynn") (collectively, "Plaintiffs") related to claims Plaintiffs asserted regarding certain medical treatment Ms. Lynn received beginning in 2019.[2] Although the dispute was pending in an arbitration proceeding (the "Arbitration Proceeding") administered by JAMS ADR ("JAMS"), the Arbitration Proceeding was ultimately dismissed pursuant to an order granting the Kaiser Parties' Motion for Terminating Sanctions against Plaintiffs' counsel. In addition to litigating against the Kaiser Parties in the Arbitration Proceeding, Plaintiffs have filed seven cases in the Superior Court of California against various Defendants (that have all been dismissed); filed a previous complaint before this District Court (that was dismissed); and filed various pleadings with the United States Supreme Court (that have been rejected).[3] Now, despite this District Court's previous dismissal of Plaintiffs' lawsuit based on lack of venue, Plaintiffs attempt to take another bite of the apple.

On September 30, 2025, Plaintiffs filed their untimely First Amended Complaint without first seeking leave from the Court to do so.[4] Although the La Follette defendants are not required

---

[1] Defendants Foundation Health Plan, Inc.; Kaiser Foundation Hospitals; Southern California Permanente Medical Group; Roberto Barreto, M.D.; Albert Sung-Un Jin, M.D.; Andrew Giap, M.D.; Kelvin Nguyen, M.D.; Srilakshmi Moturo, M.D.; Marc Davison, M.D.; Gavin Jonas, M.D.; and Julio Vaquerano, M.D. are collectively referred to herein as the "Kaiser Parties."

[2] Exhibit B to **Plaintiffs' First Amended Complaint** [Doc. No. 38-1] at pgs. ii-iii.

[3] *See* **Plaintiffs' First Amended Complaint** [Doc. No. 38] at pgs. 2-6.

[4] *See* **Plaintiffs' First Amended Complaint** [Doc. No. 38]. On August 25, 2025, the JAMS Defendants filed their 12(b) Motion, making Plaintiffs' amended pleadings deadline September 15, 2025. *See* Fed. R. Civ. P. 15(a)(1). Accordingly, any amendment to the Complaint after that date is untimely. "[I]n a multi-defendant case such as this. .

to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending and the La Follette's object to Plaintiffs' filing of the Complaint, the La Follette Defendants nonetheless file this Motion to Dismiss out of an abundance of caution.[5] Plaintiffs have failed to cure any of the defects the La Follette Defendants presented in their previous Motion to Dismiss, which further solidifies that such defects are *futile* and the Court should accordingly dismiss the Plaintiffs' Complaint.

Ultimately, as described below in detail, the Court should dismiss Plaintiffs' claims against the La Follette Defendants pursuant to: Federal Rules of Civil Procedure 12(b)(3), because venue is improper; 12(b)(2), because the Court lacks personal jurisdiction as to the La Follette Defendants; 12(b)(6), because Plaintiffs' claims are barred by attorney immunity as a matter of law and Plaintiffs fail to state any claim against the La Follette Defendants upon which relief can be granted; and 12(b)(1) because the Court lacks subject matter jurisdiction to decide these claims.

## ISSUES PRESENTED

(1) Whether venue is proper in this Court or Texas in light of the United States District Court for the Southern District of Texas' previous order determining it is not;

(2) Whether this Court has personal jurisdiction over the La Follette Defendants considering the La Follette Defendants are California residents and Plaintiffs have failed to establish that the La Follette Defendants have otherwise made sufficient contacts with the state of Texas generally or arising out of the facts underlying this dispute;

(3) Whether Plaintiffs failed to state a claim upon which relief can be granted against the La Follette Defendants because the La Follette Defendants, as counsel for the Kaiser Parties, are immune from suit by a non-client under the doctrine of attorney immunity;

---

.only one opportunity is afforded by Rule 15 to amend as a matter of course." Merisier v. Johnson Cnty., Tex., No. 3:19-CV-2911-X-BN, 2020 WL 13856958, at *1 (N.D. Tex. May 26, 2020).

[5] *See Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir. 2018) ("Rather, '[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.'").

---

(4)    Whether Plaintiffs failed to state a claim upon which relief can be granted as to each cause of action they assert against the La Follette Defendants in their Complaint; and

(5)    Whether the Court has subject matter jurisdiction to decide the claims Plaintiffs assert against the La Follette Defendants considering Plaintiffs' failure to present a federal question.

## STATEMENT OF ALLEGATIONS AND PERTINENT FACTS

As set forth in their Complaint, Plaintiffs allege Defendants committed certain wrongdoings related to (1) treatment Ms. Lynn received by the Kaiser Parties beginning in 2019 as well as (2) the subsequent Arbitration Proceeding in California, presided over by Defendant Kirk H. Nakamura, retired from JAMS (the "Arbitrator"), related to Plaintiffs' negligence and malpractice claims arising from that treatment.[6] In their Complaint, Plaintiffs have identified numerous other proceedings in which they have attempted to bring forth their claims against Defendants in various venues.[7] Notably, Plaintiffs acknowledge that they have previously filed suit against the Defendants before the United States District Court for the Southern District of Texas in Cause No. 4:2024cv00935 (the "First Southern District Lawsuit").[8]

On March 13, 2024, Plaintiffs filed a complaint in First Southern District Lawsuit against the *exact* twenty-six Defendants that are now parties to this lawsuit.[9] In the First Southern District Lawsuit, Plaintiffs asserted state law tort claims and purported violations of various Federal statutes against Defendants, all arising out of the medical treatment Ms. Lynn received as well as the Arbitration Proceeding.[10]

---

[6] **Exhibit A of Plaintiffs' First Amended Complaint** [Doc. No. 38-2], at pg. 55A.
[7] *See* **Plaintiffs' First Amended Complaint** [Doc. No. 38], at pgs. 2-6.
[8] **Plaintiffs' Complaint** [Doc. 1 in Cause No. 4:204cv00935, the "First Southern District Lawsuit"].
[9] In this lawsuit, Plaintiffs have added a 27th Defendant—Aetna Life Insurance Company.
[10] **Plaintiffs' Complaint** [Doc. 1 in the First Southern District Lawsuit].

On April 25, 2024, United States Magistrate Judge Christina A. Bryan recommended, *sua sponte*, that the Court dismiss the First Southern District Lawsuit because it was clear on the face of the First Complaint that not all, if any, of the Defendants were residents of Texas; none of the events giving rise to Plaintiffs' claims occurred in Texas; and Plaintiffs could have filed the case in California (the "Memorandum and Recommendation").[11] Further, Magistrate Judge Bryan suggested that the Plaintiffs' claims may be barred by limitations and that Plaintiffs did not satisfy the Federal pleading standards.[12]

On June 5, 2024, United States District Judge Charles Eskridge entered his Order Adopting Memorandum and Recommendation, in which he adopted Magistrate Judge Bryan's Memorandum and Recommendation.[13] On the same day, Judge Eskridge signed a final judgment dismissing Plaintiffs' First Complaint without prejudice.[14]

## MOTION TO DISMISS UNDER RULE 12(b)(3)

### I.    This District Court Has Already Found Venue to be Improper

The issue regarding venue has already been decided and is binding on Plaintiffs. On June 5, 2024, Judge Eskridge dismissed all of Plaintiffs' claims in the First Southern District Lawsuit for improper venue.[15] Courts apply "law of the case" principles where a court has already issued a ruling on venue.[16] "[P]rinciples of law of the case should be applied to promote finality in venue disputes to minimize delay in adjudication of substantive complaints."[17] Courts should avoid

---

[11] **Exhibit A**, **Memorandum and Recommendation** (Doc. No. 16 in the First Southern District Lawsuit), at pgs. 2-3.
[12] *Id*. at pg. 3.
[13] **Exhibit B, Order Adopting Memorandum and Recommendation** [Doc. 29 in the First Southern District Lawsuit].
[14] **Exhibit C, Final Judgment** [Doc. 30 in the First Southern District Lawsuit].
[15] **Exhibit B**.
[16] *See, e.g.*, *United States v. Petty*, 834 F. App'x 107, 108 (5th Cir. 2021); *Quicksilver*, 2008 WL 3165745, at *5.
[17] *Quicksilver*, 2008 WL 3165746, at *5.

reconsidering issues already decided in the absence of extraordinary circumstances, such as where the initial decision was "clearly erroneous or would work a manifest injustice."[18]

Despite Magistrate Judge Bryan and District Judge Eskridge's earlier dismissal for Plaintiffs' failure to establish that venue was proper in the United States District Court for the Southern District of Texas, Plaintiffs have *refiled* this suit in the same District Court without first remedying their earlier venue deficiencies—because they cannot. Accordingly, such orders addressing venue in this District Court govern in this lawsuit and Plaintiffs' Complaint must accordingly be dismissed.

## II.     Plaintiffs Cannot Establish Proper Venue

Plaintiffs cannot establish that venue is proper in this Court. Venue is proper in (1) a judicial district in which any defendant resides, if *all* defendants are residents of the State in which the district is located; (2) a judicial district in which a *substantial part* of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) *if there is no district in which an action may otherwise be brought*, any judicial district any defendant is subject to the court's personal jurisdiction with respect to such action.[19] For purposes of § 1391, a corporate defendant shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.[20]

First, none of the La Follette Defendants reside in Texas.[21] Rather, Defendant the La Follette Firm is a law firm incorporated in California that employs attorneys that are licensed to practice law in California (and none of which are licensed to practice law in Texas),[22] and

---

[18] *Id*.
[19] 28 U.S.C. § 1391(b).
[20] 28 U.S.C. § 1391(d);
[21] **Exhibit D – Affidavit of Brian Meadows** at ¶ 3-5; 7.
[22] *Id.*

Defendants Brian Meadows, Myra Firth, and Mitzi Thomas all reside in California.[23] Accordingly, not all the Defendants are residents of Texas as required to establish venue under § 1391(b)(1).[24]

Second, the Complaint fails to allege that *any* part of the underlying events giving rise to Plaintiffs' claims took place in Texas. In fact, the only reference to Texas that Plaintiffs make in their Complaint is related to the fee agreement they entered to engage their attorney in this matter, as he purportedly practices in the state of Texas.[25] The La Follette Defendants are certainly not a party to Plaintiffs' fee agreement with opposing counsel, nor do Plaintiffs allege that. Otherwise, Plaintiffs complain only of alleged incidents that wholly took place in the state of California.[26] Accordingly, venue cannot be established under § 1391(b)(2).

Third, as acknowledged by the Memorandum and Recommendation and as further set forth above, Plaintiffs could have brought this action before a court in California.[27] In fact, Plaintiffs' lawsuit has no connection to Texas, except that Plaintiffs' attorney resides in this state.[28] Accordingly, Plaintiffs' Complaint does not support venue in Texas and should therefore be dismissed.

### III.   Plaintiffs' Claims Against the La Follette Defendants Should Be Dismissed with Prejudice

A court may dismiss claims with prejudice where, "in addition to venue being improper, [the] claims would almost certainly be barred" on other independent grounds."[29] Not only are Plaintiffs' claims brought in the wrong venue but, as described in detail below, the La Follette

---

[23] *Id.*
[24] The La Follette Defendants do not assert that any of the remaining defendants reside in Texas.
[25] **Plaintiffs' First Amended Complaint** [Doc. No. 38] at pgs. 7, 9.
[26] **Exhibit A of Plaintiffs' First Amended Complaint** [Doc. No. 38-2], at pgs. 55A – 57A; 102A – 111A.
[27] **Memorandum and Recommendation,** [Doc. 16 in the First Southern District Lawsuit] at pg. 3.
[28] *See* **Plaintiffs' First Amended Complaint** [Doc. No. 38], at pg. 7.
[29] *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 366 (5th Cir. 2008).

Defendants are immune from such suit pursuant to the attorney immunity doctrine.[30] Such privilege that protects the La Follette Defendants from suit based on actions taken or statements they made during their representation of the Kaiser Parties is recognized in California as well.[31] Thus, because "re-filing in a court with proper venue would be futile," the Court should dismiss Plaintiffs' claims against the La Follette with prejudice to filing of the same.[32]

## MOTION TO DISMISS UNDER RULE 12(b)(2)

### I.    Standard of Review Under 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant.[33] To survive a 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant.[34] Personal jurisdiction must be determined on *an individual basis* for *each defendant*.[35] For purposes of the personal jurisdiction analysis, the allegations contained in the complaint, except insofar as controverted by opposing affidavits, must be taken as true but the trial court is not restricted to plaintiff's pleadings and may determine the jurisdictional issue by receiving "affidavits, interrogatories, depositions, oral testimony, or any combination of the

---

[30] *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).
[31] *See Chang v. Lederman*, 172 Cal. App. 4th 67, 76, 90 Cal. Rptr. 3d 758, 765 (2009) ("The traditional rule in California, as in other jurisdictions, was an attorney could be held liable only to his or her client with respect to actions based on professional negligence."); *see also Kashian v. Harriman*, 98 Cal. App. 4th 892, 895, 120 Cal. Rptr. 2d 576 (2002) ("The [litigation] privilege applies to any communication (1) made in judicial or quasi-judicial proceedings, (2) by litigants or other participants authorized by law, (3) to achieve the objects of the litigation, and (4) that have some connection or logical relation to the action. The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm. . . .Moreover, the litigation privilege is not limited to the courtroom, but encompasses actions by administrative bodies and quasi-judicial proceedings.").
[32] *McClintock*, 299 F. App'x at 366.
[33] *Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F.Supp.2d 501, 505 (N.D. Tex. 2014).
[34] *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Frito-Lay North America, Inc. v. Medallion Foods, Inc.*, 867 F.Supp.2d 859, 864 (E.D. Tex. 2012).
[35] *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 671 (S.D. Tex. 2014).

recognized methods of discovery."[36]  This Court's determination of whether personal jurisdiction exists is a question of law.[37]

Two preconditions must be satisfied before this Court may assert personal jurisdiction: (1) the defendant must be amenable to service of process under Texas' long-arm statute; and (2) the assertion of jurisdiction over the defendant must comport with the Due Process Clause of the United States Constitution.[38] Because Texas' long-arm statute has been held to extend to the limits of due process, only the second jurisdictional precondition must be examined.[39] For personal jurisdiction to comport with due process, the plaintiff must show that: (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being hailed into court there; and (2) exercising jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice.[40]

The "minimum contacts" prong of the due process analysis can be met through contacts giving rise to either specific or general jurisdiction.[41] "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial."[42] In contrast, specific personal jurisdiction is established through the defendant's contacts with the forum state arising from, or related to, the cause of action.[43]

---

[36] *Quick Technologies, Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002).

[37] *Quick Tech. Inc.*, 313 F.3d at 343.

[38] *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992).

[39] *Id.* at 1067–68 (citing, inter alia, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990)).

[40] *Id.* at 1068 (citations omitted).

[41] *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir.1996).

[42] *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir.1999) (citation omitted).

[43] *Gundle*, 85 F.3d at 205.

## II.    Plaintiffs' Conspiracy Claim is Not Enough to Establish Personal Jurisdiction

Plaintiffs incorrectly claim that the Court has personal jurisdiction over the La Follette Defendants because the Court purportedly has personal jurisdiction over the JAMS Defendants and the La Follette Defendants allegedly conspired with them.[44] Without conceding that this Court has personal jurisdiction over the JAMS Defendants, the Fifth Circuit Court has "implicitly recognized that personal jurisdiction over one defendant conspirator is not sufficient to establish personal jurisdiction over a nonresident coconspirator."[45] Rather, personal jurisdiction must be based on a defendant's individual contacts with the forum "and not as part of [a] conspiracy."[46] Accordingly, to establish that this Court has personal jurisdiction over the La Follette Defendants, Plaintiffs must show that the alleged conspiracy was "related to or arose out of [the La Follette Defendants'] contacts with Texas."[47]

Plaintiffs allege that the La Follette Defendants participated in a civil conspiracy "because JAMS ADR's ruling were based on a lack of jurisdiction since there was no binding arbitration agreement to give him authority to make the rulings and those rulings injured the Plaintiffs through fraud. . ."[48] Plaintiffs themselves acknowledge that the Arbitration Proceeding took place in California.[49] Nowhere in Plaintiffs' Complaint do they allege that the La Follette Defendants' participation in this alleged conspiracy related to or arose out of the La Follette Defendants' contacts with Texas—because, as described below, the La Follette Defendants have no sufficient contacts with Texas as it relates to the alleged conspiracy or otherwise. Accordingly, as described

---

[44] **Plaintiffs' First Amended Complaint** [Doc. No. 38] at pg. 10.
[45] *Chow v. United States*, No. 20-30503, 2021 WL 3438365, at *2 (5th Cir. Aug. 5, 2021)
[46] *Delta Brands, Inc. v. Danieli Corp.*, 99 F. App'x 1, 5 (5th Cir. 2004).
[47] *Id.*
[48] **Plaintiffs' First Amended Complaint** [Doc. No. 38] at pg. 10.
[49] *Id.* at pgs. 2-3.

in further detail below, this case must be dismissed because the Court lacks personal jurisdiction over the La Follette Defendants.

### III.    Plaintiffs Cannot Establish Specific Personal Jurisdiction

The Fifth Circuit applies a three-step analysis to determine whether specific personal jurisdiction over a defendant exists: (1) whether the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[50]

The La Follette Firm has five offices across the state of California.[51] Its attorneys are licensed to practice in the State of California, and none are not licensed to practice law in the State of Texas.[52] The La Follette Firm does not maintain a principal place of business in Texas and is not required to and does not maintain a registered agent for service of process in Texas.[53] Further, all of the incidents Plaintiffs complain of in this lawsuit took place in California.[54] Accordingly, because the La Follette Defendants have not purposely directed their activities to Texas nor do Plaintiffs' causes of action against the La Follette Defendants arise out of any action the La Follette Defendants took in Texas, Plaintiffs cannot establish the Court has specific personal jurisdiction to determine Plaintiffs' claims against the La Follette Defendants.

### IV.    Plaintiffs Cannot Establish General Personal Jurisdiction

The general jurisdiction test is considerably more demanding and requires far more

---

[50] *Luv N' Care v. Insta–Mix, Inc.,* 438 F.3d 465, 469 (5th Cir.2006) (quoting *Nuovo Pignone v. STORMAN ASIA M/V,* 310 F.3d 374, 378 (5th Cir.2002)).
[51] **Exhibit D – Affidavit of Brian Meadows**, at ¶ 4.
[52] *Id*. at ¶ 6.
[53] *Id*. at ¶ 7.
[54] *Id*. at ¶ 10.

contacts with the forum State than for specific jurisdiction.[55] General jurisdiction exists when the nonresident defendant's contacts are continuous, systematic and substantial even though the plaintiff's claim is unrelated to those contacts.[56] The contacts must be so pervasive that the defendant is considered "at home" in the forum jurisdiction.[57] The "at home" standard makes it extremely difficult to establish general jurisdiction in a forum other than the residence of an individual.[58]

"The minimum contacts required to establish general jurisdiction are 'more extensive [in] quality and nature ... than those needed for specific jurisdiction."[59] "To find general jurisdiction over the defendant, a defendant's contacts with the forum must be substantial; random, fortuitous, or attenuated contacts are not sufficient."[60] "[V]ague and overgeneralized assertions" are insufficient to support general jurisdiction.[61]

A corporate defendant's place of incorporation and principal place of business are the "paradigm forums" for where it is "at home," and though a defendant may be at home in additional forums, such a forum is an "exceptional case."[62] The defendant's contacts with the forum state are evaluated "over a reasonable number of years up to the date the suit was filed" and the contacts "must be reviewed in toto, and not in isolation from one another."[63] When general jurisdiction exists, the forum state may exercise jurisdiction over the defendant on any matter, even if the

---

[55] *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S. Ct. 1868 (1984).

[56] *Daimler AG v. Bauman,* 134 S.Ct. 746, 760 (2014).

[57] *Id.; Goodyear,* 564 U.S. at 919.

[58] *Daimler,* 134 S.Ct. at 760.

[59] *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010).

[60] *Choice Healthcare*, 615 F.3d at 368.

[61] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

[62] *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 138 n. 19).

[63] *Johnston*, 523 F.3d at 610  (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) ).

---

matter is unrelated to the defendant's contacts with the forum.[64]

As previously demonstrated, the La Follette Defendants are all California residents who lack sufficient minimum contacts with the state of Texas required to establish general personal jurisdiction. Accordingly, Plaintiffs' claim against the La Follette Defendants should be dismissed.

## MOTION TO DISMISS UNDER RULE 12(b)(6)

### I.    Standard of Review Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a pleading for failure to state a claim upon which relief can be granted.[65] A court should grant a motion to dismiss under Rule 12(b)(6) when it is apparent from the face of the pleading that a plaintiff can prove no set of facts in support of its claim that would entitle it to relief.[66]

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matters . . . to state a claim that is plausible on its face."[67] This requires "more than a sheer possibility that a defendant has acted unlawfully."[68] A complaint "must provide the plaintiffs grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[69] "'[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"[70]

---

[64] *Johnston,* 523 F.3d at 613.
[65] Fed. R. Civ. P. 12(b)(6).
[66] *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[67] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[68] *Id*.
[69] *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2006).
[70] *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 558).

II.    **Plaintiffs' Claims against the La Follette Defendants are Barred as a Matter of Law Under the Attorney Immunity Doctrine**

"[T]he attorney immunity doctrine … 'is properly characterized as a true immunity from suit,' not merely as a defense against liability."[71] Under Texas law, attorneys are provided with immunity from any suit by a third party who claims to have been injured by the attorney's conduct in representing a client.[72] Plaintiffs cannot set forth a claim against the La Follette Firm nor its attorneys, Brian Meadows and Myra Firth, upon which relief can be granted because all of their alleged conduct, as described in the Complaint, falls squarely within the scope of their representation of their clients, the Kaiser Parties.

For over one hundred years, Texas law has recognized that attorneys have an absolute right to "practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages."[73] As a general rule, an attorney does not owe a professional duty of care to third parties who are damaged by the attorney's negligent representation of a client.[74] Further, the Supreme Court of Texas has held that the attorney immunity doctrine exists in both litigation and non-litigation contexts.[75]

Attorney immunity protects an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney; and (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and

---

[71] *Aubrey v. Estate of Tobolowsky*, No. 3:19-CV-2792-N-BK, 2021 WL 784141, at *2 (N.D. Tex. Feb. 11, 2021) (quoting Troice v. Proskauer Rose, LLP, 816 F.3d 341, 346 (5th Cir. 2016)).
[72] *Troice*, 816 F.3d at 346; *see also Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.,* 595 S.W.3d 651, 658 (Tex. 2020).
[73] *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd); *see Haynes and Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 79 (Tex. 2021).
[74] *Cantey Hanger*, 467 S.W.3d at 481.
[75] *Haynes and Boone, LLP*, 631 S.W.3d at 79.

the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable.[76] In determining whether attorney immunity applies, the threshold issue is whether the attorney's conduct, wrongful or not, was "foreign to the duties of any attorney."[77] Consequently, courts look to the "kind of conduct" underlying the allegations to determine if attorney immunity is appropriate.[78]

The Fifth Circuit has held that dismissal based on the attorney immunity defense is proper when "the scope of the attorney's representation—and thus entitlement to the immunity—[i]s apparent on the face of the complaint."[79]

Plaintiffs' only complaint against the La Follette Defendants appears to be that they represented the Kaiser Parties in defense against Plaintiffs' claims in the Arbitration Proceeding. In fact, none of the La Follette Defendants' purported actions can be remotely characterized as foreign to the duties of an attorney. Plaintiffs do not allege that the La Follette Defendants' conduct involved any action taken outside the provision of legal services, nor do they allege that the La Follette Defendants were engaged in acts that were "entirely foreign" to their duties as Kaiser's defense counsel. Thus, this Court should dismiss Plaintiffs' claims against the La Follette Defendants in their entirety under the doctrine of attorney immunity.[80]

---

[76] *Id*. at 78.
[77] *Cantey Hanger*, 467 S.W.3d at 482.
[78] *Id*.
[79] *Burke v. Ocwen Loan Servicing, LLC*, 855 Fed. App'x 180, 186 (5th Cir. 2021).
[80] *See Aubrey v. Estate of Tobolowsky*, No. 3:19-CV-2792-N-BK, 2021 WL 784141, at *2 (N.D. Tex. Feb. 11, 2021) ("the attorney immunity doctrine … 'is properly characterized as a true immunity from suit,' not merely as a defense against liability.") (quoting *Troice v. Proskauer Rose, LLP*, 816 F.3d 341, 346 (5th Cir. 2016)).

III.    **Plaintiffs Fail to Adequately Plead and State a Claim Against the La Follette Defendants Under Which Relief Could be Granted**

    a.    *Conspiracy to Commit Fraud*

In Texas, a claim for civil conspiracy requires (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.[81] Conspiracy is a derivative tort because recovery is not based on the conspiracy, but on the injury from the underlying tort.[82] Here, the underlying tort Plaintiffs allege the La Follette Defendants conspired to commit is fraud. In Texas, the elements of common law fraud are (1) a material representation; (2) which was false; (3) and which was either known to be false when made or was asserted without knowledge of its trust, (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury.[83]

Rule 9(b) of the Federal Rule of Civil Procedure provides a heightened pleading standard for fraud claims. Specifically, Rule 9(b) requires a plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."[84] "To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"[85] Even a "long-winded" complaint can be a pleading without particularity.[86] A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim.[87]

---

[81] *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019).
[82] *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 810 (S.D. Tex. 2009)
[83] *Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996)
[84] Fed. R. Civ. P. 9(b).
[85] *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).
[86] *Id.*
[87] *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

Despite this heightened pleading standard, Plaintiffs have failed to offer *any* evidence of allegedly fraudulent statements the La Follette Defendants made or conspired with other Defendants to make that Plaintiffs relied on. Rather, Plaintiffs generally allege that the La Follette Defendants participated in a "conspiracy to commit fraud against the Plaintiffs' rights to recover for their injuries"[88] and ultimately allege that the La Follette Defendants conspired with JAMS and related Defendants based on the Arbitrator's rulings on certain requests for relief Plaintiffs made in the Arbitration Proceeding.[89]

However, Plaintiffs' recitation of their purported objections to the La Follette Defendants' litigation strategy and JAMS' decisions in the Arbitration Proceeding demonstrates the very opposite required to establish a prima facie claim for fraud—not only did Plaintiffs *not* rely on any statements made by the purported conspiring Defendants, but Plaintiffs *opposed* such statements. Further, Plaintiffs have presented *no* evidence that would suggest that the La Follette Defendants had a meeting of the minds with JAMS and the Arbitrator to somehow defraud Plaintiffs. Rather, Plaintiffs have simply described the normal functions of any form of litigation. Except here, because Plaintiffs are unhappy with the outcome of these proceedings, Plaintiffs have labeled such events as a conspiracy to commit fraud without any factual basis for doing so.

Accordingly, because Plaintiffs fail to specifically plead how the La Follette Defendants' actions contributed to the conspiracy to commit fraud that they allege, and because Plaintiffs fail to specifically plead what fraudulent statements La Follette Defendants or their purported co-conspirators made that Plaintiffs relied on, Plaintiffs fail to state a claim against the La Follette

---

[88] **Exhibit A of Plaintiffs' First Amended Complaint** [Doc. No. 38-2], at pg. 109A.
[89] *Id*. at pgs. 109A – 110A.

Defendants for conspiracy upon which relief can be granted and such claim against the La Follette Defendants should be dismissed.

### b.    *Due Process and Equal Protection Violations*

Plaintiffs allege that the Court should award them damages against the La Follette Defendants for denying Plaintiffs their due process rights and equal protection guaranteed under the Fourteenth Amendment of the United States Constitution. However, the La Follette Defendants—who are private actors—cannot violate Plaintiffs' rights to equal protection or due process, as the Constitution only protects against infringement of those rights by the government.[90] Accordingly, because Plaintiffs do not allege facts to state a claim for relief against the La Follette Defendants that is plausible on its face, this Court should dismiss Plaintiffs' claim for damages based on an alleged violation of Plaintiffs' due process and equal protection rights against the La Follette Defendants.

### c.    *Violation of The Sherman Act*

Section 1 of the Sherman Act[91] provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal."[92] To establish a Section 1 violation, "a plaintiff must show that the defendant (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market.[93] Further, to satisfy the conspiracy element of a Sherman Act claim, a plaintiff must show

---

[90] *See Andrews v. Wal-Mart Stores, Inc.*, 2016 U.S. Dist. LEXIS 125275, *4-5 (N.D. Tex. Sept. 14, 2016, no pet.) (citing *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)) (finding private, non-state entity cannot violate equal protection law); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974) (due process under the 14th Amendment offers no shield against private conduct "however discriminatory or wrong") (citing *Shelley v. Kraemer*, 334 U.S. 1 (1948)).
[91] Although Plaintiffs attempt to encompass both Sections 1 and 2 of the Sherman Act in their Complaint, it appears that Plaintiffs only intend to invoke Section 1 based on the language of their pleading.
[92] 15 U.S.C. § 1.
[93] *MM Steel, LP v. JSW Steel (USA) Inc.,* 806 F.3d 835, 843 (5th Cir. 2015).

"that the defendants engaged in concerted action, defined as having 'a conscious commitment to a common scheme designed to achieve an unlawful objective.'"[94]

Here, Plaintiffs complain that the Kaiser Parties' arbitration agreement requires disputing parties to litigate claims in arbitration administered by OIA and JAMS as opposed to other arbitration associations, which Plaintiffs claim is a violation of the Sherman Act.[95] First, the La Follette Defendants deny that Kaiser's arbitration agreement restrains *trade* or *commerce* as contemplated by Section 1, and Plaintiffs have failed to provide any authority or facts to the contrary. Instead, Plaintiffs complain only of their alleged inability under the arbitration agreement to select the state arbitrator they prefer to oversee arbitration proceedings against the Kaiser Parties.[96] These kinds of facts (alleged restriction on selection of an arbitrator) are not contemplated by Section 1 of the Sherman Act.

However, *assuming arguendo* that the Kaiser Parties' arbitration agreement somehow does restrain trade or commerce as contemplated by the Sherman Act, Plaintiffs have failed to plead any facts that demonstrates that the La Follette Defendants—as litigation counsel for Kaiser in the related dispute against Plaintiffs—have "a conscious commitment to a common scheme designed to achieve an unlawful objective."[97] Rather, Plaintiffs only complain about the way in which the La Follette Defendants performed their duties as defense counsel, alleging that La Follette Defendants apparently "oppose[d] the state arbitrator [Plaintiffs] selected" and "[made] it [an] extremely long, arduous arbitration where the Plaintiffs have not received an award."[98] Again, without accepting the validity of these assertions, Plaintiffs' only complaint against the La Follette

---

[94] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373-74 (5th Cir. 2014) (quoting *Golden Bridge Tech, Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008).
[95] **Exhibit A of Plaintiffs' First Amended Complaint** [Doc. No. 38-2], at pgs. 113A – 116A.
[96] *Id*. at pg. 113A – 114A.
[97] *Marucci Sports*, 751 F.3d at 373-74.
[98] **Exhibit A of Plaintiffs' First Amended Complaint** [Doc. No. 38-2], at pg. 114A.

Defendants relates to the La Follette Defendants' defense strategy in representing the Kaiser Parties in the Arbitration Proceeding.

Accordingly, because Plaintiffs have failed to properly plead facts under 15 U.S.C § 1 against the La Follette Defendants for which relief can be granted, such claim against the La Follette Defendants should be dismissed.

## MOTION TO DISMISS UNDER RULE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of jurisdiction over the subject matter. Under 28 U.S.C. § 1331, a federal court has original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." A federal court may have federal-question jurisdiction over a state-law claim in only two circumstances: (1) Congress expressly so provides; or (2) when a federal statute wholly displaces the state-law cause of action through complete pre-emption.[99]

On a Rule 12(b)(1) motion, the district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.[100] In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.[101]

Plaintiffs allege that the Court has subject matter jurisdiction to determine their claims against Defendants "due to the applicable federal laws stated therein."[102] Should the Court determine that Plaintiffs' claims against the La Follette Defendants for violation of the Due Process

---

[99] *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020).
[100] Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.1981), cert. denied, 454 U.S. 897 (1981).
[101] *Id*.
[102] **Plaintiffs' First Amended Complaint** [Doc. No. 38], at pg. 8.

and Equal Protection Clauses of the United States Constitution as well as violation of the Sherman Act are dismissed based on Plaintiffs' failure to state a cause of action for which relief can be granted, Plaintiffs present *no* federal question on the face of the Complaint. Rather, the remaining cause of action for civil conspiracy is a tort sounded in state law (and which Plaintiffs fail to plead otherwise).[103] Accordingly, Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction.

## CONCLUSION AND PRAYER

For the foregoing reasons, Defendants La Follette, Johnson, Dehaas, Fesler & Ames; Brian Meadows; Myra Firth; and Mitzi Thomas pray that this Court grant this motion to dismiss, dismiss with prejudice Plaintiffs' claims against the La Follette Defendants in their entirety, and award Defendants such other and further relief to which they may be justly entitled.

---

[103] Plaintiffs attempt to characterize their claim for conspiracy as a "Federal Civil Conspiracy" by citing Fed. R. Civ. P. 8. *See* **Exhibit A to Plaintiffs' First Amended Complaint** [Doc. No. 38-2], at pg. 109A. However, the conspiracy Plaintiffs allege the La Follette Defendants participated in (fraud) is a state law tort, and Rule 8 simply sets forth necessary pleading standards.

Respectfully submitted,

*Daniel D. Tostrud*

By: _____

**DANIEL D. TOSTRUD**
Texas Bar No. 20146160
dtostrud@cobbmartinez.com
**MARY KATHRYN HOLLOWAY**
Texas Bar No. 24131157
mkholloway@cobbmartinez.com

COBB MARTINEZ WOODWARD PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201
(214) 220-5200 (Telephone)
(214) 220-5299 (Facsimile)

**ATTORNEYS FOR DEFENDANTS LA FOLLETTE, JOHNSON, DEHAAS, FESLER & AMES, BRIAN MEADOWS, MYRA FIRTH, AND MITZI THOMAS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record for all parties who are ECF registrants in this case or who have consented in writing to accept service by electronic means.

*/s/ Daniel D. Tostrud*
**DANIEL D. TOSTRUD**

## CERTIFICATE OF CONFERENCE

On September 4, 2025, the undersigned counsel for the La Follette Defendants attempted to contact Plaintiffs' counsel, Steven Zamora, via telephone to discuss Plaintiffs' pleading deficiencies as briefed in the La Follette Defendants' first Motion to Dismiss filed on September 2, 2025, which essentially asserts all the same arguments as *this* Motion to Dismiss. Mr. Zamora unfortunately did not answer the telephone call. Accordingly, counsel left a voicemail with Mr. Zamora around 11:30 a.m. and followed up with an email several hours later. Subsequently, on both September 5, 2025, around 1:40 p.m., and September 8, 2025, around 9:55 a.m., the undersigned counsel left a voicemail with Mr. Zamora but did not receive a return call from him.

On September 15, 2025, Mr. Zamora and the undersigned counsel held a telephone conference to discuss the substantive issues set forth in the La Follette Defendant's First Motion to Dismiss but were unable to reach an agreement as a to a permissible amendment or compromise. In light of the Court's September 24, 2025 Order denying Plaintiffs' Motion to Strike related to conferencing requirements, and because this Motion asserts nearly all of the same arguments as the La Follette Defendants' first Motion to Dismiss, the La Follette Defendants assert that their previous conference with Mr. Zamora satisfies the Court's conference requirement on this Motion, if any. Further, The Law Follette Defendants continue to maintain that the defects enumerated herein are not curable.

*/s/ Mary Kathryn Holloway*
Mary Kathryn Holloway